# EXHIBIT 12

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

KATHRYN S. KAYALI
(202) 434-5644
kkayali@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

June 18, 2021

<u>VIA E-MAIL</u>

| | |
|---|---|
| Joseph M. Reisman, Ph.D.<br>Ashley C. Morales<br>Mark Rubenshtein, Ph.D.<br>KNOBBE, MARTENS, OLSON & BEAR LLP<br>12790 El Camino Real<br>San Diego, CA 92130 | Gregory D. Miller<br>Gene Y. Kang<br>RIVKIN RADLER LLP<br>25 Main Street, Suite 501<br>Court Plaza North<br>Hackensack, NJ 07601 |
| William R. Zimmerman<br>KNOBBE, MARTENS, OLSON & BEAR LLP<br>1717 Pennsylvania Ave., N.W., Suite 900<br>Washington, DC 20006 | Christopher Casieri<br>MCNEELY, HARE & WAR LLP<br>12 Roszel Road, Suite C104<br>Princeton, NJ 08540 |
| William Adams<br>Karen M. Cassidy<br>Brandon G. Smith<br>KNOBBE, MARTENS, OLSON & BEAR LLP<br>2040 Main Street, 14th Floor<br>Irvine, CA 92614 | William D. Hare<br>MCNEELY, HARE & WAR LLP<br>5355 Wisconsin Ave., Suite 440<br>Washington, DC 20015 |

   Re: *Teva Branded Pharmaceutical Products R&D, Inc., et al., v. Cipla Ltd.*, Consolidated Civil A. No. 20-10172 (MCA)(MAH)

Counsel:

  I write to summarize the status of the parties' outstanding claim construction disputes after the meet-and-confer call on June 15, 2021, in connection with the 39 terms proposed by Defendants on April 30, 2021, which appear in the asserted claims of U.S. Patent Nos. 9,463,289 ("the '289 patent"), 9,808,587 ("the '587 patent"), 10,086,156 ("the '156 patent"), 10,561,808 ("the '808 patent"), and 10,695,512 ("the '512 patent").

WILLIAMS & CONNOLLY LLP

June 18, 2021
Page 2

## A. Agreed-Upon Constructions

The parties have agreed to the following constructions:

| Term | Agreed-upon Construction |
|---|---|
| "canister housing"<br><br>'289 patent, claim 1<br>'587 patent, claims 1, 12, and 13 | "the portion of the inhaler body that is arranged to retain a medicament canister" |
| "inside surface"<br><br>'289 patent, claim 4<br>'587 patent, claims 4 and 17 | "an interior surface" |
| "body"<br><br>'156 patent, claim 1 | "the body of the inhaler" |
| "associated with"<br><br>'156 patent, claim 1 | "related to" |

## B. Tentatively-Agreed Constructions

On June 15, 2021, the parties revisited compromise constructions proposed on previous calls. Teva confirms it is willing to adopt the compromise positions set forth below, and understood Defendants would seek to do likewise. Please confirm the parties are in agreement as to the following:

| Term | Agreed-upon Construction |
|---|---|
| "canister support formation"<br><br>'289 Patent, claims 1, 4<br>'587 Patent, claims 1, 4, 11, 12, 13, 15 | "a formation arranged to reduce canister rocking" |
| "actuator"<br><br>'156 Patent, claims 1, 2, 12<br><br>'512 Patent, claim 1, 5 | "A structure within the dose counter that can be moved by the canister, is moveable relative to other components of the dose counter, and effectuates movement of at least one additional dose counter component." |
| "actuator pawl arranged to engage with a first tooth of the ratchet wheel"<br><br>'156 Patent, claim 1 | "a pawl that is a part of the actuator of the dose counter that is arranged to engage with a tooth of the ratchet wheel." |

WILLIAMS & CONNOLLY LLP

June 18, 2021
Page 3

| | |
|---|---|
| "wall surfaces separating the canister receiving portion and the counter chamber"<br><br>'156 Patent, claim 1 | "wall surfaces of the inhaler which are substantially perpendicular to the direction of canister movement and which divide the canister-receiving portion and counter chamber" |
| "pins"<br><br>'512 Patent, claim 1 | "shafts that extend through or into respective apertures" |
| "chassis"<br><br>'512 Patent, claim 1 | "frame of the dose counter" |
| "regulator"<br><br>'808 Patent, claims 1, 27 | "a structure of the dose counter that modulates motion of the counter display" |
| "regulate motion of the counter display"<br><br>'808 Patent, claim 1 | "modulate motion of the counter display |
| "a pin or aperture heat staked to a respective aperture or pin"<br><br>'512 Patent, claim 1 | "a pin or aperture that is secured to a respective pin or aperture using a heat probe to compress and reform or deform the pin" |
| "fixed to the body"<br><br>'512 Patent: 3 | "connected to the body" |

## C. Additional Terms that Need Not be Construed

After multiple meet-and-confer calls, the parties appear to substantially agree on the meaning of several terms, notwithstanding their inability to articulate a mutually acceptable construction. Teva has attempted to memorialize the basis for that agreement below. If Defendants confirm that the summaries below reflect their constructions of the relevant terms, Teva suggests these terms need not be included in the parties' Joint Claim Construction and Prehearing Statement ("JCCS"). To the extent Defendants prefer that the terms be entered in the JCCS, please propose an acceptable construction consistent with the summaries below for Teva's consideration.

1. "main surface of the inner wall"

Defendants identified this term for construction in connection with claim 1 of the '289 patent and claims 1, 12, and 13 of the '587 patent. Defendants explained that they understand the term "main surface of the inner wall" to refer to the inside surface of the "vertical," cylindrical portion of the plastic actuator. Defendants confirmed that, in their explanation of the term, "vertical" is understood to mean substantially parallel to the primary direction of

**WILLIAMS & CONNOLLY LLP**

June 18, 2021
Page 4

movement of the medicament canister when it is pressed downward by the user to expel medicament. Teva shares this understanding of the claim term.

### 2. "the inner wall through which a portion of the actuation member extends"

Defendants identified this term for construction in connection with claim 3 of the '289 patent and claims 3 and 13 of the '587 patent. Defendants explained that, in the context of the claims, they understand the term "inner wall through which a portion of the actuation member extends" to refer to a wall inside the plastic actuator that is "horizontal" (where "horizontal" is understood to mean substantially perpendicular to the primary direction of movement of the medicament canister). Teva shares this understanding of the claim term.

### 3. "inner wall"

Defendants identified this term in connection with claims 1 and 4 of the '289 patent and claims 1, 4, 12, 13, 15, 21, and 22 of the '587 patent. Defendants explained that they understand the term "inner wall" to encompass both "the inner wall through which a portion of the actuation member extends" as well as the "main surface of the inner wall." Defendants further clarified that they did not consider the bottom surface of the plastic actuator to be an inner wall. Teva shares this understanding of the claim term.

### 4. "first direction"

Defendants identified this term in connection with claim 1 of the '808 patent. Defendants expressed that their objective in seeking construction of this term was to confirm that the term "first direction" excluded "multiple directions at a time." Teva does not agree that "single direction at a time" is the plain and ordinary meaning of the term "first direction" and therefore does not agree to enter Defendants' proposed construction. However, Teva confirms that it does not believe a single component of a dose counter that moves in "multiple directions at a time" moves in a "first direction" and therefore does not believe the parties have a live dispute with respect to this term.

### D. Additional Proposed Compromises

### 1. "protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler"

Defendants identified this term in connection with claim 1 of the '587 patent. Teva agreed to consider Defendants' explanation of their current construction, "guards against unwanted actuation of the dose counter by reducing rocking of the canister relative to the main body of the inhaler [such that the canister rocking cannot change the height of the actuation member sufficiently to result in the dose counter recording a count]" (brackets added by Teva). Teva remains confused by what additional limits the bracketed language places on the claim's scope.

WILLIAMS & CONNOLLY LLP

June 18, 2021
Page 5

In discussions, the parties appeared to agree that the claim language "protects against unwanted actuation of the dose counter by reducing rocking of the canister relative to the main body of the" language is limiting and that it requires that the referenced claim features guard against canister rocking that would otherwise be of a magnitude sufficient to move the dose counter's actuator enough to cause unwanted incrementing (or decrementing) of the dose counter. The parties further agreed that this term does not require the prevention of all such rocking. To memorialize this agreement, Teva therefore proposes the following stipulated construction. In the alternative, if Defendants' confirm Teva's understanding above, Teva suggests that the term needs not be construed.

| Term | Agreed-upon Construction |
|---|---|
| "protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler"<br><br>'587 patent, claim 1 | "guards against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler" |

2. **"aperture"**

Defendants identified this term for construction in connection with claim 3 of the '289 patent, claims 3 and 20-22 of the '587 patent, and claim 1 of the '512 patent. Teva notes that the '289 and '587 patents use the term "aperture" in a different context than does the '512 patent. Teva's proposed construction of the term is intended to encompass its use in both patents.

Teva's preliminary construction for the term "aperture" ("an opening, open space, or gap") was chosen to represent the plain and ordinary meaning of the term as reflected by dictionary definitions. Defendants' preliminary construction was "hole" – Teva therefore integrated that language into its revised construction ("an opening, open space, gap, or hole").

Defendants indicated they are unwilling to accept Teva's revised construction due to concern that the language "open space" was, on its own, broad enough to encompass things not connected to the subject matter of the asserted patents, such as "an open field." Plainly, Teva's construction is not intended to bring "an open field" within the scope of the claim term "aperture," a possibility precluded by the remainder of the claims at issue. Regardless, and at Defendants' suggestion, Teva stated it would return to the cited dictionaries to review the context in which they recite the term "open space" in connection with their definition of "aperture." We have done so, and therefore propose the following stipulated construction, which comes directly from Merriam-Webster.

WILLIAMS & CONNOLLY LLP

June 18, 2021
Page 6

| Term | Agreed-upon Construction |
|---|---|
| "aperture"<br><br>'289 patent, claim 3<br>'587 patent, claims 3 and 20-22<br>'512 patent, claim 1 | "an opening or open space: hole" |

### E. Proposed Term-Narrowing Procedure

By Teva's count, if Defendants agree to every proposal outlined in this letter, Defendants will be seeking construction of nineteen disputed terms.[1] When the parties represented to Judge Hammer that they expected to reduce the number of pending disputes to between fifteen and twenty terms, he expressed his hope that that number would be halved. Teva shares Judge Hammer's concern that nineteen terms will place an undue burden on the Court's time and resources and therefore proposes that the parties adopt Judge Hammer's suggestion of prioritizing the remaining disputes, subject to approval by Judge Arleo.

In particular, Teva suggests that each party selects four terms to place in the JCCS, for construction by the Court in September. The total of eight terms for the Court to resolve at this time is consistent with Judge Hammer's statements regarding what would be a reasonable number of terms. Moreover, this approach will allow the parties to fully brief the selected disputes, rather than frustrating the Court with short and piecemeal argument on a large number of ancillary issues. In adopting this procedure, all parties would agree, subject to Court approval, that a party's decision *not* to select a term for inclusion in the JCCS at this time would *not* result in waiver of that party's claim construction position as articulated to date, should a dispute about the meaning of a given term remain relevant at the time of trial.

We are in receipt of your June 14 letter requesting that Teva dismiss its claims regarding the '156 and '512 patents. We will respond by letter in due course. In the interim, and as we stated on our June 15 call, Teva is not willing to dismiss additional patents from the case at this time. While we anticipate reducing the number of asserted claims before trial, Teva is neither obligated nor prepared to do so at this early juncture, before it has access to the relevant discovery. *See, e.g.*, *Jazz Pharms. v. Roxane Labs., Inc.*, No. 10-6108 (ES)(MAH) (D.N.J. Nov. 25, 2013), D.I. 313 Hearing Tr. at 22:14-23:25 (refusing to grant request to limit number of asserted claims prior to completion of discovery). Defendants' request that Teva forgo assertion of its property rights without access to relevant discovery is unrelated to and not commensurate with Teva's repeated requests that Defendants' make reasonable efforts to limit the claim construction burden placed on the Court more than a year before a bench trial. The above compromise permits Defendants to select the terms that they believe to be most important to their case for construction now without waiving their position on the remaining terms in the

---

[1] Teva's position has been and remains that all terms have their plain and ordinary meaning and no construction is necessary.

WILLIAMS & CONNOLLY LLP

June 18, 2021
Page 7

future, to the extent those positions remain relevant after the parties have had an opportunity to further crystallize their disputes.

      Please confirm Defendants' willingness to proceed as outlined here, so that the parties may seek the Court's approval and/or guidance regarding this agreement sufficiently in advance of the JCCS filing.

      Sincerely,

      Kathryn S. Kayali