Liza M. Walsh
Katelyn O'Reilly
William T. Walsh, Jr.
Walsh Pizzi O'Reilly Falanga LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100

*Attorneys for Plaintiff*
*Teva Branded Pharmaceutical*
*R&D Inc. and Norton (Waterford) Ltd.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC., and NORTON (WATERFORD) LTD., | : : : : : | Consolidated Civil Action No. 20-10172 (JXN)(MAH) |
| Plaintiffs, | : : |  |
| v. | : : |  |
| CIPLA LTD., AUROBINDO PHARMA LLC, AUROBINDO PHARMA USA, INC., and AUROLIFE PHARMA LLC, | : : : |  |
| Defendants. | : : |  |

## PLAINTIFFS' RESPONSIVE CLAIM CONSTRUCTION BRIEF

# **Table of Contents**

Table of Contents ................................................................................................. i

Table of Authorities ........................................................................................... iii

I.     Introduction ............................................................................................... 1

II.    Defendants' Technology Summary Mistakes the Figures for the
       Claims ....................................................................................................... 2

III.   Disputed Claim Terms .............................................................................. 3

       A.    '289 Patent, Claims 1, 3; '587 Patent, Claims 1, 3; 11-13; '156
             Patent, Claim 12: "Actuation Member" ....................................... 3

       B.    '289 Patent, Claim 1; '587 Patent, Claims 1, 12, 21, 22: The
             "Common Plane Limitation" ......................................................... 8

       C.    '289 Patent, Claim 7; '587 Patent, Claims 7, 18: "Positioned at
             Opposite Ends of the Inside Surface of the Main Body to Face
             Each Other" .................................................................................. 12

       D.    '289 Patent, Claims 5, 8; '587 Patent, Claims 5, 8, 16, 19:
             "Steps Formed Thereon" .............................................................. 14

       E.    '289 Patent, Claim 3; '587 Patent, Claims 3, 13, 20-22; '512
             Patent, Claims 1, 6: "Aperture" .................................................. 15

       F.    '156 Patent, Claim 1: "Canister Fire Sequence" ........................ 16

       G.    '156 Patent, Claim 1: "First Reset Position"/ '156 Patent,
             Claims 1-2: "Canister Fire Configuration"/ '156 Patent, Claims
             1-2: "Count Configuration" ......................................................... 19

       H.    '156 Patent, Claim 1: "Datum Plane Which Passes Through a
             Shoulder of a Valve Stem Block Configured to Receive the
             Medicament Canister" .................................................................. 22

       I.    '156 Patent, Claim 12: "The Body" ............................................ 24

       J.    '156 Patent, Claims 1, 9: "Count Pawl" ..................................... 26

K.     '808 Patent, Claim 1: "Counter Display Arranged to Indicate Dosage Information" ..............................................................30

L.     '808 Patent, Claim 1: "First Station"/"Second Station" ....................33

M.     '512 Patent, Claim 1: "Different Sides"................................................35

N.     '512 Patent, Claim 2: "Formed in the Body".......................................37

O.     '156 Patent, Claim 12: "Separate Counter Chamber"/ '512 Patent, Claims 2, 3: "Dose Counter Chamber"...................................39

IV.  Conclusion ......................................................................................................40

# Table of Authorities

## CASES

*01 Comm. Lab., Inc. v. LogMeIn, Inc.*,
  687 F.3d 1292 (Fed. Cir. 2012) ....................................................32

*Abraxis Biosci., Inc. v. Mayne Pharma (USA) Inc.*,
  467 F.3d 1370 (Fed. Cir. 2006) ....................................................22

*Adapt Pharma Operations Ltd. v. Teva Pharm. USA, Inc.*,
  2019 WL 1789463 (D.N.J. Apr. 24, 2019)....................................24

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
  457 F.3d 1293 (Fed. Cir. 2006) ......................................................1

*Ancora Techs., Inc. v. Apple, Inc.*,
  744 F.3d 732 (Fed. Cir. 2014) ........................................................6

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
  448 F.3d 1324 (Fed. Cir. 2006) ....................................................28

*Aventis Pharm. Inc. v. Amino Chems. Ltd.*,
  715 F.3d 1363 (Fed. Cir. 2013) ............................................. 24, 25

*Aventis Pharms. Inc. v. Impax Labs., Inc.*,
  2011 WL 94188 (D.N.J. Jan. 11, 2011)...........................................6

*Baxter Healthcare Corp. v. Minrad, Inc.*,
  2010 WL 11711019 (D. Del. Nov. 29, 2010).................................6

*Bicon, Inc. v. Straumann Co.*,
  441 F.3d 945 (Fed. Cir. 2006) ......................................................25

*Bristol-Myers Squibb Co. v. Dr. Reddy's Labs., Ltd.*,
  2021 WL 1820486 (D.N.J. May 6, 2021).....................................18

*CCS Fitness, Inc. v. Brunswick Corp.*,
  288 F.3d 1359 (Fed. Cir. 2002) ............................................... 1, 32

*Continental Circuits LLC v. Intel Corp.*,
  915 F.3d 788 (Fed. Cir. 2019) ........................................................3

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
    424 F.3d 1293 (Fed. Cir. 2005) .............................................................. 26, 32

*Edwards Lifescis. LLC v. Cook Inc.*,
    582 F.3d 1322 (Fed. Cir. 2009) ........................................................................7

*Energizer Holdings, Inc. v. ITC*,
    435 F.3d 1366 (Fed. Cir. 2006) .....................................................................26

*Env't Designs, Ltd. v. Union Oil Co.*,
    713 F.2d 693 (Fed. Cir. 1983) ....................................................... 18, 20, 22

*E-Pass Techs., Inc. v. 3Com Corp.*,
    343 F.3d 1364 (Fed. Cir. 2003) ...................................................................1, 5

*Epos Techs. Ltd. v. Pegasus Techs. Ltd.*,
    766 F.3d 1338 (Fed. Cir. 2004) ........................................................... 35, 37

*GE Lighting Sols. LLC v. AgiLight, Inc.*,
    750 F.3d 1304 (Fed. Cir. 2014) ........................................................... 21, 23

*Grober v. Mako Prods., Inc.*,
    686 F.3d 1335 (Fed. Cir. 2012) .....................................................................10

*Honeywell Int'l, Inc. v. ITT Indus., Inc.*,
    452 F.3d 1312 (Fed. Cir. 2006) .....................................................................21

*Inpro II Licensing, S.A.R.L. v. TMobile USA, Inc.*,
    450 F.3d 1350 (Fed. Cir. 2006) ........................................................... 21, 22

*Intell. Ventures I, LLC v. Ricoh Am. Corp.*,
    2016 WL 93847 (D. Del. Jan. 7, 2016) ......................................................26

*Jazz Pharm., Inc. v. Amneal Pharm., LLC*,
    2017 WL 5128748 (D.N.J. Nov. 6, 2017) ..................................................30

*Kara Tech. Inc. v. Stamps.com, Inc.*,
    582 F.3d 1341 (Fed. Cir. 2009) ........................................................... 17, 28

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004) ............................................................. passim

*Luminara Worldwide*, LLC v. Liown Elecs. Co.,
    814 F.3d 1343 (Fed. Cir. 2016) ...................................................................6

*M2M Solns. LLC v. Sierra Wireless Am., Inc.*,
    2016 WL 1298961 (D. Del. 2016)..............................................................32

*MBO Labs., Inc. v. Becton, Dickinson & Co.*,
    474 F.3d 1323 (Fed. Cir. 2007) .......................................................... 2, 3, 13

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014)............................................................................. 24, 26

*Pandrol USA, LP v. Airboss Ry. Prods., Inc.*,
    424 F.3d 1161 (Fed. Cir. 2005) ..................................................................32

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) ........................................... passim

*Powell v. Home Depot U.S.A., Inc.*,
    663 F.3d 1221 (Fed. Cir. 2011) ....................................................................4

*SanDisk Corp. v. Memorex Prods., Inc.*,
    415 F.3d 1278 (Fed. Cir. 2008) ..................................................................14

*Smart Vent, Inc. v. USA Floodair Vents, Ltd.*,
    2014 WL 6882281 (D.N.J. Dec. 3, 2014) .....................................................4

*Thorner v. Sony Comput. Ent. Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012) ........................................................... passim

*Toshiba Corp. v. Imation Corp.*,
    681 F.3d 1358 (Fed. Cir. 2012) ................................................................4, 5

*U.S. Surgical Corp. v. Ethicon, Inc.*,
    103 F.3d 1554 (Fed. Cir. 1997) ............................................................ 30, 39

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
    503 F.3d 1295 (Fed. Cir. 2007) ....................................................................4

*Whirlpool Corp. v. Ozcan*,
    2016 WL 7474517 (E.D. Tex. Dec. 29, 2016) ...................................... 24, 26

## OTHER AUTHORITIES

Miriam Webster's Collegiate Dictionary (11th ed. 2003) .......................................15

## I.    Introduction

Defendants' opening brief violates flagrantly the claim construction rubric pronounced by the *en banc* Federal Circuit in its 2005 opinion in *Phillips v. AWH Corp.* and applied uniformly by district courts since.  415 F.3d 1303 (Fed. Cir. 2005) (en banc).    Remarkably, Defendants' brief does not once cite *Phillips*, in a transparent effort to avoid its rule that the words of the claims themselves reign supreme in the claim construction analysis.  *Id.* at 1312-13; *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 457 F.3d 1293, 1301 (Fed. Cir. 2006).

Casting aside *Phillips*'s requirement to grapple with the claim language as written, Defendants devote most of their brief to examining the patents' figures, and related descriptions, and assert that the claims should be limited to those embodiments.  But examples and disclosures are not definitions, and reading the claims in light of the specification does not mean importing limitations from it.  Instead, lexicography requires the patent to "'clearly set forth a definition of the disputed claim term.'" *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (quoting *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)).  In applying that standard, "it is important to determine whether the statement was designed to define the claim term or to describe a preferred embodiment." *E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1369 (Fed. Cir. 2003).  Defendants' repeated conflation of the two runs afoul of *Phillips* and its

progeny, thus committing one of the "cardinal sins of patent law."  415 F.3d at 1320.

## II.    Defendants' Technology Summary Mistakes the Figures for the Claims

Defendants' lengthy discussion of "the inhaler described in the Asserted Patents" addresses almost exclusively the specification's figures and associated descriptions.  Def. Br. 2-10.  But the cited material expressly addresses *embodiments* of the invention, not its full scope as defined by the claims.  Dkt. No. 110-2, Ex. 1 ("'289 Patent"), at 11:7-9 ("preferred embodiment of a dose counter, inhaler and methods of assembly, design and manufacture will now be described with reference to the accompanying drawings"), 12:13-15 ("FIG. 1 shows a main body 10 of a . . . inhaler 12 in accordance with an embodiment related to the present invention"), 29:29-30 ("Various modifications may be made to the embodiment shown . . . .").  Defendants nevertheless treat those embodiments as definitional.

But a patent's figures do not limit the scope of the claimed invention; only the claims do that.  *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333-34 (Fed. Cir. 2007).  Where the claims are broader—as they are here—they must be afforded their full scope, based on their plain meaning.  *Phillips*, 415 F.3d at 1312-13.  The law provides only two exceptions:  When the patentee clearly redefines a term, or when it expressly disavows claim scope by making clear that the invention does not include a given feature.  *Thorner*, 669 F.3d at 1365-67.  Those exceptions do not apply to *any* of the nineteen-plus terms Defendants ask this Court to construe.

Of course, claim terms must be given their ordinary meanings *consistent* with the specification. But that does not mean importing limitations from the specification into the claims. If a claim term is used to describe an embodiment in the specification, it should not be read to *exclude* that embodiment. But neither should it be read as *limited* to that embodiment. *MBO Labs.*, 474 F.3d at 1333-34. Indeed, the rule requiring clear lexicography or disavowal applies even where the specification discloses only one embodiment. *Continental Circuits LLC v. Intel Corp.*, 915 F.3d 788, 797 (Fed. Cir. 2019). Defendants' efforts must be rejected.

## III. Disputed Claim Terms

### A. '289 Patent, Claims 1, 3; '587 Patent, Claims 1, 3; 11-13; '156 Patent, Claim 12: "Actuation Member"

The parties dispute two aspects of "actuation member": (1) whether the construction should "recite the purpose of the movement of the 'actuation member,'" and (2) whether the actuation member must be a pin. Def. Br. 11. As to (1), it is not clear what Defendants' "purposive" construction intends to exclude from the claim scope—indeed, as evidenced by Teva's opening brief, Teva did not understand any such dispute to exist. Issue (2) is just the first of Defendants' many efforts to limit the claims to preferred embodiments. It should be rejected along with the rest.

**1.** The parties agree that the actuation member must transmit motion from the canister to the actuator. Def. Br. 12. That is what Plaintiffs' construction reflects: "a component of the dose counter's actuator that transmits motion from the canister

3

to the actuator."  But Defendants' proposed construction also incorporates the *purpose* of that movement:  "a pin arranged to engage with a medicament canister and effect movement ***causing the dose counter to record a count.***"  Def. Br. 11.

The Federal Circuit routinely rejects efforts to import the *purpose* of a structural feature like "actuation member" into its construction.  *See, e.g.*, *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1368 (Fed. Cir. 2012); *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1233 (Fed. Cir. 2011); *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1304 (Fed. Cir. 2007); *accord Smart Vent, Inc. v. USA Floodair Vents, Ltd.*, 2014 WL 6882281, *4-5 (D.N.J. Dec. 3, 2014).   In *Toshiba*, "[t]he district court construed [the term] 'number-of-recording planes identifying information' to mean 'information *whose purpose* is to identify the number of recording planes on the recording medium.'" 681 F.3d at 1367.  The defendant obtained that construction based on prosecution history suggesting that the purpose of the "number-of-recording planes identifying information" was to identify the relevant side of a disc—a purpose applicable only to double-sided discs. *Id.* at 1367-68.  The Federal Circuit disagreed, holding that the prosecution history did not reflect a "clear and unambiguous disavowal" of single-sided discs, and "the district court improperly read a 'purpose' requirement into claim 1." *Id.* at 1367-70.

*Toshiba* is materially indistinguishable.  Like the limitation at issue in *Toshiba*, "actuation member" is a structural limitation that must be interpreted

4

structurally.  *Id.* at 1368 ("The language of the claim only requires that the information 'represents' the number of recording planes or 'uniquely identifies' the recording plane.  These are structural limitations.'").  The prosecution history is not to the contrary, Def. Br. 12—like that relied upon in *Toshiba*, it does not reflect a "clear and unambiguous" disavowal of claim scope.  Instead, it addresses the purpose of the "inner wall canister support formation," not the actuation member. *Id.* at 12 (citing Dkt. No. 109-7, at 5).  Defendants' position should be rejected.

   **2.**  The plain and ordinary meaning of "actuation member" is not limited to a pin.  Defendants acknowledge as much, as they argue the specification contains a definition that trumps that plain meaning.  Def. Br. 13.  But the relevant passage falls far short of the standard for lexicography, which requires the patent to "'clearly set forth a definition of the disputed claim term.'"  *Thorner*, 669 F.3d at 1365.  Instead, like much of Defendants' citations, column 7, lines 22-23 describe *optional* aspects of the invention—*i.e.*, embodiments or forms the invention *can, but need not* take. Such embodiments are not definitional.  *E-Pass Techs.*, 343 F.3d at 1369.  The language here plainly involves the latter, especially given what precedes it:

> The dose counter ***may*** . . . be located in a counter chamber separate from the canister housing, the actuation member comprising a pin extending through an aperture in a wall which separates the counter chamber and the canister housing.

'289 Patent, 7:20-25 (emphasis added).  The passage's "use of the permissive word

'may' indicates that it is a preferred embodiment, but not required." *Baxter Healthcare Corp. v. Minrad, Inc.*, 2010 WL 11711019, at *1 n.3 (D. Del. Nov. 29, 2010). That is confirmed by the fact that none of the other features that it describes— (1) "counter chamber separate from the canister housing," (2) "wall which separates the counter chamber and the canister housing"—are required by the independent claims. To the contrary, those features are written into *dependent* claims of other asserted patents. *See* Dkt. No. 110-2, Ex. 3 ("'156 Patent"), claim 12; Dkt. No. 110-2, Ex. 5 ("'512 Patent"), claims 2, 3. Where, as here, language describes a preferred embodiment, not the invention as whole, it does not limit its plain meaning. *Ancora Techs., Inc. v. Apple, Inc.*, 744 F.3d 732, 735 (Fed. Cir. 2014).

Nor does the passage bear the hallmarks of lexicography the Federal Circuit has cited repeatedly. It does not appear in a "Definitions" section; "actuation member" is not set off in quotation marks, no definitional structure or buzzwords appear (*e.g.*, "'actuation member' means"); and nothing indicates that it is intended to extend beyond the embodiment it describes (*e.g.*, "the present invention includes," "the present invention is," or "all embodiments of the present invention are"), *Luminara Worldwide, LLC v. Liown Elecs. Co*., 814 F.3d 1343, 1353 (Fed. Cir. 2016); *Aventis Pharms. Inc. v. Impax Labs., Inc.*, 2011 WL 94188, at *3 (D.N.J. Jan. 11, 2011). All this confirms that Defendants' "definition" is no definition at all.

Defendants are also incorrect that the specification "consistently" uses the

terms "actuation member" and "actuation pin" interchangeably in a manner "akin to a definition equating the two."  Def. Br. 13 (citing *Edwards Lifescis. LLC v. Cook Inc.*, 582 F.3d 1322, 1329 (Fed. Cir. 2009)).  In *Edwards*, the patent used "graft" and "intraluminal graft" in a way that left no doubt the two terms meant the same thing—often referring to the same component using both terms *in the same sentence*.  *Id.* For example, that specification stated that "'*an intraluminal graft* as defined above' is carried through a catheter 'until *the graft* extends into the vessel'" and referred to a number in the figures as both the "graft" and the "intraluminal graft."  *Id.*

The Asserted Patents do nothing of the sort.  Instead, the specification uses the term "actuation member" when referring to the invention as a whole, and "actuation pin" when referring to particular embodiments that, unsurprisingly, use a pin as an actuation member.  For example, the abstract describes a "dose counter having an actuation member."  And the entire "Summary of the Invention" uses "actuation member"—it does not use the term "actuation pin."[1]  '289 Patent, 2:39-11:2.  It is only when the specification proceeds to a detailed description of the embodiments depicted in the figures that it shifts vocabulary, using "actuation pin" or "pin" both to refer to component **34** of the Figures.  *See, e.g.*, '289 Patent, 12:38-53, 13:44-45, 14:7-8, 14:10-12, 14:40-42, 14:67-15:3, 15:47-52, 16:9-12.  These

---

[1] The Summary of the Invention refers once to an "actuator pin," in expressly optional language.  '289 Patent, 5:28-30 ("The actuator pawl ***may*** be arranged to be connected to or integral with an actuator pin . . . ." (emphasis added)).

passages include every one of those Defendants rely upon to argue "actuation member" and "actuation pin" are used interchangeably, Def. Br. 13, but not one uses the term "actuation member."  If anything, they show that the specification uses "actuation pin" and "pin" interchangeably, to refer to component **34**.  The patent indicates that the broad term "actuation member" describes the invention, and the narrower terms "actuation pin" or "pin" describe certain embodiments with pins. Nothing in the claims, specification, or file history suggests that the invention as a whole is limited to embodiments with pins.  *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898. 906 (Fed. Cir. 2004).  Teva claimed a broader "actuation member"; not a narrower "actuation pin."  Defendants cannot undo that choice.

**B.    '289 Patent, Claim 1; '587 Patent, Claims 1, 12, 21, 22: The "Common Plane Limitation"**

Claim 1 of the '289 Patent requires that the inner wall canister support formation, the actuation member, and the central outlet port "lie in a common plane." Defendants argue this is not met even if the three recited features *do* lie in a common plane, unless the canister support formation is also "directly adjacent to the actuation member."  Def. Br. 14.  This requirement is found nowhere in the claim language, which Defendants studiously avoid in relying on "the specification, prosecution history, and reasons for allowance."  *Id.* at 14-15.  Their reliance is misplaced, but also irrelevant—*Phillips* commands that claim construction begin with the claims.

Ignoring that mandate, Defendants proceed directly to the prosecution

history—a source *Phillips* relegates to the bottom of the intrinsic evidence hierarchy, because "it often lacks the clarity of the specification and thus is less useful for claim construction purposes."  415 F.3d at 1317.  Defendants refer to an amendment in which Teva added the Common Plane Limitation, Dkt. No. 109-7, at 2-3 (underlined language added to claims), where Teva urged allowance because no prior art disclosed an inhaler configured according to the Common Plane Limitation—*i.e.*, with a canister support formation (144, blue), actuation member (located at aperture 74, yellow), and the center of the central outlet port (148, green) all in a straight line, as shown in red below in Fig. 7D.  *Id.* at 5-6 (line in original, colors added for clarity).



Teva explained that, by contrast, in the Davies prior art (shown below), "it is not possible to draw a straight line through the center of the stem block (53 [green]), the rib (50 [blue]) and actuator aperture (61 [yellow])."  *Id.* at 6.



The examiner then allowed the claims.  Dkt. No. 109-8, at 2-3.

9

Defendants now seize on a feature of Figure 7D *nowhere* discussed during this exchange—that the canister support formation (blue) is adjacent to the actuation member (yellow)—and argue that Teva disavowed all claim scope in which the two features are *not* adjacent to one another.

To limit the plain meaning, the prosecution history must "clearly and unmistakably" disclaim broader claim scope. *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1342-43 (Fed. Cir. 2012). Defendants make no effort to satisfy this exacting standard. Nor could they—the discussion they cite is *totally silent* as to the claim scope allegedly disavowed. It does not state that the actuation member and canister support formation are adjacent in Figure 7D, let alone disclaim other arrangements. Dkt. No. 109-7, at 5-6. Instead, it addresses the "specific positioning" or "placement" of the canister support formation "relative to the actuator" as recited in the claim—namely, that both be in a common plane with the central outlet port. *Id.*

Making matters worse, Defendants omit critical context from the cited prosecution history. In the *very same exchange* in which Teva *added* the Common Plane Limitation to the claims, it also *deleted* a requirement that the canister support formation be "located directly adjacent the actuation member." Dkt. No. 109-7, at 2 (removing striken language from claim); Pl. Br. 20. Defendants' position, therefore, is that an amendment that *deleted* an adjacency limitation actually did the

10

opposite.  Common sense and controlling precedent dictate otherwise.  Pl. Br. 20.[2]

Defendants nevertheless argue that because Teva asserted that one advantage of the Common Plane Limitation was to "prevent [canister] rocking *in the direction of the actuation member*," Teva "clearly and unmistakably" required the actuation member to be located adjacent to the support formation (even though Teva had just removed such a requirement from the claim).  Def. Br. 16.  This is plainly incorrect.

First, the prosecution history does not support importing a requirement that the configuration reduce rocking via the term "actuation member."  Claims 1 and 12 of the '587 Patent (Dkt. No. 110-2, Ex. 2) expressly contain such requirements, which would be redundant if "actuation member" incorporated them.

More fundamentally, Defendants offer no support for the factual premise that a canister support formation cannot prevent rocking towards the actuation member unless it is "located directly adjacent to the actuation member."  Def. Br 16-18 Attorney argument cannot support that assertion.  Regardless, it is plainly false, because it assumes the actuation member must be located at the outer circumference of the dose counter—another structural feature the claims do not require. Repurposing a diagram from Teva's opening brief, Defendants' construction would limit the claimed inhaler to one with an actuation member located at the blue triangle

---

[2] Indeed, when the claims contained an adjacency limitation, the examiner stated it was not "an important functional difference," Ex. 24 at 2, and was met by the prior art, *id.* at 4.  Removing the limitation certainly did not increase its importance.

below; it would exclude the "pink" configuration even though the red support rail would plainly prevent rocking in the pink triangle's direction.



Defendants' throwaway appeal to the specification fares no better. Confusing the words "permits" and "requires," Defendants urge that the "specification *requires* that the canister support formation" be "directly adjacent to [the actuation member]." Def. Br. 17. As usual, each cited specification excerpt expressly relates to a preferred embodiment. '289 Patent, 6:34-49 ("According to a further aspect of the present invention"), 6:50-58 ("The canister housing *may* have"), 15:33-36, 15:50-52 (describing Figures), 11:6-10, 12:12-16 (noting Figures and associated text relate to preferred embodiment), 21:29-32; Pl. Br. 19. These statements are not limiting.

Plaintiffs' construction is true to the language of the claim. Defendants' is founded in prosecution history that says exactly the opposite of what they suggest. Their effort to conjure additional limitations from thin air must be rejected.

### C.    '289 Patent, Claim 7; '587 Patent, Claims 7, 18: "Positioned at Opposite Ends of the Inside Surface of the Main Body to Face Each Other"

The parties dispute what it means for two support rails to be "positioned at opposite ends" of the inhaler body. Teva proposes the plain meaning: "opposite

ends" means "opposite sides."    Defendants respond with a geometry problem, interpreting "opposite ends" to require the rails to be "diametrically opposed" from one another, "such that a straight line can be drawn from one support rail through the center of the longitudinal axis X to the facing support rail."  Def. Br. 38.

Yet again, Defendants' only support for their position comes from language in the specification that is explicitly directed to a preferred embodiment:

> As shown in FIGS. 7C and 7D, the inner wall **50** of the main body **10** is provided with a two-step support rail **144** . . . . As shown in FIG. 7B a ***diametrically opposed*** two-step support rail **146** is also provided and [is] ***diametrically opposed*** in the sense that a vertical plane (not shown) can pass substantially directly through the first rail **144**, the aperture **74**, a central aperture **148** of the valve stem block **40** . . . and the second two-step support rail **146**.

Dkt. No. 110-2, Ex. 1, at 15:33-42 (emphasis added); Def. Br. 38.  This passage does not define "opposite ends"—or even use those words.  Instead, it uses the distinct term "diametrically opposed" to convey the concept Defendants wrongly seek to import via "opposite ends."  Had Teva sought the claim scope Defendants urge, it would have claimed "diametrically opposed" rails, not rails on "opposite ends."

Moreover, this passage cannot define the invention, because it merely describes a preferred embodiment of the Figures.  '289 Patent, 11:6-10, 12:13-16, 21:29-32.  It is black-letter law that the patent figures and their descriptions do not limit the claim scope.  *MBO Labs.*, 474 F.3d at 1333-34; *Phillips*, 415 F.3d at 1323; *Liebel-Flarsheim*, 358 F.3d at 906.

Plaintiffs' construction comports with the plain and ordinary meaning of "opposite ends." Pl. Br. 21-23. Defendants simply wish a different term had been used. The Court should adopt Plaintiffs construction and reject Defendants' invitation to rewrite the claims.

### D. '289 Patent, Claims 5, 8; '587 Patent, Claims 5, 8, 16, 19: "Steps Formed Thereon"

Defendants assert that a "step" cannot "encompass[] a gradual incline or slanted rail." Def. Br. 41. Unlike the other eighteen terms Defendants proposed for construction, where Defendants seek to import limitations by relying on nonlimiting descriptions of embodiments, Defendants construe "step" to *exclude* a preferred embodiment from the scope of the claims. "A claim construction that excludes a preferred embodiment . . . is rarely, if ever, correct." This term is not the exception. *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed. Cir. 2008).

Defendants point to Figure 7C and its description to illustrate a "step." Remarkably, however, Defendants expurgate the specification's description of the second step of Figure 7C, fatal to their argument and emphasized below:

> It will be clear from FIG. 7C for example that the two-step rails have a . . . first portion having a substantially constant radial or inwardly-extending width, a first step **160** leading to a second portion **162** of the rail . . . ***and finally a second step 164 at which the rail merges into the main inner wall 50 main surface***.

'289 Patent, 15:62-16:3 (emphasized language omitted by Defendants). The patent

is clear: Figure 7C's rails contain two steps, (1) element **160**, circled in red by Defendants, and (2) element **164**, circled in blue by Teva.



FIG. 7C

The second "step" at the very end of the support rail is an inclined section where the rail "merges into the main inner wall." *Id.* Logic and law do not permit the claim term "step" to exclude such a step, as Defendants seek to do here.

### E. '289 Patent, Claim 3; '587 Patent, Claims 3, 13, 20-22; '512 Patent, Claims 1, 6: "Aperture"

Defendants' construction limits the meaning of aperture to "hole," despite its broader ordinary meaning. Plaintiffs' reflects the ordinary *Webster*'s meaning of "aperture": "an opening or open space: hole." Dkt. No. 110-2, Ex. 10, at 57.

Defendants admit that the patent does not "explicitly define" the term "aperture" to mean "hole." Def. Br. 41. They also do not argue that the patent redefines the term implicitly or disavows broader claim scope. Absent lexicography or disavowal, the term's plain meaning must govern. *Thorner*, 669 F.3d at 1367.

Ignoring this precedent, Defendants argue that "the specification generally, and with respect to the inner wall specifically, consistently describes the 'aperture'

as going 'through' something, e.g., a wall." Def. Br. 41 (citing '289 Patent, 6:24-33, 7:20-25, 12:47-50, 15:33-42; 16:4-13, Figs 6B, 7A-D). But Defendants can make that irrelevant claim only by omitting the specification's description of the '512 Patent's heat staking embodiment, which explains that "the pins" "extend through (*or at least into*) the apertures." '512 Patent, 16:59-60 (emphasis added). That is consistent with a meaning of "aperture" that includes "open space"—just as the word's plain and ordinary meaning does.

### F.    '156 Patent, Claim 1: "Canister Fire Sequence"

Contra Defendants' assertion, the parties agree that claim 1 requires the "first reset position," "canister fire configuration," and "count configuration" to "occur" in that particular order. Def. Br. 18-19; Pl. Br. 36-38. The parties disagree, however, over Defendants' legally proscribed effort to import into the construction of "canister fire sequence" the following additional limitations:

- "from the start configuration to the reset configuration";

- "before returning to the start configuration upon release of pressure on the canister";

- "where in the start configuration, prior to depression of the canister, the count pawl is engaged with a tooth of the ratchet wheel and the actuator pawl is spaced from the ratchet wheel."

Def. Br. 18; Pl. Br. 36-38.

Defendants do not argue the plain language of claim 1 supports adding these limitations.    Def. Br. 19.    Instead, without addressing the details of their

constructions, they argue that the specification "requires the configurations to be particularly located." *Id.* (citing '289 Patent, 5:56-58, 14:9-15:12, 17:47-61, Figs. 10A-10E). Neither the law nor the specification supports that approach.

First, Defendants again fail to point to any requisite lexicography or disavowal to permit departure from the terms' plain meanings. *Thorner*, 669 F.3d at 1365-66.

Second, Defendants' recourse to the specification relies entirely on non-limiting embodiments. For example, Defendants cite, without explanation, the '289 Patent's statement at 5:56-58 that certain "arrangements" of the "actuator" "provide extremely reliable dose counting." The preceding disclosure makes clear, however, that such "arrangements" refer to *optional* aspects of the invention. '289 Patent, 5:39-40 ("The actuator and incremental output member ***may be*** arranged to provide a start configuration . . ."). Likewise, Defendants cite the '289 Patent at 14:9-15:12, 17:47-61, and Figs. 10A-10E, which describe various examples of inhalers and dose counters. But the specification clarifies that those examples relate merely to "embodiments," not the invention itself. *See* '156 Patent, 11:6-10, 12:15-18, 21:29-32; Pl. Br. 37-38. They thus do not limit the scope of the claims. *Phillips*, 415 F.3d at 1320; *Kara Tech. Inc. v. Stamps.com, Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009).

Recognizing that the actual term in claim 1—"canister fire sequence"— cannot support their desired limitations, Defendants now request to construe "start configuration," which appears only in certain dependent claims. Def. Br. 20 & n.2.

That belated proposal is as wrong as it is improper.[3]  Dkt. Nos. 102, 102-1.  As the Federal Circuit has warned, it is error to limit an independent claim based on limitations in dependent claims.  *Phillips*, 415 F.3d at 1324-25; *Env't Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 699 (Fed. Cir. 1983) ("It is improper for courts to read into an independent claim a limitation explicitly set forth in another claim.").

Furthermore, in proposing to construe "start configuration," Defendants rely on certain examples they cite to support their construction of "canister fire sequence."  Def. Br. 20 (citing '289 Patent, 14:9-39, 17:47-61, Figs. 10A, 10B).  Those examples refer to a "start configuration" at a particular location—*i.e.*, 1.33 mm above datum plane **220**."  *Id.*  As explained above, those portions of the specification expressly refer only to certain embodiments and thus do not limit the scope of the invention.  '156 Patent, 11:6-10, 12:15-18, 21:29-32; Pl. Br. 37-38.

Claim 1 never recites a "start configuration"—let alone one that includes Defendants' additional requirements regarding that limitation—and the specification contains *multiple* descriptions of the "canister fire sequence" that nowhere refer to a "start configuration."  Pl. Br. 37-38; '156 Patent, Abstract, 4:46-65.  Instead, the specification introduces the concept of a "start configuration" only in discussing embodiments, and only then as expressly optional, thereby refuting Defendants'

---

[3] This Court's rules proscribe seeking new constructions in an opening brief.  L. Pat. R. 4.1-4.3; Dkt. No. 40, ¶¶ 10-15; *Bristol-Myers Squibb Co. v. Dr. Reddy's Labs., Ltd.*, 2021 WL 1820486, at *2-3 (D.N.J. May 6, 2021).

effort to import this term into claim 1.  *See* '156 Patent, 5:39-46 ("The actuator and incremental output member *may be* arranged to provide a start configuration").

Defendants' remaining arguments do not advance their position.  Defendants cite additional descriptions in the specification and prosecution history to argue that "canister fire sequence" imposes a temporal order on the positions—an undisputed proposition.  Def. Br. 19.  They make no attempt, however, to explain how those citations support the other, disputed aspects of their construction.

G.    **'156 Patent, Claim 1: "First Reset Position"/
'156 Patent, Claims 1-2: "Canister Fire Configuration"/
'156 Patent, Claims 1-2: "Count Configuration"**

As with "canister fire sequence," Defendants do not even try to ground their proposed constructions of the "configuration" terms in the claim language.  For good reason.  Claim 1 imposes only one requirement on the location of the "actuator pawl"—that "in the canister fire configuration, the actuator pawl is below a datum plane which passes through a shoulder of a valve stem block configured to receive the medicament canister."  Pl. Br. 36-37.  Defendants' proposals import the following limitations regarding the location of the "actuator pawl" relative to the datum plane, each of which is glaringly absent from claim 1:

- "First reset position": actuator pawl is "above the datum plane, but closer to the datum plane than in the start configuration;"

- "Canister fire configuration": actuator pawl is "lower than in the first reset position;"

- "Count configuration": actuator pawl is "further below the datum plane than when in the canister fire position."

Def. Br. 18; Pl. Br. 33, 36-38.

Once again, dependent claims 6 and 8 and their associated examples—not claim 1—recite an "actuator" located at certain distances (*e.g.*, 1.5 to 2.0 mm) relative to its location in other configurations. *See* '156 Patent, claim 6 ("**6.** A dose counter as claimed in claim **5** in which: (a) the actuator is arranged to be located about 1.5 to 2.0 mm from its location in the fire configuration when in the start configuration"), claim 8 (similar), 5:47-55 ("The actuator *may be* arranged to be located about 1.5 to 2.0 mm, from its location in the fire configuration, when in the start configuration"); Pl. Br. 34.  In importing those additional limitations into claim 1, Defendants violate precedent that requires courts to respect differences in claim language and forbids reading dependent limitations into independent claims. *Phillips*, 415 F.3d at 1324-25; *Env't Designs*, 713 F.2d at 699; Pl. Br. 36-37.

To defend their constructions, Defendants rely on examples from the same sections of the specification they cite to support their construction of "canister fire sequence."[4]  As explained, the specification expressly states that those sections pertain only to "aspects" or "embodiments" of the invention.  '156 Patent, 4:46-65

---

[4] Def. Br. 20-21 ("3. 'First Reset Position'") (citing '289 Patent, 14:40-44, 14:45-47, 17:47-61, Fig. 10C); Def. Br. 21 ("4. 'Canister Fire Configuration'") (citing 4:57-65, 14:48-53, 14:57-59, 17:47-61, Fig. 10D); Def. Br. 21-22 ("5. 'Count Configuration'") (citing 14:9-10, 14:60-61, 15:3-6, 17:47-61, Figs. 10A-B).

("According to *another aspect* of the present invention"), 11:6-10, 12:15-18, 21:29-32; Pl. Br. 37-38; *supra* Section III.F.  They also ignore the specification's *other* disclosures that do not require the "actuator pawl" to be above or below the "datum plane" at or during the "first reset position" and "count configuration."  *See* Pl. Br. 34-35; '156 Patent, Abstract, 4:46-65.  The specification therefore does not support Defendants' proposals, much less reflect the clear and unmistakable disavowal that precedent requires.  *Thorner*, 669 F.3d at 1365-66.  As the Federal Circuit has held repeatedly, even where (unlike here) every embodiment in the specification contains a particular element, that does not justify importing that element into the claims. *Liebel-Flarsheim,* 358 F.3d at 913; Pl. Br. 9-10.  Indeed, it has exhorted courts to be mindful of this principle in discussing the very cases on which Defendants rely.  *GE Lighting Sols. LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309-10 (Fed. Cir. 2014) (discussing *Inpro II Licensing, S.A.R.L. v. TMobile USA, Inc.*, 450 F.3d 1350 (Fed. Cir. 2006)).  Defendants' proposals violate this principle and should be rejected.

Defendants' cited cases confirm their flawed analysis.  In *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006), the court held that the term "fuel injection system component" was limited to "fuel injectors" because the specification referred "to the fuel filter as 'this invention' or 'the present invention.'"  Here, by contrast, the specification references the aspects of Defendants' construction (if at all) as "embodiments" that "may" be included.  Likewise, in

*Abraxis Biosci., Inc. v. Mayne Pharma (USA) Inc.*, 467 F.3d 1370, 1376-78 (Fed. Cir. 2006), the specification stated expressly that "edetate" encompassed certain "derivatives," but not structural analogs, and further explained that edetate, and not its analogs, was the "only agent" that met the inventors' "requirements."  And in *Inpro*, 450 F.3d at 1354-56, the specification and prosecution history made clear that the "host interface" referred to a direct bus, not a serial bus, because only the former could overcome the limitations of the prior art.  None of those scenarios applies here, where Defendants' only support stems from specification language that expressly describes embodiments, and is incorporated into dependent, not independent, claims. *See Phillips*, 415 F.3d at 1324-25; *Env't Designs*, 713 F.2d at 699; Pl. Br. 36-37.

## H.    '156 Patent, Claim 1: "Datum Plane Which Passes Through a Shoulder of a Valve Stem Block Configured to Receive the Medicament Canister"

Defendants argue that Teva's proposed construction of the "datum plane" limitation "does not provide any clarity as to what 'a shoulder' is or how to identify a plane that passes through it." Def. Br. 23.  That is incorrect.  The term "a shoulder of the valve stem block" means just that—a portion of the "valve stem block" that resembles a shoulder.  *See* Pl. Br. 40.  That straightforward construction is confirmed by the plain meaning of "a shoulder"; precedent requiring the term "a" to be construed to mean "one or more," rather than "one"; differences in the language of the independent claims, which contain no requirements regarding the location of the

"shoulder," and dependent claims, which do; and extrinsic evidence in the form of dictionary definitions and patents describing metered dose inhalers.  Pl. Br. 40-42. In insisting on unwarranted elaboration, Defendants mistake simplicity for unclarity.

Defendants' construction—which requires the "datum plane" to pass through "the *bottom* shoulder" of the "valve stem block"—is unsupported.  Defendants argue that because the specification once uses the term "shoulder" to refer to "the bottom shoulder," the claims must be construed to contain that requirement.  Def. Br. 24 (citing '289 Patent, 14:18-19, Fig. 9).  In doing so, Defendants ignore the claim language itself, which is part of the specification and defines the scope of the claimed inventions.  *Phillips*, 415 F.3d at 1312.  While claim 1 refers only to a "datum plane which passes through a shoulder of the valve stem block," claim 13, which depends from claim 1, expressly requires the "shoulder" to be "a bottom surface within the value stem block"—demonstrating unequivocally that the limitation that Defendants seek to import into the meaning of "shoulder" is not a necessary element of that term.

Further, even setting aside the dispositive claim language, the specification's description of an embodiment of the invention does not limit the invention.  *GE Lighting Sols.*, 750 F.3d at 1309-10; *Liebel-Flarsheim,* 358 F.3d at 913; Pl. Br. 9-10.  And here, the specification itself states that those descriptions refer only to non-limiting embodiments of the invention.  '156 Patent, 11:6-10, 12:15-18, 21:29-32. Thus, they do not support Defendants' proposal in any event.

## I.    '156 Patent, Claim 12: "The Body"

Defendants argue this term is indefinite, based entirely on the unsupported proposition that the POSA would not understand the meaning of the term "body" in claim 12.  Def. Br. 33-34.  The intrinsic record makes clear, however, that the POSA would understand "body" to refer to either the inhaler body or the dose counter body, depending on the context in which the term is used.  In ignoring that context, Defendants violate the law of indefiniteness and claim construction.

Defendants make no effort to square their invalidity assertion with precedent discouraging premature adjudication of indefiniteness in the absence of fact and expert discovery.  *Adapt Pharma Operations Ltd. v. Teva Pharm. USA, Inc.*, 2019 WL 1789463, at *4 (D.N.J. Apr. 24, 2019); Pl. Br. 46.

Defendants' premature argument also defies numerous decisions holding (1) that a claim term should be construed to have multiple meanings where context dictates, *Aventis Pharm. Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1374 (Fed. Cir. 2013); Pl. Br. 46-47, and (2) that the relevant question for indefiniteness is whether the POSA, not Defendants' lawyers, would understand the scope of the claims, *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014); *Whirlpool Corp. v. Ozcan*, 2016 WL 7474517, at *1, *3 (E.D. Tex. Dec. 29, 2016); Pl. Br. 49.

With respect to (1), Defendants simply declare claim 12 indefinite, without considering how the term "body" is used in the claims and specification.  It is per se

improper to insist on a "nonsensical reading" for the sake of achieving a uniform construction. *Aventis*, 715 F.3d at 1374; Pl. Br. 46-47. Here, claim 12 makes clear in context that the phrases (a) "An *inhaler* as claimed in claim 11 *in which the body* includes a canister-receiving portion and a separate counter chamber" and (b) "the *body of the inhaler*" refer to the body of the inhaler. Conversely, the POSA would understand the phrase (c) "*the body*, ratchet wheel and actuator being located inside the counter chamber" to refer to the dose counter body based on its location in the "counter chamber," which is defined to be a *part* of the inhaler body in the prior clause. Indeed, after introducing both bodies, the claim distinguishes explicitly between them by referring to the "body of the inhaler." If the claim referred to only one "body," the phrase "of the inhaler" would be wholly superfluous. *E.g.*, *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 951 (Fed. Cir. 2006) (rejecting construction that would "read limitations [a], [b], [e], and [h] out of the claim").

Were that not enough, the specification further confirms the POSA's understanding that claim 12 uses the term "body" to refer to both the inhaler and dose counter bodies. Pl. Br. 47-48. As Teva explained, and Defendants acknowledge, the specification routinely describes the "body" of the inhaler," *Id.*; Def. Br. 34; '156 Patent, 60:20-33, and the "body" of the dose counter, Pl. Br. 47-48; Def. Br. 34; '156 Patent, 4:46-65, 5:22-25. Defendants ignore that the latter descriptions regarding the dose counter body closely track the language of claim 12,

stating that the "dose counter" may comprise "a main body," "incremental output member" (or "ratchet wheel"), and "actuator"—the same three dose counter components recited in claim 12. '156 Patent, 4:46-65, 5:22-25.

Ignoring this significant contextual intrinsic evidence, Defendants rely entirely on attorney argument. Defendants' attorneys' professed incomprehension says nothing about how the POSA would understand the term "body" in claim 12. Without such evidence, Defendants cannot satisfy their burden of proving indefiniteness by clear-and-convincing evidence, as the law requires. *Nautilus*, 572 U.S. at 901; *Whirlpool*, 2016 WL 7474517, at *1, *3 ("Instead of submitting evidence, such as an expert declaration, [of] the [POSA's understanding], [Defendant] relies entirely on attorney argument . . . .").

Nor do Defendants' arguments regarding antecedent basis advance their position. A lack of antecedent basis in the form of an indefinite pronoun does not support a conclusion of indefiniteness where, as here, the POSA would understand the antecedent based on context. *See Energizer Holdings, Inc. v. ITC*, 435 F.3d 1366, 1370-71 (Fed. Cir. 2006); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1319 (Fed. Cir. 2005); *Intell. Ventures I, LLC v. Ricoh Am. Corp.*, 2016 WL 93847, at *1 (D. Del. Jan. 7, 2016); Pl. Br. 50. Defendants present no contrary evidence or authority, and none exists.

**J.    '156 Patent, Claims 1, 9: "Count Pawl"**

The parties agree that the "count pawl" is a component of the dose counter that engages with a "second tooth of the ratchet wheel."  The parties further agree that the "actuator pawl" is a component of the dose counter that engages with a "first tooth of the ratchet wheel."  '156 Patent, claim 1; Dkt. No. 102, at 4.  Defendants seek to import an additional limitation, which requires the "count pawl" to be physically "separate from the actuator pawl."  Indeed, Defendants suggest that the "count pawl" and "actuator pawl" do not just refer to separate physical structures but cannot "be part of the same structure"—a further limitation that not even their proposal imposes.  Def. Br. 43.  Defendants also attempt to manufacture a dispute as to whether the "actuator pawl" is "capable of engaging" or "arranged to engage" a "second tooth of the ratchet wheel."  None of Defendants' positions have merit.

1.   The claims require only that the dose counter comprise a "count pawl arranged to engage with a second tooth of the ratchet wheel," not that the "count pawl" be physically "separate" from the "actuator pawl."  Pl. Br. 29.  In other words, although the claims require the dose counter to comprise one or more components that satisfy the requirements of an "actuator pawl" and a "count pawl," that does not exclude from the claim a dose counter containing a component that satisfies the requirements of an "actuator pawl" and a "count pawl" simultaneously.  Under a long line of precedent, which Defendants ignore, "the use of two terms in a claim requires that they connote different meanings, not that they necessarily refer to two

different structures." *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006); Pl. Br. 29-30.  Defendants' position directly runs afoul of this precedent.  Def. Br. 43.  Nothing in the specification or file history, much less the claims, suggests that the "count pawl" and the "actuator pawl" must refer to different physical components.  Yet that is precisely what Defendants argue.

To justify their baseless position, Defendants argue that the "actuator pawl" and "count pawl" must be physically separate because the claims state that the "actuator pawl is a part of the actuator, and the count pawl is a part of the dose counter."  Def. Br. 43.  But that is a distinction without a difference.  Claim 1 further provides that the "dose counter" *comprises* the "actuator"; thus, both the "actuator pawl" and the "count pawl" are "parts of the dose counter" under any construction.

Defendants further argue that the specification "makes plain" that the "'count pawl' is a separate structure from the actuator pawl" and "engages teeth independently of the actuator pawl."  Def. Br. 42 (citing 11:39-41; 13:42-54; 14:5-15:14; 15:15-33; Fig. 10B).  As discussed, however, the specification expressly states that the cited examples and figures describe only non-limiting "embodiments," not the full scope of the invention.  '156 Patent, 11:6-10, 12:15-18, 21:29-32; *Phillips*, 415 F.3d at 1320; *Kara Tech.*, 582 F.3d at 1348; Pl. Br. 30.

Further, even if the invention required the "count pawl" and "actuator pawl" to "independently" engage "different teeth" (it does not), that would not compel the

conclusion that the "count pawl" and "actuator pawl" are separate structures. For example, the same structure could satisfy the requirements of both the "count pawl" and the "actuator" if it were arranged to engage both a "first tooth" and a "second tooth." Thus, Defendants' flawed premise does not support their conclusion.

Defendants also cite prosecution history in which Teva, in the context of those embodiments, referred to the "actuator pawl" and "count pawl" as "separate." Def. Br. 42 (citing Dkt. No. 109-16, at 6-8). That the applicants characterized accurately those embodiments—not the claims—is unremarkable and does not justify Defendants' broader conclusion regarding the claims' scope.

**2.** Defendants also criticize Teva's proposed construction because, in addition to permitting the "actuator pawl" and "count pawl" to refer to the same component, it permits the "'count pawl' and actuator pawl to be part of the same [overarching] structure." Br. 43. But not even Defendants' proposal prevents the "count pawl" and "actuator pawl" from being "part of the same structure." It requires only that the "count pawl" be "separate from an actuator pawl," Def. Br. 42; Dkt. No. 102, at 10; Dkt. No. 102-1, at 94, which encompasses dose counters in which the "actuator pawl" and the "dose counter pawl" are separate components of a larger structure.

Regardless, if Defendants' proposed construction imposes this additional requirement, that is a further reason to reject it. As explained above, claim 1 expressly states that the "actuator pawl" and "count pawl" are components of the

same larger structure—the "dose counter."    Thus, the additional limitation Defendants suggest cannot be correct.    Furthermore, not even Defendants' misreading of the specification and prosecution history supports the conclusion that the "count pawl" and the "actuator pawl" cannot be "part of the same structure." Even assuming that Defendants' cited examples and statements were definitional (they are not), those examples at most establish that the "count pawl" and "actuator pawl" engage separate teeth, not that they must belong to different structures.

**3.**    Though Defendants seize on the minor linguistic difference between the parties' proposals referring to the "actuator pawl" as "capable of engaging" or "arranged to engage" a "second tooth of the ratchet wheel," Def. Br. 42, it is of no consequence.  Defendants never explain why "capable of engaging" and "arranged to engage" have different meanings, much less why any difference would affect any disputed issue, without which claim construction is unwarranted.  *Id.* at 42-43; *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997); *Jazz Pharm., Inc. v. Amneal Pharm., LLC*, 2017 WL 5128748, at *11 (D.N.J. Nov. 6, 2017).

**K.    '808 Patent, Claim 1: "Counter Display Arranged to Indicate Dosage Information"**

Plaintiffs' construction requires what the claim does: that the counter display displays dosage information.  Defendants' construction goes beyond the claim language to require that the counter display *all available* dosage information (the

precise number of doses remaining).[5]  Defendants' proposal is untethered from the claim language, the specification, and binding precedent.

Defendants first assert that a counter must display the total number of doses remaining in the canister because the '808 Patent (Dkt. No. 110-2, Ex. 4) is designed to improve upon dose indicators that reported remaining doses in less precise increments.  Def. Br. 25-27.  Defendants' premise is correct, but the conclusion does not follow.  The parties agree that the claimed "dose counter" reports every dose expended, and thus every dose remaining.  But nothing in the claims requires that all of this dose "information" must be conveyed by a single counter display.  A dose counter can have two or more "counter displays"—for example, one to display the tens digit of the number of doses remaining (part of the "dosage information") and a second to display the ones digit (again, part of the "dosage information").

Alternatively, nothing in the specification prohibits two structures that relay dosage information together from constituting a single counter display.  Defendants again err by arguing that the counter display must be a single structure because it is depicted as such in a preferred embodiment.  *Id.* at 26-27.  The ordinary meaning of "counter display" does not require a single structure.  For example, a counter display could use multiple structures, *e.g.*, two ribbons, to display the total dosage

---

[5] While not express in their proposed language, Defendants assert their construction requires displaying the total number of doses remaining.  Def. Br. 25.

information.  Consistent with this plain meaning, claim 1 refers to "*the* counter display," and the use of the word "the" does not limit the meaning of counter display to a single physical structure. *01 Comm. Lab., Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1297 (Fed. Cir. 2012).  That the only illustrated embodiment shows a single structure makes no difference.  *CCS Fitness*, 288 F.3d at 1367.  "[D]epiction of a structural claim feature as unitary in an embodiment, without more, does not mandate that the structural limitation be unitary." *Cross Med. Prod.*, 424 F.3d at 1309.

In addition, Defendants are incorrect that adopting Plaintiffs' construction would invalidate the asserted claims of the '808 Patent for lack of written description or enablement.  Def. Br. 27.  First, that contention lacks support, as issues of written description and enablement are analyzed through the lens of the POSA, and Defendants offer only attorney argument here.  *Id.* 27-28; *Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 424 F.3d 1161, 1165 (Fed. Cir. 2005); *M2M Solns. LLC v. Sierra Wireless Am., Inc.*, 2016 WL 1298961, at *3-4 (D. Del. 2016).  Second, Defendants misapprehend the law.  The claims do not lack description or enabling support merely because no example of a dose counter utilizing more than one counter display is depicted in the figures or described *in haec verba*.  Instead, the relevant questions are whether the POSA would have understood that the inventors of the '808 Patent (1) were in possession of the claimed dose counter, and (2) could have made and used the dose counter without undue experimentation. *See id*.  Defendants

offer no evidence that these standards are not met.  Nor could they, because the POSA would understand that the claimed dose counter was in the inventors' possession and could be made without undue experimentation, whether the counter displayed the total dose remaining in one or multiple structure.

## L.    '808 Patent, Claim 1: "First Station"/"Second Station"

Plaintiffs' construction is true to the claim language and specification, which require only that the "first" and "second station" refer to different "region[s]" of the dose counter.  Defendants' construction requires the "first" and "second" station to be two separate structures—a construction that ignores the claim language and substitutes in its place preferred embodiments, which depict the "first" and "second" station of the claims as two separate shafts.  Defendants' proposal ignores compelling intrinsic evidence to the contrary, and contravenes black-letter law.

As Defendants acknowledge, the specification expressly states that a "first station may comprise **a region** of the dose counter."  Def. Br. 29 (quoting '289 Patent, 2:62-63); *see also* '808 Patent, 2:65-67 (same).  Defendants ignore that language, and instead accuse Plaintiffs of distortion by omitting from their construction the *next* five words of the specification: "where the tape is held."  Def. Br. 29.  Those accusations fall flat, however, because not even Defendants argue that claim 1 requires the use of tape.  For good reason—claim 2 of the '808 Patent, unasserted here, claims "[t]he dose counter as claimed in claim 1, in which the

counter display comprises a tape." That dependent tape limitation cannot be imported into claim 1. *Phillips*, 415 F.3d at 1314-15. Defendants' argument reflects a naked effort to import descriptions of certain tape-containing embodiments having "first" and "second station[s]," Def. Br. 28-29 (citing references to "bobbins," "stock bobbins," "tape stock bobbins," "shafts," and "tape reel shafts"), recited only in *dependent* claims, not claim 1. '808 Patent, claims 4-6, 10-12, 21-26.

In addition to importing "tape" based limitations improperly, Defendants cite no evidence supporting their construction. Indeed, Defendants nowhere articulate why the additional specification language ("where the tape is held") they accuse Plaintiffs of excising demonstrates their construction requiring two structures is correct and Plaintiffs' is wrong. In short, it does not. When a curtain is moved on a rod, it offends neither physics nor common sense to say the curtain was first "held" at one region of the rod, then moved and "held" at a second region. This is so even though the rod is a single, unitary structure. Likewise, a counter display can be moved from a first to second region of the dose counter.[6] Claim 1 requires no more.

Defendants' reliance on prepositions in the claims—requiring that the counter display move "*from a* first station *to a* second station," or that its movement is regulated "*at the* first station"—suffers from the same flaw. Def. Br. 28. Nothing

---

[6] Defendants assert that Plaintiffs' construction begs the question, "region of what?" Def. Br. 29. Plaintiffs' construction and the specification answer explicitly—"a region *of the dose counter*." '808 Patent, 2:65-66.

about the use of "from," "to," or "at" requires that the first and second stations be "separate structures." A blanket may be moved *from* one spot on the couch *to* another spot on the same couch, just as it may be moved *from* the couch *to* the chair. People may meet *at the* corner (a location) or *at the* coffee shop on the corner (a structure). Use of "from," "to," and "at" is consistent with Plaintiffs construction, which permits the counter display to be regulated *at* one region of the dose counter, and to move *from* one region of the dose counter *to* a second region.

Defendants identify no lexicography or disavowal to overcome this plain meaning. *Thorner*, 669 F.3d at 1365-67. Nor have Defendants justified their exclusion of the specification's embodiments. '808 Patent, 2:65-66 ("[t]he first station may comprise **a region** of the dose counter"); *Epos Techs. Ltd. v. Pegasus Techs. Ltd.*, 766 F.3d 1338, 1347 (Fed. Cir. 2004). Plaintiffs' construction is correct.

## M.    '512 Patent, Claim 1: "Different Sides"

Claim 1 of the '512 Patent (Dkt. No. 110-2, Ex. 5) requires that "either the pins or the apertures on the chassis [of the dose counter] are positioned on *different sides of the chassis*." That is what Plaintiffs' construction provides—namely, that the pins or apertures are *not* positioned on the *same side* of the chassis. Defendants, however, suggest that "different sides" refers not just to the dose counter's chassis (as the claim requires), but also the body of the inhaler (as the claim does not). In particular, Defendants argue "different sides" of the chassis means "distinct surfaces

where each pin/aperture of the chassis connects to a different face of the body." The claim language cannot support that tortured meaning, and nothing in the intrinsic record justifies a departure from the ordinary meaning of "different sides."

Consistent with their usual approach, Defendants simply ignore the claim language. Instead, their analysis proceeds directly to the prosecution history of a *related* application not at issue in this case[7] with a *similar* limitation: "wherein either the plurality of pins or the plurality of mating apertures are positioned on three different sides of the chassis." Dkt. No. 109-11, at 2. In that prosecution, Teva relied on the "different sides" limitation to distinguish prior art ("Anderson"), in which two inhaler parts were heat staked together, explaining that "Anderson's pins . . . and apertures . . . are each positioned on the same side of their respective parts." *Id.* at 4. That statement addresses two aspects of Anderson: (1) all Anderson's apertures were on the same side of one inhaler part (the one being attached, analogous to the chassis), *and* (2) all of Anderson's pins were on the same side of the second inhaler part (the one to which the first part was being attached, analogous to the inhaler body). The claim at issue there (like claim 1 of the '512 Patent) differed from Anderson based on the *first* of those two features, by requiring that the pins or apertures *on the chassis* be on different sides *of the chassis*. It said nothing about the second feature—containing no requirement as to where the corresponding

---

[7] App. No. 145/713,643 and the '512 Patent share a common ancestral application.

pins or apertures are located on the inhaler body.  The examiner acknowledged as much, allowing the patent because "Anderson's heat staking operation as all of the apertures on one side *of the object being attached*" without discussing where pins were located on Anderson's second inhaler part.  Ex. 25 (App. No. 14/713,643, Oct. 13, 2016 Notice of Allowance), at 2.  Nothing in this exchange requires that "the pin/aperture connections each occur on a different surface."  Def. Br. 35.  To the contrary, it is entirely consistent with Plaintiffs' construction, and far from a "clear and unmistakable disavowal" of inhalers with apertures on different sides of the chassis, but pins not on different sides of the body.  *Thorner*, 669 F.3d at 1365-67.

Further, the pin/aperture connections of the patent's preferred embodiment are inconsistent with Defendants' construction.  Pl. Br. 54-56.  Notwithstanding the green, red, and purple lines Defendants drew on Figure 8B, Def. Br. 35, the pins on the inhaler body all stick out from a single *face* of the body (the one facing away from the patient during use).  A construction that excludes a preferred embodiment is almost never correct, *Epos*, 766 F.3d at 1347, and this term is no exception.

### N.    '512 Patent, Claim 2: "Formed in the Body"

"Formed in the body" means "located in the body."  Defendants' construction ("an integrated part of the body") seeks to turn this locational requirement into a compositional one—*e.g.*, formed **_by_** the body.  Def. Br. 37-38.  It must be rejected.

Simply put, nothing in claim 2 of the '512 Patent requires that "the dose

counter chamber is formed ***by walls of the body***." Def. Br. 37 (emphasis added). Defendants' argument swaps the critical preposition and adds words to the claim, which requires only that the dose counter chamber is "formed ***in the body*** at a location beneath the medicament canister." That language limits the dose counter's location, not which surfaces must create it. The context of this plainly locational language does not, per Defendants' nonsensical suggestion, suggest that "formed" must refer to something *other* than location. Defendants ignore the rest of the claim, which limits *where* the chamber is formed, not *by what* the chamber is formed.

The remainder of Defendants' argument provides another textbook example of improperly limiting the claims to particular embodiments. Defendants argue that "[t]he specification and figures make plain that the dose counter chamber is formed by walls of the body," but cite only a non-existent section of their brief. Def. Br. 37 (citing Def. Br. Section II.F). To support their argument that the "'dose counter chamber' is defined by the inner walls of the main body and the inner wall separating the dose counter chamber from the canister chamber, i.e. the separator wall **76**," Defendants quote the patent's disclosure that "a separator wall 76 . . . separates the canister chamber **18** from the dose counter chamber **66**," *id.* at 32 (quoting '289 patent, 12:49-52), and reproduce Figure 7C, which shows the separator wall 76. But Defendants' omit the critical context that precedes the language they reproduce, explaining that the "Detailed Description of the Invention" section describes a single

embodiment with reference to the figures, which themselves depict a "preferred embodiment." '512 Patent, 11:6-10. This description and these figures are not limiting. *Phillips*, 415 F.3d at 1323; *Liebel-Flarsheim*, 358 F.3d at 906. The terms "inner walls of the main body," "inner wall," or "separator wall 76" are not in the claim, and Defendants' effort to write them in must be rejected. Def. Br. 37.

### O.    '156 Patent, Claim 12: "Separate Counter Chamber"/ '512 Patent, Claims 2, 3: "Dose Counter Chamber"

Contra Defendants' assertion, nothing in the claims or specification provides that a "counter chamber" must be defined or created by the walls of the inhaler body.

As an initial matter, Defendants are wrong that the construction should not include the word "chamber." *Id.* 30, 32. The parties do not dispute what a chamber *is*, only whether the chamber walls must be the same as those that make up the inhaler body. *U.S. Surgical*, 103 F.3d at 1568. Defendants argue the answer is yes, because "formed in the body" implies the dose counter chamber "must have some structural definition in the body." Def. Br. 30. But that argument is a circular one— it proceeds from the faulty premise that Defendants' interpretation of "formed in the body" is correct. It is not, as Teva explains above. *Supra* Section III.N.

Defendants reliance on claim 3 of the '512 Patent is also misplaced. That claim simply recites that the inhaler comprises "a cover that is fixed to the body to conceal the dose counter chamber." Nothing in the claim requires the cover to *create* the boundaries of the chamber. To illustrate, imagine a box (a chamber) sitting on a

shelf inside a closed cabinet. That the cabinet door (a cover) conceals the box when the door is closed does not mean that the cabinet door is one of the box's walls.

The parties agree that the specification does not define "chamber" or "dose counter chamber." Def. Br. 30. As such, there is no lexicography that could justify departure from the plain meaning. *Thorner*, 669 F.3d at 1365-67. Despite admitting the absence of lexicography, Defendants fixate on certain specification disclosures that wall surfaces of the main body of the inhaler separate the counter chamber from the canister-receiving portion of the inhaler. Def. Br. 31 (citing '289 Patent, 6:24-37, 7:20-29, 8:33-37, 12:49-50 (embodiment with a "separator wall **76** which separates the canister chamber **18** from the dose counter chamber **66**").

Contra Defendants, the specification nowhere states that the chamber is *defined by* any of the wall surfaces of the inhaler. The wall surfaces simply separate two components of the inhaler—the canister receiving portion and the dose counter chamber. Consider, for example, a shelf that divides two spaces in a cabinet. If one places a box (chamber) in the bottom space, the shelf (separator wall) separates it from the top space (the canister receiving portion), but, again, it does not form one of the walls of the box. Defendants' argument again imports limitations from embodiments that are non-limiting as a matter of law. *Supra* Section I.

## IV.   Conclusion

Teva respectfully requests that the Court adopt its proposed constructions.

Dated: September 24, 2021

WALSH PIZZI O'REILLY FALANGA LLP

*/s/Liza M. Walsh*
Liza M. Walsh
Katelyn O'Reilly
William T. Walsh, Jr.
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
(973) 757-1100

OF COUNSEL:
David I. Berl
Elise M. Baumgarten
Kathryn S. Kayali
Ben Picozzi
Ricardo Leyva
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

*Attorneys for Plaintiffs Teva Branded Pharmaceutical Products R&D, Inc. and Norton (Waterford) Ltd.*

*Attorneys for Plaintiffs Teva Branded Pharmaceutical Products R&D, Inc. and Norton (Waterford) Ltd.*