Liza M. Walsh
Katelyn O'Reilly
William T. Walsh, Jr.
Walsh Pizzi O'Reilly Falanga LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100

*Attorneys for Plaintiffs*
*Teva Branded Pharmaceutical*
*R&D Inc. and Norton (Waterford) Ltd.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| TEVA BRANDED PHARMACEUTICAL | : | Consolidated Civ. Action No. |
| | : | 20-10172 (JXN) (MAH) |
| PRODUCTS R&D, INC., and | : | |
| NORTON (WATERFORD) LTD., | : | |
| | : | |
| Plaintiffs, | : | CONFIDENTIAL – |
| | : | FILED UNDER SEAL |
| v. | : | |
| | : | |
| CIPLA LTD., AUROBINDO PHARMA | : | |
| LLC, AUROBINDO PHARMA USA, | : | |
| INC., and AUROLIFE PHARMA LLC, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## PLAINTIFFS TEVA PHARMACEUTICAL PRODUCTS R&D, INC. AND NORTON (WATERFORD) LTD.'S PROPOSED PRETRIAL FINDINGS OF FACT

# Table of Contents

I.     Introduction ......................................................................................................... 1

II.    Procedural History .............................................................................................. 1

III.   Person of Ordinary Skill in the Art ("POSA") and Priority Date ................... 2

IV.    Infringement ........................................................................................................ 3

    A.     The '289 Patent ........................................................................................ 3

        1.     Claim 1 .......................................................................................... 3

        2.     Claim 2 ........................................................................................ 29

        3.     Claim 3 ........................................................................................ 31

        4.     Claim 4 ........................................................................................ 35

        5.     Claim 5 ........................................................................................ 37

        6.     Claim 6 ........................................................................................ 41

        7.     Claim 7 ........................................................................................ 41

        8.     Claim 8 ........................................................................................ 45

    B.     The '587 Patent ...................................................................................... 49

        1.     Claims 1-8 ................................................................................... 49

        2.     Claim 11 ...................................................................................... 51

        3.     Claim 12 ...................................................................................... 52

        4.     Claim 13 ...................................................................................... 54

        5.     Claims 14-19 ............................................................................... 55

        6.     Claim 20 ...................................................................................... 55

        7.     Claim 21 ...................................................................................... 57

        8.     Claim 22 ...................................................................................... 58

C.    The '808 Patent ................................................................ 60

    1.    Claim 1 .................................................................... 60

    2.    Claim 27 .................................................................. 78

    3.    Claim 28 .................................................................. 79

D.    Ensnarement ................................................................... 80

V.    Validity ................................................................................. 81

A.    Alleged Prior Art .............................................................. 81

    1.    The '406 Publication ............................................... 81

    2.    The '552 Publication ............................................... 83

    3.    The '514 Publication ............................................... 85

    4.    The '021 Publication ............................................... 89

    5.    The '998 Patent ....................................................... 90

    6.    The '950 Publication ............................................... 91

    7.    The '008 Publication ............................................... 92

    8.    The '822 Patent ....................................................... 93

    9.    The '066 Patent ....................................................... 95

    10.   The '627 Patent ....................................................... 96

    11.   The '668 Patent ....................................................... 97

    12.   The '260 Publication ............................................... 97

    13.   The '191 Publication ............................................... 99

    14.   The '712 Publication ............................................. 100

    15.   The '139 Publication ............................................. 101

    16.   GB '489 ................................................................. 102

17.   The '558 Publication ................................................................. 103

18.   The '755 Patent ........................................................................ 103

19.   The '159 Publication ................................................................. 104

20.   The '965 Publication ................................................................. 105

21.   The '817 Publication ................................................................. 106

22.   The '044 Publication ................................................................. 107

23.   Lewis ........................................................................................ 108

24.   The '949 Publication ................................................................. 110

25.   The '518 Publication ................................................................. 111

26.   The '102 Publication ................................................................. 111

B.   Defendants' Invalidity Theories Are Incorrect. .............................. 112

1.   The '289 and '587 Patents ....................................................... 112

2.   The '808 Patent ........................................................................ 237

3.   The '156 Patent ........................................................................ 258

VI.   Objective Indicia of Nonobviousness .......................................... 273

A.   Long-Felt, Unmet Need .................................................................. 273

1.   The Prior Art Recognized Needs for the Claimed Inventions ................................................................................ 274

2.   The Prior Art Failed to Satisfy Those Needs ......................... 277

3.   The Claimed Inventions Satisfied Those Needs ..................... 281

B.   Failure of Others ............................................................................. 283

C.   Industry Acceptance ....................................................................... 292

D.   Praise ............................................................................................... 292

      E.     Copying ............................................................................. 293

VII.  Remedies ....................................................................... 294

## I.    Introduction[1]

1.    This is a consolidated action for patent infringement under Title 35, U.S. Code, brought pursuant to the Hatch-Waxman Act, by Plaintiffs Teva Branded Pharmaceutical Products R&D, Inc. and Norton (Waterford) Ltd. (collectively, "Teva") arising out of the filing by each of Defendants Cipla Ltd. ("Cipla") and Aurobindo Pharma LLC, Aurobindo Pharma USA, Inc., and Aurolife Pharma LLC (collectively, "Aurobindo") of an Abbreviated New Drug Application ("ANDA"), seeking approval to market generic versions of Teva's Qvar® 40 mcg and 80 mcg (beclomethasone dipropionate HFA 40 mcg and 80 mcg) Inhalation Aerosol products prior to the expiration of U.S. Patent Nos. 9,463,289 (the "'289 Patent"), 9,808,587 (the "'587 Patent"), and 10,561,808 (the "'808 Patent").

2.    Teva is the holder of New Drug Application ("NDA") No. 20911 for Qvar®.  Teva's Qvar® inhalers are approved by FDA for maintenance treatment of asthma as prophylactic therapy in patients 5 years of age and older.

3.    Teva is the owner and assignee of all patents-at-issue, and those patents have been listed in connection with Qvar® in FDA's Orange Book.

4.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).  This Court has authority to grant declaratory relief under 27 U.S.C. §§ 2201 and 2202.

5.    Defendants do not dispute jurisdiction and venue.

## II.    Procedural History

6.    Defendants filed ANDAs with Paragraph IV certifications to the patents listed in paragraph 1.

7.    Teva filed suits alleging that Defendants' ANDA filings with Paragraph IV certifications constitute acts of infringements.  These cases were consolidated.

---

[1] Many of these statements respond to Defendants' assertions in their pretrial submissions.  By including these statements in this Proposed Pretrial Findings of Fact, Teva does not admit that the issue has not or cannot be proven as a matter of law.

8.      Each Defendant, answered, denying infringement and alleging invalidity.  Defendants filed counterclaims seeking declarations of non-infringement and invalidity.

9.      Plaintiffs will assert at trial the following claims against Defendants (collectively, the "Asserted Claims"):

- Claims 1-8 of the '289 Patent;

- Claims 1-8 and 11-22 of the '587 Patent; and

- Claims 1, 27, and 28 of the '808 Patent.

## III.    Person of Ordinary Skill in the Art ("POSA") and Priority Date

10.     The person of ordinary skill in the art ("POSA") for the Asserted Claims would have had the skills, education, and expertise of a team of individuals working together to research, develop, and manufacture an inhalation aerosol product with a dose counter.  Such a team would have included individuals with master's degrees in mechanical engineering, design engineering, or related fields, with at least two years of post-graduate experience in developing inhalation aerosol products, or bachelor's degrees in similar fields of study, with a commensurate increase in their years of postgraduate experience.  Such a team also would have been familiar with a variety of issues relevant to researching, developing, and manufacturing inhalation aerosol products with dose counters.  The team also would have had access to an individual with a medical degree and experience in treating patients with inhalation aerosol devices.

11.     The Asserted Claims of the '289, '587, and '808 Patents are entitled to a priority or critical date of no later than May 18, 2009; alternatively November 5, 2009; alternatively, no later than December 2, 2009; alternatively, no later than March 16, 2010 (in the case of the '808 Patent only); alternatively, no later than May 18, 2010, the date on which U.S. Provisional Patent Application No. 61/345,763 was filed; alternatively, no later than November 29, 2010, the date on which U.S. Provisional Patent Application 61/417,659 was filed; and alternatively, no later than May 18, 2011, the date on which U.S. Patent Application No. 13/110,532 was filed.

## IV.    Infringement

### A.    The '289 Patent

#### 1.    Claim 1

12.    Defendants' ANDA Products satisfy every limitation of claim 1 of the '289 Patent.

13.    Claim 1 recites as follows:

1. An inhaler for metered dose inhalation, the inhaler comprising:

a main body having a canister housing,

a medicament canister, which is moveable relative to the canister housing and retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, and

a dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister,

wherein the canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall, and

wherein the canister housing has a longitudinal axis X which passes through the center of the central outlet port,

the inner wall canister support formation, the actuation member, and the central outlet port lying in a common plane coincident with the longitudinal axis X.

#### a.    "Inhaler for Metered Dose Inhalation"

14.    Defendants' ANDA Products are "inhalers for metered dose inhalation." *See, e.g.*, PTX-081 (CIPLA-BDI_0000635 (Cover Letter)

3

("Beclomethasone Dipropionate HFA Inhalation Aerosol, 40 mcg and 80 mcg")); PTX-093 (CIPLA-BDI_0155972, at -974 (Proposed Labeling) ("Inhalation Aerosol: Beclomethasone dipropionate HFA, inhalation aerosol is a pressurized, metered-dose aerosol with a dose counter intended for oral inhalation . . .")); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-035 (AURO_BECL00000121 (Cover Letter) ("Beclomethasone Dipropionate HFA, 40 mcg and 80 mcg Inhalation Aerosol")); PTX-036 (AURO_BECL00000146, at -150 (Proposed Labeling) ("Inhalation Aerosol: Beclomethasone dipropionate HFA inhalation aerosol is a pressurized, metered-dose aerosol with a dose counter intended for oral inhalation . . .")); PTX-315 (AURO_BECL00005976-77 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

### b.    "A Main Body Having a Canister Housing"

15.    Defendants' ANDA Products comprise "a main body having a canister housing." The parties have agreed that the term "canister housing" should be construed to mean "the portion of the inhaler body that is arranged to retain a medicament canister."

16.    Defendants' ANDA Products comprise medicament "canisters." *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development Report)); PTX-093 (CIPLA-BDI_0155972, at -974, 996-98 (Proposed Labeling)); PTX-094 (CIPLA-BDI_0156595, at -595, -597 (Photographs)); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-036 (AURO_BECL00000146, at -150, 174-76 (Proposed Labeling)); PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); PTX-330 (AURO_BECL00005711, at -5767 (Container Closure System)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

17.    Defendants' ANDA Products further comprise "main bodies" (i.e., what Defendants refers to as "actuators"). Defendants' main body has a portion which is arranged to retain a medicament canister.

**<u>Cipla</u>**



*See, e.g.*, PTX-094 (CIPLA-BDI_0156595, at -595, -597 (Photographs)); *see also* PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development Report)); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

## Aurobindo





*See, e.g.*, PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); *see also* PTX-036 (AURO_BECL00000146, at -150, 174-76 (Proposed Labeling)); PTX-330 (AURO_BECL00005711, at -5976 (Container Closure System)); PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample).

18.    At his deposition, Cipla's corporate representative confirmed that Cipla's ANDA Product (which is materially similar to Aurobindo's ANDA Product) satisfies this limitation.  *See, e.g.*, Rote Dep. Tr. 47:5-7.

19.    ████████████████████████████████████
████████████████████████████████████████████

20.    Both Cipla's and Aurobindo's ANDAs refer to the same drug master files ("DMFs"), and there are no material differences between the Defendants' products.  *See, e.g.*, PTX-034 (AURO_BECL00000014 (Form 356h)); PTX-330 (AURO_BECL00005711, at -5976-77 (Container Closure System)); PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-080 (CIPLA-BDI_0000004 (Form 356h)); PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development Report)); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-409 (Aurobindo ANDA

Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

> ### c.    "A Medicament Canister, Which Is Moveable Relative to the Canister Housing and Retained in a Central Outlet Port of the Canister Housing Arranged to Mate with a Canister Fire Stem of the Medicament Canister"

21.    Defendants' ANDA Products comprise "a medicament canister, which is moveable relative to the canister housing and retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister."

22.    Defendants' ANDA Products comprise a medicament canister. *See, e.g.*, PTX-093 (CIPLA-BDI_0155972, at -974, 996-98 (Proposed Labeling)); PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development Report)); PTX-094 (CIPLA-BDI_0156595, at -595, -597 (Photographs)); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-036 (AURO_BECL00000146, at -150, 174-76 (Proposed Labeling)); PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); PTX-330 (AURO_BECL00005711, at -5767 (Container Closure System)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

23.    Defendants' ANDA Products have a canister fire stem.

**<u>Cipla</u>**



*See, e.g.*, PTX-094 (CIPLA-BDI_0156595, at -597 (Photographs)); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).



PTX-094 (CIPLA-BDI_0156595, at -595 (Photographs)); *see also* PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development Report)); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

**<u>Aurobindo</u>**





*See, e.g.*, PTX-040 (AURO_BECL00001277, at -1289-90 (Pharmaceutical Development)); *see also* PTX-330 (AURO_BECL00005711, at -5813 (Container Closure System)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample).

24.     Defendants' medicament canister is retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister.

**<u>Cipla</u>**



*See, e.g.*, PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); *see also* PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); PTX-094 (CIPLA-BDI_0156595, at -595, -597 (Photographs)) PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

**Aurobindo**



*See, e.g.*, PTX-330 (AURO_BECL00005711, at -5976 (Container Closure System)); *see also* PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); PTX-330 (AURO_BECL00005711, at -5767 (Container Closure System)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample).

   25.    Defendants' medicament canister is moveable relative to the canister housing.  When a patient uses Defendants' device, the patient presses down on Defendants' medicament canister.  The canister moves downward relative to Defendants' canister housing.  When the patient releases the device, the canister moves upward relative to the canister housing.  *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); PTX-093 (CIPLA-BDI_0155972, at -974, 996-98 (Proposed Labeling)); PTX- (CIPLA-

BDI_0156595, at -595, -597 (Photographs)); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-036 (AURO_BECL00000146, at -150, 174-76 (Proposed Labeling)); PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); PTX-330 (AURO_BECL00005711, at -5767 (Container Closure System)); PTX-046 (AURO_BECL00803513-14; AURO_BECL00803466 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).



26.

27.

### d.     "A Dose Counter Having an Actuation Member Having at Least a Portion Thereof Located in the Canister Housing for Operation by Movement of the Medicament Canister"

28.     Defendants' ANDA Products comprise "a dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister."

29.     The parties have proposed different constructions for the term "actuation member."  Teva proposes that the term should be construed according to its plain and ordinary meaning, in view of the claims, specification, and prosecution history, to mean "a component of the dose counter's actuator that transmits motion from the canister to the actuator."  Defendants propose that the term should be construed to mean "pin arranged to engage with a medicament canister and effect movement causing the dose counter to record a count."  Defendants' ANDA Products infringe this claim under either proposed construction.

30.     **Teva's Proposed Construction.**  Defendants' ANDA Products literally satisfy this limitation under Teva's proposed construction.

31.     Defendants' ANDA Products comprise a dose counter, which has an "actuator" (2) (i.e., what Defendants refer to as an "indexer").  *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development Report)); PTX-306

(CIPLA-BDI_0156579 (Design Drawing)); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-330 (AURO_BECL00005711, at -5976-77 (Container Closure System)); PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

32.    Each of Defendants' actuators (2) further has one or more "actuation members" (i.e., "castellations") (arrows) at its top, at least a portion of which extend into the canister housing.

**<u>Cipla</u>**



*See, e.g.*, PTX-306 (CIPLA-BDI_0156579 (Design Drawings)); *see also* PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development Report)); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

## Aurobindo



*See, e.g.*, PTX-330 (AURO_BECL00005711, at -5977 (Container Closure System)); *see also* PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample).

33.    When a patient presses down on Defendants' medicament canister, the medicament canister presses down on the castellations of the actuator, thereby transmitting motion from the medicament canister to the actuator. *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); PTX-093 (CIPLA-BDI_0155972, at -974, 996-98 (Proposed Labeling)); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-036 (AURO_BECL00000146, at -150, 174-76 (Proposed Labeling)); PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); PTX-330 (AURO_BECL00005711, at -5767 (Container Closure System)); PTX-046

(AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

34. ███████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

35. **Defendants' Proposed Construction.**  Defendants' ANDA Products also satisfy this limitation under Defendants' proposed construction, both literally and under the doctrine of equivalents.

36. Defendants' ANDA Products comprise an actuator (what Defendants refer to as an "indexer") which has one or more actuation members ("castellations") at its top. Each of those actuation members literally qualifies as a pin arranged to engage with a medicament canister and effect movement causing the dose counter to record a count. *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development Report)); PTX-306 (CIPLA-BDI_0156579 (Design Drawing)); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-330 (AURO_BECL00005711, at -5977 (Container Closure System)); PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-141 (Merriam-Webster's Collegiate Dictionary 940 (11th ed. 2007) ("something that resembles a pin esp. in slender elongated form <an electrical connector ~>")); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

37. The '289 Patent further confirms that Defendants' ANDA Products literally satisfy this limitation under Defendants' proposed construction. In certain embodiments, the invention comprises an actuation member that transmits motion from the medicament canister to the actuator, which transmits that motion to other dose counter components. In certain examples, the actuation member may be a "pin." From those descriptions, the POSA would understand that the "pin" was a slender, elongated structure that transmits motion from the medicament canister to the actuator. *See, e.g.*, PTX-003 ('289 Patent, 5:26-34, 7:20-25, 12:13-16:37, Figs. 1, 6, 8, 10). The same is true of Defendants' actuation member. *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development Report)); PTX-306 (CIPLA-BDI_0156579 (Design Drawing)); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-330 (AURO_BECL00005711, at -5977 (Container Closure System)); PTX-046 (AURO_BECL00803513-14); PTX-

318 (AURO_BECL00803466 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

38.    Alternatively, to the extent that Defendants' ANDA Products do not literally satisfy this limitation under Defendants' proposed construction, Defendants' ANDA Products satisfy it under the doctrine of equivalents.

39.    The '289 Patent describes that, in the examples in which the actuation member is a "pin," the actuation member consists of a slender, elongated structure that transmits motion from the medicament canister to the actuator.  *See, e.g.*, PTX-003 ('289 Patent, 5:26-34, 7:20-25, 12:13-16:37, Figs. 1, 6, 8, 10).

40.    To the extent that Defendants' actuation members (i.e., the castellations on what Defendants refer to as an "indexer") do not literally qualify as "pins," they are insubstantially different from the '289 Patent's pins.  Both consist of slender, elongated structure that transmit motion from the medicament canister to the actuator.  *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development Report)); PTX-306 (CIPLA-BDI_0156579 (Design Drawing)); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-330 (AURO_BECL00005711, at -5977 (Container Closure System)); PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

41.    Additionally, both perform substantially the same function in substantially the same way to obtain the same result.  Both perform the function of transmitting motion from the medicament canister to the actuator, by way of providing a slender, elongated structure, to obtain the result of transmitting that motion to other dose counter components.  *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development Report)); PTX-306 (CIPLA-BDI_0156579 (Design Drawing)); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-036 (AURO_BECL00000146, at -150, 174-76 (Proposed Labeling)); PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); PTX-330 (AURO_BECL00005711, at -5767 (Container Closure System)); PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

42.    Examination of Defendants' ANDA Products demonstrates that it is possible for one of Defendants' castellations to transmit sufficient motion to the dose counter to cause it to count when certain inner wall canister support formations (e.g., ribs) are removed.  *See, e.g.*, PTX-174-181 (Videos).

> **e.    "Wherein the Canister Housing Has an Inner Wall, and a First Inner Wall Canister Support Formation Extending Inwardly From a Main Surface of the Inner Wall"**

43.    Defendants' ANDA Products are inhalers "wherein the canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall."

44.    The parties agreed that the term "inner wall" should be construed to mean "an internal wall of the inhaler body, which includes a main surface of the inner wall and the inner wall through which a portion of the actuation member extends, but excludes the bottom surface, or floor, of the inhaler body"; the term "inner wall canister support formation" should be construed to mean "a formation arranged to reduce canister rocking"; and the term "main surface of the inner wall" should be construed to mean "inside surface of the vertical cylindrical portion of the inhaler body, where vertical means substantially parallel to the primary direction of the movement of the medicament canister when it is pressed downward by the user to expel medicament."

45.    Defendants' canister housing has an inner wall, which faces towards the medicament canister.  Defendants' canister housing further has a series of nine inner wall canister support formations (seven of i.e., what Defendants refer to as "ribs" (solid arrows) and two of i.e., what Defendants refer to as "mounting tabs" (dashed arrow)), which extend inwardly from the main surface of the inner wall.

**<u>Cipla</u>**



**Figure 41: Actuator with Integrated Dose counter**

*See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); *see also* PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

### **Aurobindo**



*See, e.g.*, PTX-330 (AURO_BECL00005711, at -5976 (Container Closure System)); *see also* PTX-040 (AURO_BECL00001277, at -1286-87

19

(Pharmaceutical Development)); PTX-330 (AURO_BECL00005711, at -5767 (Container Closure System)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample).

46.    Defendants' inner wall canister formations are arranged to prevent the medicament canister from rocking. Defendants' canister formations are arranged around the circumference of Defendants' inner wall and prevent Defendants' medicament canister from moving significantly in any lateral direction. When the medicament canister rocks towards the actuation member, the medicament canister comes into contact with the top of the inner wall canister support formation, preventing it from rocking further. When the medicament canister rocks away from the actuation member, the medicament canister comes into contact with a lower portion of the inner wall canister support formation. *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); PTX-330 (AURO_BECL00005711, at -5767, -5976 (Container Closure System)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

47.



48.

49.

50.    The '289 Patent further confirms that Defendants' ANDA Products literally satisfy this limitation. In certain embodiments, the inner wall canister support formations restrict the extent to which the medicament canister can move laterally, by extending into the canister housing, to reduce off-axis rotation (e.g., rocking). *See, e.g.*, PTX-003 ('289 Patent, 6:34-7:19, Figs. 1-3, 7). The same is

true of Defendants' inner wall canister support formations.  Defendants' inner wall canister support formations reduce the extent to which the medicament canister can move laterally, by extending into the canister housing, to reduce rocking.  *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-040 (AURO_BECL00001277, at -1286-87); PTX-345 (AURO_BECL00001383, at -2043-65 (Pharmaceutical Development)); PTX-330 (AURO_BECL00005711, at -5767, -5976 (Container Closure System)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample); PTX-174-181 (Videos).

51.    To the extent that Defendants' ANDA Products do not satisfy this limitation literally, they do so under the doctrine of equivalents.

52.    The '289 Patent describes that, in certain embodiments, the inner wall canister support formations restrict the extent to which the medicament canister can move laterally, by extending into the canister housing, to reduce rocking.  *See, e.g.*, PTX-003 ('289 Patent, 6:34-7:19, Figs. 1-3, 7).

53.    To the extent that Defendants' "ribs" and "mounting tabs" do not literally qualify as inner wall canister support formations, they are insubstantially different from them.  Both consist of structures that restrict the extent to which the medicament canister can move laterally, by extending into the canister housing, to reduce rocking.  *See, e.g.*, PTX-330 (AURO_BECL00005711, at -5976 (Container Closure System)); PTX-040 (AURO_BECL00001277, at -1286-87); PTX-345 (AURO_BECL00001383, at -2043-65 (Pharmaceutical Development)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample).

54.    Alternatively, both perform substantially the same function in substantially the same way to obtain the same result.  Both perform the function of restricting the extent to which the canister can move laterally, by extending into the canister housing, to reduce rocking.  *See, e.g.*, PTX-330 (AURO_BECL00005711, at -5976 (Container Closure System)); PTX-040 (AURO_BECL00001277, at -1286-87); PTX-345 (AURO_BECL00001383, at -2043-65 (Pharmaceutical Development)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample).

**f.    "Wherein the Canister Housing Has a Longitudinal Axis X Which Passes Through the Center of the Central Outlet Port"**

55.    Defendants' canister housing "has a longitudinal axis X which passes through the center of the central outlet port."  Defendants' ANDA Products have a central outlet port.  *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); PTX-094 (CIPLA-BDI_0156595, at -595, -597 (Photographs)); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-040 (AURO_BECL0001277, at -1286-87 (Pharmaceutical Development)); PTX-330 (AURO_BECL0005711, at -5767, -5976 (Container Closure System)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

56.    The '289 Patent explains that the longitudinal axis of the canister housing is the axis of the inhaler that passes longitudinally (i.e., vertically) through the central outlet port.  PTX-003 ('289 Patent, 6:50-58).



FIG. 7D                FIG. 7C

*See, e.g.*, PTX-003 ('289 Patent, Figs. 7C, 7D).  The longitudinal axis X appears as a line, when the inhaler is viewed from front-to-back (as in Figure 7C) and a point, when the inhaler is viewed from top-to-bottom (as in Figure 7D).

57.    Defendants' ANDA Products have a longitudinal axis X.

**Cipla**



*See, e.g.*, PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); *see also* PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

**Aurobindo**



*See, e.g.*, PTX-330 (AURO_BECL00005711, at -5976 (Container Closure System)); *see also* PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); PTX-330 (AURO_BECL00005711, at -5767 (Container Closure System)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample.

58. ███████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████

> g.    **"The Inner Wall Canister Support Formation, the Actuation Member, and the Central Outlet Port Lying in a Common Plane Coincident With the Longitudinal Axis X"**

59.    Defendants' ANDA Products satisfy the limitation that requires: "the inner wall canister support formation, the actuation member, and the central outlet port lying in a common plane coincident with the longitudinal axis X."

60.    The parties have proposed different constructions for the term "[lying or lie] in a common plane coincident with the longitudinal axis X."  Teva proposes that the term should be construed according to its plain and ordinary meaning, in view of the claims, specification, and prosecution history, to require that the claimed "[f]eatures lie on a common plane coincident with the longitudinal axis X if it is possible to draw a straight line connecting those features that passes through the center of the valve stem block."  Defendants propose that the term should be construed to require that those features are "aligned in a single plane such that a straight line can be drawn though the center of the central outlet port, a canister support formation located directly adjacent to the actuation member, and the actuation member."  Defendants' ANDA Products infringe this claim under either proposed construction.

61.    Defendants' ANDA Products contain an "inner wall canister support formation" (the "ribs" and "mounting tabs"), "actuation member" (the castellations on the "indexer"), a "central outlet port," and "a longitudinal axis X which passes through the center of the central outlet port."

62.    **Teva's Proposed Construction.**  Defendants' ANDA Products literally satisfy this limitation under Teva's proposed construction.

63.    Defendants samples and design drawings show that Defendants infringe this limitation. *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); PTX-306 (CIPLA-BDI_0156579); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-330 (AURO_BECL00005711, at -5976-77 (Container Closure System)); PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

**Cipla's ANDA Product, 40 mcg**



**Cipla's ANDA Product, 80 mcg**



Aurobindo's ANDA Product, 40 mcg



Aurobindo's ANDA Product, 80 mcg



64.   The prosecution history of the '289 Patent does not establish non-infringement.  *See* PTX-007 (Office Action Response (Mar. 7, 2016)); DX-156 (Davies).

65.   **Defendants' Proposed Construction.**  Defendants' ANDA Products also satisfy this limitation under Defendants' proposed construction, at a minimum, under the doctrine of equivalents.

66.   Defendants' proposed construction requires the "canister support formation located directly adjacent to the actuation member."  To the extent that Defendants' ANDA Products do not literally satisfy this requirement, it satisfies it under the doctrine of equivalents.

67.    The '289 Patent describes that, in certain embodiments: "The canister housing may have a longitudinal axis which passes through a central outlet port thereof, the central outlet port being arranged to mate with an outer canister fire stem of a medicament canister, the inner wall canister support formation, the actuation member and the outlet port lying in a common plane coincident with the longitudinal axis.  Accordingly, this construction may prevent the canister from rocking towards the position of the dose counter actuation member, thereby minimising errors in counting."  *See, e.g.*, PTX-003 ('289 Patent, 6:34-58).  Thus, the POSA would understand that the claimed arrangement restricts the extent to which the medicament canister can move towards the actuation member, by placing an inner wall canister support formation on a common plane with the actuation member, to reduce rocking in the direction of the actuation member.  *See, e.g.*, PTX-003 ('289 Patent, 6:34-7:19, Figs. 1-3, 7).

68.    Because the '289 Patent describes the claimed arrangement with respect to reducing rocking in the direction of the actuation member, the POSA would understand that it was not an essential aspect of the inventions whether the actuation member were located directly adjacent to the inner wall canister support formation instead of another position that would prevent rocking in that direction (for example, on a common plane coincident with the inner wall canister support formation).  *See, e.g.*, PTX-003 ('289 Patent, 6:34-7:19, Figs. 1-3, 7).  Thus, to the extent that, in certain embodiments, the actuation member is located directly adjacent to the inner wall canister support formation, the POSA would understand this to be an inessential aspect of the inventions as a whole.  *See, e.g.*, PTX-003 ('289 Patent, 6:34-7:19, Figs. 1-3, 7).

69.    Any differences between the claimed arrangement and Defendants' ANDA Products are insubstantial.  Both comprise an arrangement of structures (in the case of Defendants' ANDA Products, what Defendants refer to as "ribs" or "mounting tabs"), that restrict the extent to which the medicament canister can rock towards the actuation member (in the case of Defendants' ANDA Products, the castellations on what Defendants refers to as an "indexer") by placing one or more of those structures on a plane that passes through the actuation member and the central outlet port.  To the extent that Defendants' ANDA Products do not comprise an inner wall canister support formation that is located directly adjacent to an actuation member, the POSA would understand this to be inessential.  *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); PTX-306 (CIPLA-BDI_0156579); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-040 (AURO_BECL00001277, at -1286-87); PTX-345 (AURO_BECL00001383, at -2043-65 (Pharmaceutical Development)); PTX-330

(AURO_BECL00005711, at -5767, -5976 (Container Closure System)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

70.     Alternatively, Defendants' ANDA Products and the claimed arrangement function perform substantially the same function in substantially the same way to obtain the same result.  Both perform the function of restricting the extent to which the medicament canister can move towards the actuation member, by way of restricting the amount of space that the canister can move in that direction, to obtain the result of reducing rocking in that direction.  This is true even if Aurobindo's inner wall canister support formation is not directly adjacent to the actuation member. *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); PTX-306 (CIPLA-BDI_0156579); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-040 (AURO_BECL00001277, at -1286-87); PTX-345 (AURO_BECL00001383, at -2043-65 (Pharmaceutical Development)); PTX-330 (AURO_BECL00005711, at -5767, -5976 (Container Closure System)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

71.     Examination of Defendants' ANDA Products demonstrates that it is possible for one of Defendants' castellations to transmit sufficient motion to the dose counter to cause it to count when certain inner wall canister support formations (e.g., ribs) are removed.  *See, e.g.*, PTX-174-181 (Videos).  Dr. Anderson's contrary analysis incorrectly assumes that the medicament canister can only be rocked from its starting position (i.e., before the canister is depressed). Patients commonly press down unevenly on their dose counters, making rocking of the canister to preferentially engage a single castellation a realistic possibility.

## 2.    Claim 2

72.     Claim 2 of the '289 Patent recites: "The inhaler as claimed in claim 1 wherein the medicament canister is movable relative to the dose counter." Defendants' ANDA Products satisfy every limitation in this claim.

73.     Defendants' ANDA Products satisfy the limitations of claim 1. Moreover, Defendants' ANDA Products satisfy the limitation requiring "wherein the medicament canister is movable relative to the dose counter."

74.    When Defendants' ANDA Products are assembled, there is a gap between Defendants' medicament canister and their dose counter. Thus, when the patient presses down on the medicament canister, it moves through the gap before coming into contact with the dose counter (and, by extension, any of the dose counter's components), thus, moving relative to the dose counter.  *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); PTX-306 (CIPLA-BDI_0156579); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-330 (AURO_BECL00005711, at -5976-77 (Container Closure System)); PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

75.    Experimental evidence confirms that Defendants' medicament canister moves through a gap before it comes into contact with Defendants' dose counter, after which the resistance increases significantly.  PTX-031 (Cipla); PTX-027 (Aurobindo).

76.    ████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████

77.    To the extent that Defendants' medicament canister are not literally moveably relative to their dose counters, Defendants' ANDA Product satisfies this limitation under the doctrine of equivalents.

78.    The relationships between Defendants' medicament canisters and dose counters is insubstantially different from the claimed relationship.  In both cases, the medicament canister and dose counter are not attached, but are instead separate components.  This results in a number of advantages, including, for example, the ergonomic benefits of that design.  *See, e.g.*, PTX-330 (AURO_BECL00005711, at -5977 (Container Closure System)); PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample).

79.    Alternatively, the relationships between Defendants' medicament canisters and dose counters and the claimed relationship perform substantially the same function in substantially the same way to obtain the same result.  Both perform the function of defining a physical relationship between the medicament

canister and dose counter, by way of making the medicament canister moveable to at least some dose counter components during at least some stages of operation, to obtain the result of structuring the medicament canister and dose counter as separate components.  *See, e.g.*, PTX-330 (AURO_BECL00005711, at -5977 (Container Closure System)); PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)).

### 3.    Claim 3

80.    Claim 3 of the '289 patent recites: "The inhaler as claimed in claim 1 further comprising an aperture formed in the inner wall through which the portion of the actuation member extends."  Defendants' ANDA Products satisfy every limitation of this claim.

81.    The parties have agreed that the term "inner wall through which a portion of the actuation member extends" should be construed to mean "an internal wall of the inhaler body that is horizontal, through which a portion of the actuation member extends, where horizontal means substantially perpendicular to the primary direction of the movement of the medicament canister when it is pressed downward by the user to expel medicament."

82.    The parties have proposed different constructions for the term "aperture."  Teva proposes that the term should be construed according to its plain and ordinary meaning, in view of the claims, specification, and prosecution history, to mean "an opening or open space: hole."  Defendants propose that the term should be construed to mean "hole."  Defendants' ANDA Products infringe this claim under either proposed construction.

83.    Defendants' ANDA Products satisfy the limitations of claim 1. Defendants' ANDA Products further satisfy the limitation requiring "an aperture formed in the inner wall through which the portion of the actuation member extends."  Defendants' dose counter comprises one or more actuation members ("castellations").

84.    When Defendants' ANDA Products are assembled, those actuation members extend through an opening, open space, or hole in a component (which Defendants refer to as a "lid"), which, together with the inner wall of the canister housing, covers the components of Defendants' dose counter and separates them from portion of the canister housing that contains the medicament canister.  *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); PTX-306 (CIPLA-BDI_0156579; CIPLA-BDI_0803837-38 (Design Drawings));

PTX-330 (AURO_BECL00005711, at -5977 (Container Closure System)); PTX-046 (AURO_BECL00803513-14; AURO_BECL00803466 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

85.    The portion of Defendants' lid through which Defendants' one or more actuation members extend can be accurately characterized as an "opening," "open space," or "hole."

86.    The relevant components of each of Defendants' products are illustrated below: the castellations (solid arrows) on (what Cipla refers to as) the "indexer" (2) and the aperture (dashed arrows) in (what Cipla refers to as) the "lid" (1).

## Cipla's ANDA Product



*See, e.g.*, PTX-306 (CIPLA-BDI_0156579 (Design Drawings)); *see also* PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development Report)); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

**Aurobindo's ANDA Product**



*See, e.g.*, PTX-330 (AURO_BECL00005711, at -5977 (Container Closure System)); *see also* PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample).

87. 

88.    Additionally, to the extent that Defendants' ANDA Products do not satisfy this limitation literally, they do so under the doctrine of equivalents.

89.    The '289 Patent describes that, in certain embodiments, the invention comprises an actuator that extends through a "communication aperture to transmit motion to the actuator." *See, e.g.*, PTX-003 ('289 Patent, 6:20-34 Fig. 7B, 7C). As that description suggests, the aperture permits the actuation member to transmit motion from the medicament canister to the actuator by creating an opening, open space, or hole in the inner wall through which the actuation member can extend. This permits the medicament canister to press down against the actuation member, while separating the other dose counter components from the portion of the canister housing that contains the medicament canister. *See, e.g.*, PTX-003 ('289 Patent, 6:20-34 Fig. 7B, 7C).

90.    To the extent that Defendants' ANDA Products do not literally satisfy this limitation, the differences between the opening, open space, or hole in Defendants' lid are insubstantially different from the claimed "aperture." Both consist of openings that permit the actuation member to transmit motion from the medicament canister to the actuator, by creating an opening, open space, or hole through which the actuation member can extend, which permits the medicament canister to press down against the actuation member, while separating the other dose counter components from the portion of the canister housing that contains the medicament canister. *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); PTX-306 (CIPLA-BDI_0156579; CIPLA-BDI_0803837-38 (Design Drawings)); PTX-330 (AURO_BECL00005711, at -5977 (Container Closure System)); PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

91.    Alternatively, the opening, open space, or hole in Defendants' lid and the claimed "aperture" perform substantially the same function in substantially the same way to obtain the same result. Both perform the function of allowing the actuation member to transmit motion from the medicament canister to the actuator, by way of creating an opening, open space, or hole in the inner wall through which the actuation member can extend, to obtain the result of allowing the dose counter to actuate. *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); PTX-306 (CIPLA-BDI_0156579; CIPLA-BDI_0803837-38 (Design Drawings)); PTX-330 (AURO_BECL00005711, at -5977 (Container Closure System)); PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

### 4.    Claim 4

92.    Claim 4 of the '289 patent recites: "The inhaler as claimed in claim 1, wherein the first inner wall canister support formation comprises a support rail which extends longitudinally along an inside surface of the main body." Defendants' ANDA Products satisfy every limitation of this claim.

93.    Defendants' ANDA Products satisfy the limitations of claim 1. Defendants' canister housing has a series of inner wall canister support formations (which Defendants variously refers to as "ribs" or "mounting tabs"), which extend inwardly from the main surface of the inner wall.



**Figure 41: Actuator with Integrated Dose counter**

*See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); *see also* PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).



*See, e.g.*, PTX-330 (AURO_BECL00005711, at -5976 (Container Closure System)); *see also* PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); PTX-330 (AURO_BECL00005711, at -5767 (Container Closure System)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample).

94.    Defendants' canister housing further has a first inner wall canister support formation that comprises a support rail which extends longitudinally along an inside surface of the main body.  Each of the inner wall canister support formations comprises a support rail which extends longitudinally along an inside surface of the main body.  *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-330 (AURO_BECL00005711, at -5767, -5976 (Container Closure System)); PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

95.    

96.    To the extent that Defendants' ANDA Products do not satisfy this limitation literally, they do so under the doctrine of equivalents.

97.    The '289 Patent describes that, in certain embodiments, the inner wall canister support formations restrict the extent to which the medicament canister can move laterally in the canister housing, by reducing the amount of space that the canister can move, which reduces off-axis rotation (e.g., rocking).  *See, e.g.*, PTX-003 ('289 Patent, 6:34-7:19, Figs. 1-3, 7).  The '289 Patent further states that, in certain embodiments, the inner wall canister support formations "may have an arrangement in which each said inner wall support formation comprises a rail

extending longitudinally along the inner wall." *Id.*  The POSA would understand that in these embodiments, the inner wall canister support formations further restrict the extent to which the medicament canister can move laterally, by reducing the amount of space that the canister can move along a length of the inner wall, to further reduce rocking.

98.    To the extent that the shapes of Defendants' "ribs" and "mounting tabs" do not literally qualify as support rails, they are insubstantially different from the claimed ones.  Both comprise structures that extend longitudinally along the inside surface of the inner wall of the canister housing, that further restrict the extent to which the medicament canister can move laterally, by reducing the amount of space that the canister can move along a length of the inner wall, to further reduce rocking.  *See, e.g.*, PTX-330 (AURO_BECL00005711, at -5976 (Container Closure System)); PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample).

99.    Alternatively, the shapes of Defendants' "ribs" and "mounting tabs" and the claimed support rails perform substantially the same function in substantially the same way to obtain the same result.  Both perform the function of further restricting the extent to which the medicament canister can move laterally in the canister housing, by way of reducing the amount of space that the canister can move along a length of the inner wall, to obtain the result of further reducing rocking.  *See, e.g.*, PTX-330 (AURO_BECL00005711, at -5976 (Container Closure System)); PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample).

### 5.    Claim 5

100.    Claim 5 of the '289 Patent recites: "The inhaler as claimed in claim 4, wherein the support rail includes a step formed thereon."  Defendants' ANDA Products satisfy every limitation of this claim.

101.    The parties have proposed different constructions for the term "step[(s)] formed thereon."  Teva proposes that the term should be construed according to its plain and ordinary meaning in view of the claims, specification, and prosecution history, to mean "a location of changing width dimension thereon."  Defendants have proposed that the term should be construed to mean: "A stepwise increase in the extent to which the support rail extends inwardly."

Defendants' ANDA Products infringe this claim under either proposed construction.

102.   Defendants' ANDA Products satisfy the limitations of claim 4. Defendants' canister housing has a series of inner wall canister support formations (which Defendants variously refer to as "ribs" or "mounting tabs"), which comprise support rails which extends longitudinally along an inside surface of the main body.



**Figure 41: Actuator with Integrated Dose counter**

*See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); *see also* PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).



*See, e.g.*, PTX-330 (AURO_BECL00005711, at -5976 (Container Closure System)); *see also* PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); PTX-330 (AURO_BECL00005711, at -5767 (Container Closure System)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample).

103.   Defendants' ANDA Products further comprise a support rail that includes a step formed thereon.  Defendants' mounting tabs and ribs vary in width (i.e., the extent to which they extend horizontally into the canister housing) at certain points along their length. *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-330 (AURO_BECL00005711, at -5767, -5976 (Container Closure System)); PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).  This variation in the width can be accurately characterized as either "a location of changing width dimension" or a "stepwise increase in the extent to which the support rail extends inwardly."

104.   ███████████████████████████████████████████████████

105.   To the extent that Defendants' ANDA Products do not satisfy this limitation literally, they do so under the doctrine of equivalents.

106.   The '289 Patent describes that, in certain embodiments, the inner wall canister support formations may be stepped.  The '289 Patent states that this shape "may therefore enable easy insertion of a canister into the canister housing such that a canister can be lined up gradually in step wise function as it is inserted into the canister housing."  *See, e.g.*, PTX-003 ('289 Patent, 6:34-7:19, Figs. 1-3, 7).  Thus, the POSA would understand that, in these embodiments, the shape of the inner wall canister support formations facilitates easy insertion of the medicament canister into the canister housing, by providing broader and narrower sections, to facilitate step-wise insertion of the medicament canister into the canister housing, without interfering with other components of the device.  *See, e.g.*, PTX-003 ('289 Patent, 6:34-7:19, Figs. 1-3, 7).

107.   The shapes of Defendants' support rails are to the same effect. Defendants' support rails (i.e., which Defendants refer to as "ribs" or "mounting tabs") have broader and narrower sections.



*See, e.g.*, PTX-330 (AURO_BECL00005711, at -5976 (Container Closure System)); *see also* PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); PTX-330 (AURO_BECL00005711, at -5767 (Container Closure System)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample).  These broader and narrower sections, in turn, facilitate easy, step-wise insertion of the medicament canister into the canister housing.  During the first stage of insertion, the narrower sections of the support rails provide for greater tolerances with respect to the angle at which the canister is inserted.  When the medicament canister reaches the first step, the shape of the support rails guides the medicament canister towards the center of the canister housing, facilitating insertion in subsequent stages.  *See, e.g.*, PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); PTX-330 (AURO_BECL00005711, at -5767, -5976 (Container Closure System)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample).

108.   To the extent that the shapes of Aurobindo's support rails (i.e., what Aurobindo refers to as "ribs" or "mounting tabs") do not literally qualify as "steps," they are insubstantially different.  Both comprise structures that facilitate easy insertion of the medicament canister into the canister housing, by providing broader and narrower sections, to facilitate step-wise insertion of the medicament canister into the canister housing without interfering with other components.  *See, e.g.*, PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); PTX-330 (AURO_BECL00005711, at -5767, -5976 (Container Closure System)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample).

109.    Alternatively, the shapes of Defendants' support rails (i.e., which Defendants refers to as "ribs" or "mounting tabs") and the claimed "steps," perform substantially the same function in substantially the same way to obtain the same result. Both perform the function of facilitating easy insertion of the medicament canister into the canister housing, by way of providing broader and narrower sections, to obtain the result of facilitating step-wise insertion of the medicament canister into the canister housing without interfering with other components. *See, e.g.*, PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); PTX-330 (AURO_BECL00005711, at -5767, -5976 (Container Closure System)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample).

### 6.    Claim 6

110.    Claim 6 of the '289 Patent recites: "The inhaler as claimed in claim 4 further comprising a plurality of support rails each of which extends longitudinally along an inside surface of the main body." Defendants' ANDA Products satisfy every limitation of this claim.

111.    Defendants' ANDA Products satisfy the limitations of claim 4. Defendants' canister housings have a series of inner wall canister support formations (which Defendants variously refer to as "ribs" or "mounting tabs"), which comprise support rails which extend longitudinally along an inside surface of the main body.

### 7.    Claim 7

112.    Claim 7 of the '289 Patent reads as follows: "The inhaler as claimed in claim 6, wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other." Defendants' ANDA Products satisfy every limitation of this claim.

113.    The parties have proposed different constructions for the term "positioned at opposite ends of the inside surface of the main body to face each other." Teva proposes that the term should be construed according to its plain and ordinary meaning in view of the claims, specification, and prosecution history, to mean "located on opposite sides from one another on the inside surface of the main body, and extending outwardly from the inner wall towards each other." Defendants have proposed that the term should be construed to mean "positioned directly across from one another such that a straight line can be drawn from one support rail through the center of the longitudinal axis X to the facing support rail."

41

Defendants' ANDA Products infringe this claim under either proposed construction.

114.   Defendants' ANDA Products satisfy the limitations of claim 6.  As explained in connection with claims 1 and 6, Defendants' ANDA Products comprise a plurality of support rails which extend longitudinally along an inside surface of the main body.



**Figure 41: Actuator with Integrated Dose counter**

*See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); *see also* PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).



*See, e.g.*, PTX-330 (AURO_BECL00005711, at -5976 (Container Closure System)); *see also* PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); PTX-330 (AURO_BECL00005711, at -5767 (Container Closure System)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample).

115.    Several of Defendants' support rails are positioned at opposite ends of the inside surface of the main body to face each other.







*See also* PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

**Aurobindo's ANDA Product, 40 mcg**



**Aurobindo's ANDA Product, 80 mcg**



*See also* PTX-330 (AURO_BECL00005711, at -5977 (Container Closure System)); PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample);.

116.   The support rails in Defendants' ANDA Products can be accurately characterized as "positioned at opposite ends of the inside surface of the main body to face each other" or "located on opposite sides from one another on the inside surface of the man body, and extending outwardly from the inner wall towards each other." Which proposed construction is used does not affect this conclusion.

117.   Additionally, to the extent that Defendants' ANDA Products do not satisfy this limitation literally, they do so under the doctrine of equivalents.

118.   The '289 Patent states that in certain embodiments, two support rails may be "diametrically opposed" to each other. In these embodiments, the positioning of the support rails provides a "maximum clearance" between the medicament canister (20) and the support rails, which is determined based on the position of actuator and the support rails. The "clearance in this plane means that the canister 20 can only rock backwards and forwards in this plane towards away

from the actuation pin 34. A relatively small distance and this therefore prevents the canister wobbling and changing the height of the actuation pin 34 a as to undesirably alter the accuracy of the dose counter 36. This is therefore highly advantageous." PTX-003 ('289 Patent, 15:33-16:3; Figs. 7A-7D). Thus, the POSA would understand that the positioning of the support rails restricts the extent to which the medicament canister can move laterally in the canister housing along a specific plane, by reducing the amount of space that the canister can move on that plane, which reduces off-axis rotation (e.g., rocking) on that plane.

119.    Even if this claim requires the support rails to be something like "diametrically opposed" and Defendants' support rails do not satisfy that requirement, the positioning of Defendants' support rails is insubstantially different from the claimed positioning. In both cases, the canister housing comprises support rails that are arranged opposite each other such that it is possible to construct a plane that passes through each of them and the central outlet port. In each case, this results in restricting Defendants' medicament canister from moving on that particular plane. *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-330 (AURO_BECL00005711, at -5977 (Container Closure System)); PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-345 (AURO_BECL00001383, at -2043-65 (Pharmaceutical Development)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

120.    Alternatively, the positioning of Defendants' support rails and the claimed positioning performs substantially the same function in substantially the same way to obtain the same result. Both perform the function of restricting the extent to which the medicament canister can move towards the actuation member in the canister housing along a specific plane, by way of reducing the amount of space that the canister can move on that plane, to obtain result of reducing rocking on that plane. *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-330 (AURO_BECL00005711, at -5977 (Container Closure System)); PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-345 (AURO_BECL00001383, at -2043-65 (Pharmaceutical Development)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

### 8.    Claim 8

45

121.   Claim 8 of the '289 Patent recites: "The inhaler as claimed in claim 4, wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body." Defendants' ANDA Products satisfy every limitation of this claim.

122.   Defendants' ANDA Products satisfy the limitations of claim 4. Defendants' ANDA Products have a series of inner wall canister support formations (which Defendants variously refer to as "ribs" or "mounting tabs"), which comprise support rails which extend longitudinally along an inside surface of the main body.



**Figure 41: Actuator with Integrated Dose counter**

*See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); PTX-373-74 (CIPLA-BDI_0803837, at -37-38 (Design Drawings)); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).



*See, e.g.*, PTX-330 (AURO_BECL00005711, at -5976 (Container Closure System)); PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); PTX-330 (AURO_BECL00005711, at -5767 (Container Closure System)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample).

123.   Defendants' support rails further include two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.  Defendants' ANDA Products comprise at least one support rail that includes two steps, which are spaced apart longitudinally alongside the inside surface of the main body.  *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); PTX-373-74 (CIPLA-BDI_0803837, at -37-38 (Design Drawings)); PTX-330 (AURO_BECL00005711, at -5976 (Container Closure System)); PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); PTX-330 (AURO_BECL00005711, at -5767 (Container Closure System)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

124.   ████████████████████████████████████████

125.   To the extent that Defendants' ANDA Products do not satisfy this limitation literally, they do so under the doctrine of equivalents.

126.   The '289 Patent describes that, in certain embodiments, the inner wall canister support formations may be stepped.  In these embodiments, the shape of the inner wall canister support formations in these embodiments facilitates easy insertion of the medicament canister into the canister housing, by altering the shape of the inner wall support formations at certain points along their length, to facilitate stepwise insertion of the medicament canister into the canister housing.  *See, e.g.*, PTX-003 ('289 Patent, 6:34-7:19, Figs. 1-3, 7).

127.   Defendants' support rails (i.e., what Defendants refer to as "ribs" or "mounting tabs") have broader and narrower sections, which facilitate easy, step-wise insertion of the medicament canister into the canister housing.  During the first stage of insertion, the narrower sections of the support rails provide for greater tolerances with respect to the angle at which the canister is inserted.  When the medicament canister reaches the first step, the shape of the support rails guides the medicament canister towards the center of the canister housing, facilitating insertion in subsequent stages.  Several of the support rails further comprise a second step at the bottom to avoid interfering with the orifice through which the medicament fires.  *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); PTX-373-74 (CIPLA-BDI_0803837, at -37-38 (Design Drawings)); PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); PTX-330 (AURO_BECL00005711, at -5767, -5976 (Container Closure System)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

128.   To the extent that the shapes of Defendants' support rails (i.e., what Defendants refer to as "ribs" or "mounting tabs") do not literally qualify as "steps," they are insubstantially different.  Both comprise structures that facilitate easy insertion of the medicament canister into the canister housing, by providing broader and narrower sections, to facilitate step-wise insertion of the medicament canister into the canister housing without interfering with other components.  *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); PTX-373-74 (CIPLA-BDI_0803837, at -37-38 (Design Drawings)); PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); PTX-330 (AURO_BECL00005711, at -5767, -5976 (Container Closure System)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

129.   Alternatively, the shapes of Defendants' support rails (i.e., what Defendants refer to as "ribs" or "mounting tabs") and the claimed "steps," perform

substantially the same function in substantially the same way to obtain the same result.  Both perform the function of facilitating easy insertion of the medicament canister into the canister housing, by way of providing broader and narrower sections, to obtain the result of facilitating step-wise insertion of the medicament canister housing without interfering with other components.  *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); PTX-373-74 (CIPLA-BDI_0803837, at -37-38 (Design Drawings)); PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); PTX-330 (AURO_BECL00005711, at -5767, -5976 (Container Closure System)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

### B.    The '587 Patent

#### 1.    Claims 1-8

130.   Claim 1 of the '587 Patent and claim 1 of the '289 Patent are identical, except for the following __underlined__ language:

| __'289 Patent, Claim 1__ | __'587 Patent, Claim 1__ |
|---|---|
| 1. An inhaler for metered dose inhalation, the inhaler comprising: a main body having a canister housing, a medicament canister, which is moveable relative to the canister housing and retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, and a dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister, wherein the canister housing has an inner wall, and a first inner wall canister support formation extending | 1.  An inhaler for metered dose inhalation, the inhaler comprising: a main body having a canister housing, a medicament canister, which is moveable relative to the canister housing and retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, and a dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister, wherein the canister housing has an inner wall, and a first inner wall canister support formation |

| | |
|---|---|
| inwardly from a main surface of the inner wall, and<br>wherein the canister housing has a longitudinal axis X which passes through the center of the central outlet port,<br>**the inner wall canister support formation, the actuation member, and the central outlet port lying in a common plane coincident with the longitudinal axis X.** | extending inwardly from a main surface of the inner wall, and<br>wherein the canister housing has a longitudinal axis X which passes through the center of the central outlet port,<br>**wherein the first inner wall canister support formation, the actuation member, and the central outlet port lie in a common plane coincident with the longitudinal axis X such that the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler.** |

Whereas claim 1 of the '289 Patent requires the inner wall canister support formation, the actuation member, and the central outlet port to lie in a common plane coincident with the longitudinal axis X, claim 1 of the '587 Patent additionally requires those components to lie in a common plane coincident with the longitudinal axis X, "such that the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler."

131.    Claims 2-8 of the '587 Patent depend directly or indirectly from claim 1 and are identical to claims 2-8 of the '289 Patent. Thus, whether Defendants infringe claims 1-8 of the '587 Patent depends on whether Defendants' ANDA Products satisfy the additional language in claim 1. Defendants' ANDA Products satisfy that limitation. Thus, Defendants' ANDA Products satisfy every limitation of claims 1-8 of the '587 Patent.

132.    The parties have agreed that the term "protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler" should be constructed to mean "guards against unwanted actuation by reducing rocking of the medicament canister relative to the main body of the inhaler that would otherwise be of a magnitude

sufficient to move the dose counter's actuator enough to cause unwanted incrementing (or decrementing) of the dose counter".

133.   Defendants' ANDA Products comprise a series of nine inner wall canister support formations or support rails, seven of which consist of what Defendants refer to as "ribs" and two of which consist of what Defendants refer to as "mounting tabs."  As explained in connection with claim 1 of the '289 Patent, these inner wall canister support formations prevent Defendants' medicament canister from rocking within the inhaler body.

134.   Teva's expert conducted experiments comparing samples of Defendants' ANDA Products with and without Defendants' inner wall canister support formations.  PTX-030 (Cipla); PTX-026 (Aurobindo).  In those experiments, Teva's expert measured the extent to which Cipla's medicament canister could be rocked in samples of Defendants' ANDA Products, in terms of maximum side-to-side movement, maximum front-to-back movement, and maximum angle.  Teva's expert removed Cipla's inner wall canister support formations from those samples and performed the same measurements.  The results demonstrate that the arrangement of Defendants' inner wall canister support formations prevent Defendants' medicament canister from rocking, in terms of maximum side-to-side movement, maximum front-to-back movement, and maximum angle.

135.   

136.   Examination of Defendants' ANDA Products demonstrates that it is possible for one of Defendants' castellations to transmit sufficient motion to the dose counter to cause it to count when certain inner wall canister support formations (e.g., ribs) are removed.  *See, e.g.*, PTX-174-181 (Videos).

## 2.    Claim 11

137.   Claim 11 of the '587 Patent recites: "The inhaler as claimed in claim 1 further comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the first inner wall canister support formation, the actuation member and the central outlet port lie in a common plane

coincident with longitudinal axis X." Defendants' ANDA Products satisfy every limitation of this claim.

138.   Defendants' ANDA Products are inhalers as claimed in claim 1. The evidence cited in connection with claim 1 of the '289 Patent further shows that, with respect to Defendants' ANDA Products, it is possible to construct multiple common planes through multiple inner wall canister support formations, the central outlet port, and the aperture through which Defendants' actuator extends. Thus, Defendants' ANDA Products further satisfy the limitation "wherein the second inner wall canister support formation, the first inner wall canister support formation, the aperture, and the central outlet port lie in a common plane coincident with longitudinal axis X."

### 3.    Claim 12

139.   Claims 1 and 12 of the '587 Patent are identical, except for the following **underlined** language:

| **'587 Patent, Claim 1** | **'587 Patent, Claim 12** |
|---|---|
| 1.  An inhaler for metered dose inhalation, the inhaler comprising:<br>a main body having a canister housing,<br>a medicament canister, which is moveable relative to the canister housing and retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, and<br>a dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister,<br>wherein the canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall, and | 1. An inhaler for metered dose inhalation, the inhaler comprising:<br>a main body having a canister housing,<br>a medicament canister, which is moveable relative to the canister housing and retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, and<br>a dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister,<br>wherein the canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall, and |

| | |
|---|---|
| wherein the canister housing has a longitudinal axis X which passes through the center of the central outlet port, **wherein the first inner wall canister support formation, the actuation member, and the central outlet port lie in a common plane coincident with the longitudinal axis X such that the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler.** | wherein the canister housing has a longitudinal axis X which passes through the center of the central outlet port, **the inner wall canister support formation, the actuation member, and the central outlet port lying in a common plane coincident with the longitudinal axis X such that the first inner wall canister support formation protects against dose counter errors by reducing rocking of the medicament canister towards or away the actuation member.** |

140.    Defendants' ANDA Products satisfy the limitation in claim 12. Because the inner wall canister support formations in Defendants' ANDA Products (seven of which Defendants refer to as "ribs" and two of which Defendants refer to as "mounting tabs") are adjacent to the medicament canister and lie in a common plane with the actuation member (i.e., one or more of the castellations on the top of what Defendants refer to as an "indexer"), they protect against dose counter errors (i.e., unwanted actuation of the dose counter) by reducing rocking of the medicament canister from rocking both towards and away from the actuation member.  When the medicament canister rocks towards the actuation member, the medicament canister comes into contact with the top of the inner wall canister support formation, preventing it from rocking further.  When the medicament canister rocks away from the actuation member, the medicament canister comes into contact with a lower portion of the inner wall canister support formation.  *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-030 (Cipla); PTX-026 (Aurobindo); PTX-330 (AURO_BECL00005711, at -5976 (Container Closure System)); PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).  Thus, Defendants' ANDA Products satisfy this limitation.

141. Examination of Defendants' ANDA Products demonstrates that it is possible for one of Defendants' castellations to transmit sufficient motion to the dose counter to cause it to count when certain inner wall canister support formations (e.g., ribs) are removed. *See, e.g.*, PTX-174-181 (Videos).

### 4. Claim 13

142. Claim 13 of the '587 Patent recites as follows:

13. An inhaler for metered dose inhalation, the inhaler comprising:

a main body having a canister housing,

a medicament canister retained in the canister housing and movable relative thereto, and a dose counter, the dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister,

wherein the canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall,

wherein the canister housing has an aperture formed in the inner wall through which the portion of the actuation member extends, and

wherein the first inner wall canister support formation extends from the main surface of the inner wall to the aperture.

143. Claims 1 and 3 of the '289 Patent recite every limitation of claim 13 of the '587 Patent (including under Defendants' proposed construction of the relevant terms). Defendants' ANDA Products satisfy each of those limitations. Thus, Defendants' ANDA Products satisfy every limitation of claim 13 of the '587 Patent.

144. Defendants construction of the term "[lying or lie] in a common plane coincident with the longitudinal axis X" in claim 1 of the '289 Patent and claims 1 and 12 of the '587 Patent requires the inner wall "canister support formation [to be] located directly adjacent to the actuation member." Claim 3 of the '289 Patent

and claim 13 of the '587 Patent require "aperture formed in the inner wall through which the portion of the actuation member extends." Because Defendants' ANDA Products satisfy those limitations (including under their constructions), they satisfy the limitations of claim 13 of the '587 Patent.

145. Claim 13 of the '587 Patent does not require the inner wall canister support formation to extend "all the way" from the main surface of the inner wall to the aperture.

### 5. Claims 14-19

146. Claims 14-19 of the '587 Patent depend directly or indirectly from claim 13 and recite additional limitations that are identical to those recited in claims 2, 4-8 of the '289 Patent and claims 2, 4-8 of the '587 Patent. Defendants' ANDA Products satisfy every limitation of these claims.

147. Defendants' ANDA Products are inhalers as claimed in claim 13 of the '587 Patent. As stated in connection with claims 2, 4-8 of the '289 Patent and claims 2, 4-8 of the '587 Patent, Defendants' ANDA Products further satisfy the limitations of those claims. Thus, Defendants' ANDA Products satisfy every limitation of these claims.

### 6. Claim 20

148. Claim 20 of the '587 Patent recites: "The inhaler as claimed in claim 15, wherein a width dimension of the support rail is not constant, and the width dimension is greatest at the location where the support rail is closest to the aperture." Defendants' ANDA Products satisfy every limitation of this claim.

149. The parties have proposed different constructions for the term "aperture." Teva proposes that the term should be construed according to its plain and ordinary meaning, in view of the claims, specification, and prosecution history, to mean "an opening or open space: hole." Defendants propose that the term should be construed to mean "hole." Defendants' ANDA Products satisfy every limitation under either proposed construction.

150. Defendants ANDA Products are inhalers as claimed in claim 15 of the '587 Patent. As explained in connection with claim 1 of the '289 Patent, Defendants' ANDA Products further comprise a series of support rails (seven of which Defendants refer to as "ribs" and two of which Defendants refer to as "mounting tabs") and an aperture. Defendants' support rails have width dimensions that are not constant, and several of Defendants' support rails have

width dimensions that are greatest at the location where the support rail is closest to the aperture.

**Cipla**



**Figure 41: Actuator with Integrated Dose counter**

*See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development)); *see also* PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

**Aurobindo**



*See, e.g.*, PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); *see also* PTX-330 (AURO_BECL00005711, at -5976-5977 (Container Closure System)); PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample).

### 7.    Claim 21

151.   Claim 21 of the '587 Patent recites: "The inhaler as claimed in claim 13, wherein the first inner wall canister support formation, the aperture, and a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, all lie in a common plane coincident with a longitudinal axis X which passes through the center of the central outlet port." Defendants' ANDA Products satisfy every limitation of this claim.

152.    Defendants' ANDA Products are inhalers as claimed in claim 13 of the '587 Patent.  As explained in connection with claim 1 of the '289 Patent, Defendants' ANDA Products further satisfy the limitation "wherein the first inner wall canister support formation, the aperture, and a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, all lie in a common plane coincident with a longitudinal axis X which passes through the center of the central outlet port."  Thus, Defendants' ANDA Products satisfy every limitation of this claim.

### 8.    Claim 22

153.    Claim 22 of the '587 Patent recites: "The inhaler as claimed in claim 21 further comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the first inner wall canister support formation, the aperture, and the central outlet port lie in a common plane coincident with longitudinal axis X."  Defendants' ANDA Products satisfy every limitation of this claim.

154.    Defendants' ANDA Products are inhalers as claimed in claim 21.  The evidence cited in connection with claim 1 of the '289 Patent further shows that, with respect to Defendants' ANDA Products, it is possible to construct multiple common planes through multiple inner wall canister support formations, the central outlet port, and the aperture through which Defendants' actuator extends.  Thus, Defendants' ANDA Products further satisfy the limitation "wherein the second inner wall canister support formation, the first inner wall canister support formation, the aperture, and the central outlet port lie in a common plane coincident with longitudinal axis X."

**Cipla's ANDA Product, 40 mcg**



**Cipla's ANDA Product, 80 mcg**



Aurobindo's ANDA Product, 40 mcg



Aurobindo's ANDA Product, 80 mcg



### C.    The '808 Patent

#### 1.    Claim 1

155.    Defendants' ANDA Products satisfy every limitation of claim 1 of the '808 Patent.

156.    Claim 1 recites as follows:

1. A dose counter for an inhaler, the dose counter having a counter display arranged to indicate dosage information, a drive system arranged to move the counter display incrementally in a first direction from a first station to a second station in response to actuation input, wherein a regulator is provided which is arranged to act upon the counter display at the first station to regulate motion of the counter display at the first station to incremental movement.

### a.    "A Dose Counter for an Inhaler"

157.   Defendants' ANDA Products comprise a "dose counter for an inhaler." *See, e.g.*, PTX-306 (CIPLA-BDI_0156579 (Design Drawings)); *see also* PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development Report)); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

### b.    "The Dose Counter Having"

### 1)    "A Counter Display Arranged to Indicate Dosage Information"

158.   Defendants' ANDA Products comprise a "dose counter having a counter display arranged to indicate dosage information."

159.   The parties have proposed different constructions for the term "counter display arranged to indicate dosage information."  Teva proposes that the term should be construed according to its plain and ordinary meaning, in view of the claims, specification, and prosecution history, to mean "a component of the dose counter that displays information regarding the number of doses remaining." Defendants propose that the term should be construed to mean "structure displaying the number of doses remaining."  Defendants' ANDA Products infringe this claim under either proposed construction.

160.   **Teva's Proposed Construction.**  Defendants' ANDA Products literally satisfy this limitation under Teva's proposed construction.

161.   Defendants' ANDA Products comprise a dose counter, which has (what Defendants refers to as) a "units display ring" (6) and "tens cone" (7).

**Cipla**



*See, e.g.*, PTX-306 (CIPLA-BDI_0156579 (Design Drawings)); *see also* PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development Report)); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

**Aurobindo**



*See, e.g.*, PTX-330 (AURO_BECL00005711, at -5977 (Container Closure System)); *see also* PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample).

162.  Defendants' ANDA Products comprise a number of components, each of which satisfies the requirements of the claimed dosage indicator: (1) Defendants' units display ring; (2) Defendants' tens cone; and (3) Defendants' units display ring and tens cone.  Both individually and collectively, each of those components display information regarding the number of doses remaining.  As their names suggest, Defendants' units display ring displays the units (i.e., ones) digit of the number of doses remaining, and the tens cone displays the tens digit of the number of doses remaining.  When fewer than ten doses remain, the units

display ring individually displays the number of doses remaining. Alternatively, at any number of doses remaining, Defendants' units display ring and tens cone collectively display the number of doses remaining. *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development Report)); PTX-306 (CIPLA-BDI_0156579); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-040 (AURO_BECL00001277, at -1285 ("Dose Counter shows number of actuations (oriented vertically) remaining in units of 1"), -1290-91 (same), -1297-98 (same), -1339 (similar), -1351-52 (similar), -1372 (photograph) (Pharmaceutical Development)); PTX-041 (AURO_BECL00002510, at -2676 (similar)); PTX-330 (AURO_BECL00005711, at -5977 (Container Closure System)); PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

163. ████████████████████████████████

164.    **Defendants' Proposed Construction.**   Defendants' ANDA Products also satisfy this limitation under Defendants' proposed construction, both literally and under the doctrine of equivalents.

165.    Defendants' proposed construction requires the counter display to be a "structure displaying the number of doses remaining." Defendants' dose counter literally comprises such an element, and even if it does not, it comprises an equivalent of this element.

166.    Defendants' ANDA Products comprise (what Defendants refer to as) a "units display ring" and "tens cone." When fewer than ten doses remain, the units display ring individually displays the number of doses remaining. Alternatively, at any number of doses remaining, Defendants' units display ring and tens cone collectively display the number of doses remaining. Thus, both individually and collectively, Defendants' units display ring and tens cone display the number of doses remaining. *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development Report)); PTX-306 (CIPLA-BDI_0156579); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-040 (AURO_BECL00001277, at -1285 ("Dose Counter shows number of actuations (oriented vertically) remaining in units of 1"), -1290-91 (same), -1297-98 (same), -

1339 (similar), -1351-52 (similar), -1372 (photograph) (Pharmaceutical Development)); PTX-041 (AURO_BECL00002510, at -2676 (similar));

████████████████████████████████████████████

████████████████████████████████████████████ PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

167.    Alternatively, even if Defendants' units display ring and tens cone do not literally qualify as a "counter display," they qualify as a "counter display" under the doctrine of equivalents.  In certain embodiments, the invention comprises a "counter display," which is arranged to display dosage information.  *See, e.g.*, PTX-002 ('808 Patent, Abstract, 2:44-4:50, 8:31-9:37, 13:5-54, 15:15-33, 16:5-17:11, 20:14-21:48, Figs. 4A, 6A-6H, 8A-8D, 10A-10F, 21-25).  In some of those embodiments, the counter display further comprises a display "tape" that is wound between two "shafts."  *See, e.g.*, PTX-002 ('808 Patent, Abstract, 2:44-4:50, 8:31-9:37, 13:5-54, 15:15-33, 16:5-17:11, 20:14-21:48, Figs. 4A, 6A-6H, 8A-8D, 10A-10F, 21-25).  From those disclosures, POSA would understand that the counter display was an element of the device that informed the patient of the number of doses remaining, by providing an updated number of doses when the patient used the inhaler, to display the current number of doses remaining.

168.    The POSA would further understand that the precise strategy used to display the number of doses remaining was not an essential aspect of the invention as a whole.  To that end, the POSA would note that the '808 Patent's discussion of the problems solved by the inventions were not specific to any particular strategy of displaying the number of doses remaining (e.g., using a display tape or shafts).  *See, e.g.*, PTX-002 ('808 Patent, 2:13-38).  Thus, to the extent that a dose counter used a different strategy to display the number of doses remaining, the POSA would understand that to be inessential.

169.    To the extent that they do not literally qualify as a "counter display," Defendants' units display ring and tens cone are insubstantially different from one.  When fewer than ten doses remain, Defendants' units display ring informs the patient of the number of doses remaining by providing an updated number of doses when the patient uses the inhaler, to display the current number of doses remaining.  Alternatively, at any number of doses remaining, Defendants' units display ring and tens cone collectively satisfy these requirements.  *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development Report)); PTX-306 (CIPLA-BDI_0156579); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-040 (AURO_BECL00001277, at -1285 ("Dose Counter shows

number of actuations (oriented vertically) remaining in units of 1"), -1290-91 (same), -1297-98 (same), -1339 (similar), -1351-52 (similar), -1372 (photograph) (Pharmaceutical Development)); PTX-041 (AURO_BECL00002510, at -2676 (similar)); PTX-330 (AURO_BECL00005711, at -5977 (Container Closure System)); PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample). To the extent that the strategy used in Defendants' devices is different from the one used by certain embodiments in the '808 Patent, the POSA would understand those differences to be insubstantial.

170.    Alternatively, Defendants' units display ring and/or tens cone and the claimed "counter display" perform substantially the same function in substantially the same way to obtain the same result. At the relevant number of doses remaining, all inform the patient of the number of doses remaining, by way of providing an updated number of doses when the patient uses the inhaler, to obtain the result of displaying the current number of doses remaining. *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development Report)); PTX-306 (CIPLA-BDI_0156579); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-040 (AURO_BECL00001277, at -1285 ("Dose Counter shows number of actuations (oriented vertically) remaining in units of 1"), -1290-91 (same), -1297-98 (same), -1339 (similar), -1351-52 (similar), -1372 (photograph) (Pharmaceutical Development)); PTX-041 (AURO_BECL00002510, at -2676 (similar)); PTX-330 (AURO_BECL00005711, at -5977 (Container Closure System)); PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

### 2)    "A Drive System Arranged to Move the Counter Display Incrementally in a First Direction From a First Station to a Second Station in Response to Actuation Input"

171.    Defendants' ANDA Products comprise a dose counter having "a drive system arranged to move the counter display incrementally in a first direction from a first station to a second station in response to an actuation."

172.    The parties have agreed that the term "first direction" should be construed to mean a "single direction at a time."

173.   The parties have proposed different constructions for the terms "first region" and "second region."  Teva proposes that the terms should be construed according to their plain and ordinary meanings, in view of the claims, specification, and prosecution history, to mean "a first region" and "a second region," respectively.  Defendants propose that the terms should be construed to mean a "first structure on which the counter is located" and a "second structure, separate from the first structure, to which the counter display is moved," respectively.  Defendants' ANDA Products infringe this claim under any of the proposed constructions.

174.   **Teva's Proposed Constructions.**  Defendants' ANDA Products literally satisfy this limitation under Teva's proposed construction.

175.   Defendants' ANDA Products comprise a dose counter having (what Defendants refer to as) a "lid" (1), "indexer" (2), "units teeth ring" (3), "units display ring" (6), and "tens cone" (7).

**<u>Cipla</u>**



*See, e.g.*, PTX-306 (CIPLA-BDI_0156579 (Design Drawings)); *see also* PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development Report)); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

**Aurobindo**



*See, e.g.*, PTX-330 (AURO_BECL00005711, at -5977 (Container Closure System)); *see also* PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample).

176.   When a patient presses down on Defendants' medicament canister (i.e., actuates Defendants' ANDA Products), the medicament canister presses down on the indexer, and the drive system—i.e., the lid, indexer, and units teeth ring—work together to transmit the downward motion of the medicament canister to move the units display ring and tens cone.  *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development Report)); PTX-306 (CIPLA-BDI_0156579); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings));

69

PTX-040 (AURO_BECL00001277, at -1285 ("Dose Counter shows number of actuations (oriented vertically) remaining in units of 1"), -1290-91 (same), -1297-98 (same), -

1339 (similar), -1351-52 (similar), -1372 (photograph) (Pharmaceutical Development)); PTX-041 (AURO_BECL00002510, at -2676 (similar)); PTX-330 (AURO_BECL00005711, at -5977 (Container Closure System)); PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

177.   Defendants' ANDA Products comprise a number of components, each of which satisfies the requirements of the claimed dosage indicator, including (1) Defendants' units display ring; (2) Defendants' tens cone; and (3) Defendants' units display ring and tens cone.  As illustrated below, Defendants' units display ring and tens cone are arranged such that the numbers on those components align along the components' tangent.  Each time a patient presses down on Defendants' medicament canister, the units display ring moves incrementally in a single direction from a first region to a second region along that tangent.  Additionally, every ten times the patent presses down on Defendants' medicament canister, Defendants' tens cone also moves incrementally in a single direction from a first region to a second region along that tangent.



*See, e.g.,* ███████████████████████████████████████████
*see also* PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development Report)); PTX-306 (CIPLA-BDI_0156579); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-330 (AURO_BECL00005711, at -5977 (Container Closure System)); PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

178. In Defendants' ANDA Products the first position corresponds to the region(s) of the dose counter that are occupied by the current ones and/or tens digits; the second position corresponds to the region(s) of the dose counter that encompass the ones and/or tens digits after they increment. Thus, when Defendants' ANDA Products are at full capacity, the first position corresponds to the region(s) of the dose counter that are occupied by digits"0" (in the case of the units display ring) and/or "12" (in the case of the tens cone); the second position corresponds to the region(s) of the dose counter that are occupied by the digit "1" (in the case of the units display ring) and/or no digit (in the case of the tens cone). ████████████████████████████████████████████████████████████

*see also* PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development

Report)); PTX-306 (CIPLA-BDI_0156579); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-330 (AURO_BECL00005711, at -5977 (Container Closure System)); PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

179.   The '808 Patent confirms this analysis.  The '808 Patent describes that, in certain embodiments, the counter display consists of a tape that moves between two shafts.  PTX-002 ('808 Patent, 8:44-50, 11:35-36, Figs. 8A-8D, claim 2 ("2. The dose counter as claimed in claim 1 in which the counter display comprises a tape.")).  When a patient views the counter display of the assembled inhaler and uses the device, the counter display moves in a direction (solid arrows) that is perpendicular to the patient's viewing angle (dashed arrows).



FIG. 8C          FIG. 8D

PTX-002 ('808 Patent, Figs. 8C, 8D).  Each of Defendants' units display ring and tens cone likewise moves in a direction that is perpendicular to the patient's viewing angle when a patient uses the device.  *See, e.g.,* ██████████ ████████████████████████████████████████; PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development Report)); PTX-306 (CIPLA-BDI_0156579); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-330 (AURO_BECL00005711, at -5977 (Container Closure System)); PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo

ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

180. 

181. **Defendants' Proposed Constructions.**  Defendants' ANDA Products also satisfy this limitation under Defendants' proposed constructions, at a minimum, under the doctrine of equivalents.

182.   Defendants' proposed construction requires the "first station" and "second station" be a "first structure on which the counter is located" and a "second structure, separate from the first structure, to which the counter display is moved," respectively.  At a minimum, Cipla's ANDA Product comprises the equivalents of these elements.

183.   The '808 Patent describes that first station and second station provide two locations (in Defendants' terms, "structures") from which the counter display moves in response to actuation input.  *See, e.g.*, PTX-002 ('808 Patent, 2:44-4:50).  Thus, the POSA would understand that the first station and second station facilitate the counter display's informing the patient of the number of doses remaining, by providing starting and ending points for the counter display, to facilitate the counter display's displaying the number of doses remaining.

184.   The POSA would further understand that, in certain embodiments, the '808 Patent states that the dose counter comprises a display tape and that, in some of those embodiments, the first station and second station are associated with a first shaft and a second shaft, between which the display tape is wound.  *See, e.g.*, PTX-002 ('808 Patent, 2:44-4:50).  However, given the breadth of the '808 Patent's disclosures regarding the first station and the second station, *see, e.g.*, PTX-002 ('808 Patent, 2:44-4:50), the POSA would understand that the design of the first station and second station would depend on the specific implementation of the counter display.  Thus, the POSA would understand that to the extent that the '808 Patent describes the regulator as associated with a first shaft and a second shaft, that was not an essential aspect of the inventions.  Likewise, the POSA would understand the movement of the counter display (whether linear, rotational, or separately defined for multiple components) to be inessential.

73

185.   To the extent that Defendants' ANDA Products do not literally comprise a "counter display" that moves from a "first station" to a "second station" in a first direction, the movement of Cipla's tens cone and/or units display ring between the above-identified regions is insubstantially different from the claimed movement.  Although Defendants' ANDA Products do not literally comprise a display tape moving from one shaft to another, like the shafts described in certain examples, the movement of Defendants' counter display facilitates its informing the patient of the number of doses remaining, by providing starting and ending points for the counter display.

186.   Alternatively, the movement of Defendants' tens cone and/or units display ring between the above-identified regions and the claimed movement perform substantially the same function in substantially the same way to obtain the same result.  Both perform the function of facilitating the counter display's informing the patient of the number of doses remaining, by way of providing starting and ending points for the counter display, to obtain the result of facilitating the counter display's displaying the number of doses remaining.  *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development Report)); PTX-306 (CIPLA-BDI_0156579); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-036 (AURO_BECL00000146, at -150, 174-76 (Proposed Labeling)); PTX-040 (AURO_BECL00001277, at -1286-87 (Pharmaceutical Development)); PTX-330 (AURO_BECL00005711, at -5767 (Container Closure System)); PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

### c.    "Wherein a Regulator Is Provided Which Is Arranged to Act Upon the Counter Display at the First Station to Regulate Motion of the Counter Display at the First Station to Incremental Movement"

187.   Defendants' ANDA Products comprise a "regulator which is arranged to act upon the counter display at the first station to regulate motion of the counter display at the first station to incremental movement."

188.   The parties have agreed that the term "regulator" should be construed to mean "a structure of the dose counter that modulates motion of the counter display"; and that the term "regulate motion of the counter display" should be construed to mean "modulate motion of the counter display."

189.   Defendants' ANDA Products comprise a dose counter having (what Defendants refer to as) a "lid" (1), "indexer" (2), "units teeth ring" (3), "leaf spring" (4), "units display ring" (6), and "tens cone" (7).

## Cipla



*See, e.g.*, PTX-306 (CIPLA-BDI_0156579 (Design Drawings)); *see also* PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development Report)); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

## Aurobindo



*See, e.g.*, PTX-330 (AURO_BECL00005711, at -5977 (Container Closure System)); *see also* PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample).

190.   When a patient presses down on Defendants' medicament canister, the medicament canister presses down on the indexer, which engages with the units teeth ring, causing it to rotate.  In turn, the units teeth ring causes the units display ring and tens cone to rotate.  Consistent with its description as a "spring," Defendants' leaf spring sits between Defendants' dose counter components and regulates (i.e., modulates) the movement of the units display ring and tens cone to incremental input, including at the first position.  That is, as the patient presses down on the medicament canister, the leaf spring applies a resistance force against the medicament canister in the opposite direction of its downward motion and, consequently, in the opposite direction of the units display ring's and tens cone's motion.  As a result, the patient must perform a sufficient amount of work (i.e., a sufficient amount of force over a sufficient distance) to cause the dose counter to count.  After Cipla's dose counter actuates (i.e., counts), the leaf spring applies a

restoring force against the medicament canister, and, consequently, the units display ring and tens cone, which helps prevent the dose counter from counting a second time. *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development Report)); PTX-306 (CIPLA-BDI_0156579); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-330 (AURO_BECL00005711, at -5977 (Container Closure System)); PTX-046 (AURO_BECL00803513-14); PTX-318 (AURO_BECL00803466 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

191.    Aurobindo's force-to-fire and displacement-to-fire (i.e., "stroke-to-fire") studies, which measure the amount of force and distance required to cause Aurobindo's ANDA Product to fire, further demonstrate that Defendants' ANDA Products satisfy this limitation. *See, e.g.*, PTX-041 (AURO_BECL00002510, at -2677-2682 (Pharmaceutical Development)).

192.    Experimental evidence shows that Defendants' leaf spring provides a resistance force against the downward movement of Defendants' medicament canister (which causes Defendants' counter display to move), which increases as the medicament canister moves downward. This classic, spring-like behavior reflects the contributions of Defendants' leaf spring to the incremental movement of its units display ring and tens cone. *See, e.g.*, PTX-031 (Ex. C); PTX-027 (Ex. C).

193.    The '808 Patent confirms this analysis. The '808 Patent describes that the regulator modulates movement of the counter display, by applying (1) a resistance force opposite to the direction of the motion of the counter display before it counts and (2) a restoring force in the direction of the motion of the counter display after it counts, to help prevent the dose counter from counting a second time. *See, e.g.*, PTX-002 ('808 Patent, 2:44-4:50, 17:62-20:11, Figs. 15-20). In other words, the regulator exhibits classic, spring-like behavior. Defendants' regulator (i.e., what Defendants refer to as a "leaf spring") is to the same effect. Like the examples of the regulators described in the patent, Defendants' regulator applies (1) a resistance force opposite to the direction of the motion of the counter display before it counts and (2) a restoring force in the direction of the motion of the counter display after it counts. *See, e.g.*, PTX-308 (CIPLA-BDI_0004411, at -637 (Pharmaceutical Development Report)); PTX-306 (CIPLA-BDI_0156579); PTX-373-74 (CIPLA-BDI_0803837-38 (Design Drawings)); PTX-409 (Aurobindo ANDA Product Sample); PTX-410 (Aurobindo ANDA Product Sample); PTX-411 (Cipla ANDA Product Sample); PTX-412 (Cipla ANDA Product Sample).

194.   The '808 Patent does not require the regulator to act directly on the counter display.  Instead, the '808 Patent describes the "regulator" as acting directly on the counter display only in certain embodiments of the invention.  *See, e.g.*, PTX-002 ('808 Patent, 2:44-4:50, 17:62-20:11, Figs. 15-20).

195.   In any event, to the extent that Defendants do not infringe this limitation literally, Defendants' ANDA Products satisfy this limitation under the doctrine of equivalents.  The '808 Patent describes that the regulator modulates movement of the counter display, by applying (1) a resistance force opposite to the direction of the motion of the counter display before it counts and (2) a restoring force in the direction of the motion of the counter display after it counts, to help prevent the dose counter from counting a second time.  *See, e.g.*, PTX-002 ('808 Patent, 2:44-4:50, 17:62-20:11, Figs. 15-20).

196.   There are no substantial differences between Defendants' leaf spring and the claimed regulator.  Both apply (1) a resistance force opposite to the direction of the motion of the counter display before it counts and (2) a restoring force in the direction of the motion of the counter display after it counts.  Although Aurobindo's leaf spring is not identical to certain examples of regulators in the patent, the differences between Aurobindo's leaf spring and those examples are insubstantial because they do not relate to an essential aspect of the inventions.

197.   Alternatively, Defendants' leaf spring and the claimed regulator perform substantially the same function in substantially the same way to obtain the same result.  Both perform the function of modulating movement of the counter display, by way of applying (1) a resistance force opposite to the direction of the motion of the counter display before it counts and (2) a restoring force in the direction of the motion of the counter display after it counts, to obtain the result of result of helping prevent the dose counter from counting a second time.

198.   The '156 Patent's prosecution history does not establish non-infringement.  *See, e.g.*, PTX-006 (Response to an Office Action (July 6, 2017)); DX-159 (O'Leary).

## 2.    Claim 27

199.   Claim 27 of the '808 Patent recites: "The dose counter as claimed in claim 1 in which the regulator provides a resistance force of greater than 0.1 N against movement of the counter display."  Defendants' ANDA Products satisfy every limitation of this claim.

200.    Defendants' dose counter has a regulator (i.e., what Defendants refer to as a "leaf spring"), which provides a resistance force against movement of the counter display. █████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
███████████████ .

201.    Aurobindo's ANDA further states that Aurobindo's ANDA Product (which is materially similar to Cipla's ANDA Product) "has a force to fire of 3.3 kg and a stroke to fire of 3.2 mm." PTX-041 (AURO_BECL00002510, at -2682) (Pharmaceutical Development). Because Defendants' leaf spring provides the same resistive force against Defendants' counter display that it does against Defendants' medicament canister, Defendants' ANDA Products apply a resistance force of greater than 0.1 N against movement of the counter display.

202.    Experimental evidence shows that Defendants' leaf spring applies a resistive force of greater than 0.1 N against movement of the counter display. *See* PTX-031 (Cipla); PTX-027 (Aurobindo).

### 3.    Claim 28

203.    Claim 28 of the '808 Patent recites: "The dose counter as claimed in claim 27 in which the resistance force is greater than 0.3 N." Defendants' ANDA Products satisfy every limitation in this claim.

204.    Defendants' dose counter has a regulator (i.e., what Defendants refer to as a "leaf spring"), which provides a resistance force against movement of the counter display. █████████████████████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
████████████████

205.    Aurobindo's ANDA further states that Aurobindo's ANDA Product (which is materially similar to Cipla's ANDA Product) "has a force to fire of 3.3 kg and a stroke to fire of 3.2 mm." PTX-041 (AURO_BECL00002510, at -2682) (Pharmaceutical Development). Because Defendants' leaf spring provides the same resistive force against Defendants' counter display that it does against

Defendants' medicament canister, Defendants' ANDA Products apply a resistance force of greater than 0.3 N against movement of the counter display.

206.    Experimental evidence shows that Defendants' leaf spring applies a resistive force of greater than 0.3 N against movement of the counter display. *See* PTX-031 (Cipla); PTX-027 (Aurobindo).

### D.    Ensnarement

207.    A finding that Defendants infringe the Asserted Claims of the '406 Publication would not ensnare the prior art, including the third embodiment (or any other embodiment) disclosed by International Publication No. WO 2007/124406 (the "'406 Publication").

208.    As discussed in the corresponding sections below, the '406 Publication does not anticipate or render obvious any of the Asserted Claims.

209.    Defendants' ANDA Products and the '406 Publication's disclosures are materially different such that a finding of infringement under the doctrine of equivalents would not ensnare the '406 Publication.

210.    As relevant to the Asserted Claims, Defendants' ANDA Products do not practice (and are not otherwise encompassed by) any of the disclosures of the '406 Publication.

211.    Unlike the '406 Publication's disclosures, Defendants' ANDA Products satisfy, or contain an equivalent to, the limitations of the '289 and '587 Patents that include an "inner wall canister support formation" or "support rail."

212.    Unlike the '406 Publication's disclosures, Defendants' ANDA Products satisfy, or contain an equivalent to, the limitations of the '289 and '587 Patents that require an "inner wall canister support formation" or "support rail" to have a relationship to another component of the inhaler or dose counter.

213.    Unlike the '406 Publication's disclosures, Defendants' ANDA Products satisfy, or contain an equivalent to, the limitations of the '289 and '587 Patent that require the "actuation member," "inner wall canister support formation," and "central outlet port" to lie in a "common plane coincident with the longitudinal axis X" (e.g., the Common Plane Limitation).

214.  Unlike the '406 Publication's disclosures, Defendants' ANDA Products satisfy, or contain an equivalent to, the limitations of the '808 Patent that require a "regulator."

215.  Unlike the '406 Publication's disclosures, Defendants' ANDA Products satisfy, or contain an equivalent to, the limitations of the '808 Patent that require the "regulator" to exert a force.

216.  Unlike the '406 Publication's disclosures, Defendants' ANDA Products satisfy, or contain an equivalent to, the limitations of the '808 Patent that require the regulator to exert a force of more than 0.1 N or 0.3 N

217.  Based on the visible differences between the '406 Publication's disclosures and Defendants' ANDA Products (such as, for example, the differences in the size and shape of the components that make up their respective dose counting or indicating components), the POSA would understand the '406 Publication to disclose or otherwise encompass Defendants' ANDA Products.

## V.    Validity

### A.    Alleged Prior Art

#### 1.    The '406 Publication

218.  The '406 Publication is entitled "Dose Counter" and lists Adam J. Stuart, Graham R. Purkins, Rachel Streibig, Stephen J. Howgill, Peter D. Hodson, Richard D. Brewer, and Benjamin J. Holden as inventors.

219.  The '406 Publication describes five embodiments of a dose counter for use in inhalers. Paragraphs [0090]-[00116] and Figures 1-11 describe the first embodiment, Paragraphs [00117]-[00134] and Figures 12-20 describe the second embodiment, Paragraphs [00135]-[00159] and Figures 21-30 describe the third embodiment, Paragraphs [00160]-[00170] and Figures 31-40 describe the fourth embodiment, and Paragraphs [00171]-[00182] and Figures 41-47 describe the fifth embodiment.  None of these embodiments contains "inner wall canister support formations."  To the contrary, no embodiment, figure, or other description refers to support rails or ribs or any feature that could be considered an "inner wall canister support formation."

220.  The '406 Publication makes clear that the dose counters it discloses do not require that changes be made to the canister housing (a feature the '406 Publication describes as the "actuator") in order to accommodate those dose

counters. For example, the '406 Publication explains that one advantage of its dose counters is that they "require[e] minimal or no changes to the inside and/or outside profile and/or volume of the actuator to accommodate the counter." PTX-352 ('406 Publication, ¶¶ [0012]); *see also* PTX-352 ('406 Publication, ¶¶ [0009] ( "no or only minimal modification (in shape and/or size) of the housing" needed), [00105] (noting that "it is not necessary to change the external configuration of those actuator housings to accommodate the inventive dose counter"), [00124] (second embodiment), [00151] (third embodiment)).

221.   Internal dose counters (particularly counters like those in the '406 publication, which are located primarily below the medication canister) pose a risk of disrupting airflow through the device and thereby affecting product performance. The '406 Publication recognizes this concern. *See, e.g.*, PTX-352 ('406 Publication, [0009] (noting that compact size of the counter means that it is "less influential on the product performance"), [00105] (reporting that first embodiment "minimize[s] interference and obstruction of the medication spray and airflow paths in the actuator housing"), [00124] (second embodiment), [00151] (third embodiment)). This is consistent with the use of the dose counters of the '406 Publication in inhaler bodies that do not contain additional features, like "inner wall canister support formations," that might alter airflow through the device. *See, e.g.*, PTX-352 ('406 Publication, Figs. 3, 16, and 27).

222.   The '406 Publication also recognizes the need for simplicity in engineering, particularly when the device in question, such as a dose counter for a metered dose inhaler ("MDI"), must be mass manufactured inexpensively. To that end, the '406 Publication explains that "[w]hen a dose counter is integrated into the housing for an aerosol inhaler container, it is desirable to minimize its complexity and ease of installation, as well as to provide an arrangement which is as compact as possible, yet which provides a readily reliable and readable medication dosage count to a user." PTX-352 ('406 Publication, ¶ [0006]).

223.   The '406 Publication suffers from several disadvantages that would have led the POSA away from the dose counters in the '406 Publication as starting points for additional changes. Those deficiencies are addressed in more detail below. But for clarity, if the POSA set out to add a dose tracking system to an MDI, the POSA would not have selected any of the dose counters disclosed in the '406 Publication as starting points. However, the '406 Publication does not identify any particular problems or areas for improvement with respect to the robustness, reliability, manufacturability, accuracy, precision, or unwanted activation of the dose counter it discloses, despite recognizing each of those features as important characteristics of a dose counter. *See, e.g.*, PTX-352 ('406

Publication, ¶ [0006]).  To the contrary, the '406 Publication presents its counter as a useful solution to those seeking a counter contained within the inhaler housing, which comes with challenges like size, ease of installation, etc.  PTX-352 ('406 Publication, ¶ [0009]).  Accordingly, if the POSA did select the dose counters of the '406 publication as a starting point for further development, nothing in the '406 Publication would have suggested to the POSA any particular directions for modification.  In particular, the POSA would have understood the '406 Publication to instruct that there was no need to alter the canister housing into which its dose counters were placed.  *See, e.g.*, PTX-352 ('406 Publication, [0009] (noting that compact size of the counter means that it is "less influential on the product performance"), [00105] (reporting that first embodiment "minimize[s] interference and obstruction of the medication spray and airflow paths in the actuator housing"), [00124] (second embodiment), [00151] (third embodiment)).  Certainly, nothing in the '406 Publication identifies canister rocking as a problem—the '406 Publication neither recognizes canister rocking as a problem experienced by its dose counters nor does it indicate that its dose counters were engineered to avoid that problem.  It follows, of course, that the '406 Publication does not in any way identify canister rocking as a problem that could have adverse effects on counter accuracy.

224.   The '406 Publication does not describe in detail the locations of the components of the dose counters that it discloses and does not describe in detail how those locations change over time during operation of those devices.  Thus, the POSA could not determine from the '406 Publication the locations of the dose counter components when, for example, a given embodiment reaches the canister fire configuration (i.e., when the medicament canister fires medicament).

## 2.   The '552 Publication

225.   International Publication No. WO 2008/119552 (the "'552 Publication") (DX-162) is entitled "Metered Dose Inhaler" and lists Derek Fenlon as the inventor.  The '552 Publication further lists Ivax Pharmaceuticals Ireland as the applicant.  The '552 Publication was before the examiner during prosecution of each of the Asserted Patents.

226.   Figures 1-4 of the '552 Publication reproduce images from International Patent Publication WO 98/28033, which the '552 Publication describes as a prior art device (to the '552 Publication).  *See* DX-162 ('552 Publication, 3:15-6:23, 7:26-25, Figs. 1-4.  Figures 5-9 of the '552 Publication describe what the '552 Publication refers to as the "present invention" (i.e., the invention described by the '552 Publication)).  *See* DX-162 ('552 Publication,

7:26-14:28, Figs. 5-9). In comparing what it characterizes as embodiments of WO 98/28033 ("WO '033") and the present invention of the '552 Publication, the '552 Publication states: "The dose counter of the present invention is based on that set out in Figs 3 and 4 described hereinabove except that the pawl 60 has been modified. Modification of the pawl followed an in-depth study of all of the components of the inhaler." DX-162 ('552 Publication, 8:7-9). As explained below in greater detail, the POSA would not understand that statement to mean that the locations of the actuator pawl and the valve stem block in the WO '033 and the '552 Publication embodiments were the same. To the contrary, the POSA would understand that the modification of the actuator pawl described in the '552 Publication could alter the location of the valve stem block.

227. Consistent with the prior art as a whole, the '552 Publication emphasizes the dangers of undercounting doses relative to overcounting. Thus, the '552 Publication states: "Clearly, undercounting is particularly undesirable as it can lead to a patient believing that there are more doses left within the inhaler than there actually are." DX-162 ('552 Publication, 7:16-24). Based on that disclosure, and in view of the prior art as a whole, the POSA would understand the '552 Publication to teach away from devices that were biased towards undercounting (i.e., devices in which the dose counter counted *after* the medicament canister fired instead of counting before the canister fired).

228. The '552 Publication does not describe in detail the relative locations of the actuator pawl and valve stem block and does not describe how those locations change over time during operation of the devices that it discloses. Thus, the '552 Publication does not describe how the locations of the actuator pawl and valve stem block in the embodiments that it discloses change during the various stages of device operation. And the POSA could not determine from the '552 Publication where the actuator pawl would be located relative to the valve stem block when, for example, a given embodiment reaches the "canister fire configuration" (i.e., when the medicament canister fired medicament).

229. In certain embodiments, the '552 Publication states that the dose counter comprises a stock bobbin and split hub. *See, e.g.*, DX-162 ('552 Publication, 9:9-10:8, Fig. 6). With respect to those components, the '552 Publication states: "[T]he stock bobbin 68 . . . is held taught by the action of the split hub 70." DX-162 ('552 Publication, 9:9-10:8, Fig. 6). In other words, the '552 Publication explains that the split hub resists the movement of the stock bobbin by applying continuous tension; the '552 Publication does not describe the stock bobbin and split hub (or any other combination of components) as modulating the movement of a counter display to incremental movements. The

'552 Publication also does not describe how much resistance force the split hub applies to the stock bobbin.

230.  Notably, the '552 Publication does not disclose any embodiments comprising a canister housing that has inner wall canister support formations (such as support rails).  To the contrary, the '552 Publication provides very little information regarding the features of the canister housing in which the dose counters it describes should be used, aside from nothing that the canister housing has a "stem block" into which the canister's valve stem fits.  DX-162 ('552 Publication, 3:17-19, 25-28).  Certainly, nothing in the '552 Publication identifies a problem that inner wall canister support formations would be expected to address.  In particular, the '552 Publication neither recognizes canister rocking as a problem experienced by its dose counters nor does it indicate that its dose counters were engineered to avoid that problem.  It follows, of course, that the '552 Publication does not in any way connect canister rocking with the presence of a dose counter or adverse effects on counter accuracy.

231.  During prosecution of each of the Asserted Patents, the examiner considered the '552 Publication, but declined to find that it rendered unpatentable the Asserted Claims.  *See, e.g.*, PTX-003 ('289 Patent, Foreign Patent Documents); PTX-004 ('587 Patent, Foreign Patent Documents); '156 Patent, Foreign Patent Documents; PTX-002 ('808 Patent, Foreign Patent Documents).  The '552 Publication does not render invalid the Asserted Claims.

### 3.    The '514 Publication

232.  International Publication No. WO 03/101514 (the "'514 Publication") (DX-165) is entitled "Dose Indicators and Dispensing Canister-Indicator Assemblies" and lists Eduard Marx as the inventor.  The '514 Publication was before the examiner during prosecutions of each of the Asserted Patents.

233.  The focus of the '514 Publication is the disclosure of a ring-shaped dose indicator or dose counter that is mounted to the canister and thus moves *with* the canister.  *See, e.g.*, DX-165 ('514 Publication, 4:22-23 ("wherein said indicator is arranged to be circumferentially mountable about the dispensing-canister"), 6:4-8 ("Annular dose indicators according to the invention are advantageous in that the indicator can be manufactured independent of the dispensing-canister and the adaptor to provide a self-contained assembly. They can be easily mounted around the dispensing canister by sliding the indicator over the outlet- or container-end of the dispensing canister, as the case may be."), 7:16-24 ("Furthermore dose indicators, in particular the housing, can be advantageously secured to an external

85

surface of the dispensing canister, preferably to an external surface of the container or, if applicable the ferrule of the dispensing canister, to provide a self-contained canister/indicator assembly. The provision of a dispensing-canister/indicator assembly as a self-contained or single unit in which the indicator is located substantially about the dispensing canister (e.g. the container of the canister and/or the canister closure means) and above the outlet means of the canister is particularly advantageous, because such an assembly is desirably robust."), 8:6-14 ("an annular mechanical dose indicator mounted circumferentially about the dispensing-canister and secured to an external surface of the dispensing canister. . . . Preferably the indicator is secured to an external surface of the container. In particular the indicator is desirably secured to the external surface of the container in the vicinity of the first edge of the indicator."), 8:18-19 ("The indicator is preferably attached to an eternal surface of the ferrule or the container, more preferably the container."), 9:19-20 ("an annular mechanical dose indicator arranged to be mounted circumferentially about the dispensing–canister and secured to an external surface of the dispensing canister"), 9:29-30 ("said annular mechanical dose indicator being arranged to be mounted circumferentially about the dispensing–canister and secured to an external surface of the dispensing canister"), 15:11-14 ("The indicator (50) is mounted circumferentially about the dispensing canister, such that the first edge (51) faces towards the closed end (2) of the container and the second edge (52) faces towards the outlet of the dispensing canister, so that at least the outlet member (5) of the canister extends beyond the second edge (52) of the indicator."), 15:24-28 ("As can be recognized in the preferred embodiment depicted in Fig. 4, the indicator (50) is secured directly to an external surface of the dispensing-canister (10), preferably an external surface of the container (1) (in particular an external surface of the side-wall (9) of the container), more preferably an external surface of the container in the vicinity of the first edge (51) of the indicator.")).

234.    Some of the embodiments of the annular system disclosed by the '514 Publication are dose indicators, while others are dose counters. DX-165 ('514 Publication, Title, Abstract, 19:11-13 ("The indicia may be suitably alphabetical, numerical, alphanumeric, or color symbols, providing a sequential count-up or count-down of dispensed doses or providing a more general indication, such as 'Full', 'Empty', etc."), Figure 5 (depicting a display dose information in increments of 10 rather than dose-by-dose)). The primary embodiment, and the one depicted in the figures, is a dose indicator. *See, e.g.*, DX-165 ('514 Publication, Figure 5). But in each of these embodiments, the dose counter or dose indicator is affixed to the canister, creating a canister-indicator assembly that moves together as a unit. *See, e.g.*, '514 Publication, 7:16-19. In the disclosed

embodiments of the '514 Publication, when the canister is pressed downwards, the canister-indicator assembly moves downwards as a unit, such that a pin that extends upwards from the canister housing enters the dose indicator at a location adjacent to the drive member of the dose indicator, and strikes the drive member on its side, such that the drive member is moved laterally (i.e., in a direction perpendicular to the movement of the canister) and can cause the dose indicator to increment.  DX-165 ('514 Publication, 25:14-30).

235.   The '514 Publication also depicts numerous different canister housing structures, alone or in combination with the annular dose counters or dose indicators it discloses.  For example, Figure 2 of the '514 Publication shows "vertical cross-sectional views of two exemplary, conventional adaptors; an adaptor for a press-and-breathe type inhaler and an adaptor for a breath actuated inhaler."  DX-165 ('514 Publication, 11:19-21, Figure 2).  These images do not show the integration of an annular dose counter or dose indicator, and are not the same as those configured for use with the annular dose indicator of the '514 Publication as depicted in, for example, Figures 8 and 10-12.  *See, e.g.*, DX-165 ('514 Publication, 12:8-22, 25:4-22, Figures 8, 10-12).  In particular, the POSA would have appreciated that the actuators of the '514 Publication are altered so that they contain an "actuation pin" extending upwardly from the base of the canister housing, which (when the dose counter and canister assembly moves downwards as the patient actuates the inhaler), passes through an opening in the dose indicator or counter so that it can interact with certain dose counter components.  DX-165 ('514 Publication, Figs. 8a, 8b, 10); *see also* DX-165 ('514 Publication, 25:17-27).  The POSA would have appreciated that this actuation pin is an important feature of the inhaler bodies that are utilized with the preferred embodiments of the '514 Publication's annular dose counters, and is a feature that distinguishes those inhaler bodies from inhaler bodies suitable for use with other dose counters.  The POSA would not have expected such inhaler bodies to be operable with other dose counters given the presence of the actuation pin.

236.   Of the inhaler bodies depicted in the '514 Publication, some have "inner wall canister support formations" in the form of "ribs," while many do not. *See, e.g.* DX-165 ('514 Publication, Figs. 2b, 3, 8b, and 10 (lacking inner wall canister support formations)).  The '514 Publication certainly does not suggest such ribs are a meaningful feature of the inhaler bodies it discloses—to the contrary, it mentions them only as an optional feature.  DX-165 ('514 Publication, 14:17-19 ("One or more ribs (27) may be positioned within the chamber of the cylindrical portion to aid in locating and supporting the container in the correct position.")).  The '514 Publication does not in any way connect inner wall canister

support formations with the accuracy and reliability of the dose counter it discloses, nor does it suggest that rocking of the canister could be caused by introduction of the dose counter—to the contrary, the dose counter of the '514 Publication is affixed to the canister, and the canister thus *cannot* rock due to the presence of the dose counter.

237. The '514 Publication does not identify any particular problems or areas for improvement with respect to the simplicity, reliability, expense, or obtrusiveness of the indicators and counters it discloses, despite recognizing each of those features as important characteristics of a dose counter. *See, e.g.*, DX-165 ('514 Publication, 3:29-31). Accordingly, if the POSA did select the embodiments of the '514 Publication as starting points for further development, nothing in the '514 Publication would have suggested to the POSA any particular directions for modification, and the POSA certainly would not have been motivated to alter the primary feature of those embodiments—namely, an annular dose counter or indicator affixed to the canister, which the '514 Publication touts as advantageous. *See, e.g.*, DX-165 ('514 Publication, 6:4-6 ("Annular dose indicators according to the invention are advantageous in that the indicator can be manufactured independent of the dispensing-canister and the adaptor to provide a self-contained assembly."), 6:20-23 ("Also because the indicators are positioned about the dispensing-canister, so that the first edge of indicator, which faces towards the closed end of the container, does not extend axially beyond the closed end of the container, a necessary increase in axial dimensions can be avoided, which is particularly advantageous in a portable inhaler."), 7:21-26 ("The provision of a dispensing-canister/indicator assembly as a self-contained or single unit in which the indicator is located substantially about the dispensing canister (e.g. the container of the canister and/or the canister closure means) and above the outlet means of the canister is particularly advantageous, because such an assembly is desirably robust. Furthermore such an assembly allows for desirable ease in handling and assembly of a complete dispenser."), 22:8-14 ("The indicator housing (60) is advantageously immovable in relation to the dispensing canister, enhancing overall robustness and handleability of the canister-indicator assembly.")).

238. Indeed, the '514 Publication notes this configuration to be particularly advantageous where the shape of the canister is constricted near the ferrule, because that vacant space can be used for dose counter components and the diameter of the annular counter can be minimized. DX-165 ('514 Publication, 6:25-7:7). The '514 Publication emphasizes the value of confining the shape of the annular dose indicator to the diameter of the canister because it recognizes concerns that larger dose counter or indicators would interfere with airflow or

require alterations to the shape of the canister housing—both problems it recognizes in connection with dose counters located in part below the medication canister. *See, e.g.*, DX-165 ('514 Publication, 3:29 (noting need for "unobstrusive" dose indicator), 7:3-5 ("Containing the dose indicator within the profile of the dispensing canister may also have an additional advantage of interfering less with the airflow through and within a dispenser or adaptor."), 7:9-14, 8:24-27, 23:4-6, 24:4-9), *see also* DX-165 ('514 Publication, 3:3-8 (describing "devices with dose counters located substantially beneath the container in a region near the outlet means of the dispensing means and near or around the support block of the adaptor" as "disadvantageous in that modification of the adaptor geometry, such as greater dimensions, in the critical region where atomization takes place is generally required.")).

239.    During prosecution of each of the Asserted Patents, the examiner considered the '514 Publication, but declined to find that it rendered unpatentable the Asserted Claims. *See, e.g.*, PTX-003 ('289 Patent, Foreign Patent Documents); PTX-004 ('587 Patent, Foreign Patent Documents); '156 Patent, Foreign Patent Documents; PTX-002 ('808 Patent, Foreign Patent Documents). The '514 Publication does not render invalid the Asserted Claims.

### 4.    The '021 Publication

240.    U.S. Patent Application Publication No. 2002/0047021 (the "'021 Publication") (DX-155) is entitled "Delivery System For a Medicament and Method For the Assembly Thereof" and names Richard Blacker, Daniel K. Engelbreth, and James N. Schmidt as inventors. The '021 Publication was before the examiner during prosecutions of each of the Asserted Patents.

241.    The '021 Publication identifies a number of disadvantages to the use of dose counter and dose indicators in MDIs, including that they may "include complex moving parts which can be difficult to assemble and expensive to manufacture," may suffer from inaccuracies, may require excessive space to accommodate numerous parts, may impede airflow and medication dispensing. '021 Publication, ¶ [0006]. The '021 Publication does *not* identify an inner wall canister support formation.

242.    During prosecution of each of the Asserted Patents, the examiner considered the '021 Publication, but declined to find that it rendered unpatentable the Asserted Claims. *See, e.g.*, '289 Patent, U.S. Patent Documents; '587 Patent, U.S. Patent Documents; '156 Patent, U.S. Patent Documents; '808 Patent, U.S.

Patent Documents.  The '021 Publication does not render invalid the Asserted Claims.

### 5.    The '998 Patent

243.   U.S. Design Patent No. D416,998 (the "'998 Patent") (DX-174) is entitled "Inhaler" and names Darren Hodson, Anthony Mayne, and Steven McGugan as inventors.

244.   The '988 Patent is a design patent—it consists of five pages containing eight drawings of an "ornamental design for an inhaler," but it does not explain the purpose, function or utility of any feature of these designs.  Indeed, aside from the cover page and figure numbers, it contains no text whatsoever.  The "Description" of the figures indicates that figures 1-8 show different perspectives of the same inhaler.

245.   The '998 Patent does not disclose or suggest "inner wall canister support formations" in the form of ribs.  Support rails were not "essentially ubiquitous" as of the priority date.  Certainly, the five images of a single inhaler design could not support such an inference (even when combined with five other, isolated references that contain figures that also show support rails).  The prior art and the body of marketed inhalers (both as of the priority date and today) are replete with far more than six examples of inhalers that do not contain support rails.

246.   Furthermore, the '998 Publication is completely silent as to the benefits, if any, of the ribs in the '995 Publication.  Certainly, the '998 Publication does not suggest that these ribs are intended to locate the container, and provide an annular passageway to draw air using the mouthpiece. The '998 Patent does not depict four equally spaced ribs—from the eight images it includes, only two structures that correspond to "ribs" are discernable.  It is not clear that Figure 6 discloses "inner wall canister support formations," let alone whether they "extend[] longitudinally along an inside surface of the main body," nor whether they contain one or more steps, nor whether they meet any of a number of other structural limitations on the inner wall canister support formations present in various Asserted Claims.

247.   There is no canister and no valve depicted in the '998 Patent, and it is not at all apparent from its disclosure—which contains absolutely no information about the material of which the inhaler depicted is made, nor the dimensions of any of its components—that the "ribs" are configured to prevent accidental opening of

the valve or unwanted gassing of the canister, nor to facilitate insertion of the (undepicted) canister, nor aid in control of tolerances, allowing for more accurate counting when dose counters are included in the device. The POSA would not have interpreted the disclosure of the '998 Patent to teach such things, and the disclosure of the '998 Patent would not have given the POSA reason to include rails like those depicted in Figure 6 in an altogether different inhaler for any of these reasons (let alone an inhaler that included a dose counter). Notably, the '998 patent does not depict or otherwise suggest the presence of a dose counter, and thus cannot suggest anything at all about the relationship between any inner wall canister support formations and any features of an undisclosed dose counter.

### 6.    The '950 Publication

248.   U.S. Patent Application Publication No. 2002/0078950 (the "'950 Publication") (DX-159) is entitled "Reservoir Pressure System For Medicament Inhaler" and lists David O'Leary as the inventor. The '950 Publication was before the examiner during prosecution of each of the Asserted Patents.

249.   The '950 Publication does not anticipate and/or render obvious the '808 Patent. The '950 Publication fails to teach, suggest, or disclose a regulator that modulates the motion of the counter display to incremental movements. Nor does the '950 Publication provide any reason to modify a dose counter so that it regulates the counter display to incremental movements. As such, the claimed inventions in the '808 Patent is neither anticipated nor rendered obvious in light of the '950 Publication.

250.   During prosecution of each of the Asserted Patents, the examiner considered the '950 Publication. *See, e.g.*, PTX-003 ('289 Patent, U.S. Patent Documents); PTX-004 ('587 Patent, U.S. Patent Documents); '156 Patent, U.S. Patent Documents; PTX-002 ('808 Patent, U.S. Patent Documents). The examiner declined to find that the '950 Publication rendered unpatentable the '289, '587, or '156 Patents. With respect to the '808 Patent, the Patent Trial and Appeal Board ("Board") determined that the '950 Publication did not render invalid the '808 Patent. *See* PTX-006 ('808 Patent File History, Board Decision (Sept. 20, 2019)). Among other things, the Board found that the evidence did "not adequately support the . . . determination that [the '950 Publication's] device is capable" of regulating the motion of the counter display to incremental movements. PTX-006 ('808 Patent File History, Board Decision (Sept. 20, 2019)). In addition, the Board determined that the POSA would not have "reached a regulator capable of regulating motion in the manner claim 1 [of the '808 Patent] recites based upon the teachings of [the '950 Publication] or otherwise." PTX-006 ('808 Patent File

History, Board Decision (Sept. 20, 2019)).  The '950 Publication does not render invalid the Asserted Claims.

251.  Notably, the '950 Publication, despite disclosing a dose counter and a canister housing, does not once mention "inner wall canister support formations" nor any structure that could be an "inner wall canister support formation."  This omission reinforces the conclusion that such features were not ubiquitous in the prior art, nor had the prior art appreciated that the location of inner wall canister support formations relative to features of the dose counter could improve counter accuracy.

### 7.    The '008 Publication

252.  U.S. Patent Application Publication 2006/0289008 (the "'008 Publication") (DX-153) is entitled "Dispenser with Doses' Counter" and names Paul Kenneth Rand, Peter John Brand, and James William Godfrey as inventors.

253.  The '008 Publication does not disclose a canister housing design that includes "inner wall canister support formations" in the form of ribs, and "inner wall canister support formations" not "were essentially ubiquitously used in MDIs."  In addition, the '008 Publication does not disclose support rails with "a step formed thereon," and the POSA would not have been motivated to select or modify ribs to include tapered or stepped designs to aid in the insertion and removal of the canister, so as to avoid angled insertion, which may cause unwanted gassing of the valve, and to improve tolerance control, fit, and function.

254.  The prior art and the body of marketed inhalers (both as of the priority date and today) are replete with examples of inhalers that do not contain support rails.

255.  Furthermore, the '008 Publication does not suggest that "inner wall canister support formations" are a meaningful aspect of its disclosure.  There are four figures in the '008 Publication that depict inhaler bodies—only one of these four depict features that could be interpreted as "inner wall canister support formations."  *Compare* DX-153 ('008 Publication, Figs. 1, 8 9) *with* DX-153 ('008 Publication, Fig. 7).  At best, the '008 Publication describes "inner wall canister support formations" as an optional feature of inhaler bodies.  *See* DX-153 ('008 Publication, ¶ [0045] (explaining with respect to Figure 1 that "[s]pacer ribs (not shown) may be provided inside the housing to hold the external surface of the container 2 spaced from the internal surface of the housing 1.")).  The fact that the '008 Publication either omits spacer rails from its images or fails to label them

when included would have suggested to the POSA that inner wall canister support formations had no bearing on dose counter positioning or accuracy.

256.   The only purpose the '008 Publication identifies for support rails is to "hold the external surface of the container . . . spaced from the internal surface of the housing."  DX-153 ('008 Publication, ¶ [0045]).  This purpose is utterly unrelated to the dose counter that features prominently throughout the rest of the '008 Publication's disclosure, and would not have suggested to the POSA seeking to introduce a dose counter or dose indicator into an MDI that support rails were a significant feature of canister housing design, let alone that their positioning should be considered in connection with the placement of a dose counter.  Indeed, there is no image in the '008 Publication that depicts a "spacer rib" in the same inhaler as a dose counter, let alone makes clear that a particular configuration of spacer rails and dose counter features is important, and there is no description in the '008 Publication that connects the presence or absence of spacer ribs with the presence or absence of a dose counter.  It is plain that the inventors listed on the face of the '008 Publication did not appreciate that the introduction of a dose counter could introduce canister rocking by virtue of the canister's interaction with an actuation member of the dose counter, nor that such rocking could have a negative impact on dose counter performance.  That realization was made for the first time by the named inventors of the Asserted Patents.

257.   The '008 Publication, moreover, does not support the suggestion that the inclusion of a dose counter or dose indicator was a feature shared by nearly all modern MDIs.  To the contrary, the availability of prior art references allegedly teaching the use of dose counters or indicators in MDIs as of the priority date, in combination with the dearth of marketed MDIs containing such dose counters as of the priority date, amply demonstrates the difficulty in designing such devices.

## 8.    The '822 Patent

258.   U.S. Patent No. 4,817,822 (the "'822 Patent") (DX-137) is entitled "Indicating Device" and names Paul K. Rand, Carole A. Osterweil, and Robert E. Newell as inventors.

259.   The '822 Patent discloses an "indicating device" for use in an inhaler. In particular, it discloses dose indicator embodiments as preferable.  *See, e.g.*, DX-137 ('822 Patent, 15:17-34 ("Any suitable markings may be employed, though preferably not letters, numbers or like characters which require to be read.  For example, the rack can be marked with different colours of different portions so that, for example, when a red portion is displayed through the window, the patient

will know that a new aerosol container must be obtained. In other alternatives, however, the indicator rack may be marked with numbers to indicate the proportion of the contents still remaining or the number of doses dispensed from or remaining in the aerosol container. In a convenient arrangement, the markings on the indicator rack indicate that the aerosol container is empty after a predetermined number of doses, for example 200, have been dispensed, this predetermined number being less than the number of doses with which the container has been charged, say 220, so as to allow for a margin of error.")).

260.   The '822 Patent does not disclose or suggest that "inner wall canister support formations" were essentially ubiquitously used in MDIs. The '822 Publication also does not disclose support rails with "a step formed thereon," and the POSA would not have been motivated to select or modify ribs to include tapered or stepped designs to aid in the insertion and removal of the canister, so as to avoid angled insertion, which may cause unwanted gassing of the valve, and to improve tolerance control, fit, and function.

261.   The prior art and the body of marketed inhalers (both as of the priority date and today) are replete with examples of inhalers that do not contain support rails.

262.   Furthermore, the '822 Patent does not suggest that "inner wall canister support formations" are a meaningful aspect of its disclosure. There are eight figures in the '822 Patent that depict inhaler bodies and aspects of the dose indicating mechanism described by the '822 Patent. None of these eight Figures show inner wall canister support formations in the inhaler bodies. Indeed, the one mention of "spacer ribs" in the '822 Patent states that such ribs are not shown in Figure 1. DX-137 ('822 Patent, 3:11-14 ("Spacer ribs (not shown) may be provided inside the housing to hold the external surface of the container 2 spaced from the internal surface of the housing 1.")). The fact that the '822 Patent omits spacer rails from its images and describes them only as optional would have suggested to the POSA that inner wall canister support formations had no bearing on dose indicator or counter positioning or accuracy.

263.   The only purpose the '822 Patent identifies for support rails is to "hold the external surface of the container . . . spaced from the internal surface of the housing." DX-137 ('822 Patent, 3:11-14). This purpose is utterly unrelated to the dose indicator/counter that features prominently throughout the rest of the '822 Patent's disclosure, and would not have suggested to the POSA seeking to introduce a dose counter or dose indicator into an MDI that support rails were a significant feature of canister housing design, let alone that their positioning should

be considered in connection with the placement of a dose indicator or dose counter. There is no image in the '822 Patent that depicts a "spacer rib" in the same inhaler as a dose indicator or dose counter, let alone any disclosure that makes clear that a particular configuration of spacer rails and dose indicator or counter features is important, and there is no description in the '822 Patent that connects the presence or absence of spacer ribs with the presence or absence of a dose indicator or counter. To the contrary, it is plain that the inventors of the '822 Patent did not appreciate that the introduction of a dose indicator or counter could introduce canister rocking by virtue of the canister's interaction with an actuation member of the dose indicator or counter, nor that such rocking could have a negative impact on dose indicator or counter performance. That realization was made for the first time by the named inventors of the Asserted Patents.

264.    The '822 Patent does not support the suggestion that the inclusion of a dose counter or dose indicator was a feature shared by nearly all modern MDIs. The identification of a handful of prior art references, including the '822 Patent, that allegedly disclose the incorporation of a dose counter or dose indicator into an MDI does not suggest that such features were ubiquitous, and it incorrectly conflates dose indicators with dose counters, the former of which were more common. To the contrary, the availability of prior art references allegedly teaching the use of dose counters or indicators in MDIs as of the priority date, in combination with the dearth of marketed MDIs containing such dose counters as of the priority date, amply demonstrates the difficulty in designing such devices.

265.    The '822 Patent does not support a distinction between "tape-based dose counters" and "gear-based dose counters." This distinction is not meaningful and the POSA would not have viewed mechanical dose counters and dose indicators as falling into these two distinct camps. Rather, the POSA would have understood that mechanical dose counters, like other mechanical devices, used a variety of mechanisms to display information and that those mechanisms could be adapted for use in a variety of different inhalation products.

## 9.    The '066 Patent

266.    U.S. Patent No. 7,407,066 (the "'066 Patent") (DX-138) is entitled "Dosage Counting Devices" and lists Tianhong Ouyang and Geoff Brace as inventors. Contrary to its title, the embodiment depicted in the Figures of the '066 Patent is a dose indicator, not a dose counter, as it depicts dose information only in increments of 10, not dose-by-dose. *See, e.g.,* DX-138 ('066 Patent, 2:49-55, Figure 2 (showing "marked indicia 45 in the form of numerals" and listing only 50, 40, 30, 20, and 10)).

267.   Lines 32-34 of column 2 of the '066 Patent does not support the assertion that a series of ribs have been a common feature in MDI inhalers for decades.  The '066 Patent simply provides one example of a canister housing that contains ribs—it does not suggest that all or even most MDIs have included ribs for decades.  Support rails were not "essentially ubiquitous" as of the priority date. The prior art and the body of marketed inhalers (both as of the priority date and today) are replete with examples of inhalers that do not contain support rails.

268.   The '066 Patent does not support the suggestion that the inclusion of a dose counter or dose indicator was a feature shared by nearly all modern MDIs. The identification of a handful of prior art references, including the '066 Patent, that allegedly disclose the incorporation of a dose counter or dose indicator into an MDI does not suggest that such features were ubiquitous, and it incorrectly conflates dose indicators with dose counters, the former of which were more common.  To the contrary, the availability of prior art references allegedly teaching the use of dose counters or indicators in MDIs as of the priority date, in combination with the dearth of marketed MDIs containing such dose counters as of the priority date, amply demonstrates the difficulty in designing such devices.

269.   The '066 Patent dos not support an alleged distinction between tape-based dose counters and gear-based dose counters. This distinction is not meaningful and the POSA would not have viewed mechanical dose counters and dose indicators as falling into two distinct camps.  Rather, the POSA would have understood that mechanical dose counters, like other mechanical devices, used a variety of mechanisms to display information and that those mechanisms could be adapted for use in a variety of different inhalation products.

### 10.    The '627 Patent

270.   U.S. Patent No. 6,446,627 (the "'627 Patent") (DX-148) is entitled "Inhaler Dose Counter" and lists Nicholas John Bowman, Michael John Holroyd, Costaninos Panayi, and William Richard Treneman as inventors.  The '627 Patent further lists Norton Healthcare Limited as the assignee.

271.   The '627 Patent does not disclose the inventions of the Asserted Claims.  For example, despite discussing features of a canister housing (referred to in the '627 Patent as an "actuator body"), the '627 Patent does not disclose a canister housing containing "inner wall canister support formations," let alone the location of any "inner wall canister support formation" relative to the actuation member of a dose counter.  To the contrary, the '627 Patent's disclosure of a dose counter and a canister housing without discussing any inner wall canister support

formation is consistent with the conclusion that the POSA would not have understood such features to be ubiquitous in the prior art, and is consistent with the conclusion that the POSA would not have appreciated, based on prior art teachings, that the location of inner wall canister support formations relative to features of the dose counter could improve counter accuracy. The '627 Patent also fails to disclose additional aspects of the Asserted Claims, including but not limited to the precise location of the dose counter relative to a datum plane passing through a shoulder of the valve stem block, or a regulator, as recited in the Asserted Claims.

### 11.    The '668 Patent

272.    U.S. Patent No. 8,584,668 (the "'668 Patent") (DX-139) is entitled "Inhalation Device" and lists Darren Hodson and Jorgen Rasmussen as inventors.

273.    The '668 Patent does not support the argument that "ribs" were essentially ubiquitously used in MDIs. Ribs (or any variation of "inner wall canister support formations") were not ubiquitous in inhalers as of 2008, nor are they ubiquitous today.

274.    Additionally, the '668 Patent does not disclose the presence of "inner wall canister support formations." Nothing in Figure 9 shows features that are "inner wall canister support formations." The text in the Patent merely states that "Fig. 9 illustrates a vertical sectional view (along section B-B) of the inhaler of Fig. 1." DX-139 ('668 Patent, 4:9-10). This description does not provide any clarity as to the features in Figure 9. Certainly, it does not suggest the importance of inclusion of ribs, nor that the POSA would have been motivated to select or modify ribs to include tapered or stepped designs to aid in the insertion and removal of the canister, so as to avoid angled insertion, which may cause unwanted gassing of the valve, and to improve tolerance control, fit, and function.

275.    Moreover, the '668 Patent does not describe (in Figure 9 or anywhere else) the location of the features in Figure 9 relative to the actuation member of a dose counter or even a dose indicator. To the contrary, the '668 Patent's disclosure of a canister housing without discussing any inner wall canister support formation is consistent with the conclusion that the POSA would not have understood such features to be ubiquitous in MDI inhalers.

### 12.    The '260 Publication

276.    International Publication No. WO2004/060260 (the "'260 Publication") (DX-172) is entitled "Drug Delivery System with Vented Mouthpiece" and names Michael L. King as the inventor.

277.    The focus of the '260 Publication is on a "vented mouthpiece" that "provide[s] an air flow channel . . . to facilitate intake" of a medication. DX-172 ('260 Publication, Abstract). The '260 Publication recognizes that ordinarily, airflow for medication intake in an MDI comes through the device itself. DX-172 ('260 Publication, 1:30-2:7). However, the '260 Publication recognizes that there may be instances in which there is a reason to restrict airflow through the device, for instance, to enclose internal inhaler components. DX-172 ('260 Publication, 1:30-2:7). The mouthpiece of the '260 Publication is designed to facilitate airflow under such circumstances. DX-172 ('260 Publication, 1:30-2:7).

278.    The '260 Publication would have confirmed the POSA's understanding that "[a]irflow through an inhalation device may have the potential to influence the plume and thus the deposition profile of the dose of medicament. Airflow in the dose delivery passage of an inhaler, intentionally or unintentionally typically interacts with the plume during dose delivery." DX-172 ('260 Publication, 2:22-25). Accordingly, the POSA would have understood that alterations to a canister housing would have the potential to alter airflow and thus alter plume/medication deposition profile—which in turn would bear on the efficacy of the medication being administered. Thus, the disclosure of the '260 Publication would have reinforced for the POSA the desire to avoid altering the interior of the canister housing when possible.

279.    None of the features in Figure 1c of the '260 Publication are "inner wall canister support formations." Moreover, the '260 Publication does not support the proposition that "ribs" were essentially ubiquitously used in MDIs. Ribs (or any variation of "inner wall canister support formations") were not ubiquitous in inhalers as of the priority date, nor are they ubiquitous today.

280.    Even if one were to assume that there are "inner wall canister support formations" within the meaning of the '289 and '587 Patents in the '260 Publication, the '260 Publication does not disclose a dose counter or indicator, and so does not describe (in Figure 1c or anywhere else) the location of the support formations relative to the actuation member of a dose counter or dose indicator. To the contrary, the '260 Publication's failure to mention any inner wall canister support formations is consistent with the conclusion that the POSA would not have understood such features to be ubiquitous in MDI inhalers. Certainly, the '260 Publication—the text of which is completely silent regarding inner wall canister

support formations–would not have provided the POSA with a reason to include inner wall canister support formations in a canister housing for use with a dose counter, let alone suggested that any particular location of an inner wall canister support formation relative to a dose counter component would be advantageous.

### 13.    The '191 Publication

281.    U.S. Patent Application Publication No. 2005/0087191 (the "'191 Publication") (DX-163) is entitled "Indicating Device with Warning Dosage Indicator" and lists Robert Morton and Winston Z. Lu as inventors.  The '191 Publication was before the examiner during prosecution of each of the Asserted Patents.

282.    The '191 Publication does not describe "common structural traits" of MDIs.  Many inhalation aerosol devices, including MDIs, did not include any dose indicating mechanism at all; and many of those that did included dose indicators rather than dose counters—a design choice resulting from the difficulty of developing a dose counter with the necessary qualities.

283.    Notably, the '191 Publication teaches configurations of dose counters that differ substantially from those claimed—including because the first embodiment described by the '191 Publication involves a dose counter affixed to the flat portion of the canister.  Below is an exemplary figure showing such a dose counter from the '191 Publication:



284.    The POSA would have had reason to pursue a dose counter in this configuration rather than the dose counters of the claimed invention.

99

285.   In addition, the '191 Publication recognizes the need to avoid disrupting inhaler airflow with bulky dose counter components.  In an embodiment of the '191 Publication that is not mounted on the flat portion of the medication canister, the '191 Publication emphasizes the "relatively small diameter" of certain features, which permit it to be "easily mounted within small spaces within the housing . . . such that the assembly does not interfere with the dispensing of the medicament from the orifice or with the airflow generated by the patient in administering the medicament."  DX-163 ('191 Publication, ¶¶ [0275], [0285]). The '191 Publication would have confirmed for the POSA the relative difficulty in developing a dose counter situated partially below the canister, as compared with one situated on top of the canister housing, since the former is subject to greater restrictions on size and raises concerns regarding airflow changes.  Accordingly, the POSA evaluating the '191 Publication would have read it to teach away from the claimed invention and toward the use of "top-mounted" dose counting devices.

286.   In addition, Figures 31 and 32 of the '191 Publication show a dose counter affixed to the flat portion of the medication canister and depict a canister housing without any inner wall canister support formations.  DX-163 ('191 Publication, Figure 31, 32).  This is consistent with the conclusion that the POSA would not have understood such features to be ubiquitous in MDI inhalers, nor would the POSA have appreciated as of the priority date that particular configurations of inner wall canister support formations could have advantages for counting accuracy and robustness.

287.   During prosecution of each of the Asserted Patents, the examiner considered the '191 Publication, but declined to find that it rendered unpatentable the Asserted Claims.  *See, e.g.*, PTX-003 ('289 Patent, U.S. Patent Documents); PTX-004 ('587 Patent, U.S. Patent Documents); '156 Patent, U.S. Patent Documents; PTX-002 ('808 Patent, U.S. Patent Documents).  The '191 Publication does not render invalid the Asserted Claims.

### 14.    The '712 Publication

288.   WO 2007/103712 (the "'712 Publication") (DX-164) is entitled Method and Apparatus for Metered Dose Dispensing" and lists Richard D. Brewer, Peter D. Hodson, Graham Purkins, and David J. Steven as inventors.  3M Innovative Properties Company is listed as the Applicant.

289.   The '712 Publication does not disclose "common structural traits" of MDIs.  Many inhalation aerosol devices, including MDIs, did not include any dose

indicating mechanism at all; and many of those that did included dose indicators rather than dose counters—a design choice resulting from the difficulty of developing a dose counter with the necessary qualities.

290.   Notably, the '712 Publication teaches away from the claimed invention—it teaches the mounting of dose counting/indicating devices on either end of the canister housing, rather than partially within the housing for operation by the medicament canister. *See, e.g.*, DX-164 ('712 Publication, 3:6-24, 18:17-30). The '721 Publication notes the complicated interrelationship between canister and actuator that is critical to the success of MDIs, DX-164 ('712 Publication, 1:29-33), and goes on to explain that "a common problem with other actuator mounted (internal) dose counters" is that they "interfere with the emerging medicament spray," DX-164 ('712 Publication, 18:28-30).

291.   The '712 Publication does not support an alleged distinction between "tape-based dose counters" and "gear-based dose counters." This distinction is not meaningful and the POSA would not have viewed mechanical dose counters and dose indicators as falling into these two distinct camps. Rather, the POSA would have understood that mechanical dose counters, like other mechanical devices, used a variety of mechanisms to display information and that those mechanisms could be adapted for use in a variety of different inhalation products.

### 15.    The '139 Publication

292.   EP 1 369 139 A1 (the "'139 Publication") (DX-166) is entitled "Dose Indicators and Dispensing Canister-Indicator Assemblies" and lists Eduard Marx as an inventor. 3M Innovative Properties Company is listed as the Applicant.

293.   The '139 Publication does not disclose "common structural traits" of MDIs. Many inhalation aerosol devices, including MDIs, did not include any dose indicating mechanism at all; and many of those that did included dose indicators rather than dose counters—a design choice resulting from the difficulty of developing a dose counter with the necessary qualities. In the case of the '139 Publication, its primary embodiment is a dose indicator, not a dose counter. *See, e.g.* DX-166 ('139 Publication, Fig. 5).

294.   Notably, the '139 Publication teaches away from the claimed invention—it teaches the mounting of dose counting/indicating devices onto the canister, rather than devices that are moveable relative to the canister with actuation members that are part of the dose counter and that extend into the canister housing, *see, e.g.*, DX-166 ('139 Publication, ¶¶ [0021], [0022], [0026],

[0067], [0076]), and it reinforces that other dose counter configurations—such as ones that are not confined to the diameter of the medication canister—could interfere with airflow or require alterations to the shape of the canister housing. *See, e.g.*, DX-166 ('139 Publication, ¶¶ [0007], [0012], [0023]).

295.    The '139 Patent does not support an alleged distinction between "tape-based dose counters" and "gear-based dose counters." This distinction is not meaningful and the POSA would not have viewed mechanical dose counters and dose indicators as falling into these two distinct camps. Rather, the POSA would have understood that mechanical dose counters, like other mechanical devices, used a variety of mechanisms to display information and that those mechanisms could be adapted for use in a variety of different inhalation products.

### 16.    GB '489

296.    U.K. Patent Application GB 2,320,489 ("GB '489") (DX-167) is entitled "Inhaler dose counter" and lists Nicholas John Bowman, Constantinos Panayi, William Richard Treneman, and Michael John Holroyd as inventors. GB '489 further lists Norton Healthcare Limited as an applicant. GB '489 was before the examiner during prosecution of each of the Asserted Patents.

297.    GB '489 does not disclose the inventions of the Asserted Claims. For example, despite discussing features of a canister housing (referred to in GB '489 as an "actuator body"), GB '489 does not disclose a canister housing containing "inner wall canister support formations," let alone the location of any "inner wall canister support formation" relative to the actuation member of a dose counter. To the contrary, GB '489's disclosure of a dose counter and a canister housing without discussing any inner wall canister support formation is consistent with the conclusion that the POSA would not have understood such features to be ubiquitous in the prior art, and is consistent with the conclusion that the POSA would not have appreciated, based on prior art teachings, that the location of inner wall canister support formations relative to features of the dose counter could improve counter accuracy. GB '489 also fails to disclose additional aspects of the Asserted Claims, including but not limited to the precise location of the dose counter relative to a datum plane passing through a shoulder of the valve stem block, or a regulator, as recited in the Asserted Claims.

298.    During prosecution of each of the Asserted Patents, the examiner considered GB '489, but declined to find that it rendered unpatentable the Asserted Claims. *See, e.g.*, PTX-003 ('289 Patent, Foreign Patent Documents); PTX-004 ('587 Patent, Foreign Patent Documents);'156 Patent, Foreign Patent Documents;

PTX-002 ('808 Patent, Foreign Patent Documents). GB '489 does not render invalid the Asserted Claims.

### 17. The '558 Publication

299. U.S. Patent Application Publication No. 2005/0209558 (the "'558 Publication") (DX-152) is entitled "Dose Indicators and Dispensing Canister-Indicator Assemblies" and lists Eduard Marx as an inventor. 3M Innovative Properties Company is listed as the Applicant.

300. The '558 Publication does not disclose "common structural traits" of MDIs. Many inhalation aerosol devices, including MDIs, did not include any dose indicating mechanism at all; and many of those that did included dose indicators rather than dose counters—a design choice resulting from the difficulty of developing a dose counter with the necessary qualities. In the case of the '558 Publication, its primary embodiment is a dose indicator, not a dose counter. *See, e.g.* DX-152 ('558 Publication, Fig. 5).

301. Notably, the '558 Publication teaches away from the claimed invention—it teaches the mounting of dose counting/indicating devices onto the canister, rather than devices that are moveable relative to the canister with actuation members that are part of the dose counter and that extend into the canister housing, and it reinforces that other dose counter configurations—such as ones that are not confined to the diameter of the medication canister—could interfere with airflow or require alterations to the shape of the canister housing. *See, e.g.,* DX-152 ('558 Publication, ¶¶ [0007], [0025], [0027], [0027], [0030], [0044], [0088], [0096]).

302. The '558 Patent does not support an alleged distinction between "tape-based dose counters" and "gear-based dose counters." This distinction is not meaningful and the POSA would not have viewed mechanical dose counters and dose indicators as falling into these two distinct camps. Rather, the POSA would have understood that mechanical dose counters, like other mechanical devices, used a variety of mechanisms to display information and that those mechanisms could be adapted for use in a variety of different inhalation products.

### 18. The '755 Patent

303. United Kingdom Patent No. GB 994,755 (the "'755 Patent") (DX-168) is entitled "Aerosol Dispensing Apparatus."

304.   The '755 Patent does not disclose "common structural traits" of MDIs.  Many inhalation aerosol devices, including MDIs, did not include any dose indicating mechanism at all; and many of those that did included dose indicators rather than dose counters—a design choice resulting from the difficulty of developing a dose counter with the necessary qualities.  The '755 Patent does not disclose any dose counting or indicating device whatsoever.

305.   The '755 Patent does not suggest that "a series of 'ribs'" in the canister housing "has been common in MDI inhalers for decades."  The '755 Patent simply provides one example—and arguably the first example—of a canister housing that contains ribs.  See, e.g. PTX-099 (Lewis 2007, at 236); PTX (CIPLA-BDI_0184749).  The '755 Patent does not suggest that all or even most MDIs have included ribs for decades.  Support rails were not "essentially ubiquitous" as of the priority date.  The prior art and the body of marketed inhalers (both as of the priority date and today) are replete with examples of inhalers that do not contain support rails.

306.   Notably, the '755 Patent does not disclose a dose counter, as every one of the Asserted Claims requires.

### 19.   The '159 Publication

307.   European Patent Application No. 1 321 159 A1 (the "'159 Publication") (DX-169) is entitled "Pressurized Metered Dose Inhaler (pMDI) Actuators With Laser Drilled Orifices" and lists Rebecca Jayne Davies as an inventor.  Chiesi Farmaceutici S.p.A. is listed as the Applicant.

308.   The '159 Publication explains that "[t]he shape and direction of the discharge plume and the dispersion of the droplets or particles therein are critical to effective administration of a controlled dose to the patient.'"  DX-169 ('159 Publication, ¶ [0015]).  This statement, and the '159 Publication's effort to optimize canister housing features to control the discharge plume would have reinforced for the POSA the importance of actuator features in effective dose delivery.  In particular, the POSA would have been wary of making alterations to existing actuators given the concern that such changes could result in alteration in effective administration of the drug to the patient.

309.   The '159 Publication's Figure 3 does not suggest that "a series of 'ribs'" in the canister housing "has been common in MDI inhalers for decades." The '159 Publication simply provides one example of a canister housing that contains ribs.  The '159 Publication does not suggest (alone or in combination with

the other references Defendants have selected to demonstrate the presence of ribs) that all or even most MDIs have included ribs for decades. The prior art and the body of marketed inhalers (both as of the priority date and today) are replete with examples of inhalers that do not contain support rails.

310. The '159 Publication does not feature inner wall canister support formations as a core element of its disclosure. Rather, the '159 Publication is primarily directed to actuators (i.e., inhaler bodies) with laser drilled orifices. *See, e.g.*, DX-169 ('159 Publication, ¶ [0001]). The '159 Publication states only that a canister can be inserted into an actuator "and located by means of ribs 11." DX-169 ('159 Publication, ¶ [0012]). This disclosure would not have provided the POSA a reason to include ribs in a canister housing designed to contain a dose counter, and certainly would not have suggested to the POSA that such ribs would be useful in preventing rocking of the canister that could adversely impact counter accuracy and robustness.

311. Notably, the '159 Patent does not disclose a dose counter, as every one of the Asserted Claims requires.

### 20. The '965 Publication

312. International Publication No. WO 2006/126965 (the "'965 Publication") (DX-170) is entitled "Dose Counter Device for Inhaler" and lists Lennart Brunnberg, Stephan Olson, and Anders Wieselblad as inventors.

313. The '965 Publication does not disclose "common structural traits" of MDIs. Many inhalation aerosol devices, including MDIs, did not include any dose indicating mechanism at all; and many of those that did included dose indicators rather than dose counters—a design choice resulting from the difficulty of developing a dose counter with the necessary qualities.

314. Notably, the '965 Publication teaches away from many of those limitations. For example, the '965 Publication states that certain prior art dose counters relied on the displacement of the medicament canister to determine whether the medicament canister had delivered a dose. However, the '965 Publication states that such displacement-driven dose counters suffered from dose counting errors because of "manufacturing variations" in the medicament canisters or dose counters and the need to control for spring force and other complex mechanisms. *See* DX-170 ('965 Publication, 1:11-2:31). Thus, the '965 Publication describes dose counters mounted on the "distal end of the inhaler" (i.e.,

on top of the inhaler from the perspective of the patient using the device). *See* DX-170 ('965 Publication, 3:1-24, Figs. 1-20, Claim 1).

315.   Additionally, consistent with the prior art as a whole, the '965 Publication emphasizes the dangers of undercounting relative to overcounting. Thus, the '965 Publication states: "[F]rom the users' point of view, it is better to have at hand a dose counter device that occasionally may register a dose delivery even though no dose was in fact delivered, than to have it the other way around. In this way, the user cannot unintentionally run out of medicament."  DX-170 ('965 Publication, 2:9-19).

316.   Notably, the '965 Publication does not disclose any embodiments comprising a canister housing that has inner wall canister support formations (such as support rails) and a dose counter.  The '965 Publication's disclosure of a dose counter and a canister housing without discussing any inner wall canister support formation is consistent with the conclusion that the POSA would not have understood such features to be ubiquitous in the prior art, and is consistent with the conclusion that the POSA would not have appreciated, based on prior art teachings, that the location of inner wall canister support formations relative to features of the dose counter could improve counter accuracy.  The '965 Publication also fails to disclose additional aspects of the Asserted Claims, including but not limited to the precise location of the dose counter relative to a datum plane passing through a shoulder of the valve stem block, or a regulator, as recited in the Asserted Claims.

### 21.    The '817 Publication

317.   U.S. Patent Application Publication No. 2007/0277817 (the "'817 Publication") (DX-154) is entitled "Pressurized Metered Dose Inhaler System" and lists Kevin Innocenzi as the inventor.

318.   The '817 Publication does not describe "common structural traits" of MDIs.  Many inhalation aerosol devices, including MDIs, did not include any dose indicating mechanism at all; and many of those that did included dose indicators rather than dose counters—a design choice resulting from the difficulty of developing a dose counter with the necessary qualities.

319.   Notably, the '817 Publication teaches away from many of those limitations.  For example, the '817 Publication discloses a dose counter that "is mounted in such a way that it does not interfere with actuating the metered dose valve assembly," DX-154 ('817 Publication, ¶ [0025], Figs. 2-4), and depicts an

actuator pawl that is located well above the valve stem block, DX-154 ('817 Publication, Figs. 2-4).

320.   Notably, the '817 Publication does not disclose any embodiments comprising a canister housing that has inner wall canister support formations (such as support rails) and a dose counter.  The '817 Publication's disclosure of a dose counter and a canister housing without discussing any inner wall canister support formation is consistent with the conclusion that the POSA would not have understood such features to be ubiquitous in the prior art, and is consistent with the conclusion that the POSA would not have appreciated, based on prior art teachings, that the location of inner wall canister support formations relative to features of the dose counter could improve counter accuracy.  The '817 Publication also fails to disclose additional aspects of the Asserted Claims, including but not limited to the precise location of the dose counter relative to a datum plane passing through a shoulder of a valve stem block, or a regulator, as recited in the Asserted Claims.

## 22.   The '044 Publication

321.   International Publication No. WO 2005/113044 (the "044 Publication") (DX-171) is entitled "Dispensing Apparatus With Dosage Counter" and lists Simon Ingram, Nick Campling, and Duncan Bradley as inventors/applicants. The '044 Publication further lists Bespak PLC as an applicant.

322.   Notably, the '044 Publication teaches away from many of those limitations.  For example, the '044 Publication notes disadvantages with certain dose indicators before its publication that highlight the complexity of dose indicator (and dose counter).  In particular, the '044 Publication explains that one device "suffered from reliability of operation of the medication dispenser and the pawls, for example.  If the pawls are too stiff relative to the internal spring bias then the medication dispenser may dispense a dose before the pawls flex sufficiently to rotate the indicator wheel; a dose would be delivered without the counter registering it.  Alternatively, if the pawls are too flexible relative to the internal spring bias then the pawls may flex sufficiently to rotate the indicator wheel before the medication dispenser has dispensed a dose; a dose would be registered by the counter but not actually delivered." DX-171 ('044 Publication, at 1:21-2:10).  This disclosure would have reinforced to the POSA the difficulties in designing a robust and accurate counter, and taught away from the pawl-based system of the Asserted Claims.  In an effort to avoid that disadvantage, the '044 Publication teaches an annular counting mechanism that is "preferably . . . located

*around* the container." DX-171 ('044 Publication, 6:23-7:2 (emphasis added)). And as is clear from Figures 2, 3, and 9 of the '044 Publication, the dose counter of the '044 Publication is located well above the valve stem block.

323. The '044 Publication does not disclose any embodiments comprising a canister housing that has inner wall canister support formations (such as support rails) and a dose counter. The '044 Publication's disclosure of a dose counter and a canister housing without discussing any inner wall canister support formation is consistent with the conclusion that the POSA would not have understood such features to be ubiquitous in the prior art, and is consistent with conclusion that the POSA would not have appreciated, based on prior art teachings, that the location of inner wall canister support formations relative to features of the dose counter could improve counter accuracy. The '044 Publication also fails to disclose additional aspects of the Asserted Claims, including but not limited to a regulator as recited in the Asserted Claims.

### 23. Lewis

324. "Metered-Dose Inhalers: Actuators Old and New" ("Lewis") (PTX-099) is an article written by Dr. David Lewis that was published in the journal Expert Opinions on Drug Delivery in 2007. As the title of the article reflects, the intent of the article was to convey the importance of actuator design on the function of MDIs.

325. This article does not support the proposition that support rails were "essentially ubiquitous" as of the priority date. The prior art and the body of marketed inhalers (both as of the priority date and today) are replete with examples of inhalers that do not contain support rails.

326. Dr. Lewis stated that ribs were introduced "to locate the container, and provided an annular passageway to draw air using the mouthpiece." Lewis 2007, at 236. As the POSA would have understood, the reference to "the additional support" in the following sentence refers to the support other than the ribs—i.e., support provided by extension of the actuator beyond the ferrule. This is made plain by the reliance on the '755 Patent, which states that "it is an important feature of this invention that the applicator be constructed with a cylindrical barrel or housing portion which encloses substantially the entire length of the pressurized container thereby supporting the container in the proper position with no possibility of lateral movement of the valve stem." DX-168 ('755 Patent, 2:55-60). In contrast, the '755 Patent reports that "inwardly extending ribs . . . support the container . . . within the barrel and space it from the inner surface of the barrel to

provide a clearance . . . which permits the passage of air around the container to scavenge the medicament-containing aerosol from the delivery tub . . . into the oral cavity of the user."  DX-168 ('755 Patent, 45-54).

327.    Regardless, the POSA would certainly not have understood the article to suggest that ribs were useful to avoid canister rocking in connection with dose counters.  As is plain, the article refers to dose counters but does not in any way connect them with the presence or location of ribs, nor does it suggest that ribs should be located in any particular configuration relative to any component of a dose counter.  In fact, the article expresses substantial skepticism of the utility of dose counters—Dr. Lewis states that "[t]hese developments represent significant modifications to the MDI actuator as a patient interface, and clearly require careful analysis of the patient benefits and justification of the additional final unit cost." PTX-099 (Lewis 2007, at 241, CIPLA-BDI_0184754).  In that sense, the article teaches away from the claimed invention, because the article suggested that dose counters could alter the familiar way in which patients experience their device, and because they could increase the cost of MDIs more than is justified by their benefits.  Indeed, in Figure 1 of the article—the only time Dr. Lewis depicts an MDI actuator in the article—he does not identify any ribs or dose counters. Lewis 2007, at 236.

328.    Furthermore, the only mechanical (rather than electronic) dose counter Dr. Lewis pointed to in his 2007 article was that contained in Seretide. Seretide utilizes a system similar to that of the '514 Publication in that it affixes its dose counter to the medication canister, and the canister-counter assembly moves together to interact with a pin that is part of the canister housing.  That approach differs fundamentally from the one claimed in the Asserted Patents.

329.    The remainder of the article addresses additional components of the canister housing and notes the impact they can have on inhaler performance.  This is clear from the abstract itself, which explains that "This review focuses upon developments since the actuator's introduction as an integral part of the metered-dose inhaler and discusses key aspects of its design that influence lung deposition potential.  The ability of the actuator to reduce unwanted oropharyngeal drug deposition, facilitate correct patient use and provide valuable patient feedback is highlighted."  In other words, the actuator can be critical to the success of an MDI, and the POSA would have had reason to avoid altering a successful actuator for fear of altering the efficacy of the device as a whole.  For example, Dr. Lewis explained that "when MDIs are used incorrectly, patients are likely to receive a reduced or even a non-existent dose to the lungs" and emphasize the importance as the "actuator's role as the patient interface."  PTX-099 (Lewis 2007, at 236,

CIPLA-BDI_0184749).  This would have given the POSA reason to avoid altering a familiar MDI actuator or interface, including by altering the resistance that is required to actuate the inhaler, or simply introducing features that require changes to actuator geometry that could affect the feel of breathing through the inhaler or affect the risk of actuator blockage.  PTX-099 (Lewis 2007, at 236-37, CIPLA-BDI_0184749-750).  The POSA would have been concerned that such changes could alter device performance, or at a minimum, require expensive and time-consuming testing to ensure they do not.  Indeed, Dr. Lewis reflected in his article on "the ever increasing amount of data required to gain marketing approval," and noted the "capital investment risks" and "increas[e in] the likelihood of undesirable delays and costs of product development and approval" that changes in actuators can entail.  PTX-099 (Lewis 2007, at 242, CIPLABDI_0184755).  Dr. Lewis also noted that such changes must be highly cost effective to be successful.  PTX-099 (Lewis 2007, at 242, CIPLA-BDI_0184749).  All of these concerns would have given the POSA reason to avoid making changes to the actuator of an MDI.

### 24.    The '949 Publication

330.    U.S. Patent Application Publication No. WO 2006/0107949 (the "'949 Publication") (DX-156) is entitled "Holder for a Dispensing Container System" and lists Michael Birsha Davies, James William Godfrey, and Pal Kenneth Rand as inventors.  The '949 Publication was before the examiner during prosecution of each of the Asserted Patents.

331.    The '949 Publication does not describe "common structural traits" of MDIs.  Many inhalation aerosol devices, including MDIs, did not include any dose indicating mechanism at all; and many of those that did included dose indicators rather than dose counters—a design choice resulting from the difficulty of developing a dose counter with the necessary qualities.

332.    The discussion of "ribs 41a-c" in paragraphs [0075] and [0076], as depicted in Figures 6 and 7, are not "inner wall canister support formations" in that they do not extend inwardly from the canister housing towards the medication canister, but rather fit in between two components of the complicated housing shown in Figure 6.  These features also do not extend longitudinally along the inner wall of the canister housing, but are rather perpendicular to the direction of canister movement.

333.    During prosecution of each of the Asserted Patents, the examiner considered the '949 Publication, but declined to find that it rendered unpatentable the Asserted Claims.  *See, e.g.*, PTX-003 ('289 Patent, U.S. Patent Documents);

PTX-004 ('587 Patent, U.S. Patent Documents); '156 Patent, U.S. Patent Documents; PTX-002 ('808 Patent, U.S. Patent Documents).  The '949 Publication does not render invalid the Asserted Claims.

### 25.    The '518 Publication

334.   U.S. Patent Application Publication No. 2007/0062518 (the "'518 Publication") (DX-157) is entitled "Atomizer" and lists Johannes Geser, Burkhard P. Metzger, Christian Goldberg, Michael Schyra, Ralf Thommes, Birgit Westmeier, Guido Schmiedel, Hubert Kunze, and Georg Boeck as inventors.

335.   The '518 Publication does not support the proposition that dose counters were typical components of an MDI as of the priority date.  Many inhalation aerosol devices, including MDIs, did not include any dose indicating mechanism at all; and many of those that did included dose indicators rather than dose counters—a design choice resulting from the difficulty of developing a dose counter with the necessary qualities.

336.   Notably, the '518 Publication does not disclose any embodiments comprising a canister housing that has inner wall canister support formations (such as support rails) and a dose counter. The '518 Publication's disclosure of a dose counter and a canister housing without discussing any inner wall canister support formation is consistent with the conclusion that the POSA would not have understood such features to be ubiquitous in the prior art, and is consistent with the conclusion that the POSA would not have appreciated, based on prior art teachings, that the location of inner wall canister support formations relative to features of the dose counter could improve counter accuracy. The '518 Publication also fails to disclose additional aspects of the Asserted Claims, including but not limited to the precise location of the dose counter relative to a datum plane passing through a shoulder of the valve stem block, or a regulator, as recited in the Asserted Claims.

### 26.    The '102 Publication

337.   U.S. Patent Application Publication No. 2007/0210102 (the "'102 Publication") (DX-158) is entitled "Indicator For a Device For Dispensing A Liquid or Powdery Product" and lists Giuseppe Stradella and Fabio Stradella as inventors.

338.   The '102 Publication does not support the proposition that dose counters were typical components of an MDI as of the priority date.  Many inhalation aerosol devices, including MDIs, did not include any dose indicating

mechanism at all; and many of those that did included dose indicators rather than dose counters— a design choice resulting from the difficulty of developing a dose counter with the necessary qualities.

339.   The '102 Publication teaches away from many of the limitation required by the Asserted Claims.  For example, consistent with the prior art as a whole, many of the embodiments depicted in the '102 Publication appear to describe dose indicators, rather that dose counters.  *See, e.g.*, DX-158 ('102 Publication, ¶¶ [0001]-[0007], Figs. 1-4, 21).

340.   Additionally, consistent with the prior art as a whole, the '102 Publication emphasizes the dangers of undercounting relative to overcounting. Thus, the '102 Publication states: "[I]n order to avoid any risk of under-counting, it is generally necessary for the counter to be actuated before or at the beginning of the actuation stroke of the valve or of the pump, so as to avoid any partial actuation that dispenses a partial or a complete dose, but that is not counted by the indicator."  DX-158 ('102 Publication, ¶ [0002]).

341.   More generally, the '102 Publication describes the difficulties of integrating a dose indicating mechanism into an inhaler, explaining that the small "tolerances of the device tend to reduce even further the effective distance available in order to perform the actuation reduce even further the effective distance," requiring the use of a "complex mechanism."  DX-158 ('102 Publication, ¶ [0002]).

342.   Notably, the '102 Publication does not disclose any embodiments comprising a canister housing that has inner wall canister support formations (such as support rails) and a dose counter.  The '102 Publication's disclosure of a dose counter and a canister housing without discussing any inner wall canister support formation is consistent with the conclusion the POSA would not have understood such features to be ubiquitous in the prior art, and is consistent the conclusion that the POSA would not have appreciated, based on prior art teachings, that the location of inner wall canister support formations relative to features of the dose counter could improve counter accuracy.  The '102 Publication also fails to disclose additional aspects of the Asserted Claims, including but not limited to the precise location of the dose counter relative to a datum plane passing through a shoulder of the valve stem block, or a regulator, as recited in the Asserted Claims.

## B.     Defendants' Invalidity Theories Are Incorrect.

### 1.     The '289 and '587 Patents

### a.    Defendants' Anticipation Theories Are Incorrect.

### 1)    The '406 Publication Does Not Anticipate the Asserted Claims of the '289 and '587 Patents.

### a)    The '289 Patent

343.    The '406 Publication does not anticipate any Asserted Claim of the '289 Patent.

### (i)    Claim 1

344.    The '406 Publication does not anticipate claim 1 of the '289 Patent.

345.    The '406 Publication does not disclose every limitation of claim 1 of the '289 Patent as arranged in the claim.

346.    The '406 Publication describes five distinct dose counters that can be used in an inhaler. One dose counter is described in Paragraphs [0090]-[00116] in conjunction with Figures 1-11. A second dose counter is described in Paragraphs [00117]-[00134] in conjunction with Figures 12-20. A third dose counter is described in paragraphs [00135]-[00159] in conjunction with Figures 21-30. A fourth dose counter is described in paragraphs [00160]-[00170] in conjunction with Figures 31-40. A fifth dose counter is described in paragraphs [00171]-[00182] in conjunction with Figures 41-47.

347.    Defendants improperly mix and match various disclosures from these five separate examples indiscriminately. The POSA would understand that the components of a particular dose counter embodiments work together, and that mixing and matching components from one embodiment to another would be contrary to the POSA's understanding of a reference's disclosure and experience and expertise in the field.

348.    The '406 Publication does not disclose an inner wall canister support formation. The "forward legs (378)" depicted in Figures 23-25 and 28 of the '406 Publication (or any other disclosure) do not disclose this limitation.

349.    The '406 Publication does not disclose the common plane limitation.

### (ii)    Claim 2

350.    The '406 Publication does not anticipate this claim.

351.   Claim 2 depends from claim 1.  The '406 Publication does not anticipate claim 2 for at least the same reasons that it does not anticipate claim 1.

352.   The '406 Publication does not disclose every limitation of this claim as arranged in the claim.

353.   The '406 Publication does not disclose an inhaler wherein the medicament canister is movable relative to the dose counter.

### (iii)    Claim 3

354.   The '406 Publication does not anticipate this claim.

355.   Claim 3 depends from claim 1.  The '406 Publication does not anticipate claim 3 for at least the same reasons that it does not anticipate claim 1.

356.   The '406 Publication does not disclose every limitation of this claim as arranged in the claim.

357.   The '406 Publication does not disclose an inhaler comprising an aperture formed in the inner wall through which the portion of the actuation member extends.

### b)    The '587 Patent

358.   The '406 Publication does not anticipate any Asserted Claim of the '587 Patent.

### (i)    Claim 1

359.   The '406 Publication does not anticipate claim 1 of the '587 Patent.

360.   The '406 Publication does not anticipate claim 1 of the '587 Patent for at least the same reasons that it does not anticipate claim 1 of the '289 Patent.

361.   The '406 Publication does not disclose every limitation of claim 1 of the '587 Patent as arranged in the claim.

362.   The '406 Publication does not disclose, expressly or inherently, "that the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler."

363.   The requirement "that the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler" is a further limitation of the claims.

364.   The GlaxoSmithKline product Flixotide further illustrates that the '406 Publication does not anticipate this claim because it shows that inner wall canister support formations need not satisfy the requirement in the paragraph above.  Experimental evidence shows that Flixotide includes ribs, but does not satisfy this requirement.



**(ii)    Claim 2**

365.   The '406 Publication does not anticipate this claim.

366.   Claims 2 depends from claim 1.  The '406 Publication does not anticipate claims 2 for at least the same reasons that it does not anticipate claim 1.

367.   The '406 Publication does not disclose every limitation of this claim as arranged in the claim.

368.   The '406 Publication does not disclose an inhaler wherein the medicament canister is movable relative to the dose counter.

**(iii)    Claim 3**

369.   The '406 Publication does not anticipate this claim.

370.   Claim 3 depends from claim 1.  The '406 Publication does not anticipate claim 3 for at least the same reasons that it does not anticipate claim 1.

371.   The '406 Publication does not disclose every limitation of tis claim as arranged in the claim.

372.   The '406 Publication does not disclose an inhaler comprising an aperture formed in the inner wall through which the portion of the actuation member extends.

### (iv)   Claim 12

373.   The '406 Publication does not anticipate claim 12 of the '587 Patent.

374.   The '406 Publication does not anticipate claim 12 of the '587 Patent for at least the same reasons that it does not anticipate claim 1 of the '289 Patent.

375.   The '406 Publication does not disclose every limitation of claim 12 as arranged in the claim.

376.   The '406 Publication does not disclose, expressly or inherently, the limitation "such that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member."

377.   The requirement "such that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member" is a further limitation of the claims.

378.   The GlaxoSmithKline product Flixotide further illustrates that the '406 Publication does not anticipate this claim because it shows that inner wall canister support formations need not satisfy the requirement in the paragraph above.  Experimental evidence shows that Flixotide includes ribs, but does not satisfy this requirement.

### 2)   The '514 Publication Does Not Anticipate the Asserted Claims of the '289 and '587 Patents.

### a)   The '289 Patent

379.   The '514 Publication does not anticipate any Asserted Claim of the '289 Patent.

### (i)   Claim 1

116

380.   The '514 Publication does not anticipate claim 1 of the '289 Patent.

381.   The '514 Publication does not disclose every limitation of claim 1 as arranged in that claim.

382.   The '514 Publication describes several different embodiments of dose indicators, dose counters, and canister housings.  For example, the canister housings shown in Figures 2b, 3, 8b, and 10 do not contain support rails, while those in some other Figures do.  The '514 Publication also describes embodiments in which the annular dose tracking mechanism that is the focus of the '514 Publication's disclosure is a dose indicator and others in which it is a dose counter.  *See* DX-165 ('514 Publication, 19:11-13).  In particular, the '514 Publication states that the "indicia" that display dose information may be "alphabetical, numerical, alphanumeric, or color symbols, providing a sequential count-up or count-down of dispensed doses or providing a more general indication, such as 'Full', 'Empty', etc."  DX-165 ('514 Publication, 19:11-13).  Some embodiments described in the '514 Publication are MDIs, while others are breath actuated inhalers.  *See* DX-165 ('514 Publication, 6:16-20).  The dose counter operates by moving downwards when the patient dispenses medication—it then strikes a component of the canister housing, that interacts with features of the dose indicator to cause it to increment.  DX-165 ('514 Publication, 26:5-19).  In some embodiments, the feature of the canister housing that strikes a component of the dose indicator is an "actuation pin" which is "typically" a "form-molded element of the adaptor" and in some embodiments is an "extension of a rib" but in other embodiments is a stand-alone feature.  DX-165 ('514 Publication, 25:17-20; Figures 8a, 8b, 10).  The POSA would not have conflated all of these embodiments.   For example, the POSA would understand that Figure 2a corresponds to a different embodiment than Figure 8a which corresponds to a different embodiment than Figure 11a, which corresponds to a different embodiment than Figure 12a.  Moreover, the POSA would understand that the components of particular embodiments work together, and that mixing and matching components from one embodiment to another would be contrary to the POSA's understanding of a reference's disclosure and experience and expertise in the field.

383.   Moreover, Figures 8a and 9c reflect embodiments of the '514 Publication that are dose indicators rather than dose counter.  Figure 9 depicts "an enlarged, partial view of the preferred dispensers depicted in Figures 8a and 8b, showing the region of the driving member of the dose indicator at various dispensing positions" while Figure 8 shows a "vertical cross-sectional views of two preferred embodiments of a dispenser comprising a canister-indicator assembly illustrated in Figure 7."  DX-165 ('514 Publication, 12:8-14).  Figure 7, in turn,

"shows a cross sectional view of the preferred annular dose indicator illustrated in Figures 5 and 6, mounted and attached to a dispensing canister of the type depicted in Figure la, providing a preferred embodiment of a canister-indicator assembly." DX-165 ('514 Publication, 12:4-6). And Figure 5 plainly depicts a dose indicator, not a dose counter, because it is arranged to display to the patient the number of doses remaining or expended only in increments of 10. DX-165 ('514 Publication, Figure 5). The embodiments depicted in Figures 8a and 9c therefore correspond to a dose indicator, not a dose counter as claim 1 requires.

384.   Furthermore, nothing in Figure 9c indicates whether it is associated with an MDI (as the claims require) or a breath- actuated inhaler, which is not consistent with the claimed invention.

385.   The '514 Publication also fails to disclose an actuation member within the meaning of claim 1. The component labeled 2g in Figure 8a or the feature labeled 23 in Figure 9c are not part of the dose counter, as claim 1 requires, and are not an "actuation member" within the meaning of claim 1.

386.   The '514 Publication never explains the identity or purpose of element 2g in Figure 8a or element 23 in Figure 9c—there is no reference to these structures anywhere in the '514 Publication. There is no disclosure that either of these elements constitutes an actuation pin. Nothing in the '514 Publication indicates that structure 2g in Figure 8a and structure 23 in Figure 9c are in fact the same structure, and that both are the "actuation pin" referred to as feature 29 in the body of the '514 Publication. Nor would the POSA have understood that component 36 in Figure 9c should be interpreted as "inclined receiving surface 96" in the text. The POSA interprets what actually is disclosed in the prior art, rather than rewriting it to disclose something different.

387.   Furthermore, even assuming *arguendo* that the POSA somehow would have understood the '514 Publication to disclose that structure 2g in Figure 8a is structure 23 in Figure 9c is the "actuation pin (29)" of the text (and the POSA would not have so interpreted the document), this structure is not an actuation member of the dose counter, as claim 1 requires. Nor is element 36 of Figure 9c (which again, the POSA would not have understood to be "inclined receiving surface 96" described in the text).

388.   Claim 1 recites a "dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister." The '514 Publication explains expressly that "actuation pin (29)" is part of the inhaler "adaptor" (i.e., canister housing), not part of the

dose counter as claim 1 requires.  *See, e.g.*, DX-165 ('514 Publication, 25:17-20 ("More particularly, the adaptor is advantageously provided with an actuation pin (29), typically as a form-molded element of the adaptor.  In the embodiment shown in Figure 8a, the actuation pin (29) is provided as an extension of a rib (27).").

389.   Receiving surface 32 in figure 9c is not an "actuation member" within the meaning of claim 1.  Regardless, even if element 36 of Figure 9c is the "inclined receiving surface 96" referenced in the text, that element does not extend out of the dose indicator of the '514 Publication, and so does not have "at least a portion thereof located in the canister housing" as claim 1 requires.  As Figure 9c makes clear, element 36 is located fully within the dose indicator.  The text of the '514 Publication indicates that "inclined receiving surface (96)" is part of the "pawl-bearing portion (92) of the driving member (90)" and that "the counter-ring and driving member are located or mounted *within the housing of the indicator.*" DX-165 ('514 Publication, Abstract, 4:18, 6:11-14, 26:5-7 (emphasis added)). Accordingly, no portion of receiving surface (96) or component 36 of Figure 9c is "located in the canister housing."

390.   "Actuation pin" 29 or 2g or 23, alone or in combination with receiving surface 36 is also not an "actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister."  Structure 2g or 23 or 29 is not "operated by movement of the medicament canister" nor is it "operated" at all—it is a static form-molded part of the canister housing that does not move.  It also never touches the medicament canister, and thus is not "operated by movement of the medicament canister." Likewise, structure 96 or 36 never touches the medication canister and so is not "operated by movement of the medicament canister."  Indeed, structure 96 or 36 is mounted to the dose indicator's housing, which is in turn mounted to the medication canister, and therefore that structure *cannot* move relative to the medication canister. No component of the dose indicator of the '514 Publication can be  "operated by movement of the medicament canister," as claim 1 requires, because the dose indicator is affixed to the canister.  *See, e.g.*, DX-165 ('514 Publication, 4:22-23 ("wherein said indicator is arranged to be circumferentially mountable about the dispensing-canister"), 6:4-8 ("Annular dose indicators according to the invention are advantageous in that the indicator can be manufactured independent of the dispensing-canister and the adaptor to provide a self-contained assembly.  They can be easily mounted around the dispensing canister by sliding the indicator over the outlet- or container-end of the dispensing canister, as the case may be."), 7:16-24 ("Furthermore dose indicators, in particular the housing, can be advantageously secured to an external surface of the dispensing

119

canister, preferably to an external surface of the container or, if applicable the ferrule of the dispensing canister, to provide a self-contained canister/indicator assembly.  The provision of a dispensing-canister/indicator assembly as a self-contained or single unit in which the indicator is located substantially about the dispensing canister (e.g. the container of the canister and/or the canister closure means) and above the outlet means of the canister is particularly advantageous, because such an assembly is desirably robust."), 8:6-14 ("an annular mechanical dose indicator mounted circumferentially about the dispensing-canister and secured to an external surface of the dispensing canister. . . . Preferably the indicator is secured to an external surface of the container.  In particular the indicator is desirably secured to the external surface of the container in the vicinity of the first edge of the indicator."), 8:18-19 ("The indicator is preferably attached to an eternal surface of the ferrule or the container, more preferably the container."), 9:19-20 ("an annular mechanical dose indicator arranged to be mounted circumferentially about the dispensing –canister and secured to an external surface of the dispensing canister"), 9:29-30 ("said annular mechanical dose indicator being arranged to be mounted circumferentially about the dispensing –canister and secured to an external surface of the dispensing canister"), 15:11-14 ("The indicator (50) is mounted circumferentially about the dispensing canister, such that the first edge (51) faces towards the closed end (2) of the container and the second edge (52) faces towards the outlet of the dispensing canister, so that at least the outlet member (5) of the canister extends beyond the second edge (52) of the indicator."), 15:24-28 ("As can be recognized in the preferred embodiment depicted in Fig. 4, the indicator (50) is secured directly to an external surface of the dispensing canister (10), preferably an external surface of the container (1) (in particular an external surface of the side-wall (9) of the container), more preferably an external surface of the container in the vicinity of the first edge (51) of the indicator.")).

391.   The parties dispute the construction of "actuation member."

392.   Under Teva's construction of "actuation member," the '514 Publication fails to disclose an "actuation member" of claim 1 for additional reasons.  First, neither actuation pin 29 or 2g or 23 nor receiving surface 36 or 96 is (alone or in combination) "a component of the dose counter's actuator."  The parties agree that an "actuator" is "[a] structure within the dose counter that can be moved by the canister, is moveable relative to other components of the dose counter, and effectuates movement of at least one additional dose counter component."  Certainly, actuation pin 29 or 2g or is not "a structure *within* the dose counter" because it is located outside the dose indicator of the '514 Publication.  In

120

addition, neither actuation pin 29 or 2g nor receiving surface 36 or 96 (separately or in combination) is "moved" by the canister.  Actuation pin 29 or 2g does not move at all (and thus is also not "moveable relative to other components of the dose counter"), and neither actuation pin 29 or 2g nor receiving surface 36 or 96 interacts with the canister whatsoever.  Actuation pin 29 or 2g does not ever contact the canister, it contacts receiving surface 36 or 96.  And receiving surface 36 or 96, by contrast, is affixed inside of the dose indicator, the outer body of which is in turn affixed to the canister.  Indeed, the '514 Publication does not disclose any feature of the dose counter that "can be moved by the canister" and "is moveable relative to other components of the dose counter," let alone a feature with those characteristics in which the "actuation member" is a component.

393.   Under Defendants' construction, the '514 Publication does not disclose an actuation member for additional reasons.  Neither actuation pin 29 or 2g nor receiving surface 36 or 96 (separately or in combination) is "arranged to engage with a medicament canister."  Actuation pin 29 or 2g does not ever contact the canister, it contacts receiving surface 36 or 96.  And receiving surface 36 or 96, by contrast, is affixed inside of the dose indicator, the outer body of which is in turn affixed to the canister.  In addition, receiving surface 36 or 96 is not a "pin" nor is a structure that is a combination of elements 36 or 96 and 29 or 2g.

394.   Because the '514 Publication does not disclose an actuation member within the meaning of claim 1, it cannot disclose the claimed configuration of the inhaler in which an inner wall canister support formation and center of the central outlet port are in a common plane with the actuation member.

395.   Moreover, the '514 Publication does not disclose an inner wall canister support formation and central outlet port that lie on a common plane with the central outlet port

396.   Moreover, "driving member 90 or the receiving surface 96 of the driving member 90" may not be considered actuation members.  The "receiving surface 96" in detail above.  Driving member 90 is likewise not an actuation member.  Driving member 90 is located entirely within the dose indicator, and therefore does not have "at least a portion thereof located in the canister housing" as claim 1 requires.  DX-165 ('514 Publication, Abstract, 4:18, 6:11-14, 26:5-7 ("[T]he counter-ring and driving member are located or mounted *within the housing of the indicator.*" (emphasis added))).  Likewise, driving member 90 never touches the medication canister and so is not "operated by movement of the medicament canister."  Indeed, structure 96 or 36 is mounted to the dose indicator's housing, which is in turn mounted to the medication canister, and

therefore that structure *cannot* move relative to the medication canister. No component of the dose indicator of the '514 Publication can be "operated by movement of the medicament canister," as the claim requires, because the dose indicator is affixed to the canister. *See, e.g.*, DX-165 ('514 Publication, 4:22-23 ("wherein said indicator is arranged to be circumferentially mountable about the dispensing canister"), 6:4-8 ("Annular dose indicators according to the invention are advantageous in that the indicator can be manufactured independent of the dispensing-canister and the adaptor to provide a self-contained assembly. They can be easily mounted around the dispensing canister by sliding the indicator over the outlet- or container-end of the dispensing canister, as the case may be."), 7:16-24 ("Furthermore dose indicators, in particular the housing, can be advantageously secured to an external surface of the dispensing canister, preferably to an external surface of the container or, if applicable the ferrule of the dispensing canister, to provide a self-contained canister/indicator assembly. The provision of a dispensing-canister/indicator assembly as a self-contained or single unit in which the indicator is located substantially about the dispensing canister (e.g. the container of the canister and/or the canister closure means) and above the outlet means of the canister is particularly advantageous, because such an assembly is desirably robust."), 8:6-14 ("an annular mechanical dose indicator mounted circumferentially about the dispensing-canister and secured to an external surface of the dispensing canister. . . . Preferably the indicator is secured to an external surface of the container. In particular the indicator is desirably secured to the external surface of the container in the vicinity of the first edge of the indicator."), 8:18-19 ("The indicator is preferably attached to an eternal surface of the ferrule or the container, more preferably the container."); 9:19-20 ("an annular mechanical dose indicator arranged to be mounted circumferentially about the dispensing – canister and secured to an external surface of the dispensing canister"), 9:29-30 ("said annular mechanical dose indicator being arranged to be mounted circumferentially about the dispensing –canister and secured to an external surface of the dispensing canister"), 15:11-14 ("The indicator (50) is mounted circumferentially about the dispensing canister, such that the first edge (51) faces towards the closed end (2) of the container and the second edge (52) faces towards the outlet of the dispensing canister, so that at least the outlet member (5) of the canister extends beyond the second edge (52) of the indicator."), 15:24-28 ("As can be recognized in the preferred embodiment depicted in Fig. 4, the indicator (50) is secured directly to an external surface of the dispensing-canister (10), preferably an external surface of the container (1) (in particular an external surface of the side-wall (9) of the container), more preferably an external surface of the container in the vicinity of the first edge (51) of the indicator.")).

397.   In addition, under Teva's construction, driving member 90 is not an actuation member because it is not "moved" by the canister.  Driving member 90 does not ever contact the canister—it is affixed inside of the dose indicator, the outer body of which is in turn affixed to the canister.  Under Defendants' construction, driving member 90 is not an actuation member because it is not a pin nor is it "arranged to engage" with the canister.

398.   As stated above, the parties dispute the construction of the Common Plane Limitation.

399.   Element 21 in Figure 8a emerges from the base of the inhaler.  Under Defendants' construction, it cannot be the "inner wall canister support formation" that is "directly adjacent" to the "actuation member" because it is not an inner wall canister support formation.  Element 21 in Figure 8a extends from the "bottom surface, or floor, or the inhaler body" rather than an inner wall of the canister body and is therefore not an "*inner wall* canister support formation."  Furthermore, the valve stem block located directly in the center of the inhaler's base, and therefore is not adjacent to the actuation pin (2g), which is attached to the inner wall.

### (ii)    Claim 4

400.   The '514 Publication does not anticipate this claim.

401.   Claim 4 depends from claim 1.  The '514 Publication does not anticipate claim 4 for at least the same reasons it does not anticipate claim 1.

402.   The '514 Publication does not disclose every limitation of this claim as arranged in the claim.

403.   The '514 Publication does not disclose an inhaler wherein the support rail includes a step formed thereon.

### (iii)    Claim 5

404.   The '514 Publication does not anticipate this claim.

405.   Claim 5 depends from claim 4.  The '514 Publication does not anticipate claim 5 for at least the same reasons it does not anticipate claim 4.

406.   The '514 Publication does not disclose every limitation of this claim as arranged in the claim.

407.   The '514 Publication does not disclose an inhaler wherein the support rail includes a step formed thereon.

### (iv)    Claim 6

408.   The '514 Publication does not anticipate this claim.

409.   Claim 6 depends from claim 4.  The '514 Publication does not anticipate claim 6 for at least the same reasons it does not anticipate claim 4.

410.   The '514 Publication does not disclose every limitation of this claim as arranged in the claim.

411.   The '514 Publication does not disclose an inhaler further comprising a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

### (v)    Claim 7

412.   The '514 Publication does not anticipate this claim.

413.   Claim 7 depends from claim 6.  The '514 Publication does not anticipate claim 7 for at least the same reasons it does not anticipate claim 6.

414.   The '514 Publication does not disclose every limitation of this claim s arranged in the claim.

415.   The '514 Publication does not disclose an inhaler wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

### (vi)    Claim 8

416.   The '514 Publication does not anticipate this claim.

417.   Claim 8 depends from claim 4.  The '514 Publication does not anticipate claim 8 for at least the same reasons it does not anticipate claim 4.

418.   The '514 Publication does not disclose every limitation of this claim as arranged in the claim.

419.   The '406 Publication does not disclose an inhaler wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

**b)    The '587 Patent**

420.   The '514 Publication does not anticipate any Asserted Claim of the '587 Patent.

**(i)    Claim 1**

421.   The '514 Publication does not anticipate claim 1 of the '587 Patent.

422.   The '514 Publication does not anticipate claim 1 of the '587 Patent for at least the same reasons that it does not anticipate claim 1 of the '289 Patent.

423.   The '514 Publication does not disclose every limitation of claim 1 as arranged in the claim.

424.   The '514 Publication does not disclose, expressly or inherently, "that the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler."

425.   The requirement "that the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler" is a further limitation of the claims.

426.   The GlaxoSmithKline product Flixotide further illustrates that the '514 Publication does not anticipate this claim because it shows that inner wall canister support formations need not satisfy the requirement in the paragraph above.  Experimental evidence shows that Flixotide includes ribs, but does not satisfy this requirement.



**(ii)    Claim 4**

427.   The '514 Publication does not anticipate this claim.

428.   Claim 4 depends from claim 1.  The '514 Publication does not anticipate claim 4 for at least the same reasons it does not anticipate claim 1.

429.   The '514 Publication does not disclose every limitation of this claim as arranged in the claim.

430.   The '514 Publication does not disclose an inhaler wherein the first inner wall canister support formation comprises as support rail which extends longitudinally along an inside surface of the main body.

**(iii)    Claim 5**

431.   The '514 Publication does not anticipate this claim.

432.   Claim 5 depends from claim 4.  The '514 Publication does not anticipate claim 5 for at least the same reasons it does not anticipate claim 4.

433.   The '514 Publication does not disclose every limitation of this claim as arranged in the claim.

434.   The '514 Publication does not disclose an inhaler wherein the support rail includes a step formed thereon.

**(iv)    Claim 6**

435.   The '514 Publication does not anticipate this claim.

436.   Claim 6 depends from claim 4.  The '514 Publication does not anticipate claim 6 for at least the same reasons it does not anticipate claim 4.

437.   The '514 Publication does not disclose every limitation of this claim as arranged in the claim.

438.   The '514 Publication does not disclose an inhaler further comprising a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

### (v)    Claim 7

439.   The '514 Publication does not anticipate this claim.

440.   Claim 7 depends from claim 6.  The '514 Publication does not anticipate claim 7 for at least the same reasons it does not anticipate claim 6.

441.   The '514 Publication does not disclose every limitation of this claim as arranged in the claim.

442.   The '514 Publication does not disclose an inhaler wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

### (vi)    Claim 8

443.   The '514 Publication does not anticipate this claim.

444.   Claim 8 depends from claim 4.  The '514 Publication does not anticipate claim 8 for at least the same reasons it does not anticipate claim 4.

445.   The '514 Publication does not disclose every limitation of this claim as arranged in the claim.

446.   The '514 Publication does not disclose an inhaler wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

### (vii)    Claim 11

447.   The '514 Publication does not anticipate this claim.

448.   Claim 11 depends from claim 1.  The '514 Publication does not anticipate claim 11 for at least the same reasons it does not anticipate claim 1.

449.   The '514 Publication does not disclose every limitation of this claim as arranged in the claim.

450.   The '514 Publication does not disclose an inhaler wherein the second inner wall canister support formation, the first inner wall canister support formation, the actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X.

### (viii)  Claim 12

451.   The '514 Publication does not anticipate claim 12 of the '587 Patent.

452.   The '514 Publication does not anticipate claim 12 of the '587 Patent for at least the same reasons that it does not anticipate claim 1 of the '289 Patent.

453.   The '514 Publication does not disclose every limitation of claim 12 as arranged in the claim.

454.   The '514 Publication does not disclose, expressly or inherently, the limitation "such that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member."

455.   The requirement "such that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member" is a further limitation of the claims.

456.   The GlaxoSmithKline product Flixotide further illustrates that the '514 Publication does not anticipate this claim because it shows that inner wall canister support formations need not satisfy the requirement in the paragraph above.  Experimental evidence shows that Flixotide includes ribs, but does not satisfy this requirement.

\*       \*       \*

457.   Notably, the '514 Publication was before the examiner during prosecution of the '289 and '587 Patents.  *See, e.g.*, PTX-003 ('289 Patent, Foreign Patent Documents); PTX-004 ('587 Patent, Foreign Patent Documents).  The fact that the examiner determined that the '514 Publication does not anticipate the

Asserted Claims provides further evidence that the '514 Publication does not anticipate those claims.

## b.    Defendants' Obviousness Theories Are Incorrect.

458.   The Asserted Claims of the '289 and '587 Patents would not have been obvious to the POSA (1) in light of the '406 Publication; (2) in light of the '514 Publication in combination with the '406 Publication, (3) in light of the '021 Publication, or (4) in light of the '514 Publication in combination with the '021 Publication.  The POSA would not have had reason to select the dose counter of either the '406 Publication or the '021 publication for modification, nor would that the POSA would have had reason to modify either of those dose counters in a manner that led to the claimed invention.  Moreover, the POSA would not have had reason to combine the dose counters of either the '406 Publication or the '021 Publication with the canister housing of the '514 Publication, nor would such a combination have led the POSA to the claimed invention.  Further, the POSA would not have combined the '514 Publication with the dose counter of either the '406 or '021 Publications, which would have required aligning the support rails of the canister housing of the '514 Publication in a manner that satisfied the Common Plane Limitation.

459.   As of the priority date, the POSA would have faced numerous decision points and design obstacles that consistently led them away from the claimed invention rather than toward it.  For example, as of the priority date, the POSA seeking to satisfy FDA's 2003 Guidance by adding a dose tracking feature to an MDI would face a choice between developing a dose *indicator* or an inhaler or a dose *counter*.  *See* PTX-402 (FDA Guidance at TEVAQVAR-00032576); PTX-162 (Stein at 334).  The POSA without hindsight knowledge of Teva's invention would have selected a dose indicator rather than a dose counter.  *See, e.g.*, PTX-148 (Stuart, at 43, TEVADOC-00000534).  Had the POSA selected a dose indicator instead of a dose counter, the POSA would not have arrived at the inventions claimed in the Asserted Claims of the '289 and '587 Patents.

460.   Fundamentally, the POSA would have appreciated that developing a dose indicator or dose counter was a challenging undertaking.  PTX-162 (Stein at 334); PTX-148 (Stuart at 40-43).  The FDA's 2003 Guidance explicitly contemplates that less-precise dose counters would have satisfied its recommendations, PTX-402 (FDA Guidance 2003, TEVAQVAR-00032577-78), and the POSA would have understood dose indicators to pose less of a design challenge, particularly where high numbers of doses needed to be counted.  In particular, dose indicators can be smaller than dose counters because they need not

have a display capable of displaying hundreds of numbers—indeed, "an indicator is often the only choice when it is difficult to fit a numerical display that can count down in individual increments from 200 doses within the space limitations of a conventional MDI actuator." PTX-148 (Stuart, at 43, TEVADOC-00000534). Dose indicators can use larger font and can be manufactured at lower costs. *See* PTX-148 (Stuart, at 41, TEVADOC-00000532). The risk of miscounting is also lessened when an indicator is used, since the patient cannot rely on the indicator to determine precisely how many doses remain, but only when the device is approaching the end of its life. Under those circumstances, the need to avoid sporadic over- or under-counting events is not as critical. Had the POSA elected to develop a dose tracking system for integration into an MDI product, the POSA would have chosen to develop a dose indicator. As a result, the POSA thus would have been led away from the claimed inventions, which require dose counters.

461.   Even assuming that the POSA had chosen to develop a dose counter rather than a dose indicator, the POSA would have faced a choice about where to locate the dose counter relative to the canister housing and medication canister. The POSA would not have chosen to locate the dose counter below or even partially below the medication canister, but rather would have utilized a device that was located, for example, on top of the canister housing, because such a device "can be added to a design without affecting existing components or pre-existing drug delivery." PTX-148 (Stuart, at 41, TEVADOC-00000532). Put another way, artisans in the field had developed reliable inhalers *without* dose counters or dose indicators before the priority date, and these devices combined features of ease-of-use, patient familiarity, reliability, robustness, and ease of manufacture, among others. The POSA would not have desired to alter these tried and tested devices in any way that might interfere with these helpful characteristics. Using a dose counter that is thus separated from the existing components of the inhaler that effectuate reliably the actuation of the device upon a patient's input of force, would have been considered a far simpler, easier to manufacture, less costly, and more reliable approach. By pursuing a dose counter below or partially below the medicament canister, the POSA would have risked modifying unduly the design of the existing system, adding both significant complexity and the potential for failure. For example, locating the dose counter partially or fully below the canister would have required adapting the inhaler housing, which would have required testing, not to mention creating new molds to permit manufacture. Engineers in this field value simplicity, and placing the dose counter partially or fully below the canister would have been considered a complicated, undesirable and unsuitable choice.

462.    Simply put, the POSA would have had reason to place the dose counter on top of the canister because the POSA would have understood that this approach was simpler and therefore more likely to be successful.  As the POSA would have understood, the need to manufacture inhalation products on a large scale and at limited required simplicity in design.  By adding a counter to the top of the canister, the POSA would have overcome one of the principle challenges of dose counting for MDIs—limited space.  The very small amount of travel available to count if the dose counter were located fully or partially underneath the canister requires development of an exceptionally small dose counter, and would have provided little leeway to accommodate the manufacturing variability that the POSA would have expected to be associated with the bulk manufacture of dose counter components.  *See, e.g.*, PTX-148 (Stuart 2013, at 42, TEVADOC-00000533).  As the prior art recognized, locating the dose counter "substantially beneath the canister" "can be disadvantageous in that modification of the adaptor geometry, such as greater dimensions, in the critical region where atomization takes place is generally required."  DX-165 ('514 Publication, 3:5-10).  The POSA would have understood that altering the adaptor geometry would lead to unwarranted complexity in the form of testing and new manufacturing practices. The prior art taught that the POSA would have sought to avoid such testing and expense.

463.    In addition, placing the counter above the canister rather than below it means that operation of the dose counter does not depend on the particular valve selected for use in the system.  As the POSA would have understood, the distance that the canister travels before firing (as well as its total travel distance) is determined by the valve selected—different valves travel different distances before firing, and even the same valve can experience changes in travel distances over time.  If the dose counter were situated beneath the canister, the dose counter's function would need to account for these many variables, and be tailored to the precise valve selected for use in the inhaler.  By locating the dose counter on top of the canister, the POSA avoids all of these design challenges.  These considerations would have given the POSA reason to avoid a counter actuated beneath the canister, and instead would have given the POSA reason to pursue a top-mounted counter.  The POSA would thus have been led away from the claimed invention. The prior art taught that the POSA would have valued simplicity in design and recognized the need to adapt a dose counter located below or partially below the canister to the particular canister and valve chosen.  The teachings of those references are also consistent with the testimony of █████████████



464.   The POSA would have selected a top-mounted dose counter, and would have been taught away from the location Teva ultimately used and claimed, for the additional reason that such a dose counter would have been less likely to alter air flow and drug performance.  Indeed, the POSA would have been concerned that situating the dose counter below the medication canister would have had the potential to alter dose delivery.  As the POSA would have understood, "[w]hen adding a dose counter to an existing product, all efforts must be made to ensure its presence does not affect the delivery of the drug."  PTX-148 (Stuart 2013 at 42-43, TEVADOC-00000533-534).  In particular, "airflow is a key consideration, as a change or restriction in airflow could lead to a significant change in the geometry of the spray plume and the efficiency of delivery to the lungs."  PTX-148 (Stuart 2013, at 43, TEVADOC-00000534).  The POSA would have chosen to avoid these design challenges by locating the dose counter on top of the medication canister.  The POSA's primary goal in incorporating a dose counter would have been to avoid any possible changes to the performance of device designs that had proven desirable and reliable for patients.  The prior art routinely taught concerns regarding a dose counter's potential to disrupt airflow through the device.  The POSA thus would have been led away from the claimed inventions.  In such a case, the POSA would never even have encountered the problem solved by the claimed inventions, let alone arrived at the solution claimed, because the location of the dose counter would have been different than the location disclosed and claimed in the Asserted Patents.

465.   In contrast, concerns regarding a top mounted or largely external dose counter would have been seen as minor in comparison to challenges faced if other design options were pursued.  In particular, any concerns regarding increased height of the device and its exposure to the patient would have been considered minor and easily surmountable, these concerns readily compared with the technical challenge of engineering a reliable, robust, and accurate counter with an actuation

member situated below the canister.  *See* PTX-148 (Stuart 2013, at 41, TEVADOC-00000532).

466.   Even if the POSA had opted to pursue a dose counter and then decided to locate the dose counter below the canister, the POSA would have made additional design choices that would have led the POSA away from the claimed inventions.  In particular, the POSA would not have appreciated the advantage of controlling canister rocking in connection with the addition of a dose counter whose actuation member was located beneath the canister.  Even had the POSA identified the advantage of addressing cannister rocking when the dose counter is so located, the POSA would have sought to address it in alternative ways.  For example, the POSA would have recognized that any deleterious movement of the canister precipitated by introduction of the dose counter could be avoided completely by affixing the dose counter to the medication canister.  *See, e.g.*, DX-165 ('514 Publication).  The POSA would have elected this approach, rather than the addition of one or more inner wall canister support formations, because the POSA would have expected such a solution to have a greater likelihood of success.

467.   Accordingly, the POSA would have faced numerous design decisions when seeking to add a dose tracking device to an MDI, and in every instance would have made choices that led away from the claimed inventions.  Without hindsight knowledge of the invention of the Asserted Patents, the POSA would not have had reason to make any choice leading to the claimed invention, let alone the precise combination of choices that would have led the POSA to appreciate the problem identified and solved by the claimed inventions—and even had the POSA arrived that juncture, the POSA would have elected to solve the problem in a manner other than the one claimed.

**1)    The '406 Publication Does Not Render Obvious the Asserted Claims of the '289 and '587 Patents.**

**a)    The '289 Patent**

468.   The '406 Publication does not render obvious any Asserted Claim of the '289 Patent.

**(i)    Claim 1**

469.   The '406 Publication does not render obvious claim 1 of the '289 Patent.

133

470.   The '406 Publication does not disclose or suggest every limitation in the claim.

471.   The POSA would not have found it obvious to modify the canister housing disclosed in the '406 Publication to include an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

472.   The POSA would not have been motivated or had reason to modify the canister housing disclosed in the '406 Publication to include an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

473.   The POSA would not have reasonably expected success in modifying the canister housing disclosed in the '406 Publication to include an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

474.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '406 Publication to position an inner wall canister support formation such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X.

475.   The POSA would not have been motivated or had reason as of the priority date to modify disclosures of the '406 Publication to position an inner wall canister support formation such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X.

476.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify disclosures of the '406 Publication to arrive at an inhaler including an inner wall canister support formation extending inwardly from the inner wall of the canister housing positioned such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X.

477.   The POSA would not have been motivated to add the dose counter of the '406 Publication to a canister housing containing an inner wall canister support formation.  Furthermore, even if the POSA were to add inner wall canister support formations to the inhaler containing the dose counter of the '406 Publication, that would not have resulted in the claimed invention.  In addition, the POSA would not have had reason to select any particular dose counter of the '406 Publication

for modification, and the POSA would not have had reason to add that dose counter to an inhaler with inner wall canister support formations, all with a reasonable expectation of success. The multiple decisions required to pursue such a combination were not supported by the prior art or understanding of the POSA; only hindsight knowledge of the invention would have justified that approach. In any event, the combination of the dose counter of the '406 Publication with an inhaler containing an inner wall canister support formation would not have led the POSA to the claimed inventions.

478.   The POSA seeking to add a dose tracking device would not have selected any one of the five distinct dose counters disclosed in the '406 Publication for modification. To the contrary, for the reasons explained above, the POSA would have pursued a dose indicator rather than a dose counter. And even had the POSA chosen to pursue a dose counter, the POSA would have pursued a dose counter located on top of the canister, not a dose counter located in whole or in part below the canister. The '406 Publication does not meet either of these criteria, and the POSA would not have selected it for further modification.

479.   Moreover, "inner wall canister support formations" were not "essentially ubiquitously used in MDIs" as of the priority date. To the contrary, many prior art references describe inhalers without any reference to "inner wall canister support formations" or do not include such formations in embodiments with dose counters. *See, e.g.*, PTX-352 ('406 Publication (depicting and describing inhalers without rails extending outwardly from the main body)); DX-171 ('044 Publication (same)); DX-154 ('817 Publication (same)); DX-155 ('021 Publication (same)); DX-163 ('191 Publication (Figures 31, 32, 70, 71, 73-76, 93, 136, depicting a canister housing without support rails)); DX-162 ('552 Publication); DX-159 ('950 Publication); DX-148 ('627 Patent); DX-167 (GB '489); DX-169 ('159 Publication); DX-170 ('965 Publication); and DX-158 ('102 Publication). Other references described such ribs as optional. *See* DX-153 ('008 Publication, ¶ [0045] ("Spacer ribs (not shown) may be provided inside the housing to hold the external surface of the container 2 spaced from the internal surface of the housing 1.")); *see also* DX-165 ('514 Publication, 14:17-19); DX-137 ('822 Patent, 3:11-14). Even today, inhalers are marketed without "inner wall canister support formations"—i.e., support rails.

480.   Furthermore, the POSA would have resisted changing the canister housing associated with the dose counter of the '406 Publication, or adding any structure to the canister housing of a different inhaler. As the POSA would have understood, components of a system are designed and disclosed to be used together, not to be mixed and matched from different systems or modified in ways

that could alter critical features like the established airflow through the inhaler, which can affect product performance and/or require further regulatory approvals. *See, e.g.*, PTX-148 (Stuart 2013 at 43, TEVADOC-00000534). Simply put, the POSA who chose to use the dose counter of the '406 Publication would have used the canister housing described for use with the dose counter of the '406 Publication, rather than selecting some other canister housing or modifying the canister housing that the reference discloses.

481.    Even had the '406 Publication been silent regarding the potential for changing the canister housing, the POSA would have rejected such a change out of hand. But the '406 Publication expressly and repeatedly teaches the POSA not to do so. The '406 Publication emphasizes that the dose counters it discloses "require[s] minimal or no changes to the inside and/or outside profile and/or volume of the actuator to accommodate the counter." *See, e.g.* PTX-352 ('406 Publication, ¶¶ [0009] ("no or only minimal modification (in shape and/or size) of the housing" needed), [00105] (noting that "it is not necessary to change the external configuration of those actuator housings to accommodate the inventive dose counter"), [00124] (second embodiment), [00151] (third embodiment)). In addition, the '406 Publication recognized the need for robust, reliable, precise, accurate, and readily manufacturable dose counters, but does not identify any problems with the performance of the dose counter it discloses. *See, e.g.*, PTX-352 ('406 Publication, ¶¶ [0006], [0009]). In particular, the '406 Publication does not identify any issues with canister location, annular air flow, axial movement of the valve stem (which can result in unwanted gassing of the canister), or tolerance control, which are the reasons for which Defendants suggest the POSA would have added inner wall canister support formations. The POSA would not rely on the '406 Publication (rather than all of the other publications that disclose alternative dose indicator and dose counter designs), only to disregard its teachings. On the basis of the prior art's disclosure, the POSA would not have had reason to alter the housing containing the dose counter of the '406 Publication, nor would the POSA reasonably have expected success in doing so.

482.    In addition, successful products that do not include support rails are marketed today and many were marketed as of the priority date—for example, Atrovent®, Alupent®, Berodual®, Berotec®, Combivent®, and Budiair® do not include support rails. And as stated before, the POSA would have been concerned that any alterations to the inside of the canister housing, such as the addition of support rails, would have raised concerns regarding airflow disruption, alteration to product performance, or a need to seek new regulatory approvals. *See, e.g.*, PTX-148 (Stuart 2013 at 43, TEVADOC-00000534). The POSA would have

understood that the '406 Publication disclosed a housing that was suitable for use with its dose counter, not one that should be changed, at the risk of creating the foregoing problems.

483.   The POSA would not understand a "rib" was required in the canister housing of the '406 Publication because the '406 Publication discloses "forward legs (378)" of its dose counter "mate with 'interior surfaces of the actuator housing for the aerosol container 70." The "forward legs (378)" do not in any way indicate the location of ribs extending inwardly from the inner wall of the canister housing.

484.   Furthermore, even if the POSA had reason to remove the dose counter of the '406 Publication from the canister housing disclosed by the '406 Publication and place that dose counter into a canister housing containing "ribs" (and for the reasons explained above, the POSA would not have done so), there is no reason why the POSA would have had selected a canister housing whose ribs would have happened to lie a common plane with actuation member of the '406 Publication's dose counter. The only basis to have done so is hindsight. Nothing in the '406 Publication suggests the use of "inner wall canister support formations" at all, let alone that an inner wall canister support formation should be located in a common plane with the dose counter's actuation member and the central outlet port.

485.   The nonobviousness of claim 1 is further confirmed by the inventors' own experience. It was not until the inventors grappled with the results of integrating a dose counter into the canister housing, and had selected a dose counter with an actuation member extending into the canister housing operation by movement of the medicament canister, that the inventors recognized the benefit of adjusting the location of the support rails to accommodate the dose counter. In particular, after adding such a dose counter to an existing canister housing, the inventors appreciated the benefits of "locat[ing the rails] to minimize the wobble of the canister above the counter plunger" and of adding "[a]dditional rails . . . to prevent excessive wobble of the canister within the body." PTX-208 (TEVAQVAR-00031848, at -854). The prior art disclosed none of this experience, knowledge, data, and modification.

486.   Unlike the named inventors, the POSA seeking to modify the circular dose counter of the '406 Publication would not have recognized this problem or had reason to solve it in the claimed manner with a reasonable expectation of success. The inventors of claim 1, on the basis of their own non-public experimentation and expertise, could recognize the potential axes of canister wobble "above the counter plunger" given the "plunger's" off-center point of contact with the canister within the canister housing. In contrast, the POSA

seeking to integrate the circular dose counter of the '406 Publication into an existing canister housing would have expected that dose counter to contact the canister in a symmetrical fashion (otherwise the POSA certainly would not have so located a dose counter); thus, the POSA would not have had reason to alter the support rails in the canister housing to adjust canister wobble. Even would the POSA have recognized the benefit of altering the location of support rails in the canister housing in response to the dose counter's introduction, the POSA would not have had a reasonable expectation that the claimed configuration of support rails would have been beneficial. In particular, the POSA would not have been able to identify or predict the principal axes of canister wobble (nor would the POSA have expected those axes to remain constant across all units), due to manufacturing tolerances for dose counter components and variation in patient behavior.

### (ii)    Claim 2

487.   Claim 2 of the '289 Patent would not have been obvious to the POSA over the '406 Publication as of the priority date.

488.   Claim 2 depends from claim 1. The '406 Publication does not render obvious claim 2 for at least the same reasons that it does not render obvious claim 1.

489.   The '406 Publication does not disclose or suggest every limitation in the claim.

490.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 1 in which the medicament canister is moveable relative to the dose counter.

491.   The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 1 in which the medicament canister is moveable relative to the dose counter.

492.   The POSA would not have reasonably expected success as of the priority date in modifying an embodiment of the '406 Publication to arrive at the inhaler of claim 1 in which the medicament canister is moveable relative to the dose counter.

### (iii)    Claim 3

138

493.   Claim 3 of the '289 Patent would not have been obvious to the POSA over the '406 Publication as of the priority date

494.   Claim 3 depends from claim 1.  The '406 Publication does not render obvious claim 3 for at least the same reasons that it does not render obvious claim 1.

495.   The '406 Publication does not disclose or suggest every limitation in the claim.

496.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 1 in which the inhaler comprises an aperture formed in the inner wall through which the portion of the actuation member extends.

497.   The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 1 in which the inhaler comprises an aperture formed in the inner wall through which the portion of the actuation member extends.

498.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 1 in which the inhaler comprises an aperture formed in the inner wall through which the portion of the actuation member extends.

### (iv)   Claim 4

499.   Claim 4 of the '289 Patent would not have been obvious to the POSA over the '406 Publication as of the priority date.

500.   Claim 4 depends from claim 1.  The '406 Publication does not render obvious claim 4 for at least the same reasons that it does not render obvious claim 1.

501.   The '406 Publication does not disclose or suggest every limitation in the claim.

502.   The '406 Publication does not disclose an inner wall canister support formation that is a support rail that extends longitudinally along the inside surface of the main body.

503.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 1 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

504.   The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 1 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

505.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 1 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

### (v)    Claim 5

506.   Claim 5 of the '289 Patent would not have been obvious to the POSA over the '406 Publication as of the priority date.

507.   Claim 5 depends from claim 4.  The '406 Publication does not render obvious claim 5 for at least the same reasons that it does not render obvious claim 4.

508.   The '406 Publication does not disclose or suggest every limitation in the claim.

509.   The '406 Publication does not disclose a support rail including a step formed thereon.

510.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 4 in which the support rail includes a step formed thereon.

511.   The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 4 in which the support rail includes a step formed thereon.

512.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '406 Publication

to arrive at the inhaler of claim 4 in which the support rail includes a step formed thereon.

### (vi)    Claim 6

513.    Claim 6 of the '289 Patent would not have been obvious to the POSA over the '406 Publication as of the priority date.

514.    Claim 6 depends from claim 4.  The '406 Publication does not render obvious claim 6 for at least the same reasons that it does not render obvious claim 4.

515.    The '406 Publication does not disclose or suggest every limitation in the claim.

516.    The '406 Publication does not disclose a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

517.    The POSA would not have found it obvious as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 4 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

518.    The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 4 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

519.    The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 4 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

### (vii)    Claim 7

520.    Claim 7 of the '289 Patent would not have been obvious to the POSA over the '406 Publication as of the priority date.

521.    Claim 7 depends from claim 6.  The '406 Publication does not render obvious claim 7 for at least the same reasons that it does not render obvious claim 6.

522.  The '406 Publication does not disclose or suggest every limitation in the claim.

523.  The '406 Publication does not disclose a plurality of support rails, two of which are positioned at opposite ends of the inside surface of the main body to face each other.

524.  The POSA would not have found it obvious as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 6 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

525.  The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 6 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

526.  The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 6 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

### (viii)  Claim 8

527.  Claim 8 of the '289 Patent would not have been obvious to the POSA over the '406 Publication as of the priority date.

528.  Claim 8 depends from claim 4.  The '406 Publication does not render obvious claim 8 for at least the same reasons that it does not render obvious claim 4.

529.  The '406 Publication does not disclose or suggest every limitation in the claim.

530.  The '406 Publication does not disclose a support rail including two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

531.  The POSA would not have found it obvious as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 4

wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

532.   The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 4 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

533.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 4 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

### b)    The '587 Patent

534.   The '406 Publication does not render obvious any Asserted Claim of the '587 Patent.

### (i)    Claim 1

535.   The '406 Publication does not render obvious claim 1 of the '587 Patent.

536.   The '406 Publication does not render obvious claim 1 of the '587 Patent for at least the same reasons that it does not render obvious claim 1 of the '289 Patent.

537.   The '406 Publication does not disclose or suggest every limitation in the claim.

538.   The POSA would not have found it obvious to modify the canister housing disclosed in the '406 Publication to include an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

539.   The POSA would not have been motivated or had reason to modify the canister housing disclosed in the '406 Publication to include an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

540.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify the canister housing disclosed in the

'406 Publication to include an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

541.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '406 Publication to position an inner wall canister support formation such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X and such that the first inner wall canister support formation protected against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler.

542.   The POSA would not have been motivated or had reason as of the priority date to modify disclosures of the '406 Publication to position an inner wall canister support formation such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X and such that the first inner wall canister support formation protected against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler.

543.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify disclosures of the '406 Publication to arrive at an inhaler including an inner wall canister support formation extending inwardly from the inner wall of the canister housing positioned such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X and such that the first inner wall canister support formation protected against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler.

544.   The '406 Publication does not disclose or otherwise suggest an arrangement "that the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler."

545.   The requirement "that the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler" is a further limitation of the claims.

546.   The GlaxoSmithKline product Flixotide further illustrates that the '406 Publication does not render obvious this claim because it shows that inner

wall canister support formations need not satisfy the requirement in the paragraph above.  Experimental evidence shows that Flixotide includes ribs, but does not satisfy this requirement.

547.    Accordingly, even if the POSA had reason to modify the disclosure of the '406 Publication by transferring the dose counter it discloses into a canister housing that includes an inner wall canister support formation, the resulting configuration would not necessarily have "protected against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler."

### (ii)    Claim 2

548.    Claim 2 of the '587 Patent would not have been obvious to the POSA over the '406 Publication as of the priority date.

549.    Claim 2 depends from claim 1.  The '406 Publication does not render obvious claim 2 for at least the same reasons that it does not render obvious claim 1.

550.    The '406 Publication does not disclose or suggest every limitation in the claim.

551.    The POSA would not have found it obvious as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 1 in which the medicament canister is moveable relative to the dose counter.

552.    The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 1 in which the medicament canister is moveable relative to the dose counter.

553.    The POSA would not have reasonably expected success as of the priority date in modifying an embodiment of the '406 Publication to arrive at the inhaler of claim 1 in which the medicament canister is moveable relative to the dose counter.

### (iii)    Claim 3

554.    Claim 3 of the '587 Patent would not have been obvious to the POSA over the '406 Publication as of the priority date.

555.   Claim 3 depends from claim 1.  The '406 Publication does not render obvious claim 3 for at least the same reasons that it does not render obvious claim 1.

556.   The '406 Publication does not disclose or suggest every limitation in the claim.

557.   The '514 Publication does not disclose an aperture formed in the inner wall through which the portion of the actuation member extends.

558.   The '514 Publication does not disclose an internal wall of the inhaler body that is horizontal, through which a portion of the actuation member extends, where horizontal means substantially perpendicular to the primary direction of the movement of the medicament canister when it is pressed downward by the user to expel medication.

559.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 1 in which the inhaler comprises an aperture formed in the inner wall through which the portion of the actuation member extends.

560.   The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 1 in which the inhaler comprises an aperture formed in the inner wall through which the portion of the actuation member extends.

561.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 1 in which the inhaler comprises an aperture formed in the inner wall through which the portion of the actuation member extends.

### (iv)   Claim 4

562.   Claim 4 of the '587 Patent would not have been obvious to the POSA over the '406 Publication as of the priority date.

563.   Claim 4 depends from claim 1.  The '406 Publication does not render obvious claim 4 for at least the same reasons that it does not render obvious claim 1.

564.   The '406 Publication does not disclose or suggest every limitation in the claim.

565.   The '406 Publication does not disclose an inner wall canister support formation that is a support rail that extends longitudinally along the inside surface of the main body.

566.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 1 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

567.   The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 1 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

568.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 1 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

### (v)    Claim 5

569.   Claim 5 of the '587 Patent would not have been obvious to the POSA over the '406 Publication as of the priority date.

570.   Claim 5 depends from claim 4.  The '406 Publication does not render obvious claim 5 for at least the same reasons that it does not render obvious claim 4.

571.   The '406 Publication does not disclose or suggest every limitation in the claim.

572.   The '406 Publication does not disclose a support rail including a step formed thereon.

573.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 4 in which the support rail includes a step formed thereon.

574.    The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 4 in which the support rail includes a step formed thereon.

575.    The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 4 in which the support rail includes a step formed thereon.

### (vi)    Claim 6

576.    Claim 6 of the '587 Patent would not have been obvious to the POSA over the '406 Publication as of the priority date.

577.    Claim 6 depends from claim 4.  The '406 Publication does not render obvious claim 6 for at least the same reasons that it does not render obvious claim 4.

578.    The '406 Publication does not disclose or suggest every limitation in the claim.

579.    The '406 Publication does not disclose a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

580.    The POSA would not have found it obvious as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 4 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

581.    The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 4 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

582.    The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 4 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

### (vii)    Claim 7

583.    Claim 7 of the '587 Patent would not have been obvious to the POSA over the '406 Publication as of the priority date.

584.   Claim 7 depends from claim 6.  The '406 Publication does not render obvious claim 7 for at least the same reasons that it does not render obvious claim 6.

585.   The '406 Publication does not disclose or suggest every limitation in the claim.

586.   The '406 Publication does not disclose a plurality of support rails, two of which are positioned at opposite ends of the inside surface of the main body to face each other.

587.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 6 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

588.   The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 6 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

589.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 6 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

### (viii)  Claim 8

590.   Claim 8 of the '587 Patent would not have been obvious to the POSA over the '406 Publication as of the priority date.

591.   Claim 8 depends from claim 4.  The '406 Publication does not render obvious claim 8 for at least the same reasons that it does not render obvious claim 4.

592.   The '406 Publication does not disclose or suggest every limitation in the claim.

593.   The '406 Publication does not disclose a support rail including two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

594.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 4 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

595.   The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 4 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

596.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 4 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

### (ix)    Claim 11

597.   Claim 11 of the '587 Patent would not have been obvious to the POSA over the '406 Publication as of the priority date.

598.   Claim 11 depends from claim 1.  The '406 Publication does not render obvious claim 11 for at least the same reasons that it does not render obvious claim 1.

599.   The '406 Publication does not disclose or suggest every limitation in the claim.

600.   The '406 Publication does not disclose an inhaler comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the actuation member and the central outlet port lie in a common plane coincident with longitudinal axis X.

601.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 1 comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the actuation member and the central outlet port lie in a common plane coincident with longitudinal axis X.

602.   The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 1 comprising a second inner wall canister support formation and

150

wherein the second inner wall canister support formation, the actuation member and the central outlet port lie in a common plane coincident with longitudinal axis X.

603.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 1 comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the actuation member and the central outlet port lie in a common plane coincident with longitudinal axis X.

### (x)    Claim 12

604.   The '406 Publication does not render obvious claim 12 of the '587 Patent.

605.   The '406 Publication does not render obvious claim 12 of the '587 Patent for at least the same reasons that it does not render obvious claim 1 of the '587 Patent.

606.   The '406 Publication does not disclose or suggest every limitation in the claim.

607.   The POSA would not have found it obvious to modify the canister housing disclosed in the '406 Publication to include an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

608.   The POSA would not have been motivated or had reason to modify the canister housing disclosed in the '406 Publication to include an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

609.   The POSA would not have reasonably expected success in modifying the canister housing disclosed in the '406 Publication to include an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

610.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '406 Publication to position an inner wall canister support formation such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X and the first inner wall canister support formation protects

against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member.

611.    The POSA would not have been motivated or had reason as of the priority date to modify disclosures of the '406 Publication to position an inner wall canister support formation such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X and such that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member.

612.    The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify disclosures of the '406 Publication to arrive at an inhaler including an inner wall canister support formation extending inwardly from the inner wall of the canister housing positioned such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X and such that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member.

613.    The '406 Publication does not disclose or otherwise suggest the limitation "such that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member."

614.    The requirement "such that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member."

615.    The GlaxoSmithKline product Flixotide further illustrates that the '406 Publication does not render obvious this claim because it shows that inner wall canister support formations need not satisfy the requirement in the paragraph above.  Experimental evidence shows that Flixotide includes ribs, but does not satisfy this requirement.

616.    Accordingly, even if the POSA had reason to modify the disclosure of the '406 Publication by transferring the dose counter it discloses into a canister housing that includes an inner wall canister support formation, the resulting configuration would not necessarily have "protected against unwanted actuation of the dose counter by reducing rocking of the medicament canister towards or away from the actuation member."

**(xi)    Claim 13**

617.    The '406 Publication does not render obvious claim 13 of the '587 Patent.

618.    The '406 Publication does not render obvious claim 13 of the '587 Patent for at least the same reasons that it does not render obvious claim 1 of the '587 Patent.

619.    The '406 Publication does not disclose or suggest every limitation in the claim.

620.    The POSA would not have found it obvious to modify the canister housing disclosed in the '406 Publication to include an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

621.    The POSA would not have been motivated or had reason to modify the canister housing disclosed in the '406 Publication to include an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

622.    The POSA would not have reasonably expected success in modifying the canister housing disclosed in the '406 Publication to include an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

623.    The POSA would not have found it obvious to modify the canister housing disclosed in the '406 Publication to include an inner wall canister support formation that extends from the main surface of the inner wall to the aperture through which the portion of the actuation member extends.

624.    The POSA would not have been motivated or had reason to modify the canister housing disclosed in the '406 Publication to include an inner wall canister support formation that extends from the main surface of the inner wall to the aperture through which the portion of the actuation member extends.

625.    The POSA would not have reasonably expected success in modifying the canister housing disclosed in the '406 Publication to include an inner wall canister support formation that extends from the main surface of the inner wall to the aperture through which the portion of the actuation member extends.

**(xii)    Claim 14**

626.   Claim 14 of the '587 Patent would not have been obvious to the POSA over the '406 Publication as of the priority date.

627.   Claim 14 depends from claim 13.  The '406 Publication does not render obvious claim 14 for at least the same reasons that it does not render obvious claim 13.

628.   The '406 Publication does not disclose or suggest every limitation in the claim.

629.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 13 in which the medicament canister is moveable relative to the dose counter.

630.   The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 13 in which the medicament canister is moveable relative to the dose counter.

631.   The POSA would not have reasonably expected success as of the priority date in modifying an embodiment of the '406 Publication to arrive at the inhaler of claim 13 in which the medicament canister is moveable relative to the dose counter.

### (xiii)  Claim 15

632.   Claim 15 of the '587 Patent would not have been obvious to the POSA over the '406 Publication as of the priority date.

633.   Claim 15 depends from claim 13.  The '406 Publication does not render obvious claim 15 for at least the same reasons that it does not render obvious claim 13.

634.   The '406 Publication does not disclose or suggest every limitation in the claim.

635.   The '406 Publication does not disclose an inner wall canister support formation that is a support rail that extends longitudinally along the inside surface of the main body.

636.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 13

in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

637.    The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 13 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

638.    The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 13 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

### (xiv)  Claim 16

639.    Claim 16 of the '587 Patent would not have been obvious to the POSA over the '406 Publication as of the priority date.

640.    Claim 16 depends from claim 15.  The '406 Publication does not render obvious claim 15 for at least the same reasons that it does not render obvious claim 15.

641.    The '406 Publication does not disclose or suggest every limitation in the claim.

642.    The '406 Publication does not disclose a support rail including a step formed thereon.

643.    The POSA would not have found it obvious as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 15 in which the support rail includes a step formed thereon.

644.    The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 15 in which the support rail includes a step formed thereon.

645.    The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 15 in which the support rail includes a step formed thereon.

### (xv)   Claim 17

646.    Claim 17 of the '587 Patent would not have been obvious to the POSA over the '406 Publication as of the priority date.

647.    Claim 17 depends from claim 15. The '406 Publication does not render obvious claim 17 for at least the same reasons that it does not render obvious claim 15.

648.    The '406 Publication does not disclose or suggest every limitation in the claim.

649.    The '406 Publication does not disclose a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

650.    The POSA would not have found it obvious as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 15 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

651.    The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 15 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

652.    The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 15 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

### (xvi)  Claim 18

653.    Claim 18 of the '587 Patent would not have been obvious to the POSA over the '406 Publication as of the priority date.

654.    Claim 18 depends from claim 17. The '406 Publication does not render obvious claim 18 for at least the same reasons that it does not render obvious claim 17.

655.    The '406 Publication does not disclose or suggest every limitation in the claim.

656.    The '406 Publication does not disclose a plurality of support rails, two of which are positioned at opposite ends of the inside surface of the main body to face each other.

657.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 17 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

658.   The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 17 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

659.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 17 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

**(xvii) Claim 19**

660.   Claim 19 of the '587 Patent would not have been obvious to the POSA over the '406 Publication as of the priority date.

661.   Claim 19 depends from claim 15.  The '406 Publication does not render obvious claim 19 for at least the same reasons that it does not render obvious claim 15.

662.   The '406 Publication does not disclose or suggest every limitation in the claim.

663.   The '406 Publication does not disclose a support rail including two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

664.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 15 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

665.   The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 15 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

666.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 15 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

### (xviii) Claim 20

667.   Claim 20 of the '587 Patent would not have been obvious to the POSA over the '406 Publication as of the priority date.

668.   Claim 20 depends from claim 15.  The '406 Publication does not render obvious claim 20 for at least the same reasons that it does not render obvious claim 15.

669.   The '406 Publication does not disclose or suggest every limitation in the claim.

670.   The '406 Publication does not disclose an inhaler wherein a width dimension of the support rail is not constant, and the width dimension is greatest at the location where the support rail is closest to the aperture.

671.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 15 wherein a width dimension of the support rail is not constant, and the width dimension is greatest at the location where the support rail is closest to the aperture.

672.   The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 15 wherein a width dimension of the support rail is not constant, and the width dimension is greatest at the location where the support rail is closest to the aperture.

673.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 15 wherein a width dimension of the support rail is not constant, and the width dimension is greatest at the location where the support rail is closest to the aperture.

### (xix)  Claim 21

674.   Claim 21 of the '587 Patent would not have been obvious to the POSA over the '406 Publication as of the priority date.

675.   Claim 21 depends from claim 13.  The '406 Publication does not render obvious claim 21 for at least the same reasons that it does not render obvious claim 13.

676.   The '406 Publication does not disclose or suggest every limitation in the claim.

677.   The '406 Publication does not disclose an inhaler wherein the first inner wall canister support formation, the aperture, and a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, all lie in a common plane coincident with a longitudinal axis X which passes through the center of the central outlet port.

678.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 13 wherein the first inner wall canister support formation, the aperture, and a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, all lie in a common plane coincident with a longitudinal axis X which passes through the center of the central outlet port.

679.   The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 13 wherein the first inner wall canister support formation, the aperture, and a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, all lie in a common plane coincident with a longitudinal axis X which passes through the center of the central outlet port.

680.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 13 wherein the first inner wall canister support formation, the aperture, and a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, all lie in a common plane coincident with a longitudinal axis X which passes through the center of the central outlet port.

**(xx)   Claim 22**

681.   Claim 22 of the '587 Patent would not have been obvious to the POSA over the '406 Publication as of the priority date.

682.   Claim 22 depends from claim 21.  The '406 Publication does not render obvious claim 22 for at least the same reasons that it does not render obvious claim 21.

683.   The '406 Publication does not disclose or suggest every limitation in the claim.

684.   The '406 Publication does not disclose an inhaler comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the first inner wall canister support formation, the aperture, and the central outlet port lie in a common plane coincident with longitudinal axis X.

685.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 21 comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the first inner wall canister support formation, the aperture, and the central outlet port lie in a common plane coincident with longitudinal axis X.

686.   The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 21 comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the first inner wall canister support formation, the aperture, and the central outlet port lie in a common plane coincident with longitudinal axis X.

687.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '406 Publication to arrive at the inhaler of claim 21 comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the first inner wall canister support formation, the aperture, and the central outlet port lie in a common plane coincident with longitudinal axis X.

   **2)    The '514 Publication in Combination with the '406 Publication Does Not Render Obvious the Asserted Claims of the '289 and '587 Patents.**

   **a)    The '289 Patent**

688.   The '514 Publication in combination with the '406 Publication does not render obvious any Asserted Claim of the '289 Patent.

### (i)     Claim 1

689.   The '514 Publication in combination with the '406 Publication does not render obvious claim 1 of the '289 Patent.

690.   The '514 Publication in combination with the '406 Publication does not disclose or suggest every limitation in the claim.

691.   The prior art teaches away from combining disclosures of the '406 Publication with disclosures of the '514 Publication.

692.   The prior art would have led the POSA in a direction divergent from a combination of disclosures of the '406 Publication with the '514 Publication.

693.   The POSA would not have found it obvious as of the priority date to combine disclosures of the '514 Publication and '406 Publication to arrive at an inhaler including an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

694.   The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '514 Publication and '406 Publication to arrive at an inhaler including an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

695.   The POSA would not have reasonably expected success as priority date if the POSA chose to combine disclosures of the '514 Publication and '406 Publication to arrive at an inhaler including an inner wall canister support formation.

696.   The POSA would not have found it obvious as of the priority date to combine disclosures of the '514 Publication and '406 Publication to position an inner wall canister support formation such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X.

697.   The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '514 Publication and '406 Publication to position an inner wall canister support formation such that the inner wall canister

support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X.

698.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '514 Publication and '406 Publication to arrive at an inhaler including an inner wall canister support formation extending inwardly from the inner wall of the canister housing positioned such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X.

699.   The POSA would not have viewed the dose counter of the '406 Publication as compatible with the design of the actuator of the '514 Publication. The '514 Publication emphasizes the importance of affixing its dose indicator to the medication canister, such that neither is movable relative to the other.  The dose counters disclosed in the '406 Publication are not affixed to the canister, but rather the canister moves toward and away from the dose counter of the '406 Publication as the POSA actuates the device.  Accordingly, the POSA would not have reason to combine one of the dose counters disclosed in the '406 Publication with the inhaler bodies disclosed in the '514 Publication, nor would the POSA reasonably have expected success in doing so.  To the contrary, the POSA would have expected that combining a housing designed to accommodate an annular dose counter affixed to the canister with a different dose counter located substantially below the canister would have been unsuccessful, if not inoperable.

700.   In addition, POSA would have understood that the close fit between the annular dose counter affixed to the canister and the canister housing acted to stabilized the canister within the canister housing.  Accordingly, the POSA would have expected the canister housing of the '514 publication to be unsuitable for any design that did not stabilize the canister in this manner.  The POSA therefore would not have had a reasonable expectation of success in achieving a robust and accurate inhaler/dose counting system by combining the canister housing disclosed in the '514 Publication with a dose counter, like the ones disclosed in the '406 Publication, that was not affixed to the canister and could not be expected to stabilize it within the canister housing accordingly.

701.   Furthermore, the inhaler bodies of the '514 Publication contain an "actuation pin" that is configured to be "received within the dose indicator, e.g. passing through a cut-out portion (66) in the second edge (62) of the housing (see Figure 5)."  DX-165 ('514 Publication, 25:24-27).  The POSA would have understood that such a pin would have been structurally incompatible with the dose

counters disclosed in the '406 Publication. The POSA would have expected "actuation pin (29)" to physically prevent insertion of the dose counters disclosed in the '406 Publication appropriately into the canister housing.

702. Furthermore, the '514 Publication discloses numerous housings, many of which do not have support rails, *see, e.g.*, DX-165 ('514 Publication, Figures 2b, 3, 8b, 10, and 12a), and it mentions support rails only once in its entire disclosure as an optional feature of the housing, unrelated to the dose indicator the '514 Publication devotes the remainder of its disclosure to describing. Thus, the POSA would not have had reason to (1) select one of the embodiments in the '514 Publication that discloses support rails, and then (2) modify that embodiment by eliminating the feature that is the primary subject of the '514 Publication's disclosure (its annular dose indicator), and then (3) integrate a dramatically different dose counter (such as that of the '406 Publication, which is affixed to the canister housing and is not affixed to the medication canister) into the canister housing of the '514 Publication. To the contrary, the POSA would not have expected such a combination to be operable, let alone successful.

703. Even were the POSA to have combined the dose counter of the '406 Publication with the canister housing of the '514 Publication, that combination would not have resulted in the claimed invention. There would have been many ways to align the actuation members of the dose counters of the '406 Publication with the optional inner wall canister support formations of the '514 Publication's canister housing, and the POSA would have had no reason to select an alignment that satisfies the Common Plane Limitation.

### (ii)    Claim 2

704. Claim 2 of the '289 Patent would not have been obvious to the POSA over the combination of the '406 Publication and the '514 Publication.

705. Claim 2 depends from claim 1. The '514 Publication in combination with the '406 Publication does not render obvious claim 2 for at least the same reasons that it does not render obvious claim 1.

706. The '514 Publication in combination with the '406 Publication does not disclose or suggest every limitation in the claim.

707. The POSA would not have found it obvious as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the medicament canister is moveable relative to the dose counter.

708.    The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the medicament canister is moveable relative to the dose counter.

709.    The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the medicament canister is moveable relative to the dose counter.

### (iii)    Claim 3

710.    Claim 3 of the '289 Patent would not have been obvious to the POSA over the combination of the '406 Publication and the '514 Publication.

711.    Claim 3 depends from claim 1.  The '514 Publication in combination with the '406 Publication does not render obvious claim 3 for at least the same reasons that it does not render obvious claim 1.

712.    The '514 Publication in combination with the '406 Publication does not disclose or suggest every limitation in the claim.

713.    The '514 Publication does not disclose an aperture formed in the inner wall through which the portion of the actuation member extends.

714.    The '514 Publication does not disclose an internal wall of the inhaler body that is horizontal, through which a portion of the actuation member extends, where horizontal means substantially perpendicular to the primary direction of the movement of the medicament canister when it is pressed downward by the user to expel medication.

715.    The POSA would not have found it obvious as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the inhaler comprises an aperture formed in the inner wall through which the portion of the actuation member extends.

716.    The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the inhaler comprises an aperture formed in the inner wall through which the portion of the actuation member extends.

717.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the inhaler comprises an aperture formed in the inner wall through which the portion of the actuation member extends.

### (iv)   Claim 4

718.   Claim 4 of the '289 Patent would not have been obvious to the POSA over the combination of the '406 Publication and the '514 Publication as of the priority date.

719.   Claim 4 depends from claim 1.  The '514 Publication in combination with the '406 Publication does not render obvious claim 4 for at least the same reasons that it does not render obvious claim 1.

720.   The '514 Publication in combination with the '406 Publication does not disclose or suggest every limitation in the claim.

721.   The POSA would not have found it obvious as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

722.   The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

723.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

### (v)   Claim 5

724.   Claim 5 of the '289 Patent would not have been obvious to the POSA over the combination of the '406 Publication and the '514 Publication as of the priority date.

725.   Claim 5 depends from claim 4.  The '514 Publication in combination with the '406 Publication does not render obvious claim 5 for at least the same reasons that it does not render obvious claim 4.

726.   The '514 Publication in combination with the '406 Publication does not disclose or suggest every limitation in the claim.

727.   The POSA would not have found it obvious as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 in which the support rail includes a step formed thereon.

728.   The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 in which the support rail includes a step formed thereon.

729.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 in which the support rail includes a step formed thereon.

### (vi)    Claim 6

730.   Claim 6 of the '289 Patent would not have been obvious to the POSA over the combination of the '406 Publication and the '514 Publication as of the priority date.

731.   Claim 6 depends from claim 4.  The '514 Publication in combination with the '406 Publication does not render obvious claim 6 for at least the same reasons that it does not render obvious claim 4.

732.   The '514 Publication in combination with the '406 Publication does not disclose or suggest every limitation in the claim.

733.   The POSA would not have found it obvious as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

734.    The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

735.    The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

### (vii)   Claim 7

736.    Claim 7 of the '289 Patent would not have been obvious to the POSA over the combination of the '406 Publication and the '514 Publication as of the priority date.

737.    Claim 7 depends from claim 6.  The '514 Publication in combination with the '406 Publication does not render obvious claim 7 for at least the same reasons that it does not render obvious claim 6.

738.    The '514 Publication in combination with the '406 Publication does not disclose or suggest every limitation in the claim.

739.    The POSA would not have found it obvious as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 6 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

740.    The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 6 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

741.    The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 6 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

### (viii)  Claim 8

742.   Claim 8 of the '289 Patent would not have been obvious to the POSA over the combination of the '406 Publication and the '514 Publication as of the priority date.

743.   Claim 8 depends from claim 4.  The '514 Publication in combination with the '406 Publication does not render obvious claim 8 for at least the same reasons that it does not render obvious claim 4.

744.   The '514 Publication in combination with the '406 Publication does not disclose or suggest every limitation in the claim.

745.   The POSA would not have found it obvious as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

746.   The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

747.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

### b)     The '587 Patent

748.   The '514 Publication in combination with the '406 Publication does not render obvious any Asserted Claim of the '587 Patent.

### (i)     Claim 1

749.   The '514 Publication in combination with the '406 Publication does not render obvious claim 1 of the '587 Patent.

750.   The '514 Publication in combination with the '406 Publication does not render obvious claim 1 of the '587 Patent for at least the same reasons that it does not render obvious claim 1 of the '289 Patent.

751.   The '514 Publication does not disclose or suggest every limitation in the claim.

752.   The POSA would not have found it obvious as of the priority date to combine disclosures of the '514 Publication and '406 Publication to arrive at an inhaler including an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

753.   The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '514 Publication and '406 Publication to arrive at an inhaler including an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

754.   The POSA would not have reasonably expected success as priority date if the POSA chose to combine disclosures of the '514 Publication and '406 Publication to arrive at an inhaler including an inner wall canister support formation.

755.   The POSA would not have found it obvious as of the priority date to combine disclosures of the '514 Publication and '406 Publication to position an inner wall canister support formation such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X such that the first inner wall canister support formation protected against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler.

756.   The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '514 Publication and '406 Publication to position an inner wall canister support formation such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X and such that the first inner wall canister support formation protected against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler.

757.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '514 Publication and '406 Publication to arrive at an inhaler including an inner wall canister support

formation extending inwardly from the inner wall of the canister housing positioned such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X and such that the first inner wall canister support formation protected against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler.

758.   The '514 Publication in combination with the '406 Publication does not disclose or otherwise suggest the limitation that "the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler."

759.   The requirement that "the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler" is a further limitation of the claims.

760.   The GlaxoSmithKline product Flixotide further illustrates that the '514 Publication in combination with the '406 Publication does not render obvious this claim because it shows that inner wall canister support formation s need not satisfy the requirement in the paragraph above.  Experimental evidence shows that Flixotide included ribs, but does not satisfy this requirement.

761.   Accordingly, even if the POSA had reason to modify the disclosure of the '406 Publication by transferring the dose counter it discloses into a canister housing that includes an inner wall canister support formation, the resulting configuration would not necessarily have "protected against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler."

### (ii)    Claim 2

762.   Claim 2 of the '587 Patent would not have been obvious to the POSA over the combination of the '406 Publication and the '514 Publication.

763.   Claim 2 depends from claim 1.  The '514 Publication in combination with the '406 Publication does not render obvious claim 2 for at least the same reasons that it does not render obvious claim 1.

764.   The '514 Publication in combination with the '406 Publication does not disclose or suggest every limitation in the claim.

765.   The POSA would not have found it obvious as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the medicament canister is moveable relative to the dose counter.

766.   The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the medicament canister is moveable relative to the dose counter.

767.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the medicament canister is moveable relative to the dose counter.

### (iii)   Claim 3

768.   Claim 3 of the '587 Patent would not have been obvious to the POSA over the combination of the '406 Publication and the '514 Publication.

769.   Claim 3 depends from claim 1.  The '514 Publication in combination with the '406 Publication does not render obvious claim 3 for at least the same reasons that it does not render obvious claim 1.

770.   The '514 Publication in combination with the '406 Publication does not disclose or suggest every limitation in the claim.

771.   The POSA would not have found it obvious as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the inhaler comprises an aperture formed in the inner wall through which the portion of the actuation member extends.

772.   The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the inhaler comprises an aperture formed in the inner wall through which the portion of the actuation member extends.

773.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which

the inhaler comprises an aperture formed in the inner wall through which the portion of the actuation member extends.

### (iv)    Claim 4

774.    Claim 4 of the '587 Patent would not have been obvious to the POSA over the combination of the '406 Publication and the '514 Publication.

775.    Claim 4 depends from claim 1.  The '514 Publication in combination with the '406 Publication does not render obvious claim 4 for at least the same reasons that it does not render obvious claim 1.

776.    The '514 Publication in combination with the '406 Publication does not disclose or suggest every limitation in the claim.

777.    The POSA would not have found it obvious as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

778.    The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

779.    The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

### (v)    Claim 5

780.    Claim 5 of the '587 Patent would not have been obvious to the POSA over the combination of the '406 Publication and the '514 Publication.

781.    Claim 5 depends from claim 4.  The '514 Publication in combination with the '406 Publication does not render obvious claim 5 for at least the same reasons that it does not render obvious claim 4.

782.   The '514 Publication in combination with the '406 Publication does not disclose or suggest every limitation in the claim.

783.   The POSA would not have found it obvious as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 in which the support rail includes a step formed thereon.

784.   The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 in which the support rail includes a step formed thereon.

785.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 in which the support rail includes a step formed thereon.

### (vi)    Claim 6

786.   Claim 6 of the '587 Patent would not have been obvious to the POSA over the combination of the '406 Publication and the '514 Publication.

787.   Claim 6 depends from claim 4.  The '514 Publication in combination with the '406 Publication does not render obvious claim 6 for at least the same reasons that it does not render obvious claim 4.

788.   The '514 Publication in combination with the '406 Publication does not disclose or suggest every limitation in the claim.

789.   The POSA would not have found it obvious as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

790.   The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

791.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

### (vii)   Claim 7

792.   Claim 7 of the '587 Patent would not have been obvious to the POSA over the combination of the '406 Publication and the '514 Publication.

793.   Claim 7 depends from claim 6.  The '514 Publication in combination with the '406 Publication does not render obvious claim 7 for at least the same reasons that it does not render obvious claim 6.

794.   The '514 Publication in combination with the '406 Publication does not disclose or suggest every limitation in the claim.

795.   The POSA would not have found it obvious as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 6 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

796.   The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 6 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

797.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 6 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

### (viii)  Claim 8

798.   Claim 8 of the '587 Patent would not have been obvious to the POSA over the combination of the '406 Publication and the '514 Publication.

799.   Claim 8 depends from claim 4.  The '514 Publication in combination with the '406 Publication does not render obvious claim 8 for at least the same reasons that it does not render obvious claim 4.

800.   The '514 Publication in combination with the '406 Publication does not disclose or suggest every limitation in the claim.

801.   The POSA would not have found it obvious as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

802.   The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

803.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

### (ix)   Claim 11

804.   Claim 11 of the '587 Patent would not have been obvious to the POSA over the combination of the '406 Publication and the '514 Publication.

805.   Claim 11 depends from claim 1.  The '514 Publication in combination with the '406 Publication does not render obvious claim 11 for at least the same reasons that it does not render obvious claim 1.

806.   The '514 Publication in combination with the '406 Publication does not disclose or suggest every limitation in the claim.

807.   The POSA would not have found it obvious as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 comprising a second inner wall canister support formation and wherein the second inner wall canister support

175

formation, the actuation member and the central outlet port lie in a common plane coincident with longitudinal axis X.

808.   The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the actuation member and the central outlet port lie in a common plane coincident with longitudinal axis X.

809.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the actuation member and the central outlet port lie in a common plane coincident with longitudinal axis X.

### (x)   Claim 12

810.   The '514 Publication in combination with the '406 Publication does not render obvious claim 12 of the '587 Patent.

811.   The '514 Publication in combination with the '406 Publication does not render obvious claim 12 of the '587 Patent for at least the same reasons that it does not render obvious claim 1 of the '289 Patent.

812.   The '514 Publication in combination with the '406 Publication does not disclose or suggest every limitation in the claim.

813.   The POSA would not have found it obvious as of the priority date to combine disclosures of the '514 Publication and '406 Publication to arrive at an inhaler including an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

814.   The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '514 Publication and '406 Publication to arrive at an inhaler including an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

815.   The POSA would not have reasonably expected success as priority date if the POSA chose to combine disclosures of the '514 Publication and '406

176

Publication to arrive at an inhaler including an inner wall canister support formation.

816.   The POSA would not have found it obvious as of the priority date to combine disclosures of the '514 Publication and '406 Publication to position an inner wall canister support formation such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X such that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member.

817.   The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '514 Publication and '406 Publication to position an inner wall canister support formation such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X such that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member.

818.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '514 Publication and '406 Publication to arrive at an inhaler including an inner wall canister support formation extending inwardly from the inner wall of the canister housing positioned such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X such that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member.

819.   The '514 Publication in combination the '406 Publication does not disclose or otherwise suggest the limitation "such that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member."

820.   The requirement "such that the first inner wall canister support formation protects against dose counter errors by reducing rocking of the medicament canister towards or away from the actuation member" is a further limitation of the claims.

821.   The GlaxoSmithKline product Flixotide further illustrates that the '514 Publication in combination with the '406 Publication does not render obvious

this claim because it shows that the inner wall canister support formations need not satisfy the requirement in the paragraph above.  Experimental evidence shows that Flixotide includes ribs, but does not satisfy this requirement.

822.    Accordingly, even if the POSA had reason to modify the disclosure of the '406 Publication by transferring the dose counter it discloses into an inhaler of the '514 Publication, the resulting configuration would not necessarily have "protected against unwanted actuation of the dose counter by reducing rocking of the medicament canister towards or away from the actuation member."

### (xi)    Claim 13

823.    The '514 Publication in combination with the '406 Publication does not render obvious claim 13 of the '587 Patent.

824.    The '514 Publication in combination with the '406 Publication does not render obvious claim 13 of the '587 Patent for at least the same reasons that it does not render obvious claim 1 of the '587 Patent.

825.    The '514 Publication in combination with the '406 Publication does not disclose or suggest every limitation in the claim.

826.    The POSA would not have found it obvious as of the priority date to combine disclosures of the '514 Publication and '406 Publication to arrive at an inhaler including an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

827.    The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '514 Publication and '406 Publication to arrive at an inhaler including an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

828.    The POSA would not have reasonably expected success as priority date if the POSA chose to combine disclosures of the '514 Publication and '406 Publication to arrive at an inhaler including an inner wall canister support formation.

829.    The POSA would not have found it obvious as of the priority date to combine disclosures of the '514 Publication and '406 Publication to arrive at an inhaler wherein the canister housing has an aperture formed in the inner wall through which the portion of the actuation member extends, and wherein the first

inner wall canister support formation extends from the main surface of the inner wall to the aperture.

830.   The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '514 Publication and '406 Publication to arrive at an inhaler wherein the canister housing has an aperture formed in the inner wall through which the portion of the actuation member extends, and wherein the first inner wall canister support formation extends from the main surface of the inner wall to the aperture.

831.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '514 Publication and '406 Publication to arrive at an inhaler wherein the canister housing has an aperture formed in the inner wall through which the portion of the actuation member extends, and wherein the first inner wall canister support formation extends from the main surface of the inner wall to the aperture.

### (xii)   Claim 14

832.   Claim 14 of the '587 Patent would not have been obvious to the POSA over the combination of the '406 Publication and the '514 Publication.

833.   Claim 14 depends from claim 13.  The '514 Publication in combination with the '406 Publication does not render obvious claim 14 for at least the same reasons that it does not render obvious claim 13.

834.   The '514 Publication in combination with the '406 Publication does not disclose or suggest every limitation in the claim.

835.   The POSA would not have found it obvious as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 13 in which the medicament canister is moveable relative to the dose counter.

836.   The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 13 in which the medicament canister is moveable relative to the dose counter.

837.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '406 Publication

with disclosures of the '514 Publication to arrive at the inhaler of claim 13 in which the medicament canister is moveable relative to the dose counter.

### (xiii)  Claim 15

838.   Claim 15 of the '587 Patent would not have been obvious to the POSA over the combination of the '406 Publication and the '514 Publication.

839.   Claim 15 depends from claim 13.  The '514 Publication in combination with the '406 Publication does not render obvious claim 15 for at least the same reasons that it does not render obvious claim 13.

840.   The '514 Publication in combination with the '406 Publication does not disclose or suggest every limitation in the claim.

841.   The POSA would not have found it obvious as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 13 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

842.   The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 13 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

843.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 13 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

### (xiv)  Claim 16

844.   Claim 16 of the '587 Patent would not have been obvious to the POSA over the combination of the '406 Publication and the '514 Publication.

845.   Claim 16 depends from claim 15.  The '514 Publication in combination with the '406 Publication does not render obvious claim 16 for at least the same reasons that it does not render obvious claim 15.

846.   The '514 Publication in combination with the '406 Publication does not disclose or suggest every limitation in the claim.

847.   The POSA would not have found it obvious as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 15 in which the support rail includes a step formed thereon.

848.   The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 15 in which the support rail includes a step formed thereon.

849.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 15 in which the support rail includes a step formed thereon.

(xv)   Claim 17

850.   Claim 17 of the '587 Patent would not have been obvious to the POSA over the combination of the '406 Publication and the '514 Publication.

851.   Claim 17 depends from claim 15.  The '514 Publication in combination with the '406 Publication does not render obvious claim 17 for at least the same reasons that it does not render obvious claim 15.

852.   The '514 Publication in combination with the '406 Publication does not disclose or suggest every limitation in the claim.

853.   The POSA would not have found it obvious as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 15 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

854.   The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 15 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

181

855.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 15 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

### (xvi)  Claim 18

856.   Claim 18 of the '587 Patent would not have been obvious to the POSA over the combination of the '406 Publication and the '514 Publication.

857.   Claim 18 depends from claim 17.  The '514 Publication in combination with the '406 Publication does not render obvious claim 18 for at least the same reasons that it does not render obvious claim 17.

858.   The '514 Publication in combination with the '406 Publication does not disclose or suggest every limitation in the claim.

859.   The POSA would not have found it obvious as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 17 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

860.   The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 17 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

861.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 17 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

### (xvii)  Claim 19

862.   Claim 19 of the '587 Patent would not have been obvious to the POSA over the combination of the '406 Publication and the '514 Publication.

863.   Claim 19 depends from claim 15.  The '514 Publication in combination with the '406 Publication does not render obvious claim 19 for at least the same reasons that it does not render obvious claim 15.

864.   The '514 Publication in combination with the '406 Publication does not disclose or suggest every limitation in the claim.

865.   The POSA would not have found it obvious as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 15 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

866.   The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 15 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

867.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 15 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

### (xviii) Claim 20

868.   Claim 20 of the '587 Patent would not have been obvious to the POSA over the combination of the '406 Publication and the '514 Publication.

869.   Claim 20 depends from claim 15.  The '514 Publication in combination with the '406 Publication does not render obvious claim 20 for at least the same reasons that it does not render obvious claim 15.

870.   The '514 Publication in combination with the '406 Publication does not disclose or suggest every limitation in the claim.

871.   The POSA would not have found it obvious as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 15 wherein a width dimension of the support rail is not constant, and the width dimension is greatest at the location where the support rail is closest to the aperture.

872.    The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 15 wherein a width dimension of the support rail is not constant, and the width dimension is greatest at the location where the support rail is closest to the aperture.

873.    The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 15 wherein a width dimension of the support rail is not constant, and the width dimension is greatest at the location where the support rail is closest to the aperture.

### (xix)  Claim 21

874.    Claim 21 of the '587 Patent would not have been obvious to the POSA over the combination of the '406 Publication and the '514 Publication.

875.    Claim 21 depends from claim 13.  The '514 Publication in combination with the '406 Publication does not render obvious claim 21 for at least the same reasons that it does not render obvious claim 13.

876.    The '514 Publication in combination with the '406 Publication does not disclose or suggest every limitation in the claim.

877.    The POSA would not have found it obvious as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 13 wherein the first inner wall canister support formation, the aperture, and a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, all lie in a common plane coincident with a longitudinal axis X which passes through the center of the central outlet port.

878.    The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 13 wherein the first inner wall canister support formation, the aperture, and a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, all lie in a common plane coincident with a longitudinal axis X which passes through the center of the central outlet port.

879.    The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '406 Publication

with disclosures of the '514 Publication to arrive at the inhaler of claim 13 wherein the first inner wall canister support formation, the aperture, and a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, all lie in a common plane coincident with a longitudinal axis X which passes through the center of the central outlet port.

### (xx)   Claim 22

880.   Claim 22 of the '587 Patent would not have been obvious to the POSA over the combination of the '406 Publication and the '514 Publication.

881.   Claim 22 depends from claim 21.  The '514 Publication in combination with the '406 Publication does not render obvious claim 22 for at least the same reasons that it does not render obvious claim 21.

882.   The '514 Publication in combination with the '406 Publication does not disclose or suggest every limitation in the claim.

883.   The POSA would not have found it obvious as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 21 comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the first inner wall canister support formation, the aperture, and the central outlet port lie in a common plane coincident with longitudinal axis X.

884.   The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 21 comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the first inner wall canister support formation, the aperture, and the central outlet port lie in a common plane coincident with longitudinal axis X.

885.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '406 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 21 comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the first inner wall canister support formation, the aperture, and the central outlet port lie in a common plane coincident with longitudinal axis X.

### 3) The '021 Publication Does Not Render Obvious the Asserted Claims of the '289 and '587 Patents.

#### a) The '289 Patent

886.    The '021 Publication does not render obvious any Asserted Claim of the '289 Patent.

### (i) Claim 1

887.    The '021 Publication does not render obvious claim 1 of the '289 Patent.

888.    The '021 Publication does not disclose or suggest every limitation in the claim.

889.    The POSA would not have found it obvious to modify the canister housing disclosed in the '021 Publication to include an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

890.    The POSA would not have been motivated or had reason to modify the canister housing disclosed in the '021 Publication to include an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

891.    The POSA would not have reasonably expected success in modifying the canister housing disclosed in the '021 Publication to include an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

892.    The POSA would not have found it obvious as of the priority date to modify an embodiment of the '021 Publication to position an inner wall canister support formation such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X.

893.    The POSA would not have been motivated or had reason as of the priority date to modify disclosures of the '021 Publication to position an inner wall canister support formation such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X.

894.    The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify disclosures of the '021 Publication to arrive at an inhaler including an inner wall canister support formation extending inwardly from the inner wall of the canister housing positioned such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X.

895.    The '021 Publication does not disclose an inner wall canister support formation.  Moreover, the POSA would have had reason to select any particular dose counter of the '021 Publication for modification, and the POSA would not have had reason to add that dose counter to an inhaler with inner wall canister support formations, all with a reasonable expectation of success.

896.    The POSA seeking to add a dose tracking device to an MDI would not have selected any one of the multiple dose counter embodiments disclosed in the '021 Publication for modification.  The '021 Publication discloses dose indicators, *e.g.*, DX-155 ('021 Publication, ¶ [0096])—even had the POSA selected the embodiments of the '021 Publication for modification (and the POSA would not have done so), the POSA would have selected dose indicator embodiments of the '021 Publication rather than dose counter embodiments.  Even had the POSA chosen to pursue a dose counter, the POSA would have pursued a dose counter located on top of the canister, not a dose counter located in whole or in part below the canister.

897.    Moreover, "inner wall canister support formations" were not "essentially ubiquitously used in MDIs" as of the priority date.  To the contrary, many prior art references describe inhalers without any reference to "inner wall canister support formations" or do not include such formations in embodiments with dose counters.  *See, e.g.*, PTX-352 ('406 Publication (depicting and describing inhalers without rails extending outwardly from the main body)); DX-171 ('044 Publication (same)); DX-154 ('817 Publication (same)); DX-155 ('021 Publication (same)); DX-163 ('191 Publication (Figures 31-32, 70-71, 73-76, 93, 136, depicting a canister housing without support rails)); DX-162 ('552 Publication); DX-159 ('950 Publication); DX-148 ('627 Patent); DX-167 (GB '489); DX-169 ('159 Publication); DX-170 ('965 Publication); and DX-158 ('102 Publication).  Other references described such ribs as optional.  *See* DX-153 ('008 Publication, ¶ [0045] ("Spacer ribs (not shown) may be provided inside the housing to hold the external surface of the container 2 spaced from the internal surface of the housing 1."); *see also* DX-165 ('514 Publication, 14:17-19); DX-137 ('822 Patent, 3:11-14).

898.    Furthermore, the POSA would have resisted changing the canister housing associated with the dose counter of the '021 Publication, or adding any structure to the canister housing of a different inhaler.  As the POSA would have understood, components of a system are designed and disclosed to be used together, not to be mixed and matched from different systems or modified in ways that could alter critical features like the established airflow through the inhaler, which can affect product performance and/or require further regulatory approvals. *See, e.g.*, PTX-148 (Stuart 2013 at 43, TEVADOC-00000534).  Simply put, the POSA who chose to use the dose counter of the '021 Publication would have used the canister housing described for use with the dose counter of the '021 Publication, rather than selecting some other canister housing or modifying the canister housing that the reference discloses.  The POSA also would not have reasonably expected success in integrating the dose counter or indicator embodiments of the '021 Publication into a "conventional" canister housing because the POSA would have understood that the structures the '021 Publication discloses likely take up too much space to expect the combination to function properly.  The '021 Publication also describes the shape of its dose counter housing as being adapted to the canister housing, and noted that the embodiments of the '021 Publication "can be configured in any number of different sizes and shapes so as to be accommodated in a variety of housings or cap assemblies, with or without support blocks and the like."  DX-155 ('021 Publication, [0108]).  This statement acknowledges that the dose counters and indicators disclosed by the '021 Publication must be tailored to the particular canister housing in which they operate.

The POSA would not have reasonably expected success in adding a counter or indicator disclosed in the '021 Publication in a different canister housing without first adjusting both the canister housing and the dose indicator to work well with one another.

899.   Moreover, successful products that do not include support rails are marketed today and many were marketed as of the priority date—for example, Atrovent®, Alupent®, Berodual®, Berotec®, Combivent®, and Budiair® do not include support rails.  And as stated before, the POSA would have been concerned that any alterations to the inside of the canister housing, such as the addition of support rails, would have raised issues regarding airflow disruption, alteration to product performance, or a need to seek new regulatory approvals.  *See, e.g.*, PTX-148 (Stuart 2013, at 43, TEVADOC-00000534).

900.   Further, paragraph [0108] of the '021 Publication does not disclose "spacing the canister from the housing walls."  Rather, paragraph [0108] discloses space between the valve stem block and the canister walls such that the dose counter or indicator described by the '021 Publication can fit in the space between the valve stem block and the canister walls.  It does not follow that the canister itself is spaced from the walls.

901.   The POSA would not have been motivated to use an actuator that includes ribs, or to modify the actuator of the '021 Publication to include ribs in order to maintain this space, support the canister, and minimize unwanted counting.

902.   Even if the POSA chose to remove the dose counter or indicator disclosed by the '021 Publication and place that dose counter into a canister housing containing "ribs", there is no reason at all why the POSA would have had selected a canister housing whose ribs would have happened to lie a common plane with actuation member of the '021 Publication's dose counter.

903.   A rib located "adjacent" to actuation member 74 would not necessarily satisfy the Common Plane Limitation

904.   The nonobviousness of claim 1 is further confirmed by the inventors' own experience.  It was not until the inventors grappled with the results of integrating a dose counter into the canister housing, and had selected a dose counter with an actuation member extending into the canister housing operation by movement of the medicament canister, that the inventors recognized the benefit of adjusting the location of the support rails to accommodate the dose counter.  PTX-208 (TEVAQVAR-00031848, at -854).

### (ii)    Claim 2

905.   Claim 2 of the '289 Patent would not have been obvious to the POSA over the '021 Publication as of the priority date.

189

906.    Claim 2 depends from claim 1.  The '021 Publication does not render obvious claim 2 for at least the same reasons that it does not render obvious claim 1.

907.    The '021 Publication does not disclose or suggest every limitation in the claim.

908.    The POSA would not have found it obvious as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 1 in which the medicament canister is moveable relative to the dose counter.

909.    The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 1 in which the medicament canister is moveable relative to the dose counter.

910.    The POSA would not have reasonably expected success as of the priority date in modifying an embodiment of the '021 Publication to arrive at the inhaler of claim 1 in which the medicament canister is moveable relative to the dose counter.

### (iii)    Claim 3

911.    Claim 3 of the '289 Patent would not have been obvious to the POSA over the '021 Publication as of the priority date.

912.    Claim 3 depends from claim 1.  The '021 Publication does not render obvious claim 3 for at least the same reasons that it does not render obvious claim 1.

913.    The '021 Publication does not disclose or suggest every limitation in the claim.

914.    The '021 Publication does not disclose an aperture formed in the inner wall through which the portion of the actuation member extends.

915.    The '021 Publication does not disclose an internal wall of the inhaler body that is horizontal, through which a portion of the actuation member extends, where horizontal means substantially perpendicular to the primary direction of the movement of the medicament canister when it is pressed downward by the user to expel medication.

916.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 1 in which the inhaler comprises an aperture formed in the inner wall through which the portion of the actuation member extends.

917.   The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 1 in which the inhaler comprises an aperture formed in the inner wall through which the portion of the actuation member extends.

918.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 1 in which the inhaler comprises an aperture formed in the inner wall through which the portion of the actuation member extends.

### (iv)   Claim 4

919.   Claim 4 of the '289 Patent would not have been obvious to the POSA over the '021 Publication as of the priority date.

920.   Claim 4 depends from claim 1.  The '021 Publication does not render obvious claim 4 for at least the same reasons that it does not render obvious claim 1.

921.   The '021 Publication does not disclose or suggest every limitation in the claim.

922.   The '021 Publication does not disclose an inner wall canister support formation that is a support rail that extends longitudinally along the inside surface of the main body.

923.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 1 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

924.   The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 1 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

925.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 1 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

### (v)    Claim 5

926.   Claim 5 of the '289 Patent would not have been obvious to the POSA over the '021 Publication as of the priority date.

927.   Claim 5 depends from claim 4.  The '021 Publication does not render obvious claim 5 for at least the same reasons that it does not render obvious claim 4.

928.   The '021 Publication does not disclose or suggest every limitation in the claim.

929.   The '021 Publication does not disclose a support rail including a step formed thereon.

930.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 4 in which the support rail includes a step formed thereon.

931.   The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 4 in which the support rail includes a step formed thereon.

932.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 4 in which the support rail includes a step formed thereon.

### (vi)    Claim 6

933.   Claim 6 of the '289 Patent would not have been obvious to the POSA over the '021 Publication as of the priority date.

934.   Claim 6 depends from claim 4.  The '021 Publication does not render obvious claim 6 for at least the same reasons that it does not render obvious claim 4.

935.   The '021 Publication does not disclose or suggest every limitation in the claim.

936.   The '021 Publication does not disclose a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

937.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 4 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

938.   The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 4 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

939.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 4 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

### (vii)   Claim 7

940.   Claim 7 of the '289 Patent would not have been obvious to the POSA over the '021 Publication as of the priority date.

941.   Claim 7 depends from claim 6.  The '021 Publication does not render obvious claim 7 for at least the same reasons that it does not render obvious claim 6.

942.   The '021 Publication does not disclose or suggest every limitation in the claim.

943.   The '021 Publication does not disclose a plurality of support rails, two of which are positioned at opposite ends of the inside surface of the main body to face each other.

944.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 6 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

193

945.   The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 6 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

946.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 6 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

### (viii)  Claim 8

947.   Claim 8 of the '289 Patent would not have been obvious to the POSA over the '021 Publication as of the priority date.

948.   Claim 8 depends from claim 4.  The '021 Publication does not render obvious claim 8 for at least the same reasons that it does not render obvious claim 4.

949.   The '021 Publication does not disclose or suggest every limitation in the claim.

950.   The '021 Publication does not disclose a support rail including two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

951.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 4 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

952.   The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 4 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

953.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 4 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

194

### b)    The '587 Patent

954.    The '021 Publication does not render obvious any Asserted Claim of the '587 Patent.

### (i)    Claim 1

955.    The '021 Publication does not render obvious claim 1 of the '587 Patent.

956.    The '021 Publication does not render obvious claim 1 of the '587 Patent for at least the same reasons that it does not render obvious claim 1 of the '289 Patent

957.    The '021 Publication does not disclose or suggest every limitation in the claim.

958.    The POSA would not have found it obvious to modify the canister housing disclosed in the '021 Publication to include an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

959.    The POSA would not have been motivated or had reason to modify the canister housing disclosed in the '021 Publication to include an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

960.    The POSA would not have reasonably expected success in modifying the canister housing disclosed in the '021 Publication to include an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

961.    The POSA would not have found it obvious as of the priority date to modify an embodiment of the '021 Publication to position an inner wall canister support formation such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X such that the first inner wall canister support formation protected against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler.

962.    The POSA would not have been motivated or had reason as of the priority date to modify disclosures of the '021 Publication to position an inner wall canister support formation such that the inner wall canister support formation,

actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X such that the first inner wall canister support formation protected against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler.

963.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify disclosures of the '021 Publication to arrive at an inhaler including an inner wall canister support formation extending inwardly from the inner wall of the canister housing positioned such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X such that the first inner wall canister support formation protected against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler.

964.   The '021 Publication does not disclose or otherwise suggest that "the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler."

965.   The requirement that "the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler" is a further limitation of the claims.

966.   The GlaxoSmithKline product Flixotide further illustrates that the '021 Publication does not render obvious this claim because it shows that inner wall canister support formations need not satisfy the requirement in the paragraph above.  Experimental evidence shows that Flixotide includes ribs, but does not satisfy this requirement.

967.   Accordingly, even if the POSA had reason to modify the disclosure of the '021 Publication by transferring the dose counter it discloses into a canister housing that includes an inner wall canister support formation, the resulting configuration would not necessarily have "protected against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler."

### (ii)    Claim 2

968.   Claim 2 of the '587 Patent would not have been obvious to the POSA over the '021 Publication as of the priority date.

969.   Claim 2 depends from claim 1.  The '021 Publication does not render obvious claim 2 for at least the same reasons that it does not render obvious claim 1.

970.   The '021 Publication does not disclose or suggest every limitation in the claim.

971.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 1 in which the medicament canister is moveable relative to the dose counter.

972.   The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 1 in which the medicament canister is moveable relative to the dose counter.

973.   The POSA would not have reasonably expected success as of the priority date in modifying an embodiment of the '021 Publication to arrive at the inhaler of claim 1 in which the medicament canister is moveable relative to the dose counter.

## (iii)   Claim 3

974.   Claim 3 of the '587 Patent would not have been obvious to the POSA over the '021 Publication as of the priority date.

975.   Claim 3 depends from claim 1.  The '021 Publication does not render obvious claim 3 for at least the same reasons that it does not render obvious claim 1.

976.   The '021 Publication does not disclose or suggest every limitation in the claim.

977.   The '021 Publication does not disclose an aperture formed in the inner wall through which the portion of the actuation member extends.

978.   The '021 Publication does not disclose an internal wall of the inhaler body that is horizontal, through which a portion of the actuation member extends, where horizontal means substantially perpendicular to the primary direction of the movement of the medicament canister when it is pressed downward by the user to expel medication.

979.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 1 in which the inhaler comprises an aperture formed in the inner wall through which the portion of the actuation member extends.

980.   The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 1 in which the inhaler comprises an aperture formed in the inner wall through which the portion of the actuation member extends.

981.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 1 in which the inhaler comprises an aperture formed in the inner wall through which the portion of the actuation member extends.

### (iv)   Claim 4

982.   Claim 4 of the '587 Patent would not have been obvious to the POSA over the '021 Publication as of the priority date.

983.   Claim 4 depends from claim 1.  The '021 Publication does not render obvious claim 4 for at least the same reasons that it does not render obvious claim 1.

984.   The '021 Publication does not disclose or suggest every limitation in the claim.

985.   The '021 Publication does not disclose an inner wall canister support formation that is a support rail that extends longitudinally along the inside surface of the main body.

986.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 1 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

987.   The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 1 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

988.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 1 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

### (v)   Claim 5

989.   Claim 5 of the '587 Patent would not have been obvious to the POSA over the '021 Publication as of the priority date.

990.   Claim 5 depends from claim 4.  The '021 Publication does not render obvious claim 5 for at least the same reasons that it does not render obvious claim 4.

991.   The '021 Publication does not disclose or suggest every limitation in the claim.

992.   The '021 Publication does not disclose a support rail including a step formed thereon.

993.   The POSA would not have found it obvious as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 4 in which the support rail includes a step formed thereon.

994.   The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 4 in which the support rail includes a step formed thereon.

995.   The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 4 in which the support rail includes a step formed thereon.

### (vi)   Claim 6

996.   Claim 6 of the '587 Patent would not have been obvious to the POSA over the '021 Publication as of the priority date.

997.   Claim 6 depends from claim 4.  The '021 Publication does not render obvious claim 6 for at least the same reasons that it does not render obvious claim 4.

998.   The '021 Publication does not disclose or suggest every limitation in the claim.

999.   The '021 Publication does not disclose a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

1000. The POSA would not have found it obvious as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 4 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

1001. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 4 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

1002. The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 4 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

### (vii)   Claim 7

1003. Claim 7 of the '587 Patent would not have been obvious to the POSA over the '021 Publication as of the priority date.

1004. Claim 7 depends from claim 6.  The '021 Publication does not render obvious claim 7 for at least the same reasons that it does not render obvious claim 6.

1005. The '021 Publication does not disclose or suggest every limitation in the claim.

1006. The '021 Publication does not disclose a plurality of support rails, two of which are positioned at opposite ends of the inside surface of the main body to face each other.

1007. The POSA would not have found it obvious as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 6 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

1008. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 6 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

1009. The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 6 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

### (viii)  Claim 8

1010. Claim 8 of the '587 Patent would not have been obvious to the POSA over the '021 Publication as of the priority date.

1011. Claim 8 depends from claim 4.  The '021 Publication does not render obvious claim 8 for at least the same reasons that it does not render obvious claim 4.

1012. The '021 Publication does not disclose or suggest every limitation in the claim.

1013. The '021 Publication does not disclose a support rail including two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

1014. The POSA would not have found it obvious as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 4 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

1015. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 4 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

1016. The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 4 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

### (ix)    Claim 11

1017. Claim 11 of the '587 Patent would not have been obvious to the POSA over the '021 Publication as of the priority date.

1018. Claim 11 depends from claim 1.  The '021 Publication does not render obvious claim 11 for at least the same reasons that it does not render obvious claim 1.

1019. The '021 Publication does not disclose or suggest every limitation in the claim.

1020. The '021 Publication does not disclose an inhaler comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the actuation member and the central outlet port lie in a common plane coincident with longitudinal axis X.

1021. The POSA would not have found it obvious as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 1 comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the actuation member and the central outlet port lie in a common plane coincident with longitudinal axis X.

1022. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 1 comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the actuation member and the central outlet port lie in a common plane coincident with longitudinal axis X.

1023. The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 1 comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the actuation member and the central outlet port lie in a common plane coincident with longitudinal axis X.

### (x)    Claim 12

1024. The '021 Publication does not render obvious claim 12 of the '587 Patent.

1025. The '021 Publication does not render obvious claim 12 of the '587 Patent for at least the same reasons that it does not anticipate claim 1 of the '289 Patent.

1026. The '021 Publication does not disclose or suggest every limitation in the claim.

1027. The '021 Publication does not disclose or suggest the limitation "such that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member."

1028. The POSA would not have found it obvious to modify the canister housing disclosed in the '021 Publication to include an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

1029. The POSA would not have been motivated or had reason to modify the canister housing disclosed in the '021 Publication to include an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

1030. The POSA would not have reasonably expected success in modifying the canister housing disclosed in the '021 Publication to include an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

1031. The requirement "such that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member" is a further limitation of the claims.

1032. The GlaxoSmithKline product Flixotide further illustrates that the '021 Publication does not render obvious this claim because it shows that inner wall canister support formations need not satisfy the requirement in the paragraph above.  Experimental evidence shows that Flixotide includes ribs, but does not satisfy this requirement.

1033. Accordingly, even if the POSA had reason to modify the disclosure of the '021 Publication by transferring the dose counter it discloses into a canister housing that includes an inner wall canister support formation, the resulting configuration would not necessarily have "protected against unwanted actuation of

the dose counter by reducing rocking of the medicament canister towards or away from the actuation member."

### (xi)    Claim 13

1034. The '021 Publication does not render obvious claim 13 of the '587 Patent.

1035. The '021 Publication does not render obvious claim 13 of the '587 Patent for at least the same reasons that it does not render obvious claim 1 of the '587 Patent.

1036. The '021 Publication does not disclose or suggest every limitation in the claim.

1037. The POSA would not have found it obvious to modify the canister housing disclosed in the '021 Publication to include an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

1038. The POSA would not have been motivated or had reason to modify the canister housing disclosed in the '021 Publication to include an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

1039. The POSA would not have reasonably expected success in modifying the canister housing disclosed in the '021 Publication to include an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

1040. The POSA would not have found it obvious to modify the canister housing disclosed in the '406 Publication to include an inner wall canister support formation that extends from the main surface of the inner wall to the aperture through which the portion of the actuation member extends.

1041. The POSA would not have been motivated or had reason to modify the canister housing disclosed in the '406 Publication to include an inner wall canister support formation that extends from the main surface of the inner wall to the aperture through which the portion of the actuation member extends

1042. The POSA would not have reasonably expected success in modifying the canister housing disclosed in the '406 Publication to include an inner wall

canister support formation that extends from the main surface of the inner wall to the aperture through which the portion of the actuation member extends.

### (xii)   Claim 14

1043. Claim 14 of the '587 Patent would not have been obvious to the POSA over the '021 Publication as of the priority date.

1044. Claim 14 depends from claim 13. The '021 Publication does not render obvious claim 14 for at least the same reasons that it does not render obvious claim 13.

1045. The '021 Publication does not disclose or suggest every limitation in the claim.

1046. The POSA would not have found it obvious as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 13 in which the medicament canister is moveable relative to the dose counter.

1047. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 13 in which the medicament canister is moveable relative to the dose counter.

1048. The POSA would not have reasonably expected success as of the priority date in modifying an embodiment of the '021 Publication to arrive at the inhaler of claim 13 in which the medicament canister is moveable relative to the dose counter.

### (xiii)  Claim 15

1049. Claim 15 of the '587 Patent would not have been obvious to the POSA over the '021 Publication as of the priority date.

1050. Claim 15 depends from claim 13. The '021 Publication does not render obvious claim 15 for at least the same reasons that it does not render obvious claim 13.

1051. The '021 Publication does not disclose or suggest every limitation in the claim.

1052. The '021 Publication does not disclose an inner wall canister support formation that is a support rail that extends longitudinally along the inside surface of the main body.

1053. The POSA would not have found it obvious as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 13 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

1054. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 13 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

1055. The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 13 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

### (xiv)  Claim 16

1056. Claim 16 of the '587 Patent would not have been obvious to the POSA over the '021 Publication as of the priority date.

1057. Claim 16 depends from claim 15.  The '021 Publication does not render obvious claim 16 for at least the same reasons that it does not render obvious claim 15.

1058. The '021 Publication does not disclose or suggest every limitation in the claim.

1059. The '021 Publication does not disclose a support rail including a step formed thereon.

1060. The POSA would not have found it obvious as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 15 in which the support rail includes a step formed thereon.

1061. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 15 in which the support rail includes a step formed thereon.

1062. The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 15 in which the support rail includes a step formed thereon.

### (xv)   Claim 17

1063. Claim 17 of the '587 Patent would not have been obvious to the POSA over the '021 Publication as of the priority date.

1064. Claim 17 depends from claim 15.  The '021 Publication does not render obvious claim 17 for at least the same reasons that it does not render obvious claim 15.

1065. The '021 Publication does not disclose or suggest every limitation in the claim.

1066. The '021 Publication does not disclose a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

1067. The POSA would not have found it obvious as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 15 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

1068. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 15 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

1069. The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 15 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

### (xvi)   Claim 18

1070. Claim 18 of the '587 Patent would not have been obvious to the POSA over the '021 Publication as of the priority date.

1071. Claim 18 depends from claim 17.  The '021 Publication does not render obvious claim 18 for at least the same reasons that it does not render obvious claim 17.

1072. The '021 Publication does not disclose or suggest every limitation in the claim.

1073. The '021 Publication does not disclose a plurality of support rails, two of which are positioned at opposite ends of the inside surface of the main body to face each other.

1074. The POSA would not have found it obvious as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 17 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

1075. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 17 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

1076. The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 17 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

### (xvii) Claim 19

1077. Claim 19 of the '587 Patent would not have been obvious to the POSA over the '021 Publication as of the priority date.

1078. Claim 19 depends from claim 15. The '021 Publication does not render obvious claim 19 for at least the same reasons that it does not render obvious claim 15.

1079. The '021 Publication does not disclose or suggest every limitation in the claim.

1080. The '021 Publication does not disclose a support rail including two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

1081. The POSA would not have found it obvious as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 15

wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

1082. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 15 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

1083. The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 15 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

### (xviii) Claim 20

1084. Claim 20 of the '587 Patent would not have been obvious to the POSA over the '021 Publication as of the priority date.

1085. Claim 20 depends from claim 15. The '021 Publication does not render obvious claim 20 for at least the same reasons that it does not render obvious claim 15.

1086. The '021 Publication does not disclose or suggest every limitation in the claim.

1087. The '021 Publication does not disclose an inhaler wherein a width dimension of the support rail is not constant, and the width dimension is greatest at the location where the support rail is closest to the aperture.

1088. The POSA would not have found it obvious as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 15 wherein a width dimension of the support rail is not constant, and the width dimension is greatest at the location where the support rail is closest to the aperture.

1089. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 15 wherein a width dimension of the support rail is not constant, and the width dimension is greatest at the location where the support rail is closest to the aperture.

1090. The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 15 wherein a width dimension of the support rail is not constant, and the width dimension is greatest at the location where the support rail is closest to the aperture.

### (xix)  Claim 21

1091. Claim 21 of the '587 Patent would not have been obvious to the POSA over the '021 Publication as of the priority date.

1092. Claim 21 depends from claim 13.  The '021 Publication does not render obvious claim 21 for at least the same reasons that it does not render obvious claim 13.

1093. The '021 Publication does not disclose or suggest every limitation in the claim.

1094. The '021 Publication does not disclose an inhaler wherein the first inner wall canister support formation, the aperture, and a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, all lie in a common plane coincident with a longitudinal axis X which passes through the center of the central outlet port.

1095. The POSA would not have found it obvious as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 13 wherein the first inner wall canister support formation, the aperture, and a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, all lie in a common plane coincident with a longitudinal axis X which passes through the center of the central outlet port.

1096. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 13 wherein the first inner wall canister support formation, the aperture, and a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, all lie in a common plane coincident with a longitudinal axis X which passes through the center of the central outlet port.

1097. The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 13 wherein the first inner wall canister support

formation, the aperture, and a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, all lie in a common plane coincident with a longitudinal axis X which passes through the center of the central outlet port.

### (xx)   Claim 22

1098. Claim 22 of the '587 Patent would not have been obvious to the POSA over the '021 Publication as of the priority date.

1099. Claim 22 depends from claim 21. The '021 Publication does not render obvious claim 22 for at least the same reasons that it does not render obvious claim 21.

1100. The '021 Publication does not disclose or suggest every limitation in the claim.

1101. The '021 Publication does not disclose an inhaler comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the first inner wall canister support formation, the aperture, and the central outlet port lie in a common plane coincident with longitudinal axis X.

1102. The POSA would not have found it obvious as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 21 comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the first inner wall canister support formation, the aperture, and the central outlet port lie in a common plane coincident with longitudinal axis X.

1103. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 21 comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the first inner wall canister support formation, the aperture, and the central outlet port lie in a common plane coincident with longitudinal axis X.

1104. The POSA would not have reasonably expected success as of the priority date if the POSA chose to modify an embodiment of the '021 Publication to arrive at the inhaler of claim 21 comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the first inner wall canister support formation, the aperture, and the central outlet port lie in a common plane coincident with longitudinal axis X.

### 4) The '514 Publication in Combination with the '021 Publication Does Not Render Obvious the Asserted Claims of the '289 and '587 Patents.

#### a) The '289 Patent

1105. The '514 Publication in combination with the '021 Publication does not render obvious any Asserted Claim of the '289 Patent.

#### (i) Claim 1

1106. The '514 Publication in combination with the '021 Publication does not render obvious claim 1 of the '289 Patent.

1107. The '514 Publication in combination with the '021 Publication does not disclose or suggest every limitation in the claim.

1108. The POSA would not have had a reason to combine the dose counter of the '021 Publication with the canister housing of the '514 Publication.

1109. The POSA would not have found it obvious as of the priority date to combine disclosures of the '514 Publication and '021 Publication to arrive at an inhaler including an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

1110. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '514 Publication and '021 Publication to arrive at an inhaler including an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

1111. The POSA would not have reasonably expected success as priority date if the POSA chose to combine disclosures of the '514 Publication and '021 Publication to arrive at an inhaler including an inner wall canister support formation.

1112. The POSA would not have found it obvious as of the priority date to combine disclosures of the '514 Publication and '021 Publication to position an inner wall canister support formation such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X.

1113. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '514 Publication and '021 Publication to

position an inner wall canister support formation such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X.

1114. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '514 Publication and '021 Publication to arrive at an inhaler including an inner wall canister support formation extending inwardly from the inner wall of the canister housing positioned such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X.

1115. The '514 Publication emphasizes the importance of affixing its dose indicator to the medication canister, such that neither is movable relative to the other.  The dose counters disclosed in the '021 Publication are not affixed to the canister, but rather the canister moves toward and away from the dose counter of the '021 Publication as the POSA actuates the device.  Accordingly, the POSA would not have reason to combine one of the dose counters disclosed in the '021 Publication with the inhaler bodies disclosed in the '514 Publication, nor would the POSA reasonably have expected success in doing so.  To the contrary, the POSA would have expected that combining a housing designed to accommodate an annular dose counter affixed to the canister with a different dose counter located substantially below the canister would have been unsuccessful, if not inoperable.

1116. In addition, the POSA would have understood that the close fit between the annular dose counter affixed to the canister and the canister housing acted to stabilized the canister within the canister housing.  Accordingly, the POSA would have expected the canister housing of the '514 Publication to be unsuitable for any design that did not stabilize the canister in this manner.  The POSA therefore would not have had a reasonable expectation of success in achieving a robust and accurate inhaler/dose counting system by combining the canister housing disclosed in the '514 Publication with a dose counter, like the ones disclosed in the '021 Publication, that was not affixed to the canister and could not be expected to stabilize it within the canister housing accordingly.

1117. Furthermore, the inhaler bodies of the '514 Publication contain an "actuation pin" that is configured to be "received within the dose indicator, e.g. passing through a cut-out portion (66) in the second edge (62) of the housing (see Figure 5)."  DX-165 ('514 Publication, 25:24-27).  The POSA would have understood that such a pin would have been structurally incompatible with the dose counters disclosed in the '021 Publication.  The POSA would have expected

"actuation pin (29)" to physically prevent insertion of the dose counters disclosed in the '021 Publication appropriately into the canister housing.

1118. Furthermore, the '514 Publication discloses numerous housings, many of which do not have support rails, *see, e.g.*, DX-165 ('514 Publication, Figures 2b, 3, 8b, 10, and 12a), and it mentions support rails only once in its entire disclosure as an optional feature of the housing, unrelated to the dose indicator the '514 Publication devotes the remainder of its disclosure to describing, *see* DX-165 ('514 Publication, 17-19). Thus, the POSA would not have had reason to (1) select one of the embodiments in the '514 Publication that discloses support rails, and then (2) modify that embodiment by eliminating the feature that is the primary subject of the '514 Publication's disclosure (its annular dose indicator), and then (3) integrate a dramatically different dose counter (such as that of the '021 Publication, which is affixed to the canister housing and is not affixed to the medication canister) into the canister housing of the '514 Publication. To the contrary, the POSA would not have expected such a combination to be operable, let alone successful.

1119. Even were the POSA to have combined the dose counter of the '021 Publication with the canister housing of the '514 Publication, that combination would not have resulted in the claimed invention. There would have been many ways to align the actuation member of the dose counters of the '021 Publication with the optional inner wall canister support formations of the '514 Publication's canister housing, and the POSA would have had no reason to select an alignment that satisfies the Common Plane Limitation.

### (ii)    Claim 2

1120. Claim 2 of the '289 Patent would not have been obvious to the POSA over the combination of the '021 Publication and the '514 Publication.

1121. Claim 2 depends from claim 1. The '514 Publication in combination with the '021 Publication does not render obvious claim 2 for at least the same reasons that it does not render obvious claim 1.

1122. The '021 Publication in combination with the '514 Publication does not disclose or suggest every limitation in the claim.

1123. The POSA would not have found it obvious as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the medicament canister is moveable relative to the dose counter.

1124. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the medicament canister is moveable relative to the dose counter.

1125. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the medicament canister is moveable relative to the dose counter.

### (iii)    Claim 3

1126. Claim 3 of the '289 Patent would not have been obvious to the POSA over the combination of the '021 Publication and the '514 Publication as of the priority date.

1127. Claim 3 depends from claim 1.  The '514 Publication in combination with the '021 Publication does not render obvious claim 3 for at least the same reasons that it does not render obvious claim 1.

1128. The '021 Publication in combination with the '514 Publication does not disclose or suggest every limitation in the claim.

1129. The POSA would not have found it obvious as of the priority date to combine disclosures of the '406 Publication with disclosures of the '021 Publication to arrive at the inhaler of claim 1 in which the inhaler comprises an aperture formed in the inner wall through which the portion of the actuation member extends.

1130. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '406 Publication with disclosures of the '021 Publication to arrive at the inhaler of claim 1 in which the inhaler comprises an aperture formed in the inner wall through which the portion of the actuation member extends.

1131. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the inhaler comprises an aperture formed in the inner wall through which the portion of the actuation member extends.

### (iv)    Claim 4

1132. Claim 4 of the '289 Patent would not have been obvious to the POSA over the combination of the '021 Publication and the '514 Publication as of the priority date.

1133. Claim 4 depends from claim 1.  The '514 Publication in combination with the '021 Publication does not render obvious claim 4 for at least the same reasons that it does not render obvious claim 1.

1134. The '021 Publication in combination with the '514 Publication does not disclose or suggest every limitation in the claim.

1135. The POSA would not have found it obvious as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

1136. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

1137. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

### (v)    Claim 5

1138. Claim 5 of the '289 Patent would not have been obvious to the POSA over the combination of the '021 Publication and the '514 Publication as of the priority date.

1139. Claim 5 depends from claim 4.  The '514 Publication in combination with the '021 Publication does not render obvious claim 5 for at least the same reasons that it does not render obvious claim 4.

1140. The '021 Publication in combination with the '514 Publication does not disclose or suggest every limitation in the claim.

1141. The POSA would not have found it obvious as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 in which the support rail includes a step formed thereon.

1142. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 in which the support rail includes a step formed thereon.

1143. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 in which the support rail includes a step formed thereon.

**(vi)    Claim 6**

1144. Claim 6 of the '289 Patent would not have been obvious to the POSA over the combination of the '021 Publication and the '514 Publication as of the priority date.

1145. Claim 6 depends from claim 4.  The '514 Publication in combination with the '021 Publication does not render obvious claim 6 for at least the same reasons that it does not render obvious claim 4.

1146. The '021 Publication in combination with the '514 Publication does not disclose or suggest every limitation in the claim.

1147. The POSA would not have found it obvious as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

1148. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

1149. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '021 Publication

with disclosures of the '514 Publication to arrive at the inhaler of claim 4 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

### (vii)   Claim 7

1150. Claim 7 of the '289 Patent would not have been obvious to the POSA over the combination of the '021 Publication and the '514 Publication as of the priority date.

1151. The '021 Publication in combination with the '514 Publication does not disclose or suggest every limitation in the claim.

1152. Claim 7 depends from claim 6.  The '514 Publication in combination with the '021 Publication does not render obvious claim 7 for at least the same reasons that it does not render obvious claim 6.

1153. The POSA would not have found it obvious as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 6 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

1154. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 6 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

1155. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 6 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

### (viii)  Claim 8

1156. Claim 8 of the '289 Patent would not have been obvious to the POSA over the combination of the '021 Publication and the '514 Publication as of the priority date.

1157. Claim 8 depends from claim 4.  The '514 Publication in combination with the '021 Publication does not render obvious claim 8 for at least the same reasons that it does not render obvious claim 4.

1158. The '021 Publication in combination with the '514 Publication does not disclose or suggest every limitation in the claim.

1159. The POSA would not have found it obvious as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

1160. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

1161. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

### b)     The '587 Patent

1162. The '514 Publication in combination with the '021 Publication does not render obvious any Asserted Claim of the '587 Patent.

### (i)     Claim 1

1163. The '514 Publication in combination with the '021 Publication does not render obvious claim 1 of the '587 Patent.

1164. The '514 Publication in combination with the '021 Publication does not render obvious claim 1 of the '587 Patent for at least the same reasons that it does not render obvious claim 1 of the '289 Patent.

1165. The '514 Publication in combination with the '021 Publication does not disclose or suggest every limitation in the claim.

1166. The POSA would not have found it obvious as of the priority date to combine disclosures of the '514 Publication and '021 Publication to arrive at an inhaler including an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

1167. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '514 Publication and '021 Publication to arrive at an inhaler including an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

1168. The POSA would not have reasonably expected success as priority date if the POSA chose to combine disclosures of the '514 Publication and '021 Publication to arrive at an inhaler including an inner wall canister support formation.

1169. The POSA would not have found it obvious as of the priority date to combine disclosures of the '514 Publication and '021 Publication to position an inner wall canister support formation such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X such that the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler.

1170. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '514 Publication and '021 Publication to position an inner wall canister support formation such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X such that the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler.

1171. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '514 Publication and '021 Publication to arrive at an inhaler including an inner wall canister support formation extending inwardly from the inner wall of the canister housing positioned such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X such that the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler.

220

1172. The '514 Publication in combination with the '021 Publication does not disclose or suggest that "the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler."

1173. The requirement that "the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler" is a further limitation of the claims.

1174. The GlaxoSmithKline product Flixotide further illustrates that the '514 Publication in combination with the '021 Publication does not render obvious this claim because it shows that inner wall canister support formations need not satisfy the requirement in the paragraph above.  Experimental evidence shows that Flixotide includes ribs, but does not satisfy this requirement.

1175. Accordingly, even if the POSA had reason to modify the disclosure of the '021 Publication by transferring the dose counter it discloses into a canister housing that includes an inner wall canister support formation, the resulting configuration would not necessarily have "protected against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler."

### (ii)    Claim 2

1176. Claim 2 of the '587 Patent would not have been obvious to the POSA over the combination of the '021 Publication and the '514 Publication.

1177. Claim 2 depends from claim 1.  The '514 Publication in combination with the '021 Publication does not render obvious claim 2 for at least the same reasons that it does not render obvious claim 1.

1178. The '021 Publication in combination with the '514 Publication does not disclose or suggest every limitation in the claim.

1179. The POSA would not have found it obvious as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the medicament canister is moveable relative to the dose counter.

1180. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '021 Publication with disclosures of the

'514 Publication to arrive at the inhaler of claim 1 in which the medicament canister is moveable relative to the dose counter.

1181. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the medicament canister is moveable relative to the dose counter.

### (iii)   Claim 3

1182. Claim 3 of the '587 Patent would not have been obvious to the POSA over the combination of the '021 Publication and the '514 Publication as of the priority date.

1183. Claim 3 depends from claim 1.  The '514 Publication in combination with the '021 Publication does not render obvious claim 3 for at least the same reasons that it does not render obvious claim 1.

1184. The '021 Publication in combination with the '514 Publication does not disclose or suggest every limitation in the claim.

1185. The POSA would not have found it obvious as of the priority date to combine disclosures of the '406 Publication with disclosures of the '021 Publication to arrive at the inhaler of claim 1 in which the inhaler comprises an aperture formed in the inner wall through which the portion of the actuation member extends.

1186. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '406 Publication with disclosures of the '021 Publication to arrive at the inhaler of claim 1 in which the inhaler comprises an aperture formed in the inner wall through which the portion of the actuation member extends.

1187. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the inhaler comprises an aperture formed in the inner wall through which the portion of the actuation member extends.

### (iv)   Claim 4

1188. Claim 4 of the '587 Patent would not have been obvious to the POSA over the combination of the '021 Publication and the '514 Publication as of the priority date.

1189. Claim 4 depends from claim 1.  The '514 Publication in combination with the '021 Publication does not render obvious claim 4 for at least the same reasons that it does not render obvious claim 1.

1190. The '021 Publication in combination with the '514 Publication does not disclose or suggest every limitation in the claim.

1191. The POSA would not have found it obvious as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

1192. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

1193. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

### (v)    Claim 5

1194. Claim 5 of the '587 Patent would not have been obvious to the POSA over the combination of the '021 Publication and the '514 Publication as of the priority date.

1195. Claim 5 depends from claim 4.  The '514 Publication in combination with the '021 Publication does not render obvious claim 5 for at least the same reasons that it does not render obvious claim 4.

1196. The '021 Publication in combination with the '514 Publication does not disclose or suggest every limitation in the claim.

1197. The POSA would not have found it obvious as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 in which the support rail includes a step formed thereon.

1198. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 in which the support rail includes a step formed thereon.

1199. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 in which the support rail includes a step formed thereon.

### (vi)    Claim 6

1200. Claim 6 of the '587 Patent would not have been obvious to the POSA over the combination of the '021 Publication and the '514 Publication as of the priority date.

1201. Claim 6 depends from claim 4.  The '514 Publication in combination with the '021 Publication does not render obvious claim 6 for at least the same reasons that it does not render obvious claim 4.

1202. The '021 Publication in combination with the '514 Publication does not disclose or suggest every limitation in the claim.

1203. The POSA would not have found it obvious as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

1204. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

1205. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '021 Publication

with disclosures of the '514 Publication to arrive at the inhaler of claim 4 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

### (vii)   Claim 7

1206. Claim 7 of the '587 Patent would not have been obvious to the POSA over the combination of the '021 Publication and the '514 Publication as of the priority date.

1207. Claim 7 depends from claim 6.  The '514 Publication in combination with the '021 Publication does not render obvious claim 7 for at least the same reasons that it does not render obvious claim 6.

1208. The '021 Publication in combination with the '514 Publication does not disclose or suggest every limitation in the claim.

1209. The POSA would not have found it obvious as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 6 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

1210. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 6 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

1211. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 6 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

### (viii)  Claim 8

1212. Claim 8 of the '587 Patent would not have been obvious to the POSA over the combination of the '021 Publication and the '514 Publication as of the priority date.

1213. Claim 8 depends from claim 4.  The '514 Publication in combination with the '021 Publication does not render obvious claim 8 for at least the same reasons that it does not render obvious claim 4.

1214. The '021 Publication in combination with the '514 Publication does not disclose or suggest every limitation in the claim.

1215. The POSA would not have found it obvious as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

1216. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

1217. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 4 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

## (ix)    Claim 11

1218. Claim 11 of the '587 Patent would not have been obvious to the POSA over the combination of the '021 Publication and the '514 Publication as of the priority date.

1219. Claim 11 depends from claim 1.  The '514 Publication in combination with the '021 Publication does not render obvious claim 11 for at least the same reasons that it does not render obvious claim 1.

1220. The '021 Publication in combination with the '514 Publication does not disclose or suggest every limitation in the claim.

1221. The POSA would not have found it obvious as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 comprising a second inner wall canister support formation and wherein the second inner wall canister support

formation, the actuation member and the central outlet port lie in a common plane coincident with longitudinal axis X.

1222. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the actuation member and the central outlet port lie in a common plane coincident with longitudinal axis X.

1223. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 1 comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the actuation member and the central outlet port lie in a common plane coincident with longitudinal axis X.

### (x)    Claim 12

1224. The '514 Publication in combination with the '021 Publication does not render obvious claim 12 of the '587 Patent.

1225. The '514 Publication in combination with the '021 Publication does not render obvious claim 12 of the '587 Patent for at least the same reasons that it does not render obvious claim 1 of the '289 Patent.

1226. The '514 Publication in combination with the '021 Publication does not disclose or suggest every limitation in the claim.

1227. The POSA would not have found it obvious as of the priority date to combine disclosures of the '514 Publication and '021 Publication to arrive at an inhaler including an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

1228. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '514 Publication and '021 Publication to arrive at an inhaler including an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

1229. The POSA would not have reasonably expected success as priority date if the POSA chose to combine disclosures of the '514 Publication and '021

Publication to arrive at an inhaler including an inner wall canister support formation.

1230. The POSA would not have found it obvious as of the priority date to combine disclosures of the '514 Publication and '021 Publication to position an inner wall canister support formation such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X such that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member.

1231. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '514 Publication and '021 Publication to position an inner wall canister support formation such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X such that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member.

1232. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '514 Publication and '021 Publication to arrive at an inhaler including an inner wall canister support formation extending inwardly from the inner wall of the canister housing positioned such that the inner wall canister support formation, actuation member, and the central outlet port lie in a common plane coincident with longitudinal axis X such that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member.

1233. The '514 Publication in combination with the '021 Publication does not disclose or otherwise suggest the limitation "such that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member."

1234. The requirement "such that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member" is a further limitation of the claims.

1235. The GlaxoSmithKline product Flixotide further illustrates that the '514 Publication in combination with the '021 Publication does not render obvious

this claim because it shows that inner wall canister support formations need not satisfy the requirement in the paragraph above.  Experimental evidence shows that Flixotide includes ribs, but does not satisfy the requirement.

1236. Accordingly, even if the POSA had reason to modify the disclosure of the '021 Publication by transferring the dose counter it discloses into an inhaler of the '514 Publication, the resulting configuration would necessarily have "protected against unwanted actuation of the dose counter by reducing rocking of the medicament canister towards or away from the actuation member."

### (xi)    Claim 13

1237. The '514 Publication in combination with the '021 Publication does not render obvious claim 13 of the '587 Patent.

1238. The '514 Publication in combination with the '021 Publication does not render obvious claim 13 of the '587 Patent for at least the same reasons that it does not render obvious claim 1 of the '587 Patent.

1239. The '514 Publication in combination with the '021 Publication does not disclose or suggest every limitation in the claim.

1240. The POSA would not have found it obvious as of the priority date to combine disclosures of the '514 Publication and '021 Publication to arrive at an inhaler including an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

1241. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '514 Publication and '021 Publication to arrive at an inhaler including an inner wall canister support formation extending inwardly from the inner wall of the canister housing.

1242. The POSA would not have reasonably expected success as priority date if the POSA chose to combine disclosures of the '514 Publication and '021 Publication to arrive at an inhaler including an inner wall canister support formation.

1243. The POSA would not have found it obvious as of the priority date to combine disclosures of the '514 Publication and '021 Publication to arrive at an inhaler wherein the canister housing has an aperture formed in the inner wall through which the portion of the actuation member extends, and wherein the first

inner wall canister support formation extends from the main surface of the inner wall to the aperture.

1244. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '514 Publication and '021 Publication to arrive at an inhaler wherein the canister housing has an aperture formed in the inner wall through which the portion of the actuation member extends, and wherein the first inner wall canister support formation extends from the main surface of the inner wall to the aperture.

1245. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '514 Publication and '021 Publication to at arrive at an inhaler wherein the canister housing has an aperture formed in the inner wall through which the portion of the actuation member extends, and wherein the first inner wall canister support formation extends from the main surface of the inner wall to the aperture.

### (xii)   Claim 14

1246. Claim 14 of the '587 Patent would not have been obvious to the POSA over the combination of the '021 Publication and the '514 Publication.

1247. Claim 14 depends from claim 13. The '514 Publication in combination with the '021 Publication does not render obvious claim 14 for at least the same reasons that it does not render obvious claim 13.

1248. The '021 Publication in combination with the '514 Publication does not disclose or suggest every limitation in the claim.

1249. The POSA would not have found it obvious as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 13 in which the medicament canister is moveable relative to the dose counter.

1250. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 13 in which the medicament canister is moveable relative to the dose counter.

1251. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '021 Publication

with disclosures of the '514 Publication to arrive at the inhaler of claim 13 in which the medicament canister is moveable relative to the dose counter.

### (xiii)  Claim 15

1252. Claim 15 of the '587 Patent would not have been obvious to the POSA over the combination of the '021 Publication and the '514 Publication as of the priority date.

1253. Claim 15 depends from claim 13.  The '514 Publication in combination with the '021 Publication does not render obvious claim 15 for at least the same reasons that it does not render obvious claim 13.

1254. The '021 Publication in combination with the '514 Publication does not disclose or suggest every limitation in the claim.

1255. The POSA would not have found it obvious as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 13 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

1256. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 13 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

1257. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 13 in which the inner wall canister support formation is a support rail that extends longitudinally along the inside surface of the main body.

### (xiv)  Claim 16

1258. Claim 16 of the '587 Patent would not have been obvious to the POSA over the combination of the '021 Publication and the '514 Publication as of the priority date.

1259. Claim 16 depends from claim 15.  The '514 Publication in combination with the '021 Publication does not render obvious claim 16 for at least the same reasons that it does not render obvious claim 15.

1260. The '021 Publication in combination with the '514 Publication does not disclose or suggest every limitation in the claim.

1261. The POSA would not have found it obvious as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 15 in which the support rail includes a step formed thereon.

1262. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 15 in which the support rail includes a step formed thereon.

1263. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 15 in which the support rail includes a step formed thereon.

### (xv)   Claim 17

1264. Claim 17 of the '587 Patent would not have been obvious to the POSA over the combination of the '021 Publication and the '514 Publication as of the priority date.

1265. Claim 17 depends from claim 15.  The '514 Publication in combination with the '021 Publication does not render obvious claim 17 for at least the same reasons that it does not render obvious claim 15.

1266. The '021 Publication in combination with the '514 Publication does not disclose or suggest every limitation in the claim.

1267. The POSA would not have found it obvious as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 15 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

1268. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 15 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

1269. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 15 and include a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

### (xvi)  Claim 18

1270. Claim 18 of the '587 Patent would not have been obvious to the POSA over the combination of the '021 Publication and the '514 Publication as of the priority date.

1271. Claim 18 depends from claim 17.  The '514 Publication in combination with the '021 Publication does not render obvious claim 18 for at least the same reasons that it does not render obvious claim 17.

1272. The '021 Publication in combination with the '514 Publication does not disclose or suggest every limitation in the claim.

1273. The POSA would not have found it obvious as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 17 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

1274. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 17 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

1275. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 17 wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

### (xvii) Claim 19

1276. Claim 19 of the '587 Patent would not have been obvious to the POSA over the combination of the '021 Publication and the '514 Publication as of the priority date.

1277. Claim 19 depends from claim 15.  The '514 Publication in combination with the '021 Publication does not render obvious claim 19 for at least the same reasons that it does not render obvious claim 15.

1278. The '021 Publication in combination with the '514 Publication does not disclose or suggest every limitation in the claim.

1279. The POSA would not have found it obvious as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 15 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

1280. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 15 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

1281. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 15 wherein the support rail includes two steps formed thereon, the steps being spaced apart longitudinally along an inside surface of the main body.

### (xviii) Claim 20

1282. Claim 20 of the '587 Patent would not have been obvious to the POSA over the combination of the '021 Publication and the '514 Publication as of the priority date.

1283. Claim 20 depends from claim 15.  The '514 Publication in combination with the '021 Publication does not render obvious claim 20 for at least the same reasons that it does not render obvious claim 15.

1284. The '021 Publication in combination with the '514 Publication does not disclose or suggest every limitation in the claim.

1285. The POSA would not have found it obvious as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 15 wherein a width dimension of the support rail is not constant, and the width dimension is greatest at the location where the support rail is closest to the aperture.

1286. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 15 wherein a width dimension of the support rail is not constant, and the width dimension is greatest at the location where the support rail is closest to the aperture.

1287. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 15 wherein a width dimension of the support rail is not constant, and the width dimension is greatest at the location where the support rail is closest to the aperture.

### (xix)  Claim 21

1288. Claim 21 of the '587 Patent would not have been obvious to the POSA over the combination of the '021 Publication and the '514 Publication as of the priority date.

1289. Claim 21 depends from claim 13.  The '514 Publication in combination with the '021 Publication does not render obvious claim 21 for at least the same reasons that it does not render obvious claim 13.

1290. The '021 Publication in combination with the '514 Publication does not disclose or suggest every limitation in the claim.

1291. The POSA would not have found it obvious as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 13 wherein the first inner wall canister support formation, the aperture, and a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, all lie in a common plane coincident with a longitudinal axis X which passes through the center of the central outlet port.

1292. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 13 wherein the first inner wall canister support formation, the aperture, and a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, all lie in a common plane coincident with a longitudinal axis X which passes through the center of the central outlet port.

1293. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 13 wherein the first inner wall canister support formation, the aperture, and a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, all lie in a common plane coincident with a longitudinal axis X which passes through the center of the central outlet port.

### (xx)   Claim 22

1294. Claim 22 of the '587 Patent would not have been obvious to the POSA over the combination of the '021 Publication and the '514 Publication as of the priority date.

1295. Claim 22 depends from claim 21.  The '514 Publication in combination with the '021 Publication does not render obvious claim 22 for at least the same reasons that it does not render obvious claim 21.

1296. The '021 Publication in combination with the '514 Publication does not disclose or suggest every limitation in the claim.

1297. The POSA would not have found it obvious as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 21 comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the first inner wall canister support formation, the aperture, and the central outlet port lie in a common plane coincident with longitudinal axis X.

1298. The POSA would not have been motivated or had reason as of the priority date to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 21 comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the first inner wall canister support formation, the aperture, and the central outlet port lie in a common plane coincident with longitudinal axis X.

1299. The POSA would not have reasonably expected success as of the priority date if the POSA chose to combine disclosures of the '021 Publication with disclosures of the '514 Publication to arrive at the inhaler of claim 21 comprising a second inner wall canister support formation and wherein the second inner wall canister support formation, the first inner wall canister support formation, the aperture, and the central outlet port lie in a common plane coincident with longitudinal axis X.

*    *    *

1300. Notably, the '514 and '021 Publications were before the examiner during prosecution of the '289 and '587 Patents. *See, e.g.*, PTX-003 ('289 Patent, U.S. Patent Documents, Foreign Patent Documents); PTX-004 ('587 Patent, U.S. Patent Documents, Foreign Patent Documents). The fact that the examiner concluded that these references do not render obvious the Asserted Claims provides further evidence that the references that Defendants rely on render obvious the Asserted Claims.

## 2.    The '808 Patent

### a.    Defendants' Anticipation Theories Are Incorrect

#### 1)    The '552 Publication Does Not Anticipate Claim 1 of the '808 Patent

1301. The '552 Publication does not anticipate claim 1 of the '808 Patent.

1302. The '552 Publication does not disclose every limitation of claim 1 of the '808 Patent as arranged in the claim.

1303. Defendants' mix and match disclosures from multiple embodiments within the '552 and '950 Publications, which the POSA would understand to be separate. Defendants' reliance across multiple references, and multiple disclosures within those references, undermine their conclusion that the '552 Publication anticipates Asserted Claim 1 of the '808 Patent and provides further evidence that their opinions are driven by hindsight.

1304. The '552 Publication does not disclose the limitation "wherein a regulator is provided which is arranged to act upon the counter display at the first station to regulate motion of the counter display at the first station to incremental movements."

1305. Among other things, Asserted Claim 1 requires the "regulator" to "modulate motion of the counter display" to "incremental movements."

1306. Neither Figure 6 nor any other disclosure of the '552 Publication discloses a "regulator" that is "arranged to modulate motion of the counter display" to "incremental movements."

1307. The '552 Publication's reference to the '950 Publication does not support anticipation. The '552 Publication and '950 Publication are separate references, which the POSA would not understand to be part of the same disclosure. Defendants' reliance on the *'950 Publication* to support their position that the *'552 Publication* anticipates Asserted Claim 1 of the '808 Patent provides further evidence that the '552 Publication does not, in fact, disclose the limitations of that claim.

1308. The prosecution history of the '808 Patent confirms that the '552 Publication does not anticipate claim 1. During prosecution of the application that issued as the '808 Patent, the Board rejected arguments that are indistinguishable from the opinions that Defendants offer here. Specifically, the Board found that the '950 Publication did not render unpatentable the regulator limitation based on analysis of the same disclosures that Defendants rely upon to support their positions. *See* PTX-006 ('808 Patent File History, Board Decision (Sept. 20, 2019). The fact that an experienced agency determined that the '950 Publication did not invalidate the '808 Patent provides further evidence that Defendants are incorrect.

1309. In reversing the examiner's rejection of the pending claims over the '950 Publication, the Board recognized that Asserted Claim 1 of the '808 Patent "requires a regulator capable of 'regulat[ing] motion of the counter display at the first station to incremental movements.'" PTX-006 ('808 Patent File History, Board Decision 4 (Sept. 20, 2019) (citation omitted)). The Board explained that the '950 Publication contains no evidence that the embodiments it discloses are "capable of such regulated motion." PTX-006 ('808 Patent File History, Board Decision 5 (Sept. 20, 2019)). In particular, the Board stated:

> [The '950 Publication] is ambiguous [on] whether or not bobbin 132 necessarily has complementary features to match the nubs of shaft 142. As [the patentees] explain[], [the '950 Publication] merely teaches that its nubs serve to "creat[e] a resilient resistance to rotation of the bobbin 132 on the shaft 142" ([950 Publication at ¶ [0057]) and the

> nubs could serve this purpose without having complementary features. . . . While [the '950 Publication's] Figure 15 depicts a hexagonal opening to bobbin 132, it is unclear whether this hexagonal structure continues into the interior of bobbin 132 or engages with nubs 146.

PTX-006 ('808 Patent File History, Board Decision 5 (Sept. 20, 2019)).

1310. The Board made clear that:

> even if the evidence adequately supported that [the '950 Publication] nubs 146 interact with the hexagonal structure or some other corresponding structure of bobbin 132, it is not clear that the interaction would . . . necessarily result in incremental movements . . . . [T]he Examiner fails to establish that a person of skill in the art would have reached a regulator capable of regulating motion in the manner claim 1 recites based upon the teachings of [the '950 Publication] or otherwise.

PTX-006 ('808 Patent File History, Board Decision 5 (Sept. 20, 2019)).

1311. The Board's decision is correct. Nothing in the '950 Publication discloses a regulator that is capable of regulating the motion of the counter display to incremental movements, as Asserted Claim 1 of the '808 Patent requires. For example, as the Board found, '950 Publication does not suggest that the bobbin in the '950 Publication's dose counter has complementary features that match the radial axial nubs of the shaft. Nor does anything in the '950 Publication suggest that the bobbin and shaft—or any other combination of components—interact to regulate the motion of a counter display to incremental movements via any other mechanism.

1312. Moreover, the Board's analysis regarding the '950 Publication applies with equal force to the '552 Publication. As with the examiner's analysis of the '950 Publication, which the Board rejected, Defendants' analysis of the '552 Publication relies on the interaction between the '552 Publication's stock bobbin and split hub. Like the '950 Publication, the '552 Publication does not suggest that the stock bobbin in its dose counter has complementary features that match the features on the split hub or otherwise disclose or suggest anything that regulates the motion of the counter display to incremental movements. Defendants' analysis is therefore incorrect.

1313. The '552 Publication's reference to a "dose counter 18 which is held taut by the action of the split hub 70" does not support anticipation. Nothing in that statement or elsewhere in the '552 Publication suggests that split hub 70 modulates the motion of the counter display to *incremental* movements, as Asserted Claim 1 of the '808 Patent requires. Instead, as the '552 Publication discloses and Defendants acknowledge, the '552 Publication merely states that the split hub in this particular embodiment creates tension and resist unwanted movement in the stock bobbin 68, on which the counter 44 is mounted. *See* DX-162 ('552 Publication, 10:6-8). Nothing in the '552 Publication suggests that the dose counter moves incrementally, much less that the split hub in this embodiment has any effect in achieving that outcome. To the contrary, the POSA would understand the '552 Publication's emphasis on the split hub's maintaining tension to mean that it resists movement generally—not incrementally, as Asserted Claim 1 requires.

1314. A comparison of the examples in the '808 Patent and '552 Publication supports the conclusion that they do not function in the same manner. Although Defendants assert that Figure 6 of the '552 Publication and Figure 6A of the '808 Patent are "essentially identical," the evidence actually supports the opposite. To wit, the '808 Patent states that, in certain embodiments, the regulator comprises "a wavelike engagement surface with concavities which engage against the control elements in the form of protrusions on resilient forks of a split pin." PTX-002 ('808 Patent, 4:45-48). Figure 6F of the '808 Patent describes control elements 128 and 130 on the resilient fork of the dose counter:



PTX-002 ('808 Patent, Fig. 6F, 18:8).

1315. In addition, Figure 15 of the '808 Patent discloses a tape stock bobbin that comprises "an inwardly facing generally cylindrical engagement surface 300

240

with a wavelike form extending partially therealong.  The engagement surface 300 has a cross-section perpendicular to the longitudinal length of the stock bobbin":



PTX-002 ('808 Patent, Fig. 15, 18:12-17).

1316. The '552 Publication discloses no such features or anything that would be expected to function in the same manner.  Nothing in the '552 Publication suggests that the interaction between the stock bobbin and the split hub modulates the movement of the counter display to incremental movements, as Asserted Claim 1 of the '808 Patent requires, including, for example, by suggesting that the bobbin has complementary features to match the nubs of the split hub in Figure 6.  By way of further example, nothing in the '552 Publication suggests that the hexagonal structure of the bobbin continues into the interior of the bobbin or engages with the nubs of the split hub.  Nor does any disclosure of the '552 Publication discuss any such features.  The '552 Publication is largely silent on the features of the split hub and the bobbin.

1317. The '808 Patent itself provides additional evidence that the POSA would not have understood the tape stock bobbin/split hub combination disclosed in the '552 Publication or the radial axis nubs disclosed in the '950 Publication to regulate the counter display to incremental movements.  The '808 Patent expressly acknowledges the '552 Publication's prior description of a device comprising "a split pin intended to hold the stock bobbin taut," but distinguishes the '552 Publication and other prior art devices on the ground that such mechanisms were inadequate to prevent the dose counter from counting, if for example, such devices were "dropped on a hard surface."  PTX-002 ('808 Patent, 2:5-40).  The '808 Patent describes that the "regulator is advantageous in that it helps prevent unwanted motion of the counter display if the counter is dropped."  PTX-002 ('808 Patent, 2:54-56).  Consistent with the '808 Patent's descriptions, the POSA would understand that the '552 Publication not to disclose such a "regulator."

1318. Teva's documents further confirm that the '552 Publication does not disclose a "regulator." Specifically, before Teva implemented one embodiment of a "regulator" (as set forth in the '808 Patent) in its inhalers, Teva unexpectedly found that continuous or frictional resistance like that provided by a stock bobbin/split hub combination and/or radial axis nubs like those disclosed in the '552 Publication or '950 Publication did not modulate the counter display to incremental movements. *See, e.g.*, PTX-249 (TEVAQVAR-00737016, at -7016-018); PTX-209 (TEVAQVAR-00032306); PTX-210 (TEVAQVAR-00032308); *see also* PTX-247 (TEVAQVAR-00734380); PTX-248 (TEVAQVAR-00734383). Teva noticed that the counter display in its inhalers was moving even without a user actuating the device. *See id.* As that history demonstrates, continuous or frictional resistance like that provided by the tape stock bobbin/split hub combination disclosed in the '552 Publication and/or radial axis nubs disclosed in the '950 Publication does not necessarily modulate the counter display to incremental movements, as Asserted Claim 1 of the '808 Patent requires, and the POSA would not have understood such a combination to do so.

### 2) The '950 Publication Does Not Anticipate Claim 1 of the '808 Patent

1319. The '950 Publication does not anticipate claim 1 of the '808 Patent.

1320. The '950 Publication does not disclose every limitation of claim 1 of the '808 Patent as arranged in the claim.

1321. Defendants rely on various descriptions and figures in the '950 Publication, without explaining why the POSA would have focused on those disclosures or treated them as a single disclosure or embodiment. Defendants' failure to provide such an explanation provides further evidence that their arguments are driven by hindsight.

1322. The '950 Publication does not disclose the limitation "wherein a regulator is provided which is arranged to act upon the counter display at the first station to regulate motion of the counter display at the first station to incremental movements."

1323. Among other things, Asserted Claim 1 requires the "regulator" to "modulate motion of the counter display" to "incremental movements."

1324. Neither Figure 15 nor any other disclosure of the '950 Publication discloses a "regulator" that is arranged to "modulate motion of the counter display" to "incremental movements."

242

1325. The prosecution history of the '808 Patent confirms that the '950 Publication does not anticipate claim 1. The Board considered and rejected arguments similar to those Defendants present here. *See* PTX-006 ('808 Patent File History, Board Decision (Sept. 20, 2019)). Specifically, the Board found that the '950 Publication did not render unpatentable the regulator limitation based on analysis of the same disclosures that Defendants rely upon to support their opinions. *See* PTX-006 ('808 Patent File History, Board Decision (Sept. 20, 2019). The fact that an experienced agency determined that the '950 Publication did not invalidate the '808 Patent provides further evidence that Defendants are incorrect.

1326. In reversing the examiner's rejection of the pending claims over the '950 Publication, the Board recognized that Asserted Claim 1 of the '808 Patent "requires a regulator capable of 'regulat[ing] motion of the counter display at the first station to incremental movements.'" PTX-006 ('808 Patent File History, Board Decision 4 (Sept. 20, 2019) (citation omitted)). The Board explained that the '950 Publication contains no evidence that the embodiment it discloses are "capable of such regulated motion." PTX-006 ('808 Patent File History, Board Decision 5 (Sept. 20, 2019)). In particular, the Board stated:

> [The '950 Publication] is ambiguous [on] whether or not bobbin 132 necessarily has complementary features to match the nubs of shaft 142. As [the patentees] explain[], [the '950 Publication] merely teaches that its nubs serve to "creat[e] a resilient resistance to rotation of the bobbin 132 on the shaft 142" ([950 Publication at ¶ [0057]) and the nubs could serve this purpose without having complementary features. . . . While [the '950 Publication's] Figure 15 depicts a hexagonal opening to bobbin 132, it is unclear whether this hexagonal structure continues into the interior of bobbin 132 or engages with nubs 146.

PTX-006 ('808 Patent File History, Board Decision 5 (Sept. 20, 2019)).

1327. The Board made clear that:

> even if the evidence adequately supported that [the '950 Publication] nubs 146 interact with the hexagonal structure or some other corresponding structure of bobbin 132, it is not clear that the interaction would . . . necessarily result in

incremental movements. . . . [T]he Examiner fails to establish that a person of skill in the art would have reached a regulator capable of regulating motion in the manner claim 1 recites based upon the teachings of [the '950 Publication] or otherwise.

PTX-006 ('808 Patent File History, Board Decision 5 (Sept. 20, 2019)).

1328. A comparison of the examples in the '808 Patent and '950 Publication supports the conclusion that they do not function in the same manner. Although Defendants assert that Figure 15 of the '950 Publication and Figure 6A of the '808 Patent are "essentially identical," the evidence supports the opposite. The '808 Patent states that, in certain embodiments, the regulator comprises "a wavelike engagement surface with concavities which engage against the control elements in the form of protrusions on resilient forks of a split pin." PTX-002 ('808 Patent, 4:45-48). Figure 6F of the '808 Patent discloses control elements 128 and 130 on the resilient fork of the dose counter:



PTX-002 ('808 Patent, Fig. 6F, 18:8).

1329. In addition, Figure 15 of the '808 Patent discloses a tape stock bobbin that comprises "an inwardly facing generally cylindrical engagement surface 300 with a wavelike form extending partially therealong. The engagement surface 300 has a cross-section perpendicular to the longitudinal length of the stock bobbin":



FIG. 15

PTX-002 ('808 Patent, Fig. 15, 18:12-17).

1330. The '950 Publication discloses no such features or anything that would be expected to function in the same manner. Nothing in the '950 Publication suggests that the interaction between the stock bobbin and the split hub modulates the movement of the counter display to incremental movements, as Asserted Claim 1 of the '808 Patent requires, including, for example, by suggesting that the bobbin has complementary features to match the radial axis nubs in Figure 15. By way of further example, nothing in the '950 Publication suggests that the hexagonal structure of the bobbin continues into the interior of the bobbin or engages with the radial axis nubs. Nor does any disclosure of the '950 Publication discuss any such features. The '552 Publication is largely silent on the features of the radial axis nubs.

1331. Nothing in the '950 Publication suggests that the radial axial nubs modulate the motion of the counter display to *incremental* movements, as Asserted Claim 1 of the '808 Patent requires. Instead, the '950 Publication merely states that the radial nubs "creat[e] resilient resistance to rotation of the bobbin 132 on the shaft 142." DX-159 ('950 Publication, [0057]). Nothing in the '950 Publication suggests that the dose counter moves incrementally, much less that the radial axis nubs in this embodiment have any effect in achieving that outcome. To the contrary, the POSA would understand the '950 Publication's emphasis on the radial axis nubs' maintaining tension to mean that it resisted movement generally—not that the device modulated the movement of the counter display to incremental movements.

1332. Moreover, nothing in the '950 Publication indicates that the "axial nubs," alone or in combination with other features (e.g., a ratchet wheel, clutch spring, actuator pawl, etc.), regulate the counter display to incremental movements. In sum, nothing in the '950 Publication shows that the radial axis nubs modulate the motion of the counter display to *incremental* movements, as Asserted Claim 1 of the '808 Patent requires.  Figure 15 of the '950 Publication, which purports to show the dose counter within the body of the inhaler, clearly shows the absence of a regulator.

1333. The '808 Patent itself provides additional evidence that the POSA would not have understood the radial axis nubs disclosed in the '950 Publication to regulate the counter display to incremental movements.  The '808 Patent acknowledges the prior art's description of a device comprising a mechanism— like the radial nubs described in the '950 Publication—"to hold the stock bobbin taut," but distinguishes prior art devices on the ground that such mechanisms were inadequate to prevent the dose counter from counting, if for example, such devices were "dropped on a hard surface."  PTX-002 ('808 Patent, 2:5-40).  The '808 Patent describes that the "regulator is advantageous in that it helps prevent unwanted motion of the counter display if the counter is dropped."  PTX-002 ('808 Patent, 2:54-56).  Consistent with the '808 Patent's descriptions, the POSA would understand that the '950 Publication not to disclose such a "regulator."

1334. Teva's documents further confirm that the '950 Publication does not disclose a "regulator."  Specifically, before Teva implemented one embodiment of a "regulator" (as set forth in the '808 Patent) in its inhalers, Teva unexpectedly found that continuous or frictional resistance like that provided by radial axis nubs did not modulate the counter display to incremental movements.  *See, e.g.*, PTX-249 (TEVAQVAR-00737016, at -7016-018); PTX-209 (TEVAQVAR-00032306); PTX-210 (TEVAQVAR-00032308); *see also* PTX-247 (TEVAQVAR-00734380); PTX-248 (TEVAQVAR-00734383).  Teva noticed that the counter display in its inhalers was moving even without a user actuating the device.  *See id.*  As that history demonstrates, the resistance like that provided by the radial axis nubs disclosed in the '950 Publication does not necessarily modulate the counter display to incremental movements, as Asserted Claim 1 of the '808 Patent requires, and the POSA would not have understood such a combination to do so.

*        *        *

1335. Notably, the '552 and '950 Publications were before the examiner during prosecution of the '808 Patent.  *See, e.g.*, PTX-002 ('808 Patent, U.S. Patent

Documents, Foreign Patent Documents).  The examiner determined that the '552 and '950 Publication did not anticipate the Asserted Claims in the '808 Patent.

### b.    Defendants' Obviousness Theories Are Incorrect.

#### 1)    The '552 Publication Does Not Render Obvious the Asserted Claims of the '808 Patent.

1336. The '552 Publication does not render obvious any Asserted Claim of the '808 Patent.

1337. The POSA would not have had a reason to select the '552 Publication as the basis for designing an inhaler and/or dose counter.  The prior art disclosed numerous inhalers and dose-counting mechanisms that did not practice the inventions recited in the Asserted Claims and did not offer any specific guidance or direction as to which of those inhalers and/or dose-counting mechanisms should be selected, modified, and/or combined.  Defendants' selective reliance on the '552 Publication provides further evidence that their analysis is based on a hindsight-driven effort to reconstruct the inventions recited in the Asserted Claims rather than a genuine effort to understand how the POSA would have understood the prior art.

### a)    Claim 1

1338. Claim 1 of the '808 Patent would not have been obvious to the POSA over the '552 Publication.

1339. The '552 Publication does not disclose or suggest every limitation of this claim.

1340. The '552 Publication does not disclose or suggest the limitation "wherein a regulator is provided which is arranged to act upon the counter display at the first station to regulate motion of the counter display at the first station to incremental movements."

1341. To the extent that the '552 or '950 Publications disclosed protrusions that provided frictional resistance to rotation, they do not disclose or even suggest how any features would modulate the counter display to incremental movements.

1342. The POSA would not have had a reason to modify the '552 Publication's disclosures and would not have reasonably expected to succeed in doing so.  The '552 and '990 Publications provide no suggestion that any such

additional resistance would be needed, and in the absence of a strong reason to change a known design, the POSA would have avoided making changes to the dose counter. The POSA would have understood that resistance was a double-edged sword. In particular, the POSA would have known that increasing the dose counter's resistance to movement would also increase the amount of force needed to actuate the dose counter, affecting its usability for patients.

1343. Teva's research and development of the claimed inventions confirms that the POSA would not have had a reason to develop such a "regulator" with a reasonable expectation of success. As explained above, before Teva implemented one embodiment of a "regulator" (as set forth in the '808 Patent) in its inhalers, Teva unexpectedly found that continuous or frictional resistance like that provided by a stock bobbin/split hub combination and/or radial axis nubs like those disclosed in the '552 Publication or '950 Publication did not modulate the counter display to incremental movements. *See, e.g.*, PTX-249 (TEVAQVAR-00737016, at -7016-018); PTX-209 (TEVAQVAR-00032306); PTX-210 (TEVAQVAR-00032308); *see also* PTX-247 (TEVAQVAR-00734380); PTX-248 (TEVAQVAR-00734383). Teva noticed that the counter display in its inhalers moved even without a user actuating the device. *See id.* As a result, Teva implemented a "regulator" similar to the examples depicted in the '808 Patent. *See, e.g.*, PTX-249 (TEVAQVAR-00737016, at -7016-018); PTX-209 (TEVAQVAR-00032306); PTX-210 (TEVAQVAR-00032308); PTX-247 (TEVAQVAR-00734380); PTX-248 (TEVAQVAR-00734383). As that history demonstrates, embodiments relying on continuous or frictional resistance like that provided by the radial axis nubs disclosed in the '950 Publication would not render obvious a regulator that modules a counter display to incremental movements, as Asserted Claim 1 of the '808 Patent requires.

1344. Even were the POSA to have a reason to increase the resistance of the dose counter, that would *still* not have given the POSA a reason to develop the claimed regulator with a reasonable expectation of success. The POSA would have understood that adding too much resistance to the regulator would prevent it from modulating the counter display to incremental movements—the exact opposite of what the claim requires.

1345. The Severent Diskus would not have given the POSA a reason or reasonable expectation of success in arriving at the claimed "regulator." The POSA would not have modified the '552 Publication's disclosures in view of the Severent Diskus, which contains a dry-powder, breath-actuated inhaler.

**b)    Claim 27**

1346. Claim 27 of the '808 Patent would not have been obvious to the POSA over the '552 Publication.

1347. Claim 27 depends from claim 1. The '552 Publication does not render obvious claim 27 for at least the same reasons that it does not render obvious claim 1.

1348. The '552 Publication does not disclose or suggest every limitation of this claim.

1349. The POSA would not have found it obvious to modify an embodiment of the '552 Publication in which the regulator provides a resistance force of greater than 0.1 N against movement of the counter display.

1350. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '552 Publication to arrive at the dose counter as claimed in claim 1 in which the regulator provides a resistance force of greater than 0.1 N against movement of the counter display.

1351. The POSA would not have reasonably expected success as of the priority date in modifying an embodiment of the '552 Publication to arrive at the dose counter as claimed in claim 1 in which the regulator provides a resistance force of greater than 0.1 N against movement of the counter display.

1352. The POSA would not have found it a matter of routine optimization as of the priority date to modify an embodiment of the '552 Publication to arrive at the dose counter as claimed in claim 1 in which the regulator provides a resistance force of greater than 0.1 N against movement of the counter display.

c)     Claim 28

1353. Claim 28 of the '808 Patent would not have been obvious to the POSA over the '552 Publication.

1354. Claim 28 depends from claim 27. The '552 Publication does not render obvious claim 28 for at least the same reasons that it does not render obvious claim 27.

1355. The '552 Publication does not disclose or suggest every limitation of this claim.

1356. The POSA would not have found it obvious to modify an embodiment of the '552 Publication to arrive at the dose counter as claimed in claim 27 in which the resistance force is greater than 0.3 N.

1357. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '552 Publication to arrive at the dose counter as claimed in claim 27 in which the resistance force is greater than 0.3 N.

1358. The POSA would not have reasonably expected success as of the priority date in modifying an embodiment of the '552 Publication to arrive at the dose counter as claimed in claim 27 in which the resistance force is greater than 0.3 N.

1359. The POSA would not have found it a matter of routine optimization as of the priority date in modifying an embodiment of the '552 Publication to arrive at the dose counter as claimed in claim 27 in which the resistance force is greater than 0.3 N.

### 2) The '950 Publication Does Not Render Obvious the Asserted Claims of the '808 Patent

1360. The '950 Publication does not render obvious any Asserted Claim of the '808 Patent.

1361. The POSA would not have had a reason to select the '950 Publication as the basis for designing an inhaler and/or dose counter. The prior art disclosed numerous inhalers and dose-counting mechanisms that did not practice the inventions recited in the Asserted Claims and did not offer any specific guidance or direction as to which of those inhalers and/or dose-counting mechanisms should be selected, modified, and/or combined. Defendants' selective reliance on the '950 Publication provides further evidence that their analysis is based on a hindsight driven effort to reconstruct the inventions recited in the Asserted Claims rather than a genuine effort to understand how the POSA would have understood the prior art.

### a) Claim 1

1362. Claim 1 of the '808 Patent would not have been obvious to the POSA over the '950 Publication.

1363. The '950 Publication does not disclose or suggest every limitation of this claim.

1364. The '950 Publication does not disclose or suggest the limitation "wherein a regulator is provided which is arranged to act upon the counter display at the first station to regulate motion of the counter display at the first station to incremental movements."

1365. To the extent that the '552 or '950 Publications disclosed protrusions that provided frictional resistance to rotation, they do not disclose or even suggest how any features would modulate the counter display to incremental movements.

1366. The POSA would not have had a reason to modify the '950 Publication's disclosures and would not have reasonably expected to succeed in doing so. The '552 and '990 Publications provide no suggestion that any such additional resistance would be needed, and in the absence of a strong reason to change a known design, the POSA would have avoided making changes to the dose counter. The POSA would have understood that resistance was a double-edged sword. In particular, the POSA would have known that increasing the dose counter's resistance to movement would also increase the amount of force needed to actuate the dose counter, affecting its usability for patients.

1367. Teva's research and development of the claimed inventions confirms that the POSA would not have had a reason to develop such a "regulator" with a reasonable expectation of success. As explained above, before Teva implemented one embodiment of a "regulator" (as set forth in the '808 Patent) in its inhalers, Teva unexpectedly found that continuous or frictional resistance like that provided by a stock bobbin/split hub combination and/or radial axis nubs like those disclosed in the '552 Publication or '950 Publication did not modulate the counter display to incremental movements. *See, e.g.*, PTX-249 (TEVAQVAR-00737016, at -7016-018); PTX-209 (TEVAQVAR-00032306); PTX-210 (TEVAQVAR-00032308); *see also* PTX-247 (TEVAQVAR-00734380); PTX-248 (TEVAQVAR-00734383). Teva noticed that the counter display in its inhalers moved even without a user actuating the device. *See id.* As a result, Teva implemented a "regulator" similar to the examples depicted in the '808 Patent. *See, e.g.*, PTX-249 (TEVAQVAR-00737016, at -7016-018); PTX-209 (TEVAQVAR-00032306); PTX-210 (TEVAQVAR-00032308); PTX-247 (TEVAQVAR-00734380); PTX-248 (TEVAQVAR-00734383). As that history demonstrates, embodiments relying on continuous or frictional resistance like that provided by the radial axis nubs disclosed in the '950 Publication would not render obvious a regulator that modules a counter display to incremental movements, as Asserted Claim 1 of the '808 Patent requires.

1368. Even were the POSA to have a reason to increase the resistance of the dose counter, that would *still* not have given the POSA a reason to develop the claimed regulator with a reasonable expectation of success. The POSA would have understood that adding too much resistance to the regulator would prevent it from modulating the counter display to incremental movements—the exact opposite of what the claim requires.

1369. The Severent Diskus would not have given the POSA a reason or reasonable expectation of success in arriving at the claimed "regulator." The POSA would not have modified the '950 Publication's disclosures in view of the Severent Diskus, which contains a dry-powder, breath-actuated inhaler.

**b)    Claim 27**

1370. Claim 27 of the '808 Patent would not have been obvious to the POSA over the '950 Publication.

1371. Claim 27 depends from claim 1. The '950 Publication does not render obvious claim 27 for at least the same reasons that it does not render obvious claim 1.

1372. The '950 Publication does not disclose or suggest every limitation of this claim.

1373. The POSA would not have found it obvious to modify an embodiment of the '950 Publication in which the regulator provides a resistance force of greater than 0.1 N against movement of the counter display.

1374. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '950 Publication to arrive at the dose counter as claimed in claim 1 in which the regulator provides a resistance force of greater than 0.1 N against movement of the counter display.

1375. The POSA would not have reasonably expected success as of the priority date in modifying an embodiment of the '950 Publication to arrive at the dose counter as claimed in claim 1 in which the regulator provides a resistance force of greater than 0.1 N against movement of the counter display.

1376. The POSA would not have found it a matter of routine optimization as of the priority date to modify an embodiment of the '950 Publication to arrive at the dose counter as claimed in claim 1 in which the regulator provides a resistance force of greater than 0.1 N against movement of the counter display.

### c)    Claim 28

1377. Claim 28 of the '808 Patent would not have been obvious to the POSA over the '950 Publication.

1378. Claim 28 depends from claim 27.  The '950 Publication does not render obvious claim 28 for at least the same reasons that it does not render obvious claim 27.

1379. The '950 Publication does not disclose or suggest every limitation of this claim.

1380. The POSA would not have found it obvious to modify an embodiment of the '950 Publication to arrive at the dose counter as claimed in claim 27 in which the resistance force is greater than 0.3 N.

1381. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '950 Publication to arrive at the dose counter as claimed in claim 27 in which the resistance force is greater than 0.3 N.

1382. The POSA would not have reasonably expected success as of the priority date in modifying an embodiment of the '950 Publication to arrive at the dose counter as claimed in claim 27 in which the resistance force is greater than 0.3 N.

1383. The POSA would not have found it a matter of routine optimization as of the priority date in modifying an embodiment of the '950 Publication to arrive at the dose counter as claimed in claim 27 in which the resistance force is greater than 0.3 N.

### 3)    The '406 Publication Does Not Render Obvious the Asserted Claims of the '808 Patent

1384. The '406 Publication does not render obvious any Asserted Claim of the '808 Patent.

1385. The POSA would not have had a reason to select the '406 Publication as the basis for designing an inhaler and/or dose counter.  The prior art disclosed numerous inhalers and dose-counting mechanisms that did not practice the inventions recited in the Asserted Claims and did not offer any specific guidance or direction as to which of those inhalers and/or dose-counting mechanisms should be selected, modified, and/or combined.

1386. The '406 Publication describes five distinct dose counters that can be used in an inhaler. One dose counter is described in Paragraphs [0090]-[00116] in conjunction with Figures 1-11. A second dose counter is described in Paragraphs [00117]-[00134] in conjunction with Figures 12-20. A third dose counter is described in paragraphs [00135]-[00159] in conjunction with Figures 21-30. A fourth dose counter is described in paragraphs [00160]-[00170] in conjunction with Figures 31-40. A fifth dose counter is described in paragraphs [00171]-[00182] in conjunction with Figures 41-47.

1387. Defendants mix and match various disclosures from these five separate examples indiscriminately, without identifying any reason why the POSA would have done so. Their approach is incorrect because the '406 Publication describes these embodiments as different dose counters, and the POSA would not understand a feature of one to be interchangeable with a feature of another. If anything, the disclosure of five distinct dose counters, none of which individually embodies the claimed inventions, reinforces the validity of the Asserted Claims.

### a)  Claim 1

1388. Claim 1 of the '808 Patent would not have been obvious to the POSA over the '406 Publication.

1389. The '406 Publication does not disclose or suggest every limitation of claim 1 of the '808 Patent.

1390. The '406 Publication does not disclose or suggest the limitation "wherein a regulator is provided which is arranged to act upon the counter display at the first station to regulate motion of the counter display at the first station to incremental movements."

1391. The '406 Publication does not provide any information that would have given the POSA a reason to develop an inhaler and dose counter that satisfied those limitations with a reasonable expectation of success. To the contrary, based on the '406 Publication's two-dimensional disclosures, the POSA would not understand the '406 Publication to disclose and/or render obvious this limitation and, therefore, would not understand to anticipate and/or render obvious any of the other claims. For example, the '406 Publication does not disclose that the purpose of the leaf spring is to regulate the counter display to incremental movements. Nothing in the '406 Publication discloses that the leaf spring prevents the dose counter from counting, if for example, an inhaler device was dropped on a hard

surface.  Nor can that purpose be deduced from the '406 Publication's descriptions and figures.

### b)    Claim 27

1392. Claim 27 of the '808 Patent would not have been obvious to the POSA over the '406 Publication.

1393. Claim 27 depends from claim 1.  The '406 Publication does not render obvious claim 27 for at least the same reasons that it does not render obvious claim 1.

1394. The '406 Publication does not disclose or suggest every limitation of this claim.

1395. The POSA would not have found it obvious to modify an embodiment of the '406 Publication in which the regulator provides a resistance force of greater than 0.1 N against movement of the counter display.

1396. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at the dose counter as claimed in claim 1 in which the regulator provides a resistance force of greater than 0.1 N against movement of the counter display.

1397. The POSA would not have reasonably expected success as of the priority date in modifying an embodiment of the '406 Publication to arrive at the dose counter as claimed in claim 1 in which the regulator provides a resistance force of greater than 0.1 N against movement of the counter display.

1398. The POSA would not have found it a matter of routine optimization as of the priority date to modify an embodiment of the '406 Publication to arrive at the dose counter as claimed in claim 1 in which the regulator provides a resistance force of greater than 0.1 N against movement of the counter display.

### c)    Claim 28

1399. Claim 28 of the '808 Patent would not have been obvious to the POSA over the '406 Publication.

1400. Claim 28 depends from claim 27.  The '406 Publication does not render obvious claim 28 for at least the same reasons that it does not render obvious claim 27.

1401. The '406 Publication does not disclose or suggest every limitation of this claim.

1402. The POSA would not have found it obvious to modify an embodiment of the '406 Publication to arrive at the dose counter as claimed in claim 27 in which the resistance force is greater than 0.3 N.

1403. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at the dose counter as claimed in claim 27 in which the resistance force is greater than 0.3 N.

1404. The POSA would not have reasonably expected success as of the priority date in modifying an embodiment of the '406 Publication to arrive at the dose counter as claimed in claim 27 in which the resistance force is greater than 0.3 N.

1405. The POSA would not have found it a matter of routine optimization as of the priority date in modifying an embodiment of the '406 Publication to arrive at the dose counter as claimed in claim 27 in which the resistance force is greater than 0.3 N.

\*     \*     \*

1406. Notably, the '552 and '950 Publications were before the examiner during prosecution of the '808 Patent. *See, e.g.*, PTX-002 ('808 Patent, U.S. Patent Documents, Foreign Patent Documents). The examiner determined that the '552 and '950 Publication did not render obvious the Asserted Claims in the '808 Patent.

### c.     The Asserted Claims Are Adequately Described and Enabled

1407. The POSA would understand the '808 Patent to convey that the inventors possessed the full scope of the subject matter recited in Asserted Claims 1, 27, and 28.

1408. The POSA would be able, in view of the '808 Patent, its prosecution histories, and his or her knowledge, to make and use the full scope of the inventions without undue experimentation.

1409. The POSA would not distinguish between counter displays consisting of a single component or multiple components or devices containing a single

counter display or multiple counter displays.  To the contrary, such mechanisms for displaying information was well known.

1410. The POSA would have understood that the '808 Patent's descriptions of counter displays, *see, e.g.*, PTX-002 ('808 Patent, Abstract, 2:44-53, 8:31-50), encompassed devices comprising a counter display consisting of multiple components or devices comprising multiple counter displays.

1411. The POSA would not understand that the '808 Patent failed to adequately describe or enable multi-display or multi-component counter displays just because the numbered Figures and accompanying descriptions in the '808 Patent do not expressly depict one.

1412. To the extent that the POSA would need to conduct any experiments to implement a device comprising multiple counter displays or a counter display consisting of multiple components, the POSA could do so without resorting to undue experimentation in view of the '808 Patent and his or her knowledge of the art.  The '808 Patent's specification describes the use of counter displays to display dosage information.  *See, e.g.*, PTX-002 ('808 Patent, Abstract, 2:44-53, 8:31-50). The POSA would know, based both on the '808 Patent and his background knowledge, that devices could be implemented multiple displays or counter displays consisting of multiple components.

1413. To the extent the '808 Patent's specification does not identically set forth every embodiment within the scope of the claims, the POSA would have been able to bridge the gaps between the precise disclosures and the full scope of the claims without undue experimentation.

1414. Were the POSA inclined to desire to develop a device comprising a counter display consisting of multiple display tapes, one of which displayed the tens digit and another of which displayed the ones digit, the POSA, with the benefit of the '808 Patent, could do so by adding a second tape to a single-tape device (and modifying the shafts or other structures around which the tapes were wound so that every ten actuations of the ones tape caused the tens tape to actuate. The prior art disclosed similar mechanisms.  *See, e.g.*, PTX-352 ('406 Publication); DX-153 ('008 Publication ¶¶ [0048], [0053], Figs. 4a-4d); DX-155 ('021 Publication, ¶¶ [0097]-[0103], Figs. 25, 28-48); DX-157 ('518 Publication ¶¶ [0011], [0088]-[0107], [0143]-[167], Figs. 8-13, 25-27d)).

1415. To the extent that the '406 Publication does not describe or enable certain embodiments, those embodiments are not significant compared to the scope of the '406 Publication's disclosures.

### 3.    The '156 Patent

1416. To the extent that Defendants assert at trial that the '156 Patent is invalid, the '156 Patent is not invalid.

#### a.    Defendants' Anticipation Theories Are Incorrect.

##### 1)    The '552 Publication Does Not Anticipate Any Claim of the '156 Patent.

1417. The '552 Publication does not anticipate any claim of the '156 Patent.

###### a)    Claim 1

1418. The '552 Publication does not anticipate claim 1 of the '156 Patent.

1419. No embodiment of the '552 Publication discloses every limitation of claim 1 of the '156 Patent as arranged in the claim.

1420. No embodiment of the '552 Publication discloses a metered dose inhaler having a body arranged to retain a medicament canister of pre-determined configuration for movement of the medicament canister relative thereto.

1421. No embodiment of the '552 Publication discloses a ratchet wheel having a plurality of circumferentially spaced teeth.

1422. No embodiment of the '552 Publication discloses an actuator comprising an actuator pawl arranged to engage with a first tooth of the ratchet wheel.

1423. No embodiment of the '552 Publication discloses that the actuator can be driven in response to canister motion to drive the ratchet wheel to rotate.

1424. No embodiment of the '552 Publication discloses a count pawl arranged to engage with a second tooth of the ratchet wheel.

1425. No embodiment of the '552 Publication discloses that when the ratchet wheel is driven by the actuator to rotate, the count pawl ride along a forward surface of the second tooth and resiliently jump over the second tooth.

1426. No embodiment of the '552 Publication discloses a dosage indicator associated with the count pawl.

1427. No embodiment of the '552 Publication discloses a configuration in which the actuator pawl are brought into engagement with the first tooth.

1428. No embodiment of the '552 Publication discloses a canister fire configuration, where the medicament canister fires medicament, and the dose counter has not yet reached a count configuration.

1429. No embodiment of the '552 Publication discloses a count configuration in which the count pawl has resiliently jumped over the second tooth, and the dosage indicator has indicated a count.

1430. No embodiment of the '552 Publication discloses a canister fire configuration wherein the actuator pawl is below a datum plane which passes through a shoulder of a valve stem block configured to receive the medicament canister.

1431. The other claims of the '156 Patent depend, directly or indirectly, from claim 1. Thus, the '552 Publication does not anticipate those claims for at least these reasons. The following sections provide additional reasons why those claims are not anticipated.

### b)     Claim 9

1432. The '552 Publication does not anticipate claim 9 of the '156 Patent.

1433. No embodiment of the '552 Publication discloses every limitation of claim 9 of the '156 Patent as arranged in the claim.

1434. No embodiment of the '552 Publication discloses that the count pawl and the ratchet wheel are arranged to permit one way incremental relative motion.

### c)     Claim 11

1435. The '552 Publication does not anticipate claim 11 of the '156 Patent.

1436. No embodiment of the '552 Publication discloses every limitation of claim 11 of the '156 Patent as arranged in the claim.

1437. No embodiment of the '552 Publication discloses an inhaler comprising the body arranged to retain the medicament canister of pre-determined configuration and the dose counter as claimed in claim 1.

### d)    Claim 12

1438. The '552 Publication does not anticipate claim 12 of the '156 Patent.

1439. No embodiment of the '552 Publication discloses every limitation of claim 12 of the '156 Patent as arranged in the claim.

1440. No embodiment of the '552 Publication discloses an inhaler body with a canister receiving portion.

1441. No embodiment of the '552 Publication discloses an inhaler body with a separate counter chamber.

1442. No embodiment of the '552 Publication discloses that the separate counter chamber contains a dose counter body, ratchet wheel, and actuator.

1443. No embodiment of the '552 Publication discloses an inhaler body having wall surfaces separating the canister-receiving portion and the counter chamber, the wall surfaces being provided with a communication aperture.

1444. No embodiment of the '552 Publication discloses communication apertures through which an actuation member extends.

1445. No embodiment of the '552 Publication discloses that the actuation members transmit canister motion to the actuator.

### 2)    The '021 Publication Does Not Anticipate Any Claim of the '156 Patent.

1446. The '021 Publication does not anticipate any claim of the '156 Patent.

### a)    Claim 1

1447. The '021 Publication does not anticipate claim 1 of the '156 Patent.

1448. No embodiment of the '021 Publication discloses every limitation of claim 1 of the '156 Patent as arranged in the claim.

1449. No embodiment of the '021 Publication discloses a metered dose inhaler having a body arranged to retain a medicament canister of pre-determined configuration for movement of the medicament canister relative thereto.

1450. No embodiment of the '021 Publication discloses a ratchet wheel having a plurality of circumferentially spaced teeth.

1451. No embodiment of the '021 Publication discloses an actuator comprising an actuator pawl arranged to engage with a first tooth of the ratchet wheel.

1452. No embodiment of the '021 Publication discloses that the actuator can be driven in response to canister motion to drive the ratchet wheel to rotate.

1453. No embodiment of the '021 Publication discloses a count pawl arranged to engage with a second tooth of the ratchet wheel.

1454. No embodiment of the '021 Publication discloses that when the ratchet wheel is driven by the actuator to rotate, the count pawl ride along a forward surface of the second tooth and resiliently jump over the second tooth.

1455. No embodiment of the '021 Publication discloses a dosage indicator associated with the count pawl.

1456. No embodiment of the '021 Publication discloses a configuration in which the actuator pawl is brought into engagement with the first tooth.

1457. No embodiment of the '021 Publication discloses a canister fire configuration, where the medicament canister fires medicament, and the dose counter has not yet reached a count configuration.

1458. No embodiment of the '021 Publication discloses a count configuration in which the count pawl has resiliently jumped over the second tooth, and the dosage indicator has indicated a count.

1459. No embodiment of the '021 Publication discloses a canister fire configuration wherein the actuator pawl is below a datum plane which passes through a shoulder of a valve stem block configured to receive the medicament canister.

1460. The other claims of the '156 Patent depend, directly or indirectly, from claim 1. Thus, the '021 Publication does not anticipate those claims for at

least these reasons.  The following sections provide additional reasons why those claims are not anticipated.

### b)    Claim 9

1461. The '021 Publication does not anticipate claim 9 of the '156 Patent.

1462. No embodiment of the '021 Publication discloses every limitation of claim 9 of the '156 Patent as arranged in the claim.

1463. No embodiment of the '021 Publication that discloses every limitation of claim 1 of the '158 patent also discloses that the count pawl and the ratchet wheel are arranged to permit one way incremental relative motion.

### c)    Claim 11

1464. The '021 Publication does not anticipate claim 11 of the '156 Patent.

1465. No embodiment of the '021 Publication discloses every limitation of claim 11 of the '156 Patent as arranged in the claim.

1466. No embodiment of the '021 Publication discloses an inhaler comprising the body arranged to retain the medicament canister of pre-determined configuration and the dose counter as claimed in claim 1.

### d)    Claim 12

1467. The '021 Publication does not anticipate claim 12 of the '156 Patent.

1468. No embodiment of the '021 Publication discloses every limitation of claim 12 of the '156 Patent as arranged in the claim.

1469. No embodiment of the '021 Publication that discloses every limitation of claim 11 of the '156 Patent also discloses an inhaler body with a canister receiving portion.

1470. No embodiment of the '021 Publication discloses an inhaler body with a separate counter chamber.

1471. No embodiment of the '021 Publication discloses that the separate counter chamber contains a dose counter body, ratchet wheel, and actuator.

1472. No embodiment of the '021 Publication discloses an inhaler body having wall surfaces separating the canister-receiving portion and the counter chamber, the wall surfaces being provided with a communication aperture.

1473. No embodiment of the '021 Publication discloses communication apertures through which an actuation member extends.

1474. No embodiment of the '021 Publication discloses that the actuation members transmit canister motion to the actuator.

### e)    Claim 13

1475. The '021 Publication does not anticipate claim 13 of the '156 Patent.

1476. No embodiment of the '021 Publication discloses every limitation of claim 13 of the '156 Patent as arranged in the claim.

1477. No embodiment of the '021 Publication discloses a canister fire configuration wherein the actuator pawl is below a datum plane which passes through a shoulder of a valve stem block configured to receive the medicament canister; wherein the shoulder is a bottom surface within the valve stem block and the datum plane is perpendicular to a direction of the movement of the medicament canister.

### b.    Defendants' Obviousness Theories Are Incorrect.

### 1)    The '552 Publication Does Not Render Obvious Any Claim of the '156 Patent.

1478. The '552 Publication does not render obvious any claim of the '156 Patent.

### a)    Claim 1

1479. Claim 1 would not have been obvious to the POSA over the '552 Publication.

1480. The '552 Publication does not suggest or disclose every limitation in the claim.

1481. The POSA would not have had a reason to select an embodiment of the '552 Publication for modification.

1482. The POSA would not have found it obvious to modify an embodiment of the '552 Publication to have a canister fire configuration, where the medicament canister fires medicament, and the dose counter has not yet reached a count configuration.

1483. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '552 Publication to have a canister fire configuration, where the medicament canister fires medicament, and the dose counter has not yet reached a count configuration.

1484. The POSA would not have reasonably expected success as of the priority date in modifying an embodiment of the '552 Publication to have a canister fire configuration, where the medicament canister fires medicament, and the dose counter has not yet reached a count configuration.

1485. The POSA would not have found it obvious to modify an embodiment of the '552 Publication to have a canister fire configuration, where the medicament canister fires medicament, and the dose counter has not yet reached a count configuration.

1486. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '552 Publication to have a canister fire configuration, where the medicament canister fires medicament, and the dose counter has not yet reached a count configuration.

1487. The POSA would not have reasonably expected success as of the priority date in modifying an embodiment of the '552 Publication to have a canister fire configuration, where the medicament canister fires medicament, and the dose counter has not yet reached a count configuration.

1488. The POSA would not have found it obvious to modify an embodiment of the '552 Publication to have a canister fire configuration wherein the actuator pawl is below a datum plane which passes through a shoulder of a valve stem block configured to receive the medicament canister.

1489. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '552 Publication to have a canister fire configuration wherein the actuator pawl is below a datum plane which passes through a shoulder of a valve stem block configured to receive the medicament canister.

1490. The POSA would not have reasonably expected success as of the priority date in modifying an embodiment of the '552 Publication to have a canister fire configuration wherein the actuator pawl is below a datum plane which passes through a shoulder of a valve stem block configured to receive the medicament canister.

1491. The other claims of the '156 Patent depend, directly or indirectly, from claim 1. Thus, the '552 Publication does not render obvious those claims for at least these reasons. The following sections provide additional reasons why those claims would not have been obvious.

### b)    Claim 9

1492. Claim 9 would not have been obvious to the POSA over the '552 Publication.

1493. Claim 9 depends from claim 1. The '552 Publication does not render obvious claim 9 for at least the same reasons that it does not render obvious claim 1.

1494. The '552 Publication does not disclose or suggest every limitation in this claim.

1495. The POSA would not have found it obvious to modify an embodiment of the '552 Publication to arrive at a dose counter as claimed in claim 1, wherein the count pawl and the ratchet wheel are arranged to permit one way incremental relative motion therebetween.

1496. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '552 Publication to arrive at a dose counter as claimed in claim 1, wherein the count pawl and the ratchet wheel are arranged to permit one way incremental relative motion therebetween.

1497. The POSA would not have reasonably expected success as of the priority date in modifying an embodiment of the '552 Publication to arrive at a dose counter as claimed in claim 1, wherein the count pawl and the ratchet wheel are arranged to permit one way incremental relative motion therebetween.

### c)    Claim 11

1498. Claim 11 would not have been obvious to the POSA over the '552 Publication.

265

1499. Claim 11 depends from claim 1. The '552 Publication does not render obvious claim 9 for at least the same reasons that it does not render obvious claim 1.

1500. The '552 Publication does not suggest or disclose every limitation in the claim.

1501. The POSA would not have found it obvious to modify an embodiment of the '552 Publication to arrive at an inhaler comprising the body arranged to retain the medicament canister of predetermined configuration and the dose counter as claimed in claim 1.

1502. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '552 Publication to arrive at an inhaler comprising the body arranged to retain the medicament canister of predetermined configuration and the dose counter as claimed in claim 1.

1503. The POSA would not have reasonably expected success as of the priority date in modifying an embodiment of the '552 Publication to arrive at an inhaler comprising the body arranged to retain the medicament canister of predetermined configuration and the dose counter as claimed in claim 1.

### d)    Claim 12

1504. Claim 12 would not have been obvious to the POSA over the '552 Publication.

1505. Claim 12 depends from claim 11. The '552 Publication does not render obvious claim 12 for at least the same reasons that it does not render obvious claim 11.

1506. The '552 Publication does not suggest or disclose every limitation in the claim.

1507. The POSA would not have found it obvious to modify an embodiment of the '552 Publication to arrive an inhaler as claimed in claim 11 in which the body includes a canister-receiving portion and a separate counter chamber; the body, ratchet wheel and actuator being located inside the counter chamber, the body of the inhaler having wall surfaces separating the canister-receiving portion and the counter chamber, the wall surfaces being provided with a communication aperture, an actuation member extending through the communication aperture to transmit canister motion to the actuator.

266

1508. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '552 Publication to arrive at an inhaler as claimed in claim 11 in which the body includes a canister-receiving portion and a separate counter chamber; the body, ratchet wheel and actuator being located inside the counter chamber, the body of the inhaler having wall surfaces separating the canister-receiving portion and the counter chamber, the wall surfaces being provided with a communication aperture, an actuation member extending through the communication aperture to transmit canister motion to the actuator.

1509. The POSA would not have reasonably expected success as of the priority date in modifying an embodiment of the '552 Publication to arrive at an inhaler as claimed in claim 11 in which the body includes a canister-receiving portion and a separate counter chamber; the body, ratchet wheel and actuator being located inside the counter chamber, the body of the inhaler having wall surfaces separating the canister-receiving portion and the counter chamber, the wall surfaces being provided with a communication aperture, an actuation member extending through the communication aperture to transmit canister motion to the actuator.

### e)    Claim 13

1510. Claim 13 would not have been obvious to the POSA over the '552 Publication.

1511. Claim 13 depends from claim 1.  The '552 Publication does not render obvious claim 13 for at least the same reasons that it does not render obvious claim 1.

1512. The '552 Publication does not suggest or disclose every limitation in the claim.

1513. The POSA would not have found it obvious to modify an embodiment of the '552 Publication to arrive at the dose counter of claim 1, wherein the shoulder is a bottom surface within the value stem block and the datum plane is perpendicular to a direction of the movement of the medicament canister.

1514. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '552 Publication to arrive at the dose counter of claim 1, wherein the shoulder is a bottom surface within the value stem block and the datum plane is perpendicular to a direction of the movement of the medicament canister.

1515. The POSA would not have reasonably expected success as of the priority date in modifying an embodiment of the '552 Publication to arrive at the dose counter of claim 1, wherein the shoulder is a bottom surface within the value stem block and the datum plane is perpendicular to a direction of the movement of the medicament canister.

### 2) The '406 Publication Does Not Render Obvious Any Claim of the '156 Patent.

1516. The '406 Publication does not render obvious any claim of the '156 Patent.

### a) Claim 1

1517. Claim 1 would not have been obvious to the POSA over the '406 Publication.

1518. The POSA would not have had a reason to select an embodiment of the '406 Publication for modification.

1519. The '406 Publication does not suggest or disclose every limitation in the claim.

1520. No embodiment of '406 Publication discloses or suggests a metered dose inhaler having a body arranged to retain a medicament canister of pre-determined configuration for movement of the medicament canister relative thereto.

1521. No embodiment of '406 Publication discloses or suggests a canister fire configuration, where the medicament canister fires medicament, and the dose counter has not yet reached a count configuration.

1522. No embodiment of '406 Publication discloses or suggests a count configuration in which the count pawl has resiliently jumped over the second tooth, and the dosage indicator has indicated a count.

1523. No embodiment of '406 Publication discloses or suggests a canister fire configuration wherein the actuator pawl is below a datum plane which passes through a shoulder of a valve stem block configured to receive the medicament canister.

1524. The POSA would not have found it obvious to modify an embodiment of the '406 Publication to have a canister fire configuration, where the medicament

canister fires medicament, and the dose counter has not yet reached a count configuration.

1525. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to have a canister fire configuration, where the medicament canister fires medicament, and the dose counter has not yet reached a count configuration.

1526. The POSA would not have reasonably expected success as of the priority date in modifying an embodiment of the '406 Publication to have a canister fire configuration, where the medicament canister fires medicament, and the dose counter has not yet reached a count configuration.

1527. The POSA would not have found it obvious to modify an embodiment of the '406 Publication to have a canister fire configuration, where the medicament canister fires medicament, and the dose counter has not yet reached a count configuration.

1528. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to have a canister fire configuration, where the medicament canister fires medicament, and the dose counter has not yet reached a count configuration.

1529. The POSA would not have reasonably expected success as of the priority date in modifying an embodiment of the '406 Publication to have a canister fire configuration, where the medicament canister fires medicament, and the dose counter has not yet reached a count configuration.

1530. The POSA would not have found it obvious to modify an embodiment of the '406 Publication to have a canister fire configuration wherein the actuator pawl is below a datum plane which passes through a shoulder of a valve stem block configured to receive the medicament canister.

1531. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to have a canister fire configuration wherein the actuator pawl is below a datum plane which passes through a shoulder of a valve stem block configured to receive the medicament canister.

1532. The POSA would not have reasonably expected success as of the priority date in modifying an embodiment of the '406 Publication to have a canister fire configuration wherein the actuator pawl is below a datum plane which

passes through a shoulder of a valve stem block configured to receive the medicament canister.

1533. The other claims of the '156 Patent depend, directly or indirectly, from claim 1. Thus, the '406 Publication does not render obvious those claims for at least these reasons. The following sections provide additional reasons why those claims would not have been obvious.

### b)    Claim 9

1534. Claim 9 would not have been obvious to the POSA over the '406 Publication.

1535. Claim 9 depends from claim 1. The '406 Publication does not render obvious claim 9 for at least the same reasons that it does not render obvious claim 1.

1536. The '406 Publication does not disclose or suggest every limitation in this claim.

1537. The POSA would not have found it obvious to modify an embodiment of the '406 Publication to arrive at a dose counter as claimed in claim 1, wherein the count pawl and the ratchet wheel are arranged to permit one way incremental relative motion therebetween.

1538. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at a dose counter as claimed in claim 1, wherein the count pawl and the ratchet wheel are arranged to permit one way incremental relative motion therebetween.

1539. The POSA would not have reasonably expected success as of the priority date in modifying an embodiment of the '406 Publication to arrive at a dose counter as claimed in claim 1, wherein the count pawl and the ratchet wheel are arranged to permit one way incremental relative motion therebetween.

### c)    Claim 11

1540. Claim 11 would not have been obvious to the POSA over the '406 Publication.

1541. Claim 11 depends from claim 1. The '406 Publication does not render obvious claim 9 for at least the same reasons that it does not render obvious claim 1.

1542. The '406 Publication does not suggest or disclose every limitation in the claim.

1543. The POSA would not have found it obvious to modify an embodiment of the '406 Publication to arrive at an inhaler comprising the body arranged to retain the medicament canister of predetermined configuration and the dose counter as claimed in claim 1.

1544. The POSA would not have found it obvious to modify an embodiment of the '406 Publication to arrive at an inhaler comprising the body arranged to retain the medicament canister of predetermined configuration and the dose counter as claimed in claim 1.

1545. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at an inhaler comprising the body arranged to retain the medicament canister of predetermined configuration and the dose counter as claimed in claim 1.

1546. The POSA would not have reasonably expected success as of the priority date in modifying an embodiment of the '406 Publication to arrive at an inhaler comprising the body arranged to retain the medicament canister of predetermined configuration and the dose counter as claimed in claim 1.

### d)    Claim 12

1547. Claim 12 would not have been obvious to the POSA over the '406 Publication.

1548. Claim 12 depends from claim 11.  The '406 Publication does not render obvious claim 12 for at least the same reasons that it does not render obvious claim 11.

1549. The '406 Publication does not suggest or disclose every limitation in the claim.

1550. The POSA would not have found it obvious to modify an embodiment of the '406 Publication to arrive an inhaler as claimed in claim 11 in which the body includes a canister-receiving portion and a separate counter chamber; the body, ratchet wheel and actuator being located inside the counter chamber, the body of the inhaler having wall surfaces separating the canister-receiving portion and the counter chamber, the wall surfaces being provided with a communication

271

aperture, an actuation member extending through the communication aperture to transmit canister motion to the actuator.

1551. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at an inhaler as claimed in claim 11 in which the body includes a canister-receiving portion and a separate counter chamber; the body, ratchet wheel and actuator being located inside the counter chamber, the body of the inhaler having wall surfaces separating the canister-receiving portion and the counter chamber, the wall surfaces being provided with a communication aperture, an actuation member extending through the communication aperture to transmit canister motion to the actuator.

1552. The POSA would not have reasonably expected success as of the priority date in modifying an embodiment of the '406 Publication to arrive at an inhaler as claimed in claim 11 in which the body includes a canister-receiving portion and a separate counter chamber; the body, ratchet wheel and actuator being located inside the counter chamber, the body of the inhaler having wall surfaces separating the canister-receiving portion and the counter chamber, the wall surfaces being provided with a communication aperture, an actuation member extending through the communication aperture to transmit canister motion to the actuator.

### e)     Claim 13

1553. Claim 13 would not have been obvious to the POSA over the '406 Publication.

1554. Claim 13 depends from claim 1. The '406 Publication does not render obvious claim 13 for at least the same reasons that it does not render obvious claim 1.

1555. The '406 Publication does not suggest or disclose every limitation in the claim.

1556. The POSA would not have found it obvious to modify an embodiment of the '406 Publication to arrive at the dose counter of claim 1, wherein the shoulder is a bottom surface within the value stem block and the datum plane is perpendicular to a direction of the movement of the medicament canister.

1557. The POSA would not have been motivated or had reason as of the priority date to modify an embodiment of the '406 Publication to arrive at the dose

counter of claim 1, wherein the shoulder is a bottom surface within the value stem block and the datum plane is perpendicular to a direction of the movement of the medicament canister.

1558. The POSA would not have reasonably expected success as of the priority date in modifying an embodiment of the '406 Publication to arrive at the dose counter of claim 1, wherein the shoulder is a bottom surface within the value stem block and the datum plane is perpendicular to a direction of the movement of the medicament canister.

### c.   Claim 12 Is Not Indefinite.

1559. The POSA would understand, with reasonable certainty, the meaning of the term "the body" as it is recited in claim 12 of the '156 Patent in view of the '156 Patent, the intrinsic evidence, and the POSA's knowledge.

1560. The POSA would understand, with reasonable certainty, that the first and third usages of the term "the body" refer to the inhaler body.

1561. The POSA would understand, with reasonable certainty, that the second usage of the term "the body" refers to the dose counter body.

1562. The POSA would understand that because the first and third usages of the term "the body" in claim 12 refer to "the body" in connection with the inhaler, those usages must refer to the inhaler body. *See also* PTX-001 ('156 Patent, 4:46-65, 5:22-25).

1563. The POSA would understand that, because the second usage of the term "the body" in claim 12 refers to the "the body, ratchet wheel and actuator" (which are all components of the dose counter) together, "the body" in this usage must refer to the dose counter body.

## VI.   Objective Indicia of Nonobviousness

1564. Multiple objective indicia support the nonobviousness of the Asserted Claims.

### A.   Long-Felt, Unmet Need

1565. The inventions recited in the Asserted Claims satisfied multiple, long-felt needs, which provides further evidence that those inventions would not have been obvious. As explained below in greater detail, as of the priority dates, there were multiple, long-felt, unmet needs for inhalers with dose counters having the

properties of the claimed inventions, including the need for inhalers with dose counters having sufficient functionality, accuracy (including, with respect to under- and over-counting), reliability, maintainability (and ability to be cleaned), robustness, manufacturability, minimal impact on device performance, and human factors (including aesthetics, ergonomics, and other human factors).

### 1. The Prior Art Recognized Needs for the Claimed Inventions.

1566. As of the priority dates, no inhalers with dose counters had the combination of properties possessed by the inventions recited in the Asserted Claims.  Indeed, the prior art recognized that, in many cases, inhalers did not include any dose indicating mechanisms (e.g., a dose counter or dose indicator) whatsoever.  In the absence of such mechanisms, patients were left to devise a number of methods for attempting to determine the number of doses remaining, including (1) shaking the inhaler; (2) test-firing the inhaler; (3) placing the inhaler in a bowl of water; (3) attempting to "taste" differences in the spray; and (4) counting the number of doses on a piece of paper.  *See, e.g.*, PTX-097 (Fink 2005, CIPLA-BDI_0184184, at -189); PTX-138 (Holt 2005, at 105-06); PTX-122 (Ogren 1995, TEVADOC-00000011, at -13-15); PTX-125 (Sander 2006, TEVADOC-00000046, at -48-49).

1567. Each of the above-mentioned methods was highly inaccurate.  *See, e.g.*, PTX-097 (Fink 2005, CIPLA-BDI_0184184, at -189 ("To mitigate the risk of a patient continuing to use an 'empty' inhaler, pharmaceutical manufacturers instruct patients to count their inhaled doses over the life of the canister.  This is inconvenient, impractical, unrealistic, and unreliable.  Most patients simply do not keep a running tally of the doses used, especially with their reliever medications. In the past, some pMDI manufacturers had suggested floating the canister (without boot) in a bowl of water as a rough indicator to determine remaining contents. Not only does this not work reliably, but water entering the nozzle can radically reduce the subsequent dose, so floating the canister is no longer a recommended technique by most in the industry.")); PTX-138 (Holt 2005, at 105-06); PTX-122 (Ogren 1995, TEVADOC-00000011, at -13-15); PTX-125 (Sander 2006, TEVADOC-00000046, at -50 ("[P]atients do not have a reliable means of monitoring the contents of their metered-dose inhalers.  It is well known and uncontested that shake testing and spray testing are misleading, and the flotation method has been repeatedly shown to be both inaccurate and potentially damaging to the product. The only FDA-approved approach is for patients to keep track of doses as they use them, but demanding a practice as cumbersome as this is impractical.")); PTX-003 ('289 Patent, 1:49-54 ("A drawback of self-

administration from an inhaler is that it is difficult to determine how much active drug and/or propellant are left in the inhaler, if any . . . .")).

1568. Counting the number of doses on a piece of paper—the only FDA-approved method for determining the number of remaining doses—was too impractical to use effectively and, as a consequence, suffered from poor compliance. *See, e.g.*, PTX-125 (Sander 2006, TEVADOC_00000046, at -49-50 ("The FDA recommends that patients keep a diary of inhaler use and discard the inhaler on reaching the labeled number of doses, even though the inhaler may appear to continue delivering medication. This method, however, is cumbersome and issues of compliance render it wholly impractical, especially for patients using their pMDI on an irregular basis, as with bronchodilators. In one survey, only 8% of respondents determined when to replace their pMDI by counting the number of actuations used.")); PTX-097 (Fink 2005, CIPLA-BDI_0184184, at -189 ("To mitigate the risk of a patient continuing to use an 'empty' inhaler, pharmaceutical manufacturers instruct patients to count their inhaled doses over the life of the canister. This is inconvenient, impractical, unrealistic, and unreliable. Most patients simply do not keep a running tally of the doses used, especially with their reliever medications.")); PTX-003 ('289 Patent, at 1:49-54).

1569. During her deposition, one of Aurobindo's witnesses admitted that it would be difficult for patients to track the number of doses remaining in the absence of a dose counter. *See, e.g.*, Carr Depo. Tr. 16:12-21 ("Q. And if you didn't have a dose counter, I think it would be easy to lose track of how many doses are remaining in the canister. Would you agree with that? A. If I didn't have a dose counter, I'd have to put it in calendar in my phone because, otherwise, I would not remember, or I'd have to start at the beginning of the month, or something like that to guide me. Off the top of your head, it would be easy to lose track.").

1570. The prior art recognized several problems caused by the lack of adequate inhalers with dose counters. In particular, commentators noted that patients faced the undesirable choice of either (1) discarding inhalers that still contained remaining doses, resulting in waste; or (2) using inhalers that did not contain any doses, risking death or other serious injury. *See, e.g.*, PTX-138 (Holt 2005, at 106 ("These findings confirm that patients are unable to determine when an MDI should be discarded, resulting in insufficient drug delivery at the end of the life of an MDI for the majority of patients, and wastage of the drug for others.")); PTX-125 (Sander 2006, TEVADOC-00000046, at -50 ("It is wholly unacceptable that so many patients, believing they are equipped with the means to manage their asthma and life-threatening episodes, are actually using an empty

inhaler and putting their lives at risk simply because they do not know whether their inhaler contains medication and have no way of making that determination.")); PTX-122 (Ogren 1995, TEVADOC-00000011, at -14-15 ("We believe the combination of using an inaccurate technique for determining when to replace a metered-dose inhaler and the large number of actuations that may remain beyond the number of listed by a manufacturer clearly means that many asthmatic patients are utilizing actuations that may not contain accurate doses of medications. . . . The implications of these data are worrisome [and] potentially serious . . . .")); PTX-097 (Fink 2005, CIPLA-BDI_0184184, at -189); PTX-137 (Hess at 710); PTX-003 ('289 Patent at 1:49-54).

1571. In 2003, in recognition of the need for dose counters with these properties, FDA published guidance providing non-binding recommendations regarding the integration of dose counters and dose indicators in MDIs.  In particular, FDA recommended "that manufacturers with metered-dose inhalers under development for oral inhalation integrate a dose-counting device into the development of their MDI drug product."  PTX-402 (FDA Guidance 2003, TEVAQVAR-00032573, at -578).

1572. FDA provided additional, specific recommendations, including:

- Dose counters should provide, either through a direct numeric count or color coding, a clear indication of when an MDI is approaching the end of its recommended number of actuations as well as when it has reached or exceeded that number. An indication that an MDI is approaching the end of its recommended number of actuations should occur when a sufficient number of actuations are left to give patients enough time to obtain a new MDI. If a numeric count is chosen, we recommend that the counter be designed so that it counts downward from the recommended number of actuations to zero, rather than counting upwards, enabling patients to know when a device is approaching the end of its life (i.e., the number of actuations is approaching zero).

- Dose counters should be engineered to reliably track actuations and should be designed to be as close to l 00 percent reliable as possible. However, if some low frequency of error is unavoidable, the device should be designed to specifically avoid undercounting (i.e., the MDI sprays, but the counter does not advance). Undercounting could result in patients assuming they have medication left in their MDI when they do not, a circumstance that is potentially dangerous.

- The reliability of dose counters should be established during development under in-vitro testing (simulating use and potential abuse), as well as in clinical use. The documentation of dose counter functionality, reliability, and accuracy would ideally be derived from assessments in clinical trials including, where possible, phase-3 trials. However, for dose counters added either late in a development program or postapproval, in-use studies should be designed and conducted to obtain this information.

PTX-402 (FDA Guidance 2003, TEVAQVAR-00032573, at -578-79).

1573. FDA explained, "Currently available MDIs offer no practical way for patients to track the remaining numbers of doses or amount of medication." PTX-402 (FDA Guidance 2003, TEVAQVAR-00032573, at -577). Thus, "patients must guess how many doses are left in their MDIs and have two practical options: (1) throw away an MDI that may still contain acceptable metered-doses or (2) use a product when it may be beyond the recommended number of doses and risk not receiving the correct drug dose. The former is wasteful, and the latter is potentially dangerous. The addition of an accurate dose counter to an individual MDI unit would allow the patient to reliably track the numbers of actuations used from that individual inhaler (i.e., to identify when the label claim number of actuations has been reached). This would prevent the patient from discarding an inhaler unnecessarily or using the product beyond the recommendations provided in the labeling for that product." PTX-402 (FDA Guidance 2003, TEVAQVAR-00032573, at -577).

1574. The successes of the inventions recited in the Asserted Claims in satisfying these long-felt, unmet needs, alone and in combination with one or more other needs, provides further evidence that those inventions would not have been obvious.

## 2.     The Prior Art Failed to Satisfy Those Needs.

1575. Despite FDA's and commentators' concerns, however, prior art efforts to develop improved dose counting mechanisms failed to satisfy the needs for dose counters having the properties of the inventions recited in the Asserted Claims.

1576. **Use of Dose Indicators.** Many prior art devices incorporated dose indicators, rather than dose counters. Unlike dose counters, dose indicators

provide only a general indication of the number of doses remaining, for example, by displaying the number of doses in multiples of ten or by using colors. Although attractive because of their lower cost to design and manufacture, they traded cost for accuracy. *See, e.g.*, Stuart 2013, at 41 ("A typical dose counter has a numerical display, indexes forward for each actuation made and has a discrete display – factors that often lead to preference by patients over a dose indicator. Dose indicators take many forms, but often count in multiples (for example, 10 or 20) or use colours to display remaining doses (see Figure 1). They often do not index every count and require some patient interpretation of the display. The appeal of dose indicators tends to be the larger display and lower cost, although they are not considered by patients to be as accurate as a dose counter."); Conner 2013, at 661 ("Dose indicators that rely solely on a color coded display or indicator symbol are less precise than dose counters that use a numeric display . . . ."); '289 Patent, 2:9-12. The Section below describes examples of such devices, including ones developed by Aptar France S.A.S. ("Aptar")/Valois S.A.S. ("Valois"), AstraZeneca Pharmaceuticals LP ("AstraZeneca"), Bespak, Senetics, Inc. ("Senetics"), Inc., Sapphire Designs, Inc. ("Sapphire Designs"), and Trudell Medical International, Inc. ("Trudell Medical").

1577. **Placement of the Dose Counter or Dose Indicator.** Many prior art dose counters and dose indicators suffered from problems caused by the placement of the dose counter or dose indicator relative to the inhaler's other components. As a result of these problems, many dose counters and dose indicators that were theoretically capable of accurately recording and displaying information, failed as a result of the practical realities of patient use.

1578. To avoid addressing the challenges of incorporating a dose counter or dose indicator into the inhaler body, many prior art devices attempted to provide "add-on" dose counters or dose indicators, which could be attached to the outside of existing inhalers without interacting with any of those inhalers' internal components. While superficially attractive, such add-on approaches suffered from increased expense and decreased usability, because of their bulkiness. In addition, many of these approaches suffered from decreased accuracy and compatibility. *See, e.g.*, PTX-097 (Fink 2005, CIPLA-BDI_0184184, at -189 ("Third party dose counting devices are available, but add additional expense.")); PTX-137 (Hess 2008, at 710-11 ("An issue that has not been adequately addressed with these add-on dose counting devices is patient satisfaction. For example, they add to the cost of therapy and they increase the complexity of therapy because they add a device to the treatment regimen. Some of the devices, such as MD Turbo, are also not compatible with spacers and VHCs.")); PTX-139 (Kennedy 2015, at 4 ("The

278

introduction of externally mounted dose counters or indicators can require significant changes to the actuator's external dimensions, resulting in a bulky profile. A top mounted dose counter or indicator extends the hand span required for operation.")).  The section below addresses examples of such devices, including ones developed by Meditrack Products, Inc. ("Meditrack Products"), and Respirics, Inc. ("Respirics")/Teamm Pharmaceuticals Inc. ("Teamm Pharmaceuticals").

1579. Many other prior art devices placed the dose counter or dose indicator on top of the medicament canister (from the perspective of the patient looking downwards on the assembled device).  Because they exposed the dose counter or dose indicator, however, such top-mounted approaches suffered from increased tampering and decreased robustness, as a result of intentional or accidental damage, for example, caused by accidental dropping.  *See, e.g.*, PTX-148 (Stuart 2013, at 41 ("Top-mounted dose counters or indicators are attached to the MDI canister. An advantage of a top-mounted device is that it can be added to a design without affecting existing components or pre-existing drug delivery. The two disadvantages are the overall height of the MDI, which is extended and has the potential to create difficulty for patients with a limited hand span; and the fact that the counter itself is exposed to the patient, which therefore means it must be designed to withstand a higher level of tampering and abuse.")); PTX-003 ('289 Patent, 2:6-8 ("[S]ome dose counters do not keep a particularly reliable count, such as if they are dropped onto a hard surface.")). The section below describes examples of such devices, including ones developed by Aptar/Valois, AstraZeneca, Senetics, and Trudell Medical.

1580. Still other prior art devices placed the dose counter on the side of the medicament canister or canister housing.  However, such side-mounted approaches significantly increased the bulk of the device, reducing patient usability.  *See, e.g.*, PTX-148 (Stuart 2013, at 41 ("Side-mounted dose counters or indicators can be viewed as a compromise between internal and top-mounted dose counters. Side mounts have the advantages of sitting outside of the airflow, and being enclosed and tamper proof. However, one disadvantage of a side mount is its bulky appearance and size, which patients may find ungainly to use. The addition of a side-mounted dose counter to an existing product can drastically change its appearance, which can have a negative impact on a product where maintaining patient familiarity is essential.")).  The Section below describes examples of such devices, including ones developed by Aptar/Valois and Sapphire.

1581. Still other prior art devices placed the dose counter or dose indicator on the bottom of the medicament canister.  By their nature, such bottom-mounted

approaches resulted in limited compatibility with different medicament canister and valve types; thus, although they were used in certain product lines, they failed to provide a general solution to the problem of drug delivery. The Section below describes examples of such devices, including ones developed by GlaxoSmithKline.

1582. Yet other devices attempted to integrate the dose counter or dose indicator into the canister housing. However, while this approach avoided the flaws of top- or side-mounting the dose counter or dose indicator, such devices had the potential to disrupt airflow through the device, potentially affecting the resulting spray plume. *See, e.g.*, PTX-148 (Stuart 2013, at 41 ("Internal dose counters or indicators sit within the actuator and are often visible to the patient via a window in the actuator (see Figure 2). Fitting a dose counter or dose indicator inside the actuator is a very difficult task, as the space envelope between the MDI valve and actuator is typically very small. An internal dose counter or indicator sits in the upstream airflow of the MDI, which has the potential to disrupt the spray plume. Despite that, the main advantages are that the counter is a contained, tamper-proof system and that the outward appearance of the actuator remains familiar to patients. That means that apart from having an additional viewing window, it has the appearance of a typical MDI.")). Qvar® HFA with dose counter and ProAir® HFA with dose counter exemplify such devices. *See, e.g.*, PTX-201 (TEVAQVAR-00008706, at -706-08, -714-18 (Qvar® HFA Container Closure System)); PTX-212 (TEVAQVAR-00052614, -614-16, -619-22 (ProAir® HFA Container Closure System)).

1583. **Design of the Dose Counter or Dose Indicator.** Many prior art dose counters and dose indicators suffered from problems relating to the design of the mechanisms by which they recorded or displayed information. These problems affected both mechanical and electronic dose counters and dose indicators.

1584. Mechanical prior art dose counters and dose indicators contained complex moving parts, which were difficult and expensive to assemble or manufacture. They also suffered from inaccuracy and interfered with airflow. *See, e.g.*, DX-155 ('021 Publication ¶ [0006] ("Some dispensing devices have indicating devices that convert the linear reciprocal movement of the container relative to the housing into a one-way, or single-cycle, movement of an indicator, wherein the indicator identifies the relative fullness of the container, the number of metered doses remaining therein or the number of doses already administered. . . . [I]ndicating devices of this nature may include complex moving parts which can be difficult to assemble and expensive to manufacture. Such devices may also be susceptible to counting inaccuracies due to the configuration of the indexing or

280

mating parts, or require excessive amounts of space within the housing to accommodate the relatively large or numerous moving parts. Others still may impede or interfere with the airflow and medicament being dispensed from the inhalation device.")).

1585. Electronic prior art dose counters and dose indicators suffered from additional flaws. Among other things, such devices were highly susceptible to environmental damage and were expensive to manufacture. *See, e.g.*, DX-155 ('021 Publication ¶ [0006] ("[S]ome devices use electrical circuitry to count or record the dispersements. Such devices can be relatively expensive to manufacture, however, and typically require a power source which may be susceptible to damage in various environments, such as moist conditions.")). The Section below describes examples of such devices, including those developed by Aptar, Nexus6 Ltd. ("Nexus6"), Meditrack Products, and Respirics/Teamm Pharmaceuticals.

### 3.    The Claimed Inventions Satisfied Those Needs.

1586. In contrast with prior art, the inventions recited in the Asserted Claims, including as embodied by Qvar® HFA with dose counter and ProAir® HFA with dose counter satisfied the needs for inhalers with dose counters with sufficient functionality, accuracy (including, with respect to under- and over-counting), reliability, maintainability (and ability to be cleaned), robustness, manufacturability, minimal impact on device performance, and human factors (including aesthetics, ergonomics, and other human factors).

1587. The inventions recited in the Asserted Claims, including as embodied in Qvar® HFA with dose counter and ProAir® HFA with dose counter have superior accuracy, reliability, and robustness in comparison with prior art inhalers with dose counters or dose indicators. This is demonstrated, for example, by the results of Teva's accuracy and drop tests for those devices. *See, e.g.*, PTX-287 (TEVAQVAR-00765383 (Qvar® HFA Design History File)); PTX-187 (TEVAQVAR-00007168 (Qvar® HFA Drop Test)); PTX-189 (TEVAQVAR-00007440 (Qvar® HFA Accuracy Test)); PTX-289 (TEVAQVAR-00765418 (Qvar® HFA Engineering Qualification Report)); PTX-212 (TEVAQVAR-00052614 (ProAir® HFA Container Closure System)); PTX-257 (TEVAQVAR-00761426 (ProAir® HFA Engineering Qualification Report)); PTX-003 ('289 Patent, Abstract, 2:41-53, 4:30-5:13).

1588. Teva set and succeeded in achieving the goal of developing a dose counter with a failure rate of less than 50 failed counts per million uses.

| TITLE: Teva C2 Actuator – EQ Test Summary Report | DOCUMENT #: 1020172-08 | | |
|---|---|---|---|
| Written by: Harrison Karg | PAGE: 18 of 47 | REVISION: 0 - Draft | |
| | | Radius Confidential | |

| Loop # | Test | Condition Group | Requirement Predict less than 50 PPM outside of 186 – 194 strokes to first zero. | |
|---|---|---|---|---|
| | | | Defects per million units Total | Pass or Fail |
| Loop 5 | TM-0366: Counter Accuracy | Ambient C01-A | 0 | Pass |
| | | At high temperature C02-A | 0 | Pass |
| | | At low temperature C03-A | 3 | Pass |
| | | Drop, 1m C05-A | 20,957 | Fail |
| Loop 6 | TM-0366: Counter Accuracy | Drop, 1m L4 | 0.44 | Pass |
| Loop 7 | TM-0366: Counter Accuracy | Drop, 1m NL4 | 237 | Fail |
| Loop 8 | TM-0366: Counter Accuracy | Ambient L4C | 0.54 | Pass |

| Loop # | Test | Condition Group | Requirement | Results | Pass or Fail |
|---|---|---|---|---|---|
| Loop 9 | Tape Angle Investigation | NL4 (Loop 7) | Informational only, Testing for correlation | r = .78 | N/A |
| | | L4C (Loop 8) | Informational only, Testing for correlation | r = .68 | N/A |

*See, e.g.*, PTX-257 (TEVAQVAR-00761426, at -444-45 (ProAir® HFA Engineering Qualification Report)); *see also* PTX-257 (TEVAQVAR-00761426, at -431-73); PTX-003 ('289 Patent, 4:46-5:13 ("It has been found that dose counters with these features have a failure rate of less than 50 failed counts per million full canister activation depressions.")).

1589. Teva achieved this superior functionality, accuracy, reliability, and robustness in a manner that had minimal impact on device performance or human factors, such as ergonomics or aesthetics. *See, e.g.*, PTX-201 (TEVAQVAR-00008706, at -706-08, -714-18 (Qvar® HFA Container Closure System)); PTX-203 (TEVAQVAR-00010727 (Qvar® HFA Labeling)); PTX-282 (TEVAQVAR-00764907, at -913-45 (Qvar® HFA Pharmaceutical Comparison)); PTX-212 (TEVAQVAR-00052614, -614-16, -619-22); PTX-213 (TEVAQVAR-00052952 at -966-71 (ProAir® HFA Container Closure System)); PTX-214 (TEVAQVAR-00066638 (ProAir® HFA Labeling)).

1590. Teva also achieved superior manufacturability and maintainability. These successes are especially notable given that inhalation devices, such as Qvar® with dose counter and ProAir® with dose counter, are consumer-grade products, intended for production and use on a mass scale. Balancing functionality with manufacturability and maintainability is often one of the most significant design challenges, and many otherwise successful devices fail because they cannot be manufactured or maintained at an acceptable cost.

### B.    Failure of Others

1591. The failure of others to develop inhalers and dose counters having the properties of the inventions recited in the Asserted Claims provides further evidence that they would not have been obvious. At or around the priority dates, pharmaceutical companies (including Aptar, AstraZeneca, Bespak, Cipla, GlaxoSmithKline, Nexus6, Meditrack Products, Respirics, Teamm Pharmaceuticals, Senetics, and Trudell Medical) attempted to develop improved inhalers and dose counters. None succeeded in achieving an inhaler or dose counter having the properties of the claimed inventions, including those described in the previous Section.

1592. **Aptar/Valois.**  At around the priority dates, Aptar and its predecessor, Valois, attempted to develop improved dose counters and dose indicators. *See, e.g.*, PTX-157 (U.S. Patent Nos. 5,988,496 ("Valois '496")), PTX-158 (7,637,227 ("Valois '227")). However, Aptar and Valois failed to develop a dose counter that could be integrated into the canister housing as a separate component; and instead, developed only product candidates in which a dose indicator was attached to the top or side of the medicament canister.



FIG.6

FIG.7

*See, e.g.*, Valois '496, Figs. 6-7.



Fig. 8          Fig. 9

*See, e.g.*, PTX-158 (Valois '227, Figs. 8, 9; 1:49-55 ("More particularly, an object of the present invention is to provide such an indicator . . . that can be disposed in particular on the bottom of the reservoir or on the side of said reservoir regardless of the type of powder or fluid dispenser device."), 3:6-54). As illustrated above, Aptar's and Valois's top- and side-mounted product candidates suffered from the problems associated with similar designs, including because increased the bulkiness of the inhaler, and, in the case of the top-mounted product candidates, increased opportunities for accidental or intentional damage.

1593. Separately, Aptar attempted to develop an electronic dose indicator. *See, e.g.*, PTX-159 (U.S. Patent No. 8,267,086 ("Aptar '086")).

284



Fig. 3

*See, e.g.*, PTX-159 (Aptar '086, Fig. 3, 2:55-4:21).  However, Aptar's product candidates had the same problems as other side-mounted devices and, as typical of electronic devices, lacked robustness and maintainability.

    1594.  **AstraZeneca.**  In 2007, AstraZeneca received approval to add a dose indicator to Symbicort®, an inhalation drug product indicated for the treatment of certain kinds of asthma.  *See* PTX-129 (Symbicort Prior Approval Supplement 2007).



Figure 1

*See, e.g.*, PTX-129 (Symbicort® Prior Approval Supplement 2007, Medication Guide 8, 12).  Like other products incorporating dose indicators, AstraZeneca's Symbicort® failed to provide patients with the precise number of doses remaining.

285

As a result, Symbicort® provided a highly imperfect solution to the problems recognized by the prior art. Additionally, Symbicort®'s top-mounted design increased the bulkiness of the inhaler and opportunities for accidental or intentional damage.

1595. **Bespak.**  At around the priority dates, Bespak attempted to develop a dose indicator for use with its inhalation products. *See, e.g.*, PTX-130 (U.S. Patent No. 7,407,066 ("Bespak '066")). Bespak's product candidates appear to have consisted of dose indicators that provided highly imprecise information regarding the number of doses remaining. Thus, they failed to adequately address the problems recognized by the prior art.



*See, e.g.*, PTX-130 (Bespak '066, Fig. 2, 2:4-3:50). Notably, even though Bespak supplied Defendants with certain components used in Defendants' ANDA Products, Defendants chose not to select a Bespak dose counter or dose indicator.

1596. **Cipla.**  At around the priority dates, Vortran Medical Technology 1, Inc. ("Vortran") was attempting to develop inhalers and dose indicators; Vortran subsequently assigned to Cipla its interest in those technologies. *See, e.g.*, PTX-131 (U.S. Patent No. 7,600,512 ("Cipla '512")); PTX-155-56 (Assignment

286

Records for U.S. Patent No. 7,600,512). Although described by Vortran as "dose counters," the dose counting mechanisms in those devices provided highly imprecise information regarding the number of doses remaining.



FIG. 12A



FIG. 12B

*See, e.g.*, PTX-131 (Cipla '512, Figs. 12A-12B, 12:53-13:12). Notably, Cipla did not use one of its own dose counters or dose indicators in its products. *See, e.g.*, PTX-131 (CIPLA-BDI_0010839, at -840 (Container Closure System)).

1597. **GlaxoSmithKline.** At around the priority dates, GlaxoSmithKline received approval for several MDI products that incorporated dose counters, including Advair® HFA, Flovent® HFA, and Ventolin® HFA. However, in each of these products, the dose counter was attached to the medicament canister. *See, e.g.*, PTX-095 (Advair® Labeling 2009, at 41 ("Each canister is fitted with a dose counter . . .")); PTX-096 (Flovent® Labeling 2008, CIPLA-BDI_0184100, at -123 (same)); PTX-098 (Ventolin® Labeling 2008, CIPLA-BDI_0184396, at -398 ("VENTOLIN HFA has a dose counter attached to the canister . . .")). As with other, similar approaches, attaching the dose counter to the medicament canister in those products resulted in significantly limited their compatibility with existing medicament canisters and canister housings.

1598. GlaxoSmithKline also marketed a dry powder version of Advair®, which incorporated a dose counter.  *See, e.g.*, PTX-095 (Advair® Labeling 2008, CIPLA-BDI_0183908, at -999).  However, as evidenced by GlaxoSmithKline's use of other approaches in its MDI products, such solutions suitable for breath-actuated dry powder inhalers were generally inappropriate for MDIs because, for example, they did not need to account for variations in stroke length, which posed a significant problem in the case of MDIs.  In the case of breath-actuated dry powder inhalers, the patient typically provides some additional action, which further assists in causing the mechanism to count.  *See, e.g.*, PTX-003 ('289 Patent, 1:27-2:20 ("[I]n particular, it is felt that it would be useful to provide extremely accurate dose counters for manually-operated canister-type metered dose inhalers. Unfortunately, in these inhalers, it has been found in the course of making the present invention that the stroke length of the canister is to a very large extent controlled on each dose operation by the user, and by hand.  Therefore, the stroke length is highly variable and it is found to be extremely difficult to provide a highly reliable dose counter for these applications.")).

1599. **Nexus6.**  At around the priority dates, Nexus6 and its predecessors attempted to develop electronic "reminders" for use in inhalation products, including MDIs.  *See, e.g.*, PTX-145 (U.S. Patent Publication No. 2008/0230057 ("Reminder for a Medicament Inhaler")); PTX-154 (Assignment Records for U.S. Patent Publication No. 2008/0230057).  Ultimately, in 2009 and 2014, FDA approved Nexus6's SmartTrack® and SmartTouch® devices, which were external, "clip-on" devices to be attached to existing MDIs.  *See, e.g.*, PTX-144 (SmartTrack® Approval Letter 2009, at 1); PTX-143 (SmartTouch® Approval Letter 2014, at 1).



*See, e.*g., PTX-134 (Dolan 2014).  SmartTouch® and SmartTrack® were
extremely bulky and susceptible to accidental or intentional damage, and as a
consequence, never saw widespread use.

    1600.  **Meditrack Products, Respirics. Teamm Pharmaceuticals.**  At
around the priority dates, Meditrack Products and Respirics/Teamm
Pharmaceuticals were separately attempting to develop add-on dose counters for
use with existing MDIs.  *See, e.g.*, PTX-137 (Hess 2008, at 710-11); PTX-099
(Lewis 2008, CIPLA-BDI_0184747, at -750).  Meditrack Products and
Respirics/Teamm Pharmaceuticals, branded their devices as the Doser™ and the
MD Turbo™, respectively.  *See, e.g.*, PTX-137 (Hess 2008, at 710-11, Lewis
2007, CIPLA-BDI_0184747, at -750).



*See, e.g.*, PTX-137 (Hess 2008, at 710-11).  As with other, similar solutions, and
unlike the inventions recited in the Asserted Claims, the MD TurboTM (left) and
the DoserTM (right) were extremely bulky and in at least some circumstances,
unreliable.

    1601. Commentators noted that the Doser™, MD Turbo™, and other add-on
devices suffered from poor reliability, ergonomics, and compatibility.  *See, e.g.*,
PTX-137 (Hess 2008, at 711 ("[T]he Doser occasionally recorded additional
actuations.  Over time, there was a trend toward decreasing accuracy with the
Doser, which may be explained by battery decay.  Also, the Doser no longer
records actuations after the preset counter reaches zero, which leads to premature
arrival of the counter at zero and subsequent inability to record further doses.  An
issue that has not been adequately addressed with these add-on dose counting
devices is patient satisfaction.  For example, they add to the cost of therapy and
they increase the complexity of therapy because they add a device to the treatment
regimen.  Some of the devices, such as MD Turbo, are also not compatible with

spacers and VHCs.")); PTX-160 (Williams 1999, at 1499 ("When holding th[e] Doser-MDI combination between the thumb and forefinger, the distance may be too far for some patients to actuate comfortably. This may be difficult, especially for arthritic patients, children, or other persons with small hands.")).

1602. **Sapphire Designs.** At around the priority dates, Sapphire Designs, was attempting to develop inhalers with "level indicators." Sapphire Designs' level indicators extended along the canister housing and indicated the level of medicine remaining. *See, e.g.*, PTX-146 (U.S. Patent No. 6,615,827, Abstract, Figs. 1-15, 22-54; 3:6-24:38 ("Sapphire '827")).



FIG.1

*See, e.g.*, PTX-146 (Sapphire '827, Fig. 1, 16:18-20; 7:17-8:11). Based on Sapphire Designs' publications, it is unclear whether at around the priority dates, Sapphire Designs ever succeeded in creating a product candidate that included a dose counter (as opposed to a dose indicator); and in any event, because of their side-mounted design, Sapphire Designs' product candidates were bulky and suffered from poor compatibility with existing medicament canisters and canister housings.

1603. **Senetics.**  At around the priority dates, Senetics was attempting to develop dose indicators for use with inhalation drug products.  *See, e.g.*, PTX-147 (U.S. Patent No. 5,718,355 ("Senetics '355")).  Senetics's product candidates attached to the top of the medicament canister, which were activated by the patient's pressing down on the medicament canister.  *See, e.g.*, PTX-147 (Senetics '355, Abstract, Figs. 1-16, 6:10-30:36).



*See, e.g.*, PTX-147 (Senetics '355, Fig. 1; 7:35-62).  Senetics's product candidates suffered from multiple problems.  As dose indicators, Senetics's product candidates did not inform patients of the precise number of doses remaining; and because they attached to the top of the medicament canister, were bulky and susceptible to accidental or intentional damage.

1604. **Trudell Medical.**  In 2008, FDA approved Nycomed's Alvesco®, which incorporates Trudell Medical's AeroCount® dose indicator.  *See, e.g.*, PTX-150 (Alvesco® Labeling 2008, at 11. DESCRIPTION ("ALVESCO 80 mcg Inhalation Aerosol and ALVESCO 160 mcg Inhalation Aerosol are pressurized, metered-dose aerosol units fitted with a dose indicator")).  Like other dose indicators, Trudell Medical's AeroCount® failed to provide patients with the precise number of doses remaining.  Moreover, because Trudell Medical's AeroCount® was attached to the top of the medicament canister, Trudell Medical's

attempted solution resulted in additional bulkiness and increased opportunities for accidental or intentional damage.

1605. **Cohero/Newtec.**  Even years after the priority dates, pharmaceutical companies continued to struggle to develop inhalers and dose counters or dose counters having the properties of the claimed inventions.  Both Cohero Health, Inc. ("Cohero"), U.S. Patent No. 10,091,555, and Newtec Pro Manufacturing Pvt. Ltd. ("Newtec"), U.S. Patent No. 10,765,819, attempted to develop electronic dose counters and front-facing dose indicators, respectively.  However, like their predecessors, Cohero's and Newtec's product candidates suffered from the flaws of those approaches, including bulkiness, unreliability, and poor compatibility with medicament canisters and canister housings.

1606. Each of these failures, alone or/and combination with one or more other failures, provides further evidence that the inventions recited in the Asserted Claims would not have been obvious.

### C.    Industry Acceptance

1607. The inhalation device industry's acceptance of the inventions recited in the Asserted Claims, as embodied by Qvar® HFA with dose counter and ProAir® HFA with dose counter, provides further evidence that those inventions would not have been obvious.  Both Qvar® HFA with dose counter and ProAir HFA® with dose counter have achieved FDA approval for use in treating the diseases for which they are indicated.  *See, e.g.*, PTX-124 (Qvar® Supplemental Approval Letter 2014, TEVADOC-00000042); PTX-123 (ProAir® HFA Labeling 2012, TEVADOC-00000016).  At the time of their approvals, industry participants considered Qvar® HFA with dose counter and ProAir® HFA with dose counter to be leading products for their respective indications.

### D.    Praise

1608. The inhalation device industry's praise for the inventions recited in the Asserted Claims, as embodied by Qvar® HFA with dose counter and ProAir® HFA with dose counter, provides further evidence that those inventions would not have been obvious.  Industry participants and healthcare providers have praised the designs of Qvar® HFA with dose counter and ProAir® HFA with dose counter, for their functionality, accuracy (including, with respect to under- and over-counting), reliability, maintainability (including their ability to be cleaned), robustness, manufacturability, minimal impact on device performance, and human factors (including their aesthetics, ergonomics, and other human factors).  Among other

things, such praise included providing integrated, dose-counting solutions that appeal to patients because of their non-bulky designs.

1609. Numerous physicians and researchers have praised Qvar® HFA with dose counter and ProAir HFA® with dose counter for their accuracy, reliability, and performance—including, their ability to significantly reduce hospitalizations and emergency room visits. *See, e.g.*, PTX-121 (Given 2012, TEVADOC-00000010 ("ProAir HFA MDI with the new integrated dose counter functioned reliably and accurately in the clinical setting.")); PTX-120 (Chipps 2017, TEVADOC-00000008 ("In patients with asthma and/or COPD, albuterol inhalation aerosol (ProAir HFA) with dose counter, compared with the same product without dose counter, had significantly lower healthcare resource use including all-cause and respiratory-related inpatient ED visits, higher refill rates, and fewer exacerbations.")); PTX-140 (Kerwin 2017, at 1 ("In a real-world setting, asthma patients using ProAir HFA with [dose counter] experienced significantly fewer hospitalizations and [emergency department] visits compared with patients using ProAir HFA without [dose counter.]")).

1610. 

### E.    Copying

1611. Defendants' copying of the inventions recited in the Asserted Claims, as embodied in Qvar® HFA with dose counter, provides further evidence that those inventions would not have been obvious. Defendants had the opportunity to select a number of different inhaler and dose counter designs, including a number of different combinations of components, features, and configurations. Nevertheless, Defendants chose to select the same components, features, and configurations as those recited in the Asserted Claims or their equivalents. Cipla also chose to add a dose counter to its product based on Teva's announcement that

it had added a dose counter to Qvar® HFA.  *See, e.g.*, Rote Dep. Tr. 101:11-104:3; PTX-379 (Rote Dep. Ex. 10, CIPLA-BDI_0788345); PTX-380 (Rote Dep. Ex. 11, CIPLA-BDI_0876040 (Cipla E-Mails re. Teva Qvar® with Dose Counter Press Release)).

## VII.  Remedies

1612. Teva is entitled to a judgment that Cipla's ANDA Product and Aurobindo's ANDA Products will infringe the '289, '587, and '808 Patents.

1613. Cipla is not entitled to a declaration and judgment that Cipla does not infringe the Asserted Claims.

1614. Aurobindo is not entitled to a declaration and judgment that Aurobindo does not infringe the Asserted Claims.

1615. Teva is entitled to a declaration and judgment that the Asserted Claims are not invalid.

1616. Cipla is not entitled to a declaration that any claim of the '156 Patent is invalid.

1617. Defendants are not entitled to a declaration and judgment that the Asserted Claims are invalid.

1618. Teva is entitled to an order that the effective date(s) of FDA's approval of Cipla's ANDA Product and Aurobindo's ANDA Product shall not be earlier than the expiration dates of the '289, '587, and '808 Patents, including any adjustments, extensions and exclusivities.

1619. Cipla is not entitled to a declaration and judgment that Cipla has the lawful right to manufacture, import, use, sell, and/or offer to sell Cipla's ANDA Product in the United States following approval from FDA.

1620. Aurobindo is not entitled to a declaration and judgment that Aurobindo has the lawful right to manufacture, import, use, sell, and/or offer to sell Aurobindo's ANDA Product in the United States following approval from FDA.

1621. Teva is entitled to an injunction prohibiting Cipla, Aurobindo, and their officers, agents, servants, and employees from manufacturing, using, offering for sale, selling, or importing into the United States Cipla's ANDA Product or Aurobindo's ANDA Product prior to the expiration dates of the '289, '587, and '808 Patents, including any adjustments, extensions, or exclusivities.

1622. Cipla is not entitled to a declaration and judgment that Cipla has the lawful right to manufacture, import, use, sell, and/or offer to sell Cipla's ANDA Product in the United States following approval from FDA.

1623. Aurobindo is not entitled to a declaration and judgment that Aurobindo has the lawful right to manufacture, import, use, sell, and/or offer to sell Aurobindo's ANDA Product in the United States following approval from FDA.

1624. This is an exceptional case, and Teva is entitled to an award of attorney's fees.

1625. Teva is entitled to an award of costs.

1626. Cipla is not entitled to an award of attorney's fees.

1627. Aurobindo is not entitled to an award of attorney's fees.

1628. Cipla is not entitled to an award of costs.

1629. Aurobindo is not entitled to an award of costs.

Dated: October 31, 2022          Respectfully submitted,

WALSH PIZZI O'REILLY
FALANGA LLP

*/s/Liza M. Walsh*
Liza M. Walsh
Katelyn O'Reilly
William T. Walsh, Jr.
WALSH PIZZI O'REILLY
FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
(973) 757-1100

OF COUNSEL:
David I. Berl
Elise M. Baumgarten
Benjamin M. Greenblum
Kathryn S. Kayali
Ben Picozzi
Ricardo Leyva
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

*Attorneys for Plaintiffs Teva Branded*
*Pharmaceutical Products R&D, Inc.*
*and Norton (Waterford) Ltd.*

296