## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| TEVA BRANDED PHARMACEUTICAL | : | |
| PRODUCTS R&D, INC., and NORTON | : | **Civil Action No. 20-10172 (JXN) (MAH)** |
| (WATERFORD) LTD., | : | (Consolidated with Civil Action Nos. |
| Plaintiffs, | : | 20-14833 and 20-14890) |
| | : | |
| v. | : | **OPINION** |
| | : | **(Under Seal)** |
| CIPLA LTD., AUROBINDO PHARMA | : | |
| LLC, AUROBINDO PHARMA USA, | : | |
| INC., and AUROLIFE PHARMA LLC, | : | |
| Defendants. | : | |
| | : | |

**NEALS, District Judge**:

### I.    INTRODUCTION

Plaintiffs Teva Branded Pharmaceutical Products R&D, Inc. ("Teva") and Norton (Waterford) Ltd. ("Norton") (collectively, "Plaintiffs") bring this consolidated patent infringement action against Defendant Cipla Ltd. ("Cipla") for submitting an Abbreviated New Drug Application ("ANDA") No. 211434 to the U.S. Food and Drug Administration ("FDA") seeking approval to commercially manufacture, use, offer for sale, sell, and/or import generic versions of Plaintiffs' QVAR® (beclomethasone dipropionate) products prior to the expiration of U.S. Patent Nos. 9,463,289 (the "'289 Patent"), 9,808,587 (the "'587 Patent"), 10,022,509 (the "'509 Patent"); 10,022,510 (the "'510 Patent"); 10,086,156 (the "'156 Patent"), and 10,561,808 (the "'808 Patent"). *See* Compl., ECF No. 1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202. Venue is proper under 28 U.S.C. §§ 1391(b) and 1400(b). This opinion addresses allegations of infringement and invalidity with respect to the '289, '587, and '808 Patents (collectively, the "Asserted Patents") that each relate to the dose counting system that Teva developed and used in QVAR®.

This Court held a three-day bench trial relating to the Asserted Patents. *See* Transcripts ("Tr."), ECF Nos. 241-244. The parties submitted post-trial briefing with respect to infringement, validity, objective indicia, and the admissibility of the Aurobindo materials. *See* ECF Nos. 254, 257, 263, 266, 269, 271. This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). The findings of fact are based on the Court's observations and credibility determinations of the witnesses who testified at trial and a thorough review of all the evidence. As to infringement, the Court finds that Cipla's ANDA product infringes each Asserted Claim of the '289, '587, and '808 Patents. As to validity, the Court finds that the Asserted Patents are valid and Cipla's claims of obviousness are invalid.

## II.    BACKGROUND

### A.    Patents-in-Suit and Asserted Claims

#### 1.    The '289 Patent

The '289 Patent, entitled "Dose Counters for Inhalers, Inhalers and Methods of Assembly Thereof," issued on October 11, 2016. Cipla's Finding of Fact ("CFOF"), ECF No. 266. The '289 Patent issued from U.S. Patent Application Serial No. 14/103,324. The '289 Patent was filed on December 11, 2013, as a divisional of U.S. Patent Application Serial No. 13/110,532, which in turn was filed on May 18, 2011, and is now U.S. Patent No. 8,978,966. The '289 Patent purports to claim the benefit of priority to each of U.S. Provisional Patent Application Serial No. 61/345,763, which was filed on May 18, 2010, and U.S. Provisional Patent Application No. 61/417,659, which was filed on November 29, 2010.

The '289 Patent includes one independent claim. Plaintiffs assert that Cipla's ANDA product infringes independent claim 1 and dependent claims 2, 4, 6, and 7 of the '289 Patent. Cipla

contends that the '289 Patent is invalid as obvious in view of the '406 Publication in combination with the '514 Publication.  ECF No. 256.  The Asserted Claims in the '289 Patent read as follows:

**Claim 1**:
An inhaler for metered dose inhalation, the inhaler comprising: a main body having a canister housing, a medicament canister, which is moveable relative to the canister housing and retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, and a dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister, wherein the canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall, and wherein the canister housing has a longitudinal axis X which passes through the center of the central outlet port, the inner wall canister support formation, the actuation member, and the central outlet port lying in a common plane coincident with the longitudinal axis X.

**Claim 2**:
The inhaler as claimed in claim 1 wherein the medicament canister is movable relative to the dose counter.

**Claim 4**:
The inhaler as claimed in claim 1, wherein the first inner wall canister support formation comprises a support rail which extends longitudinally along an inside surface of the main body.

**Claim 6**:
The inhaler as claimed in claim 4 further comprising a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

**Claim 7**:
The inhaler as claimed in claim 6, wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

**2.  The '587 Patent**

The '587 Patent, entitled "Dose Counter for Inhaler Having an Anti-Reverse Rotation Actuator," issued on November 7, 2017.  The '587 Patent issued from U.S. Patent Application Serial No. 15/269,249, which was filed on September 19, 2016, as a continuation of U.S. Patent Application Serial No. 14/103,324, now the '289 patent, which in turn was filed on December 11, 2013, as a divisional of U.S. Patent Application Serial No. 13/110,532 (the "'532 Application"),

which in turn was filed on May 18, 2011, and is now U.S. Patent No. 8,978,966. The '587 Patent, purports to claim the benefit of priority to each of U.S. Provisional Patent Application Serial No. 61/345,763, which was filed on May 18, 2010, and U.S. Provisional Patent Application No. 61/417,659, which was filed on November 29, 2010.

The '587 Patent includes three independent claims, two of which Plaintiffs assert against Cipla. Plaintiffs assert that Cipla's ANDA product infringes independent claims 1 and 12, and dependent claims 2, 4, 6, and 7 of the '587 Patent. Cipla contends that the '587 Patent is invalid as obvious in view of the '406 Publication in combination with the '514 Publication. ECF No. 256. The Asserted Claims of the '587 Patent read as follows:

**Claim 1:**
An inhaler for metered dose inhalation, the inhaler comprising: a main body having a canister housing, a medicament canister, which is moveable relative to the canister housing and retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, and a dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister, wherein the canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall, wherein the canister housing has a longitudinal axis X which passes through the center of the central outlet port, and wherein the first inner wall canister support formation, the actuation member, and the central outlet port lie in a common plane coincident with the longitudinal axis X such that the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler.

**Claim 2:**
The inhaler as claimed in claim 1 wherein the medicament canister is movable relative to the dose counter.

**Claim 4:**
The inhaler as claimed in claim 1, wherein the first inner wall canister support formation comprises a support rail which extends longitudinally along an inside surface of the main body.

**Claim 6:**
The inhaler as claimed in claim 4 further comprising a plurality of support rails each of which extends longitudinally along the inside surface of the main body.

**Claim 7:**
The inhaler as claimed in claim 6, wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

**Claim 12:**
An inhaler for metered dose inhalation, the inhaler comprising: a main body having a canister housing, a medicament canister, which is moveable relative to the canister housing and retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, and a dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister, wherein the canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall, wherein the canister housing has a longitudinal axis X which passes through the center of the central outlet port, and wherein the first inner wall canister support formation, the actuation member, and the central outlet port lie in a common plane coincident with the longitudinal axis X such that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member.

### 3. The '808 Patent

The '808 Patent, entitled "Dose counter for inhaler having an anti-reverse rotation actuator," issued on February 18, 2020. The '808 Patent issued from U.S. Patent Application Serial No. 15/262,818, which was filed on September 12, 2016, as a continuation of U.S. Patent Application Serial No. 14/699,584, now abandoned, which in turn was filed on April 29, 2015, as a continuation of U.S. Patent Application Serial No. 14/103,353, now U.S. Patent No. 9,526,850, which in turn was filed on December 11, 2013 as a divisional of U.S. Application No. 13/110,532, now U.S. Patent No. 8,978,966, which was filed on May 18, 2011. The '808 Patent purports to claim the benefit of priority to each of U.S. Provisional Patent Application Serial No. 61/417,659, which was filed on November 29, 2010, and U.S. Provisional Patent Application No. 61/345,763, which was filed on May 18, 2010.

The '808 Patent includes one independent claim. Plaintiffs assert that Cipla's ANDA product infringes claim 28 of the '808 patent, which depends from claims 1 and 27. Cipla contends

that the '808 Patent is invalid as obvious in view of the '406 Publication and 552 Publication, among other arguments. ECF No. 256. The Asserted Claims of the '808 Patent read as follows:

**Claim 1:**
A dose counter for an inhaler, the dose counter having a counter display arranged to indicate dosage information, a drive system arranged to move the counter display incrementally in a first direction from a first station to a second station in response to actuation input, wherein a regulator is provided which is arranged to act upon the counter display at the first station to regulate motion of the counter display at the first station to incremental movements.

**Claim 27:**
The dose counter as claimed in claim 1 in which the regulator provides a resistance force of greater than 0.1 N against movement of the counter display.

**Claim 28:**
The dose counter as claimed in claim 27 in which the resistance force is greater than 0.3 N.

**B.  Stipulated Facts**

Prior to trial, the parties stipulated to the following facts in the Final Pretrial Order ("FPO"):

1.  Teva holds all rights, title, and interest in each of the Asserted Patents.

2.  Each of the Asserted Patents is listed in the FDA's Approved Products with Therapeutic Equivalents ("Orange Book") in connection with Teva's Qvar® HFA with Dose Counter drug product.

3.  Each of Defendants' ANDA Products comprises an inhaler for metered dose inhalation.

4.  The inhaler of each of Defendants' ANDA Products comprises a main body having a canister housing.

5.  The inhaler of each of Defendants' ANDA Products comprises a medicament canister.

6.  The medicament canister of each of Defendants' ANDA Products is moveable relative to the canister housing.

7. The medicament canister of each of Defendants' ANDA Products is retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister.

8. Each of Defendants' ANDA Products comprises a dose counter.

9. The canister housing of each of Defendants' ANDA Products has an inner wall.

10. The inner wall of the canister housing of each of Defendants' ANDA Products has a plurality of ribs.

11. The canister housing of each of Defendants' ANDA Products has a longitudinal axis X which passes through the center of the central outlet port.

12. The medicament canister of each of Defendants' ANDA Products is moveable relative to the dose counter.

13. Each of Defendants' ANDA Products comprises a dose counter for a metered dose inhaler.

14. Each of Defendants' ANDA Products comprises a metered dose inhaler having a body arranged to retain a medicament canister of predetermined configuration for movement of the medicament canister relative thereto, the medicament canister containing an active drug.

15. Each of Defendants' ANDA Products comprises a dose counter for an inhaler.

*See* ECF No. 210 at 9-10[1]; *see also* Tr. 425:10-426:9.

---

[1] For the sake of clarity, unless otherwise noted, all references to page numbers correspond to the page numbers generated by the ECF system.

## III.   DISCUSSION

### A.   <u>Infringement</u>

#### 1.   Legal Standard

Under 35 U.S.C. § 271(e)(2)(A), whoever submits "an application under section 505(j) of the Federal Food, Drug, and Cosmetic Act . . . for a drug claimed in a patent or the use of which is claimed in a patent" infringes the patent.  Under 35 U.S.C. § 271(a), "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

"Literal infringement exists if each of the limitations of the asserted claim(s) read on, that is, are found in, the accused ANDA product."  *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1583 (Fed. Cir. 1995).  If a defendant infringes even one claim, it infringes the patent, *Panduit Corp v. Dennison Mfg. Co.*, 836 F.2d 1329, 1330 n.1 (Fed. Cir. 1987), and the patentee is entitled to a remedy, including all applicable statutory remedies, see 35 U.S.C. § 271(e)(4)(A), (B).

A proper "infringement analysis entails two steps."  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996).  "The first step is determining the meaning and scope of the patent claims asserted to be infringed."  *Id.*  "The second step is comparing the properly construed claims to the ANDA product accused of infringing."  *Id.*  Thus, a court "must disregard the testimony of [an] expert . . . [if] based on an incorrect understanding of the claim construction."  *Cordis Corp. v. Bos. Sci. Corp.*, 658 F.3d 1347, 1357 (Fed. Cir. 2011).

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111 (Fed. Cir. 2004)). Infringement can only be assessed by "comparing the asserted claim[s] to the accused ANDA product, not by comparing the accused ANDA product to the figures of the asserted patent." *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1286 (Fed. Cir. 2002). It is likewise impermissible to compare the asserted claims "with the patentee's commercial embodiment." *Int'l Visual Corp. v. Crown Metal Mfg. Co.*, 991 F.2d 768, 772 (Fed. Cir. 1993) (per curiam).

"Direct infringement is a strict-liability offense." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) ("[A] defendant's mental state is irrelevant."). Thus, whether the relevant component in the defendant's product has the "purpose" of performing a claim limitation is irrelevant if it performs that limitation. *See, e.g., Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1368-69 (Fed. Cir. 2012) (rejecting argument that accused product did not infringe because accused element did not have the "purpose" of performing the claim limitation); ECF No. 217 at 5 (*Markman* Order) (citing *Toshiba*, 681 F.3d at 1368).

Infringement is a question of fact, which a patentee can prove by a preponderance of the evidence (*i.e.*, that it is "more likely than not" that infringement occurred). *See Lucent Techs. Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1309, 1317-18 (Fed. Cir. 2009); *Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1341-42 & n.15 (Fed. Cir. 2005); *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1357, 1364 (Fed. Cir. 2017). Unlike a defendant who argues that a patent is invalid, a patentee need not satisfy any heightened standard. *See Lucent Techs.*, 580 F.3d at 1317-18.

As with other questions of fact, a patentee may prove infringement by direct or circumstantial evidence. *Lucent Techs.*, 580 F.3d at 1318. Direct evidence is not required. *See Symantec Corp. v. Comput. Assocs. Int'l Inc.*, 522 F.3d 1279, 1293 (Fed. Cir. 2008). "A patentee may prove infringement by 'any method of analysis that is probative of the fact of infringement.'" *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1372 (Fed. Cir. 2009) (quoting *Forest Labs., Inc. v. Abbott Labs.*, 239 F.3d 1305, 1312 (Fed. Cir. 2001)).

Nevertheless, factual disputes have their limits; a defendant cannot raise a factual dispute based on its expert's conclusory testimony. *See Intell. Sci. & Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1184 (Fed. Cir. 2009) ("An expert's unsupported conclusion on the ultimate issue of infringement will not alone create a genuine issue of material fact."); *Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000) ("[I]t is well settled that an expert's unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine issue of material fact."); *Warner-Lambert*, 418 F.3d at 1341-42 ("[B]ald assertion" of noninfringement insufficient absent "specific evidence").

### 2. Findings of Fact and Conclusions of Law

#### a. *The '289 Patent*

The issue before the Court is whether Plaintiffs have proven, by a preponderance of the evidence, that it is more likely than not that Cipla's ANDA product infringes the '289 Patent. Plaintiffs argue that Cipla's ANDA product infringes claims 1, 2, 4, 6, and 7 ("the Asserted Claims"). ECF No. 262 at 10.[2] Claim 1 of the '289 Patent recites:

**Claim 1:**
An inhaler for metered dose inhalation, the inhaler comprising:

---

[2] Cipla only contested infringement of a single term in a single limitation of claim 1 and did not dispute that its product meets any of the other limitations of claim 1 of the '289 Patent. FOF 4, ECF No. 263; Tr. 503:23-504:4 (claim 1), FOF 90-105, ECF No. 263; Tr. 481:23-482:8 (dependent claims); *see also* 523:3-8, 525:3-527:11. *See* ECF No. 262 at 10.

a main body having a canister housing, a medicament canister, which is moveable relative to the canister housing and retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, and a dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister, wherein the canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall, and wherein the canister housing has a longitudinal axis X which passes through the center of the central outlet port, the inner wall canister support formation, the actuation member, and the central outlet port lying in a common plane coincident with the longitudinal axis X.

The only limitation in claim 1 that the parties dispute is whether Cipla's ANDA product contains an "inner wall canister support formation, the actuation member, and the central outlet port lying in a common plane coincident with the longitudinal axis X," which the parties refer to as the "Common Plane Limitation." There are several construed terms within the Common Plane Limitation. The parties agreed that "canister support formation" means "a formation arranged to reduce canister rocking." *See* ECF No. 102 at 4. The parties further agreed that the term "inner wall" should be construed to mean "an internal wall of the inhaler body, which includes a main surface of the inner wall and the inner wall through which a portion of the actuation member extends, but excludes the bottom surface, or floor, of the inhaler body." *Id.* at 5. The term "lying in a common plane coincident with the longitudinal axis X" was construed by the Court to mean "aligned in a single plane such that a straight line can be drawn through the center of the central outlet port, the canister support formation, and the actuation member." *See Markman* Order, ECF No. 218 at 2. The parties do not dispute that the front rib in Cipla's ANDA product is "aligned in a single plane such that a straight line can be drawn through the center of the central outlet port, the canister support formation, and the actuation member." Thus, the question of infringement of claim 1 turns on the question of whether Plaintiffs have proven, by a preponderance of the evidence, that the front rib in Cipla's ANDA product is "arranged to reduce canister rocking," as required by the Common Plane Limitation in claim 1.

11

Plaintiffs offered the testimony of Dr. David Andrew Lewis, who performed a series of experiments on Cipla's ANDA product and presented demonstratives to help explain his conclusions.  Dr. Lewis testified that the front rib in Cipla's ANDA product is arranged to reduce canister rocking.  Tr. 213:6-10.  When asked "[h]ow can you tell that the rib is a formation arranged to reduce cannister rocking," Dr. Lewis testified that "you can tell by simply looking.  When you hold the inhaler, you can just push it and you can see it touches before it touches the inner wall." *Id.* 213:11-16.  Dr. Lewis further testified that "[t]he front rib visibly extends inwardly into the inhaler body," and "by extending into the cavity of the inhaler body . . . [it] necessarily limits the canister's freedom of movement in the direction of the front of the device." *Id.* 206:20-207:4, 370:25-371:8.  Plaintiffs argue that "this proposition is confirmed easily by holding the inhaler by the mouthpiece, pushing the canister forward, and observing that the canister contacts the rib in question and thereby stops its motion[.]"  ECF No. 262 at 14.  In support of their argument, Plaintiffs cite the following excerpts from Dr. Lewis's testimony:

- "When you hold the inhaler, you can just push it [the canister] and you can see it touches [the rib] before it touches the inner wall." Tr. 213:12-16 (Lewis).

- "[H]old the mouthpiece so you are not interfering with the body. And then simply just push the canister, just tap it down. Then you can see it touches the middle [*i.e.*, disputed] rail and there is also gap. Meaning if you took that rail out, it would continue to move." *Id.* at 217:23-218:4, 218:14-219:5.

- "[A]s I touch it, [the canister] meets the rail. And I can also see there is a gap still there between the canister and the housing." Tr. 218:23-219:4.

- "I can see the rail supporting the canister." *Id.* at 221:25-222:8.

- "If you are holding the inhaler by the mouthpiece and then you push, it's going to hit the rib." Tr. 375:24-376:7.

- "I see the canister touching the front rib and I see a gap at the top, as well, of the inhaler body. So I see a touching of the canister to that rib." Tr. 400:11-22 (explaining "gap between canister and inhaler body . . . mean[s] that the canister is not touching the inhaler body.").

12

*See* ECF No. 262 at 14-15 (citing FOF 46-48, ECF No. 263).  According to Plaintiffs, this is sufficient to determine that the front rib in question is arranged to reduce cannister rocking.

Nevertheless, Dr. Lewis performed multiple experiments in support of his opinion that the front rib is "arranged to reduce canister rocking."  In one experiment, Dr. Lewis compared the amount of canister rocking that can occur in Cipla's ANDA product "as supplied"—*i.e.*, with all ribs and mounting tabs present—with a version of Cipla's ANDA product in which he removed all the ribs (but not the mounting tabs).  Tr. 223:12-224:1.  Dr. Lewis testified that "as supplied, there is less movement -- there is more movement once you remove the ribs."  *Id.* 224:4-5.  Dr. Lewis explained that removal of the ribs results in more than a millimeter of movement.  *Id.* 224:17-18.  Although Dr. Lewis removed both the front and back ribs in Cipla's ANDA product, Dr. Lewis testified that he only rocked the canister forward so the removal of the ribs in the back were irrelevant.  *Id.* 229:17-230:12.

In addition to measuring the rocking, Dr. Lewis also performed an experiment to determine whether, if you remove the front rib in Cipla's ANDA product, is it possible to rock Cipla's canister so far forward that it causes the dose counter to misfire.  *See* PTX-178; Tr. 229:4-13.  During the experiment, Dr. Lewis rocked the canister in the direction of the front rib (which was removed), Tr. 230:1-13, and depressed the canister, Tr. 248:11-2.  The canister then slid down the front wall of the inhaler in the location where the rib would have been located had it not been removed.  *See* Tr. 248:16-21; 249:25-250:2; 372:11-373:2; 385:20-386:8; 403:17-404:7; 404:19-21; PTX-178 (Video).  Plaintiffs contend that this experiment demonstrates that the front rib is arranged to reduce canister rocking, since in the rib's absence, the canister can contact the inhaler wall at the rib's former location.

Cipla argues that Dr. Lewis's experiments do not prove infringement of claim 1 on several grounds. First, Cipla contends that there is no evidence in the record that this "tiny" front rib can or does ever contact the canister in Cipla's ANDA product. ECF No. 265 at 18. To the contrary, Dr. Lewis testified that the front rib extends inwardly into the inhaler body and thereby restricts the freedom of movement of the canister, and the observation that the rib visibly contacts the canister when the canister is rocked forward. Tr. 226:13-25. Dr. Lewis demonstrated this in Court and testified that if you "hold the mouthpiece so you are not interfering with the body. And then simply just push the canister, just tap it down. Then you can see it touches the middle [*i.e.*, disputed] rail and there is also gap. Meaning if you took that rail out, it would continue to move." Tr. 217:23-218:4; 218:14-219:5. Thus, the record does not support Cipla's argument.

Second, Cipla contends that the structure of its ANDA product precludes the tiny front rib from contacting the cannister. Cipla explains that "[w]hen the ribs extend to the top of the inhaler body, the canister will contact the rib prior to the wall because the rib protrudes out from the wall at all vertical points." ECF No. 265 at 19. Cipla contends that the rib in its ANDA product does not extend to the top of the wall. *Id.* Cipla argues that because there is a gap between the top of the rib and the top of the inhaler body in Cipla's ANDA product, Teva cannot simply say the front rib "necessarily" reduces rocking. *Id.* While Cipla's argument may be true, it is not supported by any testimony provided during the trial. Moreover, Cipla did provide any experimental evidence to support its conclusions that the structure of its ANDA product precludes the front rib from contacting the cannister.

Next, Cipla argues that Dr. Lewis's "front-to-back" testing is irrelevant. ECF No. 265 at 21. Cipla takes issue with how Dr. Lewis conducted the experiment. Cipla complains that "Dr. Lewis's testing improperly changed multiple variables" and did not answer the "question of

14

whether the tiny rib at the front of Cipla's inhaler body 'reduces canister rocking.'" *Id.* As noted above, when conducting his experiments Dr. Lewis removed all the ribs in Cipla's ANDA product except for the mounting tabs. Because Dr. Lewis removed all the ribs, Cipla contends that "it is still impossible to determine whether the alleged measured increase in canister rocking was due to the removal of the front rib, the back ribs, or something else." *Id.* at 21-22.

It is true that Dr. Lewis never performed any tests where he only removed the front rib in Cipla's ANDA product. This was confirmed during trial when the Court asked Dr. Lewis "[w]as there ever a test done where the only thing removed from the canister was the front rib," and Dr. Lewis replied "no." Tr. 382:16-18. Had this test been performed, it may have eliminated some of the discussion about whether Cipla's ANDA product infringes the Common Plane Limitation in the '289 patent. Thus, the Court understands Cipla's frustration and acknowledges that Dr. Lewis's experiments may not be the perfect tests to prove an "airtight" infringement case. The evidentiary standard here, however, is neither clear and convincing nor beyond a reasonable doubt; rather, it is preponderance of the evidence. Although the Court believes that Dr. Lewis could have performed better experiments to support his conclusions, the Court is not persuaded that Dr. Lewis's experiments as conducted are irrelevant or valueless as evidence.

Cipla next contends that Dr. Lewis's testimony that he could see the front rib touching the canister is not credible and should be excluded. ECF No. 265 at 25-26. At trial, Dr. Lewis testified that he could tell that the front rib in Cipla's ANDA product is a formation arranged to reduce canister rocking by "simply looking." Tr. 213:14. Dr. Lewis explained that "[w]hen you hold the inhaler, you can just push it and you can see it touches before it touches the inner wall." *Id.* 213: 14-16. Cipla objected, contending that Dr. Lewis's testimony was outside the scope of his report because Dr. Lewis never noted that he could see the canister touching the front rib in his report.

15

*Id.* 213:18-23.   In response, Plaintiffs contend that Dr. Lewis explained in his report that he "disagree[d with Mr. Anderson] that any analysis would be necessary to establish that the rib closest to the mouthpiece of the ANDA product limits rocking—by extending into the cavity of the inhaler, it necessarily limits the canister's freedom of movement in the direction of the front of the ANDA product."   *See* ECF No. 262 at 29 (citing Ex. E (Reply Report) ¶ 61).   Plaintiffs further contend that "Dr. Lewis did no more than illustrate this very same, fully-disclosed opinion: He held up Cipla's product, moved the canister towards the front of the ANDA product, and demonstrated that the canister's freedom of movement was restricted by its contact with the rib." ECF No. 262 at 29.   Moreover, Plaintiffs contend that counsel for Cipla expressly and precisely elicited the testimony that Cipla seeks to preclude.   In support of their argument, Plaintiffs point to the following questions and responses during Dr. Lewis's cross examination:

> Q. Dr. Lewis, it's your opinion that by extending into the cavity of the inhaler body . . . the front rib necessarily limits the canister's freedom of movement in the direction of the front of the ANDA product. Right? A. Yes.
>
> Q. And you offered that opinion in your report. Right? A. Yes. Q. And that's only true if the front rib of the inhaler body can actually contact the canister when it rocks. Right? A. Yes.

ECF No. 262 at 30 (citing Tr. 370:25-371:12).   Plaintiffs contend that Cipla's own questioning (1) directly called for the testimony its counsel earlier moved to strike, and (2) established that such testimony was equivalent to the explicit statement in Dr. Lewis's report.   *Id.*   The Court agrees.

What is more important and provides grounds for the Court to include Dr. Lewis's testimony, is that Dr. Lewis testified at length about diagrams that the parties displayed and several experiments and demonstrations that were conducted.   Dr. Lewis explained his analysis and shared his observations on both direct and cross examination.   Taking into consideration Dr. Lewis's credentials, the testimony provided during trial, and the parties' post-trial submissions, the Court

finds that Dr. Lewis's testimony about what he observed during his experiments and in-court demonstrations were credible, well-supported, and elicited explicitly on cross examination. Thus, the Court will not exclude Dr. Lewis's testimony that he could see the front rib touch the canister in Cipla's ANDA product.

Finally, Cipla contends that its expert Mr. Gregory Anderson's testimony should be credited. ECF No. 265 at 30. More specifically, Cipla argues that the Court should credit Mr. Anderson's testimony that the rib does not prevent rocking. *Id.* Plaintiffs do not explicitly request that the Court give little or no weight to Mr. Anderson's testimony, but their argument strongly supports such a demand. In their post-trial brief, Plaintiffs contend that Mr. Anderson offered conclusory testimony using the wrong claim construction. ECF No. 262 at 21-23. At trial, Mr. Anderson testified that the parties' construction requires "***prevention***" of rocking. Tr: 406:16-25 (emphasis added). That is incorrect—the parties agreed that "canister support formation" means "a formation ***arranged to reduce*** canister rocking." *See* ECF No. 102 at 4 (emphasis added). Next, Plaintiffs argue that Mr. Anderson's testimony is conclusory. ECF No. 262 at 21-23. Plaintiffs note that Mr. Anderson did not offer his own opinion as to whether the front rib is arranged to prevent—let alone reduce—rocking. *Id.* at 22 (citing Tr. 479:14-21). Finally, Plaintiffs contend that Mr. Anderson contradicted his sworn testimony. ECF No. 262 at 23. Plaintiffs note that Mr. Anderson testified four separate times under oath that the front rib—located between the two mounting tabs—is an inner wall canister support formation. *Id.* In support of their argument, Plaintiffs cite the following excerpts from Mr. Anderson's testimony:

- Q. In between the two mounting tabs is a small inner wall canister support formation, right?" A. Yes.

- Q. Sorry, you agree that there are seven inner wall canister support formations in defendants' ANDA products that do not lie in a common plane with the center of the central outlet port and castellation [actuation member], right? A. Well wait a

17

minute. There is one that is in the common plane, yes, that has been marked with a yellow dot.

• Q. . . . There is one inner wall canister support formation, that is the one between the two mounting tabs, right? A. Yes.

• Q. So the inner wall canister support formation in between the two mounting tabs of defendants' ANDA product does lie in a common plane with a castellation [i.e., actuation member] and the center of the central outlet port as shown by the red line, right? A. Yes.

ECF No. 262 at 24 (citations omitted).

The Court finds that Mr. Anderson's testimony is conclusory and not supported by any testimony, experiments, or data. Mr. Anderson testified that Cipla's ANDA product does not have an inner wall canister support formation lying in the common plane, and therefore does not infringe. Tr. 479:22-480:18. Mr. Anderson, however, did not provide any explanation, experiments, or data to support his conclusion. Mr. Anderson could have conducted tests that demonstrate that the front rib in Cipla's ANDA product was not arranged to reduce canister rocking, but he did not do so. What is even more damaging to Cipla's request is that Mr. Anderson also used the wrong claim construction and provided inconsistent testimony during trial. Thus, the Court cannot give much weight to Mr. Anderson's testimony.

The Court finds that Plaintiffs' evidence of infringement deserves significant weight. Plaintiffs, through Dr. Lewis, presented evidence that the front rib in Cipla's ANDA product was arranged to reduce cannister rocking. Dr. Lewis testified that "[t]he front rib visibly extends inwardly into the inhaler body," and "by extending into the cavity of the inhaler body . . . [it] necessarily limits the canister's freedom of movement in the direction of the front of the ANDA product." Tr. 206:20-207:4, 370:25-371:8. Dr. Lewis further testified that there was more movement in Cipla's ANDA product when he removed the front and back ribs, then there was as supplied (with all the ribs). Tr. 223:12-224:1. This is compelling evidence because Dr. Lewis's

experiment demonstrates that, at the very least, when the front and back ribs are in Cipla's ANDA product they are arranged to reduce cannister rocking. More compelling is Dr. Lewis's testimony that he only rocked the canister forward so the removal of the ribs in the back was irrelevant. *Id.* 229:17-230:12. The only evidence to the contrary was Mr. Anderson's opinion, which the Court does not give much weight for the reasons stated above. The Court finds that Dr. Lewis isolated the front rib in his experiment, and that, in view of the applicable evidentiary standard, the experimental evidence and testimony by Dr. Lewis supports the inference that it is more likely than not that the front rib in Cipla's ANDA product is arranged to reduce canister rocking. Accordingly, the Court concludes that Plaintiffs have proven, by a preponderance of the evidence, that Cipla's ANDA product infringes claim 1 of the '289 Patent.[3]

### *b.  The '587 Patent*

The issue before the Court is whether Plaintiffs have proven, by a preponderance of the evidence, that it is more likely than not that Cipla's ANDA product infringes the '587 Patent. Plaintiffs argue that Cipla's ANDA product infringes independent claims 1 and 12, and dependent claims 2, 4, 6, and 7 of the '587 Patent ("the Asserted '587 Claims"). ECF No. 262 at 34.[4] The Court will address the claims at issue in turn.

Claims 1 and 12 of the '587 patent recite:

**Claim 1:**
An inhaler for metered dose inhalation, the inhaler comprising: a main body having a canister housing, a medicament canister, which is moveable relative to the canister housing and retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, and a dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister, wherein

---

[3] The Court adopts by reference Plaintiffs' proposed findings of facts related to claims 2, 4, 6, and 7 of the '289 patent. ECF No. 263 ¶¶ 90-105

[4] The dependent limitations of claims 2, 4, 6, and 7 of the '587 Patent mirror the dependent limitations of claims 2, 4, 5, and 7 of the '289 Patent. Because the Court finds that Cipla's ANDA product infringes the '289 Patent and Cipla did not contest that its products meet these additional limitations, the Court need not address these limitations.

the canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall, wherein the canister housing has a longitudinal axis X which passes through the center of the central outlet port, and wherein the first inner wall canister support formation, the actuation member, and the central outlet port lie in a common plane coincident with the longitudinal axis X such that the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler.

**Claim 12:**
An inhaler for metered dose inhalation, the inhaler comprising: a main body having a canister housing, a medicament canister, which is moveable relative to the canister housing and retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, and a dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister, wherein the canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall, wherein the canister housing has a longitudinal axis X which passes through the center of the central outlet port, and wherein the first inner wall canister support formation, the actuation member, and the central outlet port lie in a common plane coincident with the longitudinal axis X such that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member.

The independent claims 1 and 12 of the '587 Patent are nearly identical to claim 1 of the '289 Patent, except that the '587 Patent claims include an additional limitation relating to "unwanted actuation of the dose counter" or "dose count errors."  JTX-003; JTX-004; *see also* ECF No. 265 (noting that "[a]ll claims of the '587 Patent include the same Common Plane Limitation discussed above in connection with the '289 Patent.").  Cipla disputes that it infringes the additional limitations.  The Court will address these claims in turn.

**Infringement of Claim 1**

Claim 1 of the '587 Patent includes the limitation that "the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler."  The parties agreed that this limitation means "guards against unwanted actuation by reducing rocking of the medicament

canister relative to the main body of the inhaler that would otherwise be of a magnitude sufficient to move the dose counter's actuator enough to cause unwanted incrementing (or decrementing) of the dose counter." ECF No. 102 at 5.

At trial, Dr. Lewis testified that Cipla's ANDA product meets the limitation at issue, based on his experiment recorded in PTX-178. During the experiment, Dr. Lewis altered Cipla's ANDA product by removing all the ribs, but not the mounting tabs. Dr. Lewis slid the canister down the front wall of the inhaler (against the wall where the "front" rib in question would have been located, had it not been removed). PTX-178. Dr. Lewis explained that after he seated the canister in the stem block by twisting it, he rocked the canister towards the front of the inhaler, and observed multiple unwanted actuations of the dose counter (*i.e.*, "count not fires"), because "when the support formation is not there, it doesn't limit the movement and it causes the count and the rocking." Tr. 268:12-23. Dr. Lewis testified that the rail he removed, the rail that was in the common plane, guarded against unwanted actuation of the dose counter. *Id.* 269:16-22. Dr. Lewis further testified that you could see "unwanted actuations" and rocking the medicament canister relative to the main body of the inhaler" in his video (PTX-178). *Id.* 269:23-270:2. When Plaintiffs' counsel asked, "can we see that the kind of unwanted -- rocking that this rail was guarding against, is that sufficient to move the dose counter's actuator enough to cause unwanted incrementing or decrementing of the dose counter," Dr. Lewis answered in the affirmative. *Id.* 270:3-7. Based on this, Plaintiffs contend that Dr. Lewis experiment recorded at PTX-178 demonstrates that the front rib "guards against unwanted actuation of the dose counter . . . by reducing rocking of the medicament canister relative to the main body of the inhaler." ECF No. 262 (citing FOF 115-16).

Cipla contends that its ANDA product does not meet the limitation in claim 1. ECF No. 265 at 32. Cipla submits that Mr. Anderson performed calculations showing that it is not possible to rock the canister in Cipla's ANDA product in an amount sufficient to cause an unwanted actuation of the dose counter. *Id.* At trial, Mr. Anderson testified to the following:

> I did a bit of math modeling just to try and understand how much rocking was going to be needed to cause a count. And based on the information that I had, I did an analysis and the summary was that Cipla['s] ANDA product does not meet that common plane limitation or unwanted actuation of the dose counter by reducing rocking, which is, obviously, the limitation of the '587 patent, but, in summary, it is not possible to rock Cipla's canister enough to create a count. So it does not infringe Claim 1 of the unwanted actuation.

Tr. 489:12-20. This statement is the entirety of Mr. Anderson's testimony regarding whether Cipla's ANDA product meets the limitation in claim 1. Following Mr. Anderson's testimony there was a brief objection, before Cipla's counsel shifted Mr. Anderson's attention to claims 2, 4, 6, and 7 of the '587 Patent. *See* Tr. 489:22-490:17 (discussing Plaintiffs' objection); *Id.* 490:19 (questioning Mr. Anderson about claims 2, 4, 6, and 7). Mr. Anderson did not explain his analysis or discuss what calculations he used to reach his conclusion. In sum, Mr. Anderson did not show his work.

Cipla next argues that Plaintiffs rely on an incorrect interpretation of rocking. ECF No. 265 at 34. At the outset, Cipla contends that "the Asserted Patents conflate rocking and 'wobbling'" and that "titling" could be referred to as rocking. *Id.* at 34-35. Cipla, however, takes issue with Dr. Lewis's interpretation of rocking, which Cipla claims includes "rocking and pressing." *Id.* Cipla argues that "[a] canister 'wobbling' is not pressing down and rocking it like Lewis did." *Id.* at 34. Cipla further argues that the "agreed construction of the claim terms does not say anything about pressing down on the canister while rocking" and "there is no evidence that Lewis's **rock-and-press-until-his-fingers-are-strained** tests constituted normal conditions for use of the inhaler." *Id.* at 35 (emphasis in original). Cipla's argument is unpersuasive. There is

no evidence that "rocking" cannot be interpreted as the canister moving side to side (rocking) while being depressed.

Finally, Cipla argues that Dr. Lewis's tests do not demonstrate infringement. ECF No. 265 at 35. Cipla contends that Plaintiffs' infringement case relies solely on Dr. Lewis's experiment recorded at PTX-178 and the testimony thereto. *Id.* Cipla complains that Dr. Lewis only presented what happens when all the ribs were removed but failed to show what happens when no ribs or the rib in the common plane is removed. *Id.* Cipla notes that "[t]he claim requires specifically that 'the first **inner wall canister support formation protects against unwanted actuation** of the dose counter by reducing rocking of the medicament canister.'" *Id.* at 36 (emphasis in original). Cipla argues that for Plaintiffs to "[demonstrate] that limitation through experimental evidence requires a control test (*i.e.*, no ribs removed). It is the change in result that would be circumstantial evidence of the presence of this limitation. The existence of allegedly unwanted actuation alone is not enough." *Id.* Because Plaintiffs did not present evidence of a control test or test what happens when only the rib in the common plane is removed, Cipla contends that Plaintiffs cannot prove infringement of claim 1. *Id.*

The Court addressed this issue in the discussion related to the '289 Patent above. For the sake of clarity, the Court will reiterate that it is true that Dr. Lewis never performed any tests where he only removed the front rib in Cipla's ANDA product. Dr. Lewis testified that he did test Cipla's ANDA product "as supplied"—*i.e.*, with all ribs and mounting tabs present—with a version of Cipla's ANDA product in which he removed all the ribs (but not the mounting tabs). Tr. 223:12-224:1. He further testified that removal of the front rib is responsible for at least some of the increase in canister rocking possible when all ribs are removed. Tr. at 226:7-25. When the canister is rocked in the direction of the missing front rib, and is then depressed such that it slides down

the wall where the rib would have been, increased canister rocking can lead to a "fire-not-count" error whereby the dose counter increments even though medication is not dispensed. *See* Tr. 229:4-250:23. In Dr. Lewis's experiment recorded at PTX-178, when the canister is rocked forward, only the effect of the front rib is measured—the fact that other ribs in the back of the inhaler have also been removed is irrelevant. *See* Tr. 223:12-22; 224:2-226:6; 267:22-270:19. While a test demonstrating the results of what happens when only the front rib is removed from Cipla's ANDA product would be beneficial, it is not required to prove infringement. Thus, the Court finds Cipla's argument unpersuasive.

Having considered all Cipla's challenges to Plaintiffs' infringement case, the Court finds that Plaintiffs have proven, by a preponderance of the evidence, that Cipla's ANDA product infringes claim 1 of the '587 Patent. Dr. Lewis's experiment demonstrates that more likely than not that the front rib in Cipla's ANDA Product guards against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler. Thus, Cipla's ANDA product infringes claim 1 of the '587 Patent.

### **Infringement of Claim 12**

Claim 12 of the '587 Patent is nearly identical to claim 1 of the '587 Patent, except that its final limitation requires "that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member." JTX-004. Unlike '587 Patent claim 1's requirement to protect against only "unwanted actuation" (*i.e.*, "count-not fire errors"), claim 12's reference to "dose count errors" includes both "count-not-fire" and "fire-not-count" errors, and limits the direction of rocking to rocking "towards or away from the actuation member." JTX-004; Tr. 277:13-278:3.

At trial, Plaintiffs, again, rely on Dr. Lewis's experiment recorded at PTX-178 and the testimony thereto.  Plaintiffs also rely on Dr. Lewis's experiment recorded at PTX-179, in which he demonstrated that the absence of the front rib can also lead to "fire-not-count" errors.  PTX-179; Tr. 279:14-282:12.  Dr. Lewis removed all the support ribs from Cipla's product, but left the mounting tabs in place, then rocked the canister towards the front of the inhaler (in the direction of the removed, front rib) and observed that the inhaler could expel medication ("fire") without the dose counter recording a count.  *Id.*  During the trial, Dr. Lewis narrated his experiment as recorded in the PTX-179 video.  The following excerpt is from Dr. Lewis's testimony:

> Counsel: I'm going to simply suggest perhaps . . . that we watch the video first and then perhaps Dr. Lewis could narrate what happens. So we will put up PTX-179.
>
> Dr. Lewis: This is a 40 microgram product. We removed the ribs, but not the mounting tabs. Here we are on 103. Again, with pushing towards the common plane direction. And the mounting tab -- sorry. We are getting a fire. You can hear the fire. We are still on 103. Fire. Not count. And here we can see the dose counter here. Fire. So here we are -- that inner wall support formation, which is here, is not reducing the rocking. It's not protecting against a second type of dose counter error, which is you're firing, but you don't count.

Tr. 279:20-280:17.  In other words, without the front rib, rocking in the direction of the actuation member (*i.e.*, in the same direction as the missing rib) can cause "fire-not-count" errors in Cipla's ANDA product.  *Id.*  On this basis, Dr. Lewis concluded that the front rib protects against dose count errors in the manner that claim 12 requires.  *Id.* at 282:18-283:1.

Cipla asserts that Plaintiffs cannot prove infringement.  Cipla repeats many of the same arguments it raised in support of its argument for non-infringement of claim 1 of the '587 Patent.  Specifically, Cipla contends that Dr. Lewis did not perform any control test.  ECF No. 265 at 37.  Cipla further argues that Dr. Lewis misused Cipla's ANDA product during his experiment.  *Id.* at 38.  In support of this argument, Cipla points to Mr. Anderson's testimony.  During trial, Mr. Anderson testified that Dr. Lewis did not prime the ANDA product.  Tr. 495:18-19.  Mr. Anderson

further testified that "it says in all the instructions . . . when you take the can out, you have to put the can back in, seat it, test fire, and recommendations certainly on this leaflet are two primes." *Id.* at 495:20-23. Mr. Anderson concludes that "if it was primed, it would have . . . worked I think perfectly." *Id.* at 495:19-21.

Cipla has, at best, persuaded the Court that Dr. Lewis's experiments are not the perfect tests to prove an "airtight" infringement case. Dr. Lewis should have primed Cipla's ANDA product. The fact that he did not prime Cipla's ANDA product before conducting his experiment does not make his tests irrelevant or valueless as evidence. As Plaintiffs noted in their post-trial submission, "Dr. Lewis's video showed three consecutive instances in which Cipla's inhaler fired but did not count. Even were one to consider those first two fires of the canister 'priming' doses, the video still reflects a third dose counter error caused by rocking." ECF No. 262 at 38-39 (citing PTX-179; Tr. 405:9-13). Although Dr. Lewis's tests are not flawless, they are enough to demonstrate more likely than not that Cipla's ANDA product infringes claim 12 of the '587 Patent. Accordingly, the Court finds that Plaintiffs have proven, by a preponderance of the evidence, that Cipla's ANDA product infringes the asserted claims of the '587 Patent.

### c. The '808 Patent

The issue before the Court is whether Plaintiffs have proven, by a preponderance of the evidence, that it is more likely than not that Cipla's ANDA product infringes the '808 Patent. Plaintiffs argue that Cipla's ANDA product infringes claim 28 of the '808 Patent. Claim 28 depends from claim 27, which in turn depends from claim 1. Claims 1, 27, and 28 of the '808 Patent recite:

**Claim 1:**
A dose counter for an inhaler, the dose counter having a counter display arranged to indicate dosage information, a drive system arranged to move the counter display incrementally in a first direction from a first station to a second station in response

26

to actuation input, wherein a regulator is provided which is arranged to act upon the counter display at the first station to regulate motion of the counter display at the first station to incremental movements.

**Claim 27:**
The dose counter as claimed in claim 1 in which the regulator provides a resistance force of greater than 0.1 N against movement of the counter display.

**Claim 28:**
The dose counter as claimed in claim 27 in which the resistance force is greater than 0.3 N.

To infringe claim 28, a dose counter must satisfy claim 1 and further comprise a "regulator" that "provides a resistance force" of "greater than 0.3 N" "against movement of the counter display." ECF No. 262 at 40; PDX-2-087. Cipla argues that its product does not include: "regulator," "regulate motion of the counter display at the first station to incremental movements," and "provides a resistance force of greater than 0.3 N against movement of the counter display." ECF No. 265 at 39. The parties agreed that a "regulator" was "a structure of the dose counter that modulates motion of the counter display." ECF No. 102 at 4. The parties also agreed that "regulate motion of the counter display" means "modulate motion of the counter display." *Id.* Because the parties do not dispute every limitation in the claim, the Court will only focus on the contested issues.

### Whether Cipla's ANDA Product Comprises a Regulator that Regulates Motion of the Counter Display to Incremental Movements

At trial, Dr. Lewis testified that the leaf spring in Cipla's ANDA product modulates motion of the counter display. Tr. 291:5-10. Dr. Lewis further testified that the leaf spring acts upon the counter display. *Id.* 291:18-21. Dr. Lewis explained that "[t]he leaf spring is pushing up on the unit's teeth ring, which is the drive surface and, of course, if it's pushing up, by the laws of Newton, third law equal -- and every action has an equal and opposite reaction, then it must be pushing down also and modulating that unit's display ring." *Id.* 291:23-292:2. To summarize Dr. Lewis's

testimony, when Cipla's ANDA Product is assembled, the canister sits on top of the indexer, which sits on top of the leaf spring, which "sits in the units display ring." Thus, when a patient pushes down on the canister, the canister pushes down on the indexer, which pushes down on the leaf spring, which pushes down on the units display ring. *See* Tr. 291:5-293:11; PTX-411 (Cipla ANDA Product Sample); PTX-372 (Cipla Design Drawing); PTX-181 (Video). If a patient pushes down on the canister with too little force, the leaf spring ensures that the units display ring does not move so as to record a count. 294:1-295:2 (Lewis); PTX-411 (Cipla ANDA Product Sample); PTX-372 (Cipla Design Drawing); PTX-181 (Video). If the patient pushes down with enough force, the leaf spring ensures that the units display ring does not "allow the dose counter to hover between two doses," but instead ensures that the units display ring increments completely such that it displays the next digit. Tr. 295:3-12 (Lewis); PTX-411 (Cipla ANDA Product Sample); PTX-372 (Cipla Design Drawing); PTX-181 (Video).

In their post-trial submission, Plaintiffs take issue with Mr. Anderson's testimony at trial. First, Plaintiffs argue that "Mr. Anderson's argument that Cipla has no 'regulator' because 'it's not a tape-based ANDA product' reflects a legally improper infringement inquiry." ECF No. 262 at 44. Plaintiffs point to the plain language of claim 28 and note that the claim does not require that the dose counter be "taped based." Second, Plaintiffs argue that Mr. Anderson is wrong in his assertion that Cipla's leaf spring only provides an "upwards" force against the indexer and does not exert any downwards force against the unit's teeth ring. ECF No. 262 at 44. Plaintiffs point to Dr. Lewis's testimony wherein he explained that the fundamental principles of physics—the "laws of Newton"—dictate that if the leaf spring pushes upwards, it must also push downwards against the leaf spring with an "equal and opposite force." *Id.* (citing FOF 174; Tr. 291:18-293:11, 294:19-295:22; PTX-411 (Cipla ANDA Product Sample); PTX-181 (Video)).

28

In response, Cipla contends that "the leaf spring is not a regulator nor does it modulate motion of the alleged counter display." ECF No. 265 at 39. Cipla points to the testimony of Mr. Anderson who testified that the "[leaf spring] just sits there. It's not attached to a frame or anything . . .. It is free to move. It is not constrained. And you wouldn't want it to be." Tr. 463:18-464:8. Cipla makes several other arguments, none of which point to any evidence or testimony that refutes Dr. Lewis's conclusions.   Accordingly, the Court finds that Cipla's ANDA Product comprises a "regulator" "arranged to act upon the counter display at the first station to regulate motion of the counter display to incremental movements.

### Whether Cipla's ANDA Product Comprises a Regulator that Provides a Resistance Force of Greater than 0.3 N Against the Movement of the Counter Display

At trial, Dr. Lewis concluded that the leaf spring exerts a downwards force of greater than 0.3 N. Dr. Lewis conducted an experiment in which he measured the upwards resistance force that the leaf spring exerts against the canister. Dr. Lewis explained that as a matter of physics, measuring the upwards resistance "directly" measures the downward resistance force that the leaf spring exerts against the counter display. Tr. 410:13-22. Applying this principle, Dr. Lewis measured the upward force and concluded that the leaf spring exerts an upwards and downwards force of greater than 0.3 N, which establishes infringement.

In response, Cipla argues that Dr. Lewis only calculated the "vertical" force and did not provide and testimony or calculations of force in any other direction. ECF No. 265 at 45. While this may be true, Dr. Lewis did explain that as a matter of physics, measuring upwards resistance directly measures downward resistance because the forces that the leaf spring exerts are the same. Cipla also takes issue with the "force" Dr. Lewis measured. ECF No. 265 at 45-46. As best the Court can construe, Cipla appears to argue that Dr. Lewis's testing was erroneous because he did

not measure whether Cipla's leaf spring exerts a "counterclockwise" force in the "opposite" direction of the clockwise-moving counter display. Despite Cipla's argument, claim 28 does not require the regulator to provide a resistance force in the "opposite direction" of the counter display; rather, it requires that the "regulator" provide a "resistance force" "against movement of the counter display." Tr. 408:19-410:7. Dr. Lewis opined that Cipla's leaf spring "provides a resistance force opposite to the direction of the movement of the counter display"—in other words, the leaf spring provides a resistance that opposes the movement of the counter display. Tr. 313:10-17. Consistent with that opinion, Dr. Lewis testified that the regulator provides a resistance force "against movement of the counter display." That is all the claim language requires to establish infringement.

Having considered all Cipla's challenges to Plaintiffs' infringement case, the Court finds that Plaintiffs have proven, by a preponderance of the evidence, that Cipla's ANDA product infringes claim 28 of the '808 Patent. Dr. Lewis's testimony demonstrates that more likely than not that Cipla's ANDA Product comprises a regulator that regulates motion of the counter display to incremental movements and provides a resistance force of greater than 0.3 N against movement of the counter display. Thus, Cipla's ANDA product infringes the '808 Patent.[5]

## B. **Obviousness**

### 1. **Legal Standard**

The presumption that all patents are valid is the starting point for any obviousness determination. 35 U.S.C. § 282. A patent claim is invalid as obvious under 35 U.S.C. § 103 "if the differences between the claimed invention and the prior art are such that the claimed invention

---

[5] The Court notes that there are several undisputed limitations that Cipla and its expert did not dispute. For sake of clarity, the Court adopts Plaintiffs' findings of fact related to those undisputed limitations. Accordingly, the Court adopts by reference ¶¶ 157-165 at ECF No. 263.

as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." *Id.* § 103(a); *see also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406–07 (2007). Obviousness is a question of law that depends on the following factual inquiries: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the relevant art; and (4) any objective indicia of nonobviousness. *See KSR*, 550 U.S. at 406, 127; *see also Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1347 (Fed. Cir. 2012). As noted above, a court is required to consider secondary considerations, or objective indicia of nonobviousness, before reaching an obviousness determination, as a "check against hindsight bias." *See In re Cyclobenzaprine Hydrochloride Extended–Release Capsule Patent Litig.*, 676 F.3d at 1078–79. Relevant secondary considerations include commercial success, long felt but unsolved needs, failure of others, praise, unexpected results, and copying, among others. *Graham v. John Deere Co. of Kansas City*, 383 U.S. 17–18 (1966).

"Generally, a party seeking to invalidate a patent as obvious must demonstrate . . . that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so." *In re Cyclobenzaprine Hydrochloride*, 676 F.3d at 1068–69. "The Supreme Court has warned, however, that, while an analysis of any teaching, suggestion, or motivation to combine known elements is useful to an obviousness analysis, the overall obviousness inquiry must be expansive and flexible." *Id.* at 1069. The improvement over prior art must be "more than the predictable use of prior art elements according to their established functions." *KSR*, 550 U.S. at 417. Evidence of obviousness, however, especially when that evidence is proffered in support of an "obvious-to-try" theory, is insufficient unless it indicates

31

that the possible options skilled artisans would have encountered were "finite," "small," or "easily traversed," and "that skilled artisans would have had a reason to select the route that produced the claimed invention." *In re Cyclobenzaprine Hydrochloride*, 676 F.3d at 1072. Obviousness must be proven by clear and convincing evidence. *Id.* at 1078.

### 2. Findings of Fact and Conclusions of Law

#### a. *Objective Considerations of Nonobviousness*

Before the Court turns to Cipla's obviousness defense, the Court must first consider secondary considerations or objective indicia of nonobviousness. *See Sanofi v. Lupin Atl. Holdings S.A.*, 282 F. Supp. 3d 818, 824 (D. Del. 2017) (citing *In re Cyclobenzaprine Hydrochloride Extended–Release Capsule Patent Litig.*, 676 F.3d 1063, 1078–79 (Fed. Cir. 2012)). Relevant secondary considerations include commercial success, long felt but unsolved needs, failure of others, praise, unexpected results, and copying, among others. *Graham*, 383 U.S. at 1, 17–18; *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662–63 (Fed. Cir. 2000); *Tex. Instruments, Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1178 (Fed. Cir. 1993). Here, Plaintiffs offer evidence and testimony of industry praise.

Plaintiffs contend that the praise from healthcare providers and patients compels a conclusion of nonobviousness. ECF No. 262 at 50. At trial, Plaintiffs offered the testimony of Dr. Reynold Panettieri who was qualified as an expert in the medical use of inhaler devices. Tr. 801:4-804:4[6] Dr. Panettieri has over thirty years of experience treating pulmonary disorders and has prescribed inhalers to thousands of patients. *Id.* Dr. Panettieri testified that "based . . . on my 30-plus years of experience taking care of patients, and talking to my colleagues who are providers and physicians . . . [m]y opinion is that ProAir® and Qvar® are really best in class inhalers that

---

[6] The Court notes that Dr. Panettieri was submitted as an expert in the medical use of inhaler devices without objection. *See* Tr. 804:1-4.

have dose counters."  Tr. 805:3-14.  Dr. Panettieri further testified that he has "never had a complaint about ProAir® or Qvar®" and that his "colleagues also pretty uniformly would describe ProAir®, Qvar® dose counter and the inhalers as really state of the art, best in class." *Id.* 807:4-17.  At trial, Dr. Panettieri reviewed a study authored by Brad Chipp.  Tr. 807:18-808:8; PTX-120. Dr. Panettieri explained that the study compared "ProAir® HFA with dose counter versus the exact same device without a dose counter." *Id.* 808:2-4.  Dr. Panettieri noted that the author of the study identified "that the dose counter . . . greatly enhanced the clinical outcomes for the patient, decreased hospitalizations, decreased exacerbations" and that the dose counter "was really quite a profound piece of work." *Id.* 808:5-8.  Finally, Dr. Panettieri testified that the conclusion in the study was consistent with his observations in his clinical practice. *Id.* 808:9-11.

In response, Cipla argues that Plaintiffs' secondary considerations should not be given any weight. ECF No. 265 at 52.  In support of its argument, Cipla contends that the two products that Plaintiffs rely on for secondary consideration were discontinued. *Id.* at 49; Tr. 812:9-19.  Cipla notes that Plaintiffs did not explain why they were discontinued, which calls into question the praise that these products received.  Cipla further argues that the two studies Plaintiffs relied on for industry praise are irrelevant because they compare ProAir® HFA with a dose counter and one without the dose counter.  ECF No. 265 at 50.  Cipla contends that these studies do not provide any insight on why Plaintiffs' devices were praiseworthy over those existing devices that also include dose counters. *Id.*  Next, Cipla argues that Dr. Panettieri's testimony about Plaintiffs' devices being "best in class" and "state of the art" are not the type of industry praise required. Finally, Cipla contends that Plaintiffs failed to establish a nexus between the claim inventions and the alleged praise.  ECF No. 265 at 51.

Having considered the evidence and testimony presented at trial and the parties' post-trial submissions, Plaintiffs' secondary considerations of nonobviousness will not be given substantial weight. The Court finds Dr. Panettieri to be an impressive, highly credible expert witness who, based on his thirty years of experience treating patients and prescribing inhalers, is uniquely qualified to opine on the quality of Plaintiffs' devices. The Court finds Dr. Panettieri's testimony about Plaintiffs' devices to be persuasive. Nevertheless, the Court finds it slightly problematic that some of the documents Dr. Panettieri relied on to form his opinion only compared Plaintiffs' devices with and without the dose counter. Given the fact that dose counters existed before Plaintiffs' patent claims, it would have been more compelling had Plaintiffs presented evidence that their devices received industry praise over those preexisting devices with dose counters. Thus, the Court cannot give Plaintiffs' secondary considerations of nonobviousness substantial weight.

a. *__The '808 Patent__*[7]

Cipla contends that claim 28 of the '808 Patent would have been obvious over the '406 Publication or '552 Publication. ECF No. 256 at 17.

### i. Scope and Content of the Prior Art

The '808 Patent purports to claim the benefit of priority to each of U.S. Provisional Patent Application Serial No. 61/417,659, which was filed on November 29, 2010, and U.S. Provisional Patent Application No. 61/345,763, which was filed on May 18, 2010.[8]

---

[7] The parties raised no material disputes about the characteristics of the person of ordinary skill in the art ("POSA"); both parties contend that the opinions of their expert witnesses would not change if the definition of the POSA was the definition offered by the other side. Tr. 548:21-549:1; 674:14-20.

[8] Although there is some dispute over the priority date, Plaintiffs represent that that the difference in the priority date does not matter for the asserted references. ECF No. 271 at 5 ¶ 6. Thus, the Court will use May 18, 2010, as the priority date.

1) The '406 Publication (DTX-161)

International Patent Publication No. WO 2007/124406 ("the '406 Publication") published on November 1, 2007. The '406 Publication was therefore available more than a year before the earliest priority date of the Asserted Patents under pre-AIA 35 U.S.C. § 102(b). It is undisputed the '406 Publication is prior art to the Asserted Claims. ECF No. 210 at Undisputed Fact 16(h).

2) The '552 Publication (DTX-162)

International Patent Publication No. WO 2008/119552 ("the '552 Publication") published on October 9, 2008. The '552 Publication was therefore available more than a year before the earliest priority date of the Asserted Patents under pre-AIA 35 U.S.C. § 102(b). It is undisputed the '552 Publication is prior art to the Asserted Claims. ECF No. 210 at Undisputed Fact 16(i).

### ii.  **The Differences Between the Claims and the Prior Art**

At issue here is claim 28, which depends from claims 1 and 27. The Asserted Claims read as follows:

> **Claim 1:**
> A dose counter for an inhaler, the dose counter having a counter display arranged to indicate dosage information, a drive system arranged to move the counter display incrementally in a first direction from a first station to a second station in response to actuation input, wherein a regulator is provided which is arranged to act upon the counter display at the first station to regulate motion of the counter display at the first station to incremental movements.
>
> **Claim 27:**
> The dose counter as claimed in claim 1 in which the regulator provides a resistance force of greater than 0.1 N against movement of the counter display.
>
> **Claim 28:**
> The dose counter as claimed in claim 27 in which the resistance force is greater than 0.3 N.

Cipla contends that claim 28 of the '808 Patent would have been obvious over the '406 Publication or the '552 Publication. ECF No. 256 at 17. The Court will address each of Cipla's arguments in turn.

35

At trial, Mr. Anderson testified that Cipla's ANDA Product has "every single component that we discussed today, [in] the '406 [Publication]." Tr. 560:1-2. In support of his conclusion, Mr. Anderson points to the schematic drawings of the dose-counter in Cipla's ANDA Product and the dose-counter disclosed in Fig. 26 of the '406 Publication. *See* ECF No. 256 at 17 (citing PTX-372 (colored); DTX-161, Fig. 26 (colored)). After reviewing the above comparison between the dose-counter of Cipla's ANDA Product and the dose-counter disclosed in the '406 Publication, Mr. Anderson concluded that "when you have a look at the number [of components] and the way they are laid out, they are the same." Tr. 563:12-15.

In its post-trial submission, Cipla argues that if the leaf spring in its product is a "regulator," then so is the leaf spring in the '406 Publication. ECF No. 256 at 19. In support of this argument, Cipla contends that "Dr. Lewis ignores that the dose counter disclosed in the '406 Publication has the same leaf spring found in Cipla's Product," even though he conceded "that 'there are similarities' between the dose-counter disclosed in the '406 Publication and Cipla's Product, and that the dose-counter in the '406 Publication 'looks the same' as the dose-counter used in Cipla's Product." *Id.* With respect to this argument, Cipla did not point to any testimony provided by its expert witness.

Cipla next argues that the force limitation of claim 28 does not render the claim non-obvious. ECF No. 265 at 19. Cipla notes that Mr. Anderson explained that the claimed force values "are experimental" and based on routine testing. *Id.* (citing Tr. 557:12-22 (discussing this same claimed force limitation in the context of the '552 Publication prior art analysis)). Mr. Anderson further testified "as a matter of routine optimization for any POSA, they would find the appropriate force against movement of the counter display . . .." *Id.*

In addition to arguing that claim 28 of the '808 Patent would have been obvious over the '406 Publication, Cipla contends that claim 28 of the '808 Patent would have been obvious over the '552 Publication.  In support of its argument, Cipla asserts that the limitations recited in claim 1 of the '808 Patent are met by the '552 Publication.  ECF No. 256 at 23.  Cipla notes that the '552 Publication discloses the following: "a dose counter for an inhaler," "dose counter having a counter display arranged to indicate dosage information," and "a drive system arranged to move the counter display incrementally in a first direction from a first station to a second station in response to actuation input."  *Id.* at 23-25.  Cipla contends that it is undisputed that the '552 Publication discloses the above limitations.  *Id.*

In response, Plaintiffs argue that both of Cipla's obviousness theories on claim 28 of the '808 Patent fail for several reasons.  First, Plaintiffs contend that Cipla's theory based on the '552 Publication has already been rejected by a scientifically trained, three-judge panel of the Patent Trial and Appeal Board ("PTAB").  ECF No. 270 at 44.  Plaintiffs note that during prosecution of the '808 Patent, the examiner considered whether claim 28 would have been obvious based on the '950 Publication—a reference indistinguishable from the '552 Publication that Cipla relies on.  *Id.* The PTAB, considering the issue on appeal from the examiner, held that just because the '950 Publication's figures resembled those of the '808 Patent, the '950 Publication did not render the '808 Patent obvious.  Although Cipla has not advanced an obviousness theory on claim 28 of '808 Patent based on the '950 Publication, the PTAB decision is important because Mr. Anderson advanced obviousness theories in his reports based on both the '950 and '552 Publications, where he admitted that both references "disclose the same configuration."  Plaintiffs' FOF 188.  Mr. Anderson also acknowledged this at trial.  Tr. 587:16-25.

Plaintiffs next contend that Cipla failed to prove that the POSA would have selected the '406 and '552 Publications.  ECF No. 270 at 46.  The Court agrees.  As the Federal Circuit noted, "[t]oo often the obviousness analysis is framed as an inquiry into whether a person of skill, with two (and only two) references sitting on the table in front of him, would have been motivated to combine . . . the references in a way that renders the claimed invention obvious.  The real question is whether that skilled artisan would have plucked one reference out of the sea of prior art . . .." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1337 (Fed. Cir. 2016).   To demonstrate that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, Cipla, at the least, must explain why the POSA would have selected the '406 and '552 Publications.

As a final note, with respect to this obviousness theory, Cipla focuses too much attention comparing schematic drawings of the dose-counters and discussing Dr. Lewis's credibility.  In so doing, Cipla failed to prove that claim 28 would have been obvious over either the '406 Publication or '552 Publication.  Accordingly, the Court finds that Cipla has failed to prove that claim 28 of the '808 Patent would have been obvious by clear and convincing evidence.

### b.  *The '289 and '587 Patents*

Cipla contends that independent claim 1 and dependent claims 2, 4, 6, and 7 of the '289 Patent and independent claims 1 and 12 and dependent claims 2, 4, 6, and 7 of the '587 Patent would have been obvious over the '406 Publication in combination with the '514 Publication. ECF No. 256 at 36, 46.

### i.  Scope and Content of the Prior Art

The '289 Patent purports to claim the benefit of priority to each of U.S. Provisional Patent Application Serial No. 61/345,763, which was filed on May 18, 2010, and U.S. Provisional Patent

Application No. 61/417,659, which was filed on November 29, 2010. DFOF ¶ 10. The '587 Patent purports to claim the benefit of priority to each of U.S. Provisional Patent Application Serial No. 61/345,763, which was filed on May 18, 2010, and U.S. Provisional Patent Application No. 61/417,659, which was filed on November 29, 2010. *Id.* ¶ 14. [9]

### 1) The '406 Publication (DTX-161)

International Patent Publication No. WO 2007/124406 ("the '406 Publication") published on November 1, 2007. The '406 Publication was therefore available more than a year before the earliest priority date of the Asserted Patents under pre-AIA 35 U.S.C. § 102(b). It is undisputed the '406 Publication is prior art to the Asserted Claims. ECF No. 210 at Undisputed Fact 16(h).

### 2) The '514 Publication (DTX-165)

International Patent Publication No. WO 2003/101514 ("the '514 Publication") published on December 11, 2003. The '514 Publication was therefore available more than a year before the earliest priority date of the Asserted Patents under pre-AIA 35 U.S.C. § 102(b). It is undisputed the '514 Publication is prior art to the Asserted Claims. ECF No. 210 at Undisputed Fact 16(j).

### ii. **Differences Between the Claims and the Prior Art**

At issue here is independent claim 1 and dependent claims 2, 4, 6, and 7 of the '289 Patent and independent claims 1 and 12 and dependent claims 2, 4, 6, and 7 of the '587 Patent would have been obvious over the '406 Publication in combination with the '514 Publication. ECF No. 256 at 36, 46. The Asserted Claims in the '289 Patent read as follows:

**Claim 1**:
An inhaler for metered dose inhalation, the inhaler comprising: a main body having a canister housing, a medicament canister, which is moveable relative to the canister housing and retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, and a dose

---

[9] Although there is some dispute over the priority date, Plaintiffs represent that that the difference in the priority date does not matter for the asserted references. ECF No. 271 at 5 ¶ 6. Thus, the Court will use May 18, 2010, as the priority date.

counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister, wherein the canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall, and wherein the canister housing has a longitudinal axis X which passes through the center of the central outlet port, the inner wall canister support formation, the actuation member, and the central outlet port lying in a common plane coincident with the longitudinal axis X.

**Claim 2**:
The inhaler as claimed in claim 1 wherein the medicament canister is movable relative to the dose counter.

**Claim 4**:
The inhaler as claimed in claim 1, wherein the first inner wall canister support formation comprises a support rail which extends longitudinally along an inside surface of the main body.

**Claim 6**:
The inhaler as claimed in claim 4 further comprising a plurality of support rails each of which extends longitudinally along an inside surface of the main body.

**Claim 7**:
The inhaler as claimed in claim 6, wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

The Asserted Claims in the '587 Patent read as follows:

**Claim 1**:
An inhaler for metered dose inhalation, the inhaler comprising: a main body having a canister housing, a medicament canister, which is moveable relative to the canister housing and retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, and a dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister, wherein the canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall, wherein the canister housing has a longitudinal axis X which passes through the center of the central outlet port, and wherein the first inner wall canister support formation, the actuation member, and the central outlet port lie in a common plane coincident with the longitudinal axis X such that the first inner wall canister support formation protects against unwanted actuation of the dose counter by reducing rocking of the medicament canister relative to the main body of the inhaler.

**Claim 2**:
The inhaler as claimed in claim 1 wherein the medicament canister is movable relative to the dose counter.

**Claim 4:**
The inhaler as claimed in claim 1, wherein the first inner wall canister support formation comprises a support rail which extends longitudinally along an inside surface of the main body.

**Claim 6:**
The inhaler as claimed in claim 4 further comprising a plurality of support rails each of which extends longitudinally along the inside surface of the main body.

**Claim 7:**
The inhaler as claimed in claim 6, wherein two of the plurality of support rails are positioned at opposite ends of the inside surface of the main body to face each other.

**Claim 12:**
An inhaler for metered dose inhalation, the inhaler comprising: a main body having a canister housing, a medicament canister, which is moveable relative to the canister housing and retained in a central outlet port of the canister housing arranged to mate with a canister fire stem of the medicament canister, and a dose counter having an actuation member having at least a portion thereof located in the canister housing for operation by movement of the medicament canister, wherein the canister housing has an inner wall, and a first inner wall canister support formation extending inwardly from a main surface of the inner wall, wherein the canister housing has a longitudinal axis X which passes through the center of the central outlet port, and wherein the first inner wall canister support formation, the actuation member, and the central outlet port lie in a common plane coincident with the longitudinal axis X such that the first inner wall canister support formation protects against dose count errors by reducing rocking of the medicament canister towards or away from the actuation member.

Cipla contends that independent claim 1 and dependent claims 2, 4, 6, and 7 of the '289 Patent would have been obvious over the '406 Publication in combination with the '514 Publication.  ECF No. 256 at 36.  Cipla further contends that claims 1, 2, 4, 6, 7, and 12 of the '587 Patent would have been obvious over the '406 and '514 Publications.  The Court will discuss Cipla's obvious arguments related to these patents together.

Mr. Anderson, Cipla's expert, opined that a POSA would have been motivated to combine the '406 Publication with a '514 Publication.  Tr. 576:7-12.  Consistent with this opinion, Cipla contends that the '406 Publication disclosed every limitation in claim 1 of the '289 Patent except for the Common Plane Limitation.  ECF No. 256 at 37.  In its post-trial brief, Cipla notes that the

"'406 Publication does not expressly disclose an 'inner wall canister support formation' in a 'common plane,' which requires 'the inner wall canister support formation, the actuation member, and the central outport' to lie in a common plane coincident with the longitudinal axis X." *Id.* Cipla also notes that the "'514 Publication discloses four inner wall canister formations equally spaced on the front, back, and sides of an inhaler body." *Id.* Cipla contends that if the formations in the '514 Publication were added to the '406 Publication, then the common plane limitation would have been met.

At trial, Mr. Anderson explained how "ribs have been used . . . in the main body for many, many years. . .. And I believe 1965 was the first year that they were actually mentioned, you know, in publications, in papers. So these ribs are not new. They have been around almost as long as the MDIs themselves." Tr. 570:6-14. Mr. Anderson pointed to several examples of ribs in prior art inhalers. *See* ECF No. 256 (citing Tr. 570:15-571:17; 571:20-572:19; DTX-137 at 5:37-40; DTX-174 at Fig. 6; DTX-165 at Fig 8a; DTX-172 at Fig. 1C; DTX-153 at Fig. 7). Based on this evidence, Mr. Anderson opined that "ribs were ubiquitous prior art" and by "2010 the use of ribs were ubiquitous and all over the industry. They were known. It doesn't cost you anything to add a rib, so why wouldn't you put it in to enhance the product." Tr. 571:16-17; *Id.* at 575:1-4.

Plaintiffs, however, contend that Mr. Anderson's opinion that a POSA would have selected the '406 and '514 Publications—and no others—and combined them in ways that just so happen to produce an inhaler that meets the Common Plan Limitation is based on hindsight, and must be rejected. The Court agrees.

Even accepting Cipla's arguments that the '406 and '514 Publications combined meet every limitation in claim 1 of the '289 Patent, Cipla has not shown, by clear and convincing evidence, that the POSA would have been motivated to add the specific support rails disclosed in

the '514 Publication to the specific inhaler body and dose counter of the '406 Publication, and would have been motivated to align at least one such rail according to the Common Plane Limitation. Cipla and its expert never addressed why a POSA would have selected the '406 and '514 Publications for combination. "[W]hether a [POSA] would be motivated to make a combination includes whether he would select particular references in order to combine their elements." *WBIP*, 829 F.3d at 1337 (emphasis added). "Too often the obviousness analysis is framed as an inquiry into whether a [POSA], with two (and only two) references sitting on the table in front of him, would have been motivated to combine . . . the references in a way that renders the claimed invention obvious." *Id.* "The real question is whether that [POSA] would have plucked one reference out of the sea of prior art . . . and combined it with [elements of a second reference] to address some need present in the field." *Id.* Because Mr. Anderson did not address why a POSA would have selected the '406 and '514 Publications combination, the Court infers that Cipla selected these references with the assistance of hindsight, which is expressly forbidden. *See In re Rouffet*, 149 F.3d 1350, 1358 (Fed. Cir. 1998) ("This court forbids the use of hindsight in the selection of references that comprise the case of obviousness."). Accordingly, the Court finds that Cipla has failed to prove that the Asserted Claims of the '289 Patent would have been obvious by clear and convincing evidence.[10]

C. **Admissibility of Aurobindo Evidence**

Plaintiffs request that the Court admit their proffer of Aurobindo deposition testimony and documents. ECF No. 262 at 53. Cipla opposes Plaintiffs' request. ECF No. 265 at 52. Based on the evidence already admitted in the record, the Court finds that Cipla's ANDA Products infringe each Asserted Claim of the '289, '587, and '808 Patents. Thus, the Court need not consider

---

[10] Because claims 2, 4, 6, and 7 of the '289 Patent depend from claim 1, the Court need not address those claims specifically. Moreover, Cipla's obvious arguments related to the '587 Patent fail for the same reasons.

Plaintiffs' request to have the Court consider additional evidence. Accordingly, Plaintiffs' request is denied as moot.

## IV.    CONCLUSION

For the reasons set forth above, the Court finds that Plaintiffs have demonstrated by a preponderance of the evidence that Cipla's ANDA product infringes each Asserted Claim of the '289, '587, and '808 Patents. The Court also finds that Cipla has failed to demonstrate by clear and convincing evidence that the Asserted Patents are invalid as obvious. Accordingly, the Court will enter judgment in favor of Plaintiffs and against Cipla as to the '289, '587, and '808 Patents. The parties shall submit a joint proposed judgment.

DATED: June 21, 2023

s/ Julien Xavier Neals
**JULIEN XAVIER NEALS**
United States District Judge